1  Victor A. Sahn (CA Bar No. 97299)
      vsahn@sulmeyerlaw.com
2  David J. Richardson (CA Bar No. 168592)
      drichardson@sulmeyerlaw.com
3  Asa S. Hami (CA Bar No. 210728)
      ahami@sulmeyerlaw.com
4  **Sulmeyer**Kupetz
   A Professional Corporation
5  333 South Hope Street, Thirty-Fifth Floor
   Los Angeles, California 90071-1406
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520
7
   Carolyn Dye (CA Bar NO. 97527)
8  Law Offices of Carolyn A. Dye
   3435 Wilshire Boulevard, Ste 990
9  Los Angeles, CA 90010
   Telephone: 213-368-5000
10 Facsimile: 213-368-5009

11 Attorneys for Sam Leslie, Plan Agent

12          **UNITED STATES BANKRUPTCY COURT**

13     **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

14 In re                                    Case No. 2:13-bk-14135-RK

15 ART & ARCHITECTURE BOOKS OF THE          Adv No. 2:15-ap-01679-RK
   20th CENTURY,
16                                          Chapter 11
              Debtors.
17 _____     **FIRST AMENDED COMPLAINT**

18 SAM LESLIE, PLAN AGENT FOR ART &
   ARCHITECTURE BOOKS OF THE 20th
19 CENTURY,

20            Plaintiff,

21      vs.

22 ACE GALLERY NEW YORK
   CORPORATION, a California corporation;
23 ACE GALLERY NEW YORK, INC., a
   dissolved New York corporation; ACE
24 MUSEUM, a California corporation;
   DOUGLAS CHRISMAS, an individual;
25 SHIRLEY HOLST, an individual;

26            Defendants.

27

28

DJR\ 2470816.5

1    For this First Amended Complaint (the "<u>Complaint</u>"), plaintiff Sam Leslie ("<u>Plaintiff</u>," or

2    the "<u>Plan Agent</u>"), Plan Agent for the Post-Confirmation Bankruptcy Estate of Art and

3    Architecture Books of the 21st Century (the "<u>Debtor</u>"), hereby alleges as follows:

4    **STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE**

5    1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(1) and

6    1334(a).  This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (H) and

7    (O).  This action is a proceeding arising in, arising under, and/or related to the bankruptcy case

8    styled *In re Art and Architecture Books of the 21st Century*, Case No. 2:13-bk-14135-RK (the

9    "<u>Bankruptcy Case</u>"), which is a case under chapter 11 of title 11 of the United States Code, 11

10    U.S.C. § 101 et seq., (the "<u>Bankruptcy Code</u>"), and which is pending in the United States

11    Bankruptcy Court for the Central District of California, Los Angeles Division (the "<u>Bankruptcy

12    Court</u>" or "<u>Court</u>").  Regardless of whether this proceeding is core, non-core, or otherwise,

13    Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

14    2.    Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a).

15    **<u>THE PARTIES TO THIS ACTION</u>**

16    3.    Plaintiff is the duly appointed Plan Agent for the post-confirmation estate of the

17    Debtor pursuant to the Modified Second Amended Plan of Reorganization of Official Committee

18    of Unsecured Creditors (the "<u>Plan</u>") confirmed by this Court by an order entered March 18, 2016,

19    and effective as of April 6, 2016 (the "<u>Effective Date</u>").

20    4.    Plaintiff is informed and believes, and based thereon alleges, that defendant Ace

21    Gallery New York Corporation ("<u>ACE NYC</u>") is a corporation organized and existing under and

22    by virtue of the laws of the State of California, and is or has recently conducted business at 400 S.

23    La Brea Avenue, Los Angeles, California, and/or at 5500 Wilshire Blvd., Los Angeles, California.

24    Plaintiff is further informed and believes, and based thereon alleges, that ACE NYC is authorized

25    to, and does, conduct business in the State of California.  Plaintiff is further informed and believes,

26    and based thereon alleges, that ACE NYC has done business under the fictitious business name

27    Ace Gallery New York.

28    5.    Plaintiff is informed and believes, and based thereon alleges, that defendant Ace

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   Gallery New York, Inc., is a dissolved New York corporation, which Douglas James Chrismas

2   incorporated under the laws of the State of New York on November 27, 1990, and dissolved on

3   November 16, 2012 ("OLD ACE NYC").

4        6.    Plaintiff is informed and believes, and based thereon alleges, that defendant Ace

5   Museum ("Ace Museum") is a non-profit organization that was organized and existing under and

6   by virtue of the laws of the State of California, and is presently located at 400 S. La Brea Avenue,

7   Los Angeles, California (the "La Brea Property").  Plaintiff is informed and believes, and based

8   thereon alleges, that Ace Museum is registered as a 501(c)(3) tax-exempt organization pursuant to

9   the Internal Revenue Code.

10       7.    Plaintiff is informed and believes, and based thereon alleges, that defendant

11  Douglas James Chrismas ("Chrismas") is an individual residing in the State of California, Los

12  Angeles County, and, prior to the Effective Date of the Plan, was the Debtor's sole shareholder

13  and President.  Plaintiff is further informed and believes, and based thereon alleges, that, at all

14  relevant times, Chrismas was or is the President and a Director of Ace Museum.  Plaintiff is

15  further informed and believes, and based thereon alleges, that, at all relevant times, Chrismas was

16  or is the president, director, and sole or controlling shareholder of ACE NYC, in which capacity

17  Chrismas oversees and is in control of ACE NYC's overall operations, financial affairs, and books

18  and records, including, but not limited to, with respect to the matters and transactions that are the

19  subject of this Complaint.

20       8.    Plaintiff is informed and believes, and based thereon alleges, that defendant Shirley

21  Holst ("Holst") is an individual residing in the State of California, Los Angeles County.  Plaintiff

22  is further informed and believes, and based thereon alleges, that Holst was an employee or

23  independent contractor of the Debtor, and was an insider of the Debtor as that term is defined

24  under 11 U.S.C. § 101(31), and in that capacity carried the title of Accountant.

25       9.    Plaintiff is informed and believes, and based thereon alleges, that each of the

26  defendants named in paragraphs 4-8, above (collectively, the "Defendants") is and was at all times

27  herein the agent, representative and/or employee of one another, and was acting within the course

28  and scope of said agency, representation and/or employment and was acting with the knowledge

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    and consent of the remaining defendants.

2        10.    Plaintiff is informed and believes, and based thereon alleges, that the Debtor is a

3    California corporation organized and existing under and by virtue of the laws of the State of

4    California.

5        11.    Plaintiff reserves the right to amend this Complaint to allege additional claims

6    against the above-captioned defendants.

7                    **ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

8        12.    On February 19, 2013 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition

9    for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor operated

10   its business and managing its affairs as a debtor in possession pursuant to sections 1107 and 1108

11   of the Bankruptcy Code.

12   **PREPETITION OPERATIONS OF ACE GALLERY**

13       13.    The Debtor is the owner and/or operator of a retail art gallery known as "Ace

14   Gallery."  The Debtor's headquarters and main art gallery is, and at all relevant times was, at 5500

15   Wilshire Boulevard, Second Floor, Los Angeles, California 90036 (the "<u>Mid-Wilshire Property</u>").

16   The Debtor also operates another art gallery at 9430 Wilshire Boulevard, Beverly Hills, California

17   90212 (the "<u>Beverly Hills Property</u>").

18       14.    Plaintiff is informed and believes, and based thereon alleges, that prior to the

19   Petition Date, Chrismas operated the Debtor's business with a general disregard for corporate

20   formalities.

21       15.    Plaintiff is informed and believes, and based thereon alleges, that the operations of

22   the Debtor prior to, and subsequent to, the Petition Date, have been plagued by misuse of

23   corporate funds, conversion of artworks that were the property of third parties, and repeated

24   litigation arising from intentional or negligent mismanagement of the business and/or conversion

25   of artworks or cash.  This pattern of improper behavior has led to multiple lawsuits filed against

26   Chrismas, the Debtor, or both, by artists, and by purchasers or sellers of artworks, most of which

27   alleged similar allegations pertaining to actions by Chrismas to sell artworks without permission,

28   to sell artworks and then refuse to forward payment to the artists or owners who had provided such

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   artwork for sale on consignment, or to otherwise wrongfully retain and withhold moneys and/or

2   artworks that belong to others.  The following lawsuits are a small portion of pre-petition litigation

3   alleging such a pattern of wrongful behavior:

4       A.  Plaintiff is informed and believes, and based thereon alleges, that Chrismas

5           and/or the Debtor were sued in 1986 by C. Frederick Stimpson ("Stimpson"),

6           alleging that Chrismas had improperly sold artwork that belonged to Stimpson,

7           including valuable pieces by Andy Warhol and Robert Rauschenberg.  Plaintiff

8           is further informed and believes, and based thereon alleges, that Chrismas and

9           Stimpson settled their litigation, the terms of which included payment from

10          Chrismas and/or the Debtor to Stimpson of $650,000.

11      B.  On May 15, 2006, sculptor Jannis Kounellis ("Kounellis") filed a complaint in

12          the Superior Court for the State of California, County of Los Angeles (the "Los

13          Angeles Superior Court"), Case No. BC 352394 (the "Kounellis Action")

14          against Chrismas and the Debtor, alleging improprieties on the part of the

15          defendants for improperly retaining profits and artworks pertaining to

16          consigned works of art worth more than $4 million.  Plaintiff is further

17          informed and believes, and based thereon alleges, that the Kounellis Action was

18          settled on terms that were not publicly disclosed.

19      C.  On February 22, 2006, Keith Sonnier ("Sonnier") filed a complaint in the

20          Supreme Court of the State of New York, County of New York (the "NY

21          Supreme Court"), Case No. 06600602 (the "Sonnier Action") against Chrismas,

22          the Debtor, and Doug Chrismas Fine Art, Inc., for claims including conversion,

23          breach of consignment agreement, breach of fiduciary duty and accounting,

24          alleging that Chrismas and his co-defendants were in the wrongful possession

25          of eighteen artworks with a combined value of $2,830,000.  Plaintiffs are

26          informed and believe, and based thereon allege, that the Sonnier Action has

27          since been settled.

28      D.  On May 22, 2008, Seth Landsberg, as Trustee of the Seth Landsberg Trust

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   ("Landsberg") filed a complaint in Los Angeles Superior Court, Case No. BC

2   391311 (the "Landsberg Action") against Chrismas, the Debtor, and Pacific

3   Heights Gallery, Inc., for claims including breach of various agreements and

4   warranties, and both negligent and fraudulent misrepresentation, alleging in part

5   that Chrismas and his co-defendants sold a painting by Roy Lichtenstein to

6   Landsberg with the knowledge that the painting had been stolen from a

7   Brazilian gallery, and seeking damages in excess of $3.5 million.  On March

8   28, 2010, Judgment was entered in the Landsberg Action against Chrismas and

9   the Debtor for total joint and several damages of $1,785,000.00 (the

10   "Landsberg Judgment").

11   E.  On October 18, 2012, Vivien and Alan Hassenfeld (the "Hassenfelds") filed a

12   complaint in Los Angeles Superior Court, Case No. BC494070 (the

13   "Hassenfeld Action") against Ace Gallery, LLC for breach of contract, alleging

14   that the Hassenfelds paid $168,750 for certain artworks, and received neither

15   the artworks that were purchased, nor a promised refund.  Plaintiff is informed

16   and believes, and based thereon alleges, that the Hassenfelds and Ace Gallery,

17   LLC, through Chrismas, entered into a settlement agreement whereby Ace

18   Gallery, LLC would repay the amounts owed to the Hassenfelds in three

19   payments, but that judgment was entered in favor of the Hassenfelds on or

20   about February 19, 2013, after Ace Gallery, LLC defaulted on the agreed

21   payments (the "Hassenfeld Judgment").

22   16.   Chrismas's prepetition litigation history is not merely a matter of historical

23   perspective.  Several of the judgments and settlements that were obtained in litigation described

24   above, and in other litigation not described herein, form the basis of proofs of claim asserted

25   against the Debtor's estate.  For example, Proof of Claim No. 10, filed in the Bankruptcy Case,

26   was filed by Landsberg, attaching the Landsberg Judgment and claiming $1,755,156, plus

27   attorney's fees, in total damages.  Similarly, Proof of Claim No. 13, filed in the Bankruptcy Case,

28   was filed by the Hassenfelds, attaching the Hassenfeld Judgment and claiming $116,460.00 in

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    damages.

2         17.    In addition to wrongful actions that led to multiple lawsuits against Chrismas

3    and/or the Debtor, Chrismas managed and operated the Debtor in a manner, pre-petition, that

4    inflated the claims of creditors, created unnecessary claims against the Debtor, and ultimately led

5    to the Bankruptcy Case.

6         18.    For example, in or about January 10, 2011, Chrismas caused the Debtor to borrow

7    $500,000 (the "WFI Loan") from Westminster Finance, Inc. ("WFI"), and, in order to obtain the

8    WFI Loan, pledged to WFI twelve works of art by world-renowned artists, including Robert

9    Rauschenberg, Julian Schnabel and Sam Francis (the "WFI Pledged Artworks").  Plaintiff is

10   informed and believes, and based thereon alleges, that all of the WFI Pledged Artworks were the

11   property of Eric Wilson ("Wilson"), that all of the WFI Pledged Artworks were held by the Debtor

12   under an agreement to store the artworks for Wilson, and that the pledging of the WFI Pledged

13   Artworks was carried out without the knowledge or permission of Wilson, thereby increasing the

14   unsecured claim that Wilson is asserting in the Bankruptcy Case, and leading to litigation against

15   WFI and the resulting attorney's fees, to the detriment of creditors of the estate.

16        19.    Similarly, Plaintiff is informed and believes, and based thereon alleges, that

17   between December 3, 2012, and January 22, 2013, Chrismas caused the Debtor to borrow

18   $300,000 (the "BJI Loans") from Ben Jewelry, Inc. ("BJI"), a pawn dealer, which BJI Loans were

19   secured by the pledging of four Sam Francis artworks (the "Sam Francis Artworks"), all four of

20   which were the property of Wilson held by the Debtor under an agreement to store the BJI

21   Pledged Artworks for Wilson, plus one Tim Hawkinson sculpture that was owned by the Debtor,

22   and that the pledging of the Sam Francis Artworks was carried out without the knowledge or

23   permission of Wilson, thereby increasing the unsecured claim that Wilson is asserting in the

24   Bankruptcy Case, and leading to litigation against BJI and the resulting attorney's fees, to the

25   detriment of creditors of the estate.

26   **PRE-PETITION OPERATIONS OF ACE MUSEUM**

27        20.    Plaintiff is informed and believes, and based thereon alleges, that in or about June

28   8, 2009, Chrismas founded Ace Museum as a non-profit 501(c)(3) organization.  Plaintiff is

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 further informed and believes, and based thereon alleges, that at all times relevant hereto,

2 Chrismas, was a director on, or President of, the Board of Directors for Ace Museum (the "Ace

3 Museum Board").

4       21.     Ace Museum operates an art museum and parking lot as a non-profit corporation.

5 It leases two properties from 400 S. La Brea whose addresses are 400 S. La Brea Avenue, Los

6 Angeles, California 90036 (APN 5507-009-025) (the "La Brea Property"), and 407 S. Sycamore

7 Avenue, Los Angeles, California 90036 (APN 5507-009-023) (the "Sycamore Property," and

8 together with the La Brea Property, the "Museum Real Property"). The La Brea Property is

9 improved with a two story building measuring approximately 60,000 square feet. The Sycamore

10 Property is a vacant parcel which is used for parking for people who are utilizing the La Brea

11 Property.

12       22.     Plaintiff is informed and believes, and based thereon alleges, that, on or about July

13 9, 2009, a meeting of the Ace Museum Board occurred, at which Ace Museum resolved to borrow

14 from the Debtor an initial amount of no less than $3,143,994.92, plus additional amounts as

15 necessary from time to time, with no interest (the "Museum Board Resolution").

16       23.     Plaintiff is informed and believes, and based thereon alleges, in or about May 2012,

17 the Debtor received from AERC Desmond's Tower, LLC ("AERC") a payment of approximately

18 $4,000,000 (the "AERC Payment"), which was made in connection with the Debtor's agreement

19 to convey a portion of its interest in its real property lease for the Mid-Wilshire Property (the

20 "Mid-Wilshire Lease"), and the purchase option contained therein as it related to such portion of

21 the Mid-Wilshire Property. Plaintiff is further informed and believes, and based thereon alleges,

22 that AERC desired to develop an apartment project on that site and, in fact, commenced

23 construction on that project in or about June 2013. Rather than use the AERC Payment for

24 business operations, to pay monthly rent due to AERC, to pay the outstanding Landsberg

25 Judgment, to pay the debts owed to the Hassenfelds, or to pay any other outstanding judgments

26 obtained by plaintiffs in the various litigation that had been filed against the Debtor in previous

27 years, Chrismas caused the Debtor to advance some of the AERC Payment to Ace Museum, in

28 accordance with the Museum Board Resolution, and in violation of his fiduciary duties to the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    Debtor and to creditors of the Debtor.

2        24.    Plaintiff is informed and believes, and based thereon alleges, that, consistent with

3    the Museum Board Resolution, Ace Museum borrowed, or otherwise obtained, from the Debtor,

4    and the Debtor lent, or otherwise transferred, to Ace Museum, funds in the aggregate of no less

5    than $4,482,586.00 (the "Museum Loan"), which amounts included some of all of the AERC

6    Payment, and that Ace Museum became indebted to the Debtor on account of the Museum Loan in

7    at least that amount (the "Museum Loan Obligation").  Plaintiff is further informed and believes,

8    and based thereon alleges, that the Museum Loan was provided or made pursuant to one or more

9    transfers of the Debtor's funds from the Debtor to Ace Museum since July 9, 2009 or such other

10   later date or dates before the Petition Date (defined below) (each, an "Ace Museum Pre-Petition

11   Transfer" and, collectively, the "Ace Museum Pre-Petition Transfers"), and that the Debtor used

12   the AERC Payment to fund all, or a portion, of the Ace Pre-Petition Museum Transfers.

13       25.    Plaintiff is informed and believes, and based thereon alleges, that Chrismas alone

14   determined on behalf of the Debtor that the Debtor would make the Museum Loan to Ace

15   Museum and alone decided on behalf of the Debtor when and whether the Debtor would transfer

16   any funds to Ace Museum, including, but not limited to, the decision to use the AERC Payment to

17   make the Ace Museum Pre-Petition Transfers.  Plaintiff is further informed and believes, and

18   based thereon alleges, that, given the Museum Board Resolution and Chrismas's controlling

19   position within Ace Museum, Ace Museum and the Ace Museum Board conspired with Chrismas,

20   and otherwise was complicit with Chrismas's decision, to make the Ace Museum Pre-Petition

21   Transfers, including, but not limited to, the transfer of a portion of the AERC Payment to Ace

22   Museum.

23       26.    Plaintiff is informed and believes, and based thereon alleges, that, at the time or as

24   a result of each of the Ace Museum Pre-Petition Transfers, the Debtor was or became insolvent,

25   was left with an unreasonably small capital to engage in its business, and/or otherwise was not

26   paying or became unable to pay its debts as such debts matured.  Plaintiff is further informed and

27   believes, and based thereon alleges, that each of the Ace Museum Pre-Petition Transfers was a

28   transfer of property of the Debtor.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

27.     Through discovery conducted prior to the commencement of the instant adversary proceeding, Ace Museum has produced tax returns for 2010 and 2011.  In 2010, Ace Museum had gross receipts of $4,023,400.  Of this total, $3,982,000 was obtaining through "Contributions and Grants."  In 2011, Ace Museum had gross receipts of $216,346.00 and revenue of $48,079.00.  At the end of 2011 (the last year for which a tax return was supplied), the tax return showed total assets of $292,257 and liabilities of $4,042,435.

28.     Plaintiff is informed and believes, and on that basis alleges, that the Debtor made such payment to 400 S. La Brea for the benefit of Ace Museum, and on account of outstanding rent for 400 S. La Brea, and that the Debtor made other, earlier payments to 400 S. La Brea prior to the Petition Date, for the benefit of Ace Museum, and on account of outstanding rent for the La Brea Property in the approximate amount of $886,496.

**PRE-PETITION INCORPORATION OF ACE NYC**

29.     By December 2012, largely because of the Ace Museum Pre-Petition Transfers, the Debtor was unable to pay its rent on the Mid-Wilshire Property as it became due, and was unable to pay other debts as they became due.

30.     In or about December 2012, as a result of late rent payments made by the Debtor, AERC took steps to terminate the Mid-Wilshire Lease for the Mid-Wilshire Property.

31.     In an effort to preserve the Debtor's occupancy of the Mid-Wilshire Property, Chrismas prepared to file the Debtor's chapter 11 petition on the Petition Date.

32.     On February 14, 2013, five days prior to the Petition Date, Chrismas incorporated ACE NYC for the purpose of creating a non-debtor corporate entity that he could utilize to conduct art sales outside of the oversight of the Bankruptcy Court, including sales of art that constituted property of the Debtor's estate, and sales of art on consignment belonging to artists with whom the Debtor had signed consignment agreements.  Such sales, as further documented below, were carried out without the authorization of the Bankruptcy Court, and served to improperly and illegally convert property of the estate for the benefit of Chrismas and other Defendants in this action.

33.     Plaintiff is informed and believes, and on that basis alleges, that shortly before the

1   Petition Date, Chrismas transferred property of the Debtor's estate to newly incorporated ACE

2   NYC, with the intent to hinder, delay or defraud the Debtor's creditors, for which the Debtor

3   received no consideration, and at a time when the Debtor was insolvent, rendered insolvent

4   thereby, or unable to pay its debts as they came due (the "ACE NYC Pre-Petition Transfers").

5   **THE DEBTOR'S CHAPTER 11 CASE**

6   34.    On March 28, 2013, following the filing of the Debtor's Bankruptcy Case, the

7   United States Trustee (the "UST") filed its notice of appointment of the Official Committee of

8   Unsecured Creditors in the Bankruptcy Case (the "Committee").  The Committee originally

9   included Eric Wilson, Seth Landsberg, and Simon Rubinstein.  On December 10, 2013, the UST

10  filed its amended notice of appointment of the Committee, appointing Alan and Vivien Hassenfeld

11  to the Committee in place of Mr. Rubinstein.

12  35.    Through the Bankruptcy Case, the Committee carried out investigations of the

13  Debtor's pre-petition operations, and repeatedly propounded discovery upon the Debtor to obtain

14  information about the improprieties described herein, but Chrismas repeatedly refused to comply

15  with the Committee's demands.

16  36.    Plaintiff is informed and believes, and based thereon alleges, that the outstanding

17  balance of the Museum Loan Obligation that remains due and owing to the Estate is the amount

18  set forth in the Debtor's Schedule B, and no less than $3,516,459.80, but will be determined in due

19  course according to proof as is necessary and appropriate (the "Outstanding Balance").  Plaintiff is

20  informed and believes, and based thereon alleges, that each of the Debtor and Ace Museum are

21  aware of the Outstanding Balance, and agree on such amount, especially in light of the common

22  ownership and directorship of the Debtor and Ace Museum, and the fact that Chrismas is in charge

23  and control of Ace Museum and was, until April 6, 2016, in charge of the Debtor , and was aware

24  of each of their respective overall operations, financial affairs, and books and records as alleged

25  above, and otherwise represented both the Debtor and Ace Museum.

26  **POST-PETITION OPERATIONS OF THE DEBTOR AND UNAUTHORIZED**

27  **TRANSFERS**

28  37.    The pattern of improper pre-petition behavior that led to the Bankruptcy Case, and

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   wrongfully created and inflated the claims of certain creditors, continued subsequent to the

2   Petition Date, and continued to lead to litigation against the Debtor and/or Chrismas, including,

3   but not limited to, the following:

4       A.   On November 24, 2014, Robert and Nancy Sears (the "<u>Sears</u>") filed a

5           complaint (the "<u>Sears Complaint</u>") in Los Angeles Superior Court, Case No.

6           BC564909 (the "<u>Sears Action</u>") against Chrismas and "Ace Gallery New York

7           Corporation dba Ace Gallery Los Angeles" for claims including breach of

8           contract, unjust enrichment and conversion, alleging in part that Chrismas

9           induced the Sears to consign artwork with the Debtor, that Chrismas claimed to

10          have sold the artwork, but that Chrismas had failed to pay the $123,750 due to

11          the Sears.  The Sears Action was dismissed with prejudice on February 23,

12          2015.  It is notable that the Sears Complaint was against both Chrismas and

13          ACE NYC, alleges that the plaintiffs entered into a consignment contract with

14          ACE NYC, and alleges in Paragraph 14 therein that Chrismas purported to

15          conduct the promised consignment sale from the Debtor's Mid-Wilshire

16          Property.

17      B.   On February 4, 2015, Yuko Watanabe ("<u>Watanabe</u>") filed a complaint (the

18          "<u>Watanabe Complaint</u>") in Los Angeles Superior Court, Case No. BC571296

19          (the "<u>Watanabe Action</u>") against Chrismas for claims including fraud, breach of

20          contract, open book, money lent, and account stated, alleging in part that

21          Chrismas induced Watanabe to give him $90,000 on the pretext of investing in

22          art, but that Chrismas instead used the funds for personal expenses.  Watanabe

23          and Chrismas reached a settlement that was filed in the Los Angeles Superior

24          Court on April 21, 2015, by which Chrismas agreed to pay Watanabe a total

25          settlement amount of $109,160.99 through a series of monthly payments, the

26          terms of which depended upon the closing of escrow on the Debtor's sale of

27          real property located at 9430 Wilshire Blvd., Beverly Hills, California.  The

28          settlement payments due to Watanabe were supposed to be completed with a

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    balloon payment due in February 2016.

2    C.    On September 4, 2015, Tag-Arts LLC ("Tag-Arts") filed a complaint (the "Tag-

3    Arts Complaint") in Los Angeles Superior Court, Case No. BC593799 (the

4    "Tag-Arts Action"), against Chrismas and Does 1 through 20, for Breach of

5    Contract and Fraud and Deceit, alleging that Chrismas, acting on behalf of the

6    Debtor, sold artwork by Justin Bower entitled Internal Dialectic (the "Bower

7    Artwork") to Tag-Arts for $20,000 on June 5, 2013, and that Tag-Arts has paid

8    the purchase price, but that Chrismas has ever since wrongly withheld delivery

9    of the Bower Artwork.  The Tag-Arts Complaint further alleges that Chrismas

10    has since attempted to sell the Bower Artwork a second time through an entity

11    called Unix Gallery, and that Chrismas had never had authorization from Justin

12    Bower to sell the Bower Artwork to anyone.  The Tag-Arts Action remains

13    pending.

14    38.    Throughout the Bankruptcy Case, the Committee attempted to advance the interests

15    of creditors, and to further the potential for a successful reorganization of the Debtor, but was met

16    throughout by a refusal by Chrismas to provide requested information, comply with orders of this

17    Court, and otherwise conduct the Debtor's business in an open manner.  In order to permit the

18    Committee to negotiate a consensual plan of reorganization with the Debtor, the Committee has

19    asked the Debtor for information, since May 2015, so that the Committee may intelligently

20    evaluate any proposal for payment over time that the Debtor wished to make.  The Debtor has

21    steadfastly refused to supply meaningful information to the Committee even though the

22    Committee was within reasonable boundaries in terms of the amount and type of information it

23    was seeking.  Chrismas refused to provide the Committee with access to an inventory of the

24    Debtor's artwork even though there was a specific and unequivocal order of the Bankruptcy Court

25    providing that this discovery must be provided and complete access to the Debtor's artwork given

26    to the Committee's representatives.  In spite of attempts to create the appearance of cooperation,

27    Debtor did not cooperate with the Committee at all in its discovery efforts.  Further, since May

28    2015, and the closing of the sale of the Debtor's premises in Beverly Hills, the following has taken

1   place or been discovered, without limitation:

2        A.  The Debtor, under the control and management of Chrismas, failed to

3            cooperatively provide basic financial information to the Committee as a

4            precursor to attempts to negotiate a consensual plan of reorganization;

5        B.  The Debtor, under the control and management of Chrismas, refused to supply

6            information regarding art sales prior to 2015 including prices obtained for

7            artwork and the time needed to sell particular pieces of artwork so that the

8            Committee could compile intelligent projections of art sales going forward;

9        C.  The Debtor, under the control and management of Chrismas, refused to permit

10           the Committee to conduct an inspection of the 1,500 pieces of art that the

11           Debtor's inventory purports to contain when this was first supplied to the

12           Committee in May, 2015.  On multiple occasions Chrismas expelled the

13           individuals sent by the Committee to conduct the inspection from the Debtor's

14           business premises and would not permit them to return.  The Committee was

15           required to file a motion for contempt against him which is still pending.  In the

16           meantime, rather than permit access to his inventory for the Committee's

17           inspectors, Chrismas permitted them access to perhaps 30-40 pieces of artwork,

18           rather than the 1,500 pieces which Chrismas said the Debtor either owns or

19           holds on consignment;

20       D.  The Debtor, under the control and management of Chrismas, failed to

21           adequately explain why there were 90 pieces of art in the Debtor's inventory

22           from the renowned artist Mary Corse (to whom Chrismas makes "advances"

23           from the Debtor's funds in the amount of approximately $65,000 each month

24           against future royalties) in May 2015, but in September 2015, only 20 pieces of

25           art created by Ms. Corse remained;

26       E.  In an inventory separately conducted by Wilson of artwork that is and has

27           always been his property, Wilson's representative searched for 105 pieces of

28           artwork that the Debtor has been holding for Wilson for years.  Wilson

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311  •  FAX  213.629.4520

informed Plaintiff that his early estimate was that 10-15 of these art pieces were missing and were presumably sold and the proceeds retained by the Debtor. If, in fact, this artwork was sold, it was sold without Wilson's knowledge or approval, and the proceeds from these sales were converted by the Debtor to its own usage; and

F. Chrismas created a dispute with AERC in connection with the alleyway for the Debtor's premises on Wilshire Boulevard, whose reconstruction was necessary to finish the adjacent apartment project being constructed by AERC. This dispute led to very significant litigation that covered a period of 2-3 weeks and probably cost, between counsel for the Debtor, Chrismas, and counsel for AERC, as much as $200,000 or more.

39. The post-petition actions and omissions described in preceding paragraphs were the public side of Chrismas's inappropriate conduct. Unbeknownst to the Committee or the Bankruptcy Court, Chrismas used ACE NYC as the primary corporate vehicle through which he engaged in a pattern of behavior by which he: (i) transferred property of the Debtor to ACE NYC and/or OLD ACE NYC for sale to the public; (ii) permitted ACE NYC and/or OLD ACE NYC to perform the Debtor's consignment obligations to various artists, and retain the proceeds from such sales; (iii) converted property of the Debtor's estate for his own benefit, and for the benefit of ACE NYC, OLD ACE NYC and Ace Museum; (iv) received millions of dollars in sale proceeds that belonged to the Debtor on account of direct and consignment sales, and transferred such proceeds through ACE NYC and/or OLD ACE NYC to a variety of transferees, primarily Ace Museum; (v) transferred property of the Debtor to Ace Museum; (vi) induced buyers of artworks, who purchased art from ACE NYC, Ace Museum and, on information and belief, OLD ACE NYC, to believe that they were purchasing such artworks from the rightful owner, when in fact, such artworks were property of the Debtor's estate; and (vii) arranged for sales of artworks that were owned or consigned assets of the estate, and diverted sale proceeds to other entities (collectively, the "Unauthorized ACE NYC Post-Petition Transfers"), and, on information and belief, misrepresented to purchasers that they could take a charitable deduction for payments made

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  directly to ACE Museum for artwork purchased through ACE NYC.  Chrismas, with the

2  assistance of Holst, intentionally misrepresented the Unauthorized ACE NYC Post-Petition

3  Transfers in the Debtor's books and records in an effort to conceal and misrepresent the

4  unauthorized and illegal nature of such transfers.  Since the Plan Agent's appointment on the

5  Effective Date, the Plan Agent has carried out, and continues to carry out, an extensive forensic

6  analysis of the books and records of the Debtor, ACE NYC, OLD ACE NYC, and Ace Museum.

7  That analysis has revealed transactions of the type described in this paragraph, and is expected to

8  continue to reveal more such improper transactions as the investigation continues.

9       40.     During the Bankruptcy Case, Chrismas conducted business through ACE NYC,

10  and carried out Unauthorized ACE NYC Post-Petition Transfers, at the Debtor's Mid-Wilshire

11  Property and/or the Beverly Property, in violation of 11 U.S.C. § 549, and in a manner that served

12  to convert property of the Debtor's estate, including artworks and consignment contract rights.

13  During the Bankruptcy Case, Chrismas continued to lease a storage facility that is located at 1269

14  S. Cochran Avenue, Los Angeles (the "Cochran Property").  At some point following the

15  incorporation of ACE NYC, Chrismas caused the Cochran Property lease to be transferred into the

16  name of ACE NYC.  Plaintiff is informed and believes, and based thereon alleges, that Chrismas

17  used the Cochran Property as a location to store or divert artwork that included artwork that was

18  property of the Debtor's estate.  Chrismas obtained insurance for the Cochran Property that was

19  paid for by the Debtor.

20       41.     Plaintiff is informed and believes, and based thereon alleges, that the Cochran

21  Property contains multiple artworks of substantial value that are property of the estate (the

22  "Cochran Converted Property").  Plaintiff is informed and believes, and based thereon alleges, that

23  among the Cochran Converted Property are some of least sixty (60) pieces of artwork that, on

24  April 5, 2016, Chrismas caused to be transported from the Debtor's Mid-Wilshire Property to the

25  Cochran Property, including, but not limited to, artwork that, on information and belief, is

26  attributable to the following artists:

27            (i) at least thirteen artworks by Michael Heizer;

28            (ii) at least one artwork by Sam Francis;

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1        (iii) at least two artworks by John Millei;

2        (iv) at least twenty-one artworks by Raymond Pettibon;

3        (v) at least six artworks by John McCracken;

4        (vi) at least two artworks by Richard Serra;

5        (vii) at least one artwork by Robert Raushenberg; and

6        (viii) approximately twelve additional artworks for which the identity of the artist is

7            not presently known by Plaintiff.

8        42.    Plaintiff is informed and believes, and on that basis alleges, that although some of

9    the Converted Cochrane Property transported to, and stored at, the Cochran Facility may be the

10    personal property of Chrismas, as he alleges, such artworks were not disclosed by Chrismas as

11    assets in an earlier personal bankruptcy case.  Plaintiff is continuing its investigation into the title

12    to such artworks, many of which Plaintiff believes are property of the Debtor's estate.

13        43.    During the Bankruptcy Case, Chrismas obtained loans that were purportedly for the

14    benefit of the Debtor, but arranged for the funding of such loans to be provided to ACE NYC,

15    after which Chrismas diverted the loan proceeds to Ace Museum.  These loans included Debtor-

16    in-Possession financing obtained by the Debtor from Wilson  in the amount of $1,774,960, and

17    further loans from Wilson totaling $771,645, all of which Chrismas deposited into ACE NYC

18    accounts (collectively the "Diverted DIP Loans").  Chrismas, with the assistance of Holst,

19    intentionally misrepresented the above-described transfers in the Debtor's books and records in an

20    effort to conceal and misrepresent the unauthorized and illegal nature of such transfers.

21        44.    The Plan Agent's forensic accounting investigation has further revealed that,

22    although the Debtor was the Lessee and sub-lessor under the Mid-Wilshire Lease, $119,016 in

23    sub-lessee rent for the Mid-Wilshire Property, and $8,725 in parking rental income, was paid to

24    ACE NYC during the Post-Petition Analysis Period (the "Lease Diversions").

25        45.    From the Petition Date through January 2016 (the "Post-Petition Analysis Period"),

26    the conversion of property of the Debtor's estate for the purpose of conducting unauthorized

27    postpetition sales or consignment sales through ACE NYC, including but not limited to the

28    Unauthorized ACE NYC Post-Petition Transfers, the improper Lease Diversions, and the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   improper transfer of Diverted DIP Loans that had been intended for the use of the Debtor, totaled

2   far in excess of $10,000,000, the full amount of which remains subject to further investigation (the

3   "Converted Proceeds").

4   46.    The Plan Agent's ongoing forensic analysis indicates that, of the total Converted

5   Proceeds, at least $4,568,382 was diverted from the Debtor, via ACE NYC and other entities and

6   parties, to Ace Museum during the Post-Petition Analysis Period, though such funds were property

7   of the Debtor's estate (the "Ace Museum Diversions").  Much of the Ace Museum Diversions

8   were further transferred to 400 S. La Brea, LLC in satisfaction of the Ace Museum Rent

9   Obligations, along with a further $48,000 that was transferred directly from ACE NYC to 400 S.

10  La Brea, LLC on account of the Ace Museum Rent Obligations, and further amounts described

11  below that were paid directly to 400 S. La Brea, LLC by a purchaser of artwork belonging to the

12  Debtor.  Attached hereto as Exhibit 1 is a list of the Ace Museum Diversions that have been

13  identified thus far that were made during the Post-Petition Analysis Period, of property of the

14  Debtor's estate, from ACE NYC or other entities or parties to Ace Museum.

15  47.    Christmas, with the assistance of Holst, intentionally misrepresented the Ace

16  Museum Diversions in the Debtor's books and records in an effort to conceal and misrepresent the

17  unauthorized and illegal nature of such transfers.

18  48.    The Plan Agent's forensic accounting analysis has identified at least $391,630 of

19  the Converted Proceeds that was used for personal expenses of Christmas during the Post-Petition

20  Analysis Period, including cash, rent for his apartment, and payments on his credit card balances

21  (the "Christmas Diversions").  Although some of the payments on his credit card balances could

22  include legitimate business expenses, Christmas made no reports of such expenses on the Debtor's

23  monthly operating reports to the Bankruptcy Court.

24  49.    The Plan Agent's forensic accounting analysis has also revealed that at least

25  $165,039 of the Converted Proceeds was paid during the Post-Petition Analysis Period to

26  attorneys who were retained by Christmas to represent him personally without approval of the

27  Bankruptcy Court (the "Attorney Diversions").  The Attorney Diversions include:

28  -    Altschul & Altschul                          $14,500.00

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

| | | | |
|---|---|---|---|
| - | Ballard Rosenberg Golper & Savitt LLP | | $4,000.26 |
| - | Robins Kaplan Miller Ciresi LLP | | $65,000.00 |
| - | Eisner Kahan Gorry Chapman Ross & Jaffe | | $71,539.20 |
| - | Steckbauer Weinhart LLP | | $10,000.00 |

50.     The Plan Agent's forensic accounting investigation further reveals that during the Bankruptcy Case, Chrismas conducted business through or on behalf of OLD ACE NYC, even though OLD ACE NYC had been dissolved in 2012.  In February and March 2015, Chrismas deposited two payments received from improper post-petition sales of property of the Debtor's estate into the previously inactive account of OLD ACE NYC.

51.     On November 19, 2015, Chrismas caused a check to be cut on the ACE NYC account made payable to ACE Gallery New York Inc. in the amount of $160,000.  As the bank account known to the Plan Agent for OLD ACE NYC is believed to have been closed before that time, the disposition of those funds is currently unknown.

52.     On March 30 and 31, 2016, Chrismas caused three transfers of funds belonging to the Debtor's estate to be carried out by which the funds were transferred to or for the benefit of Ace Museum, totaling $264,000, for the purpose of satisfying certain of Ace Museum's outstanding Ace Museum rent obligations for the La Brea Property (the "Late March Diversions").  The Late March Diversions included a check from the Debtor in the amount of $50,000 made out to Ace Museum, a $100,000 wire transfer from a purchaser of artwork that was owned by or consigned to the Debtor that was wired to the account to Ace Museum upon the specific written instructions of Chrismas, and a $114,000 payment by an art purchaser who acquired art that was owned by or consigned to the Debtor's estate and who was instructed by Chrismas to pay such funds directly to 400 S. La Brea, LLC.

53.     On April 25, 2016, Chrismas, through his counsel, acknowledged the impropriety of the Late March Diversions and undertook to repay such funds to the Debtor no later than May 20, 2016.  As of the date of this Complaint, such funds have not been repaid, and through his counsel Chrismas has recently and alternately proposed a monthly payment of $75,000 earmarked for specific use.

54.     The above descriptions of unauthorized transfers of assets of the estate, and outright conversion of estate property, are examples of the converted property of the estate that was appropriated from the Debtor during the Post-Petition Analysis Period, and is not a complete list.  The Plan Agent's forensic accounting investigation is continuing and is expected to reveal further examples of unauthorized transfers and conversion of estate property.

**CONFIRMATION OF THE COMMITTEE'S PLAN OF REORGANIZATION, AND APPOINTMENT OF THE PLAN AGENT**

55.     On March 18, 2016, this Court confirmed the Committee's Plan, which provides for the appointment of the Plan Agent on the Effective Date.  The Plan became effective on the Effective Date, and the Plan Agent has carried out his duties under the Plan ever since.

**FIRST CLAIM FOR RELIEF**

**(For Avoidance of Transfers Under 11 U.S.C. § 544 and Cal. Civil Code § 3439.04(a)(1)**

**(Against Defendant ACE NYC)**

56.     Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 55 above, inclusive, as though set forth in full.

57.     Plaintiff is informed and believes, and based thereon alleges, each of the ACE NYC Pre-Petition Transfers was made by the Debtor within four years before the Petition Date with actual intent to hinder, delay, or defraud creditors of the Debtor in that, among other things: (a) ACE NYC is an insider of the Debtor and, in this respect, the ACE NYC Pre-Petition Transfers were made to or for the benefit of an insider of the Debtor; (b) given the common ownership and directorship of the Debtor and ACE NYC, and given Chrismas's position within the Debtor and ACE NYC, the Debtor retained possession or control of the funds or property transferred after the ACE NYC Pre-Petition Transfers were made; (c) before one or more of the ACE NYC Pre-Petition Transfers, the Debtor had been sued or threatened with suit as indicated in the SOFA; (d) the Debtor received no or less than reasonably equivalent value in exchange for the ACE NYC Pre-Petition Transfers; (e) the Debtor was insolvent or became insolvent shortly after or as a result of the ACE NYC Pre-Petition Transfers; and (f) the Transfers occurred shortly before or shortly after the Debtor incurred a substantial debt.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    58.    Interest on each of the ACE NYC Pre-Petition Transfers has accrued, and continues

2    to accrue, from the date of each such transfer.

3    59.    Plaintiff is entitled to an order and/or judgment that each of the ACE NYC Pre-

4    Petition Transfers is avoided and/or providing any other remedy available under applicable law.

5    **SECOND CLAIM FOR RELIEF**

6    **(For Avoidance of Transfers Under 11 U.S.C. § 544 and Cal. Civil Code § 3439.04(a)(2))**

7    **(against Defendant ACE NYC)**

8    60.    Plaintiff realleges and incorporates herein by this reference each and every

9    allegation contained in paragraphs 1 through 59 above, inclusive, as though set forth in full.

10    61.    Plaintiff is informed and believes, and based thereon alleges, that in exchange for

11    each of the ACE NYC Pre-Petition Transfers, the Debtor received no value, or less than

12    reasonably equivalent, value.

13    62.    Plaintiff is informed and believes, and based thereon alleges, that, at the time of

14    each of the ACE NYC Pre-Petition Transfers: (a) the Debtor was engaged or was about to engage

15    in a business or transaction for which the remaining assets of the Debtor were unreasonably small

16    in relation to the business or transaction; and/or (b) the Debtor intended to incur, or believed or

17    reasonably should have believed that it would incur, debts beyond its ability to pay as they became

18    due.

19    63.    Interest on each of the ACE NYC Pre-Petition Transfers has accrued, and continues

20    to accrue, from the date of each such transfer.

21    64.    Plaintiff is entitled to an order and/or judgment that each of the ACE NYC Pre-

22    Petition Transfers is avoided and/or providing any other remedy available under applicable law.

23    **THIRD CLAIM FOR RELIEF**

24    **(For Avoidance of Transfer Under 11 U.S.C. § 544 and Cal. Civil Code § 3439.05)**

25    **(against Defendant ACE NYC)**

26    65.    Plaintiff realleges and incorporates herein by this reference each and every

27    allegation contained in paragraphs 1 through 64, above, inclusive, as though set forth in full.

28    66.    Plaintiff is informed and believes, and based thereon alleges, that the Debtor was

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    insolvent at the time of each of the ACE NYC Pre-Petition Transfers or became insolvent as a

2    result of each of the ACE NYC Pre-Petition Transfers.

3        67.    Plaintiff is informed and believes, and based thereon alleges, that in exchange for

4    each of the ACE NYC Pre-Petition Transfers, the Debtor received no value, or less than

5    reasonably equivalent, value.

6        68.    Interest on each of the ACE NYC Pre-Petition Transfers has accrued, and continues

7    to accrue, from the date of each such transfer.

8        69.    Plaintiff is entitled to an order and/or judgment that each of the ACE NYC Pre-

9    Petition Transfers is avoided and/or providing any other remedy available under applicable law.

10    **FOURTH CLAIM FOR RELIEF**

11    **(For Avoidance of Transfer Under 11 U.S.C. § 548(a)(1)(A))**

12    **(against Defendant ACE NYC)**

13        70.    Plaintiff realleges and incorporates herein by this reference each and every

14    allegation contained in paragraphs 1 through 69, above, inclusive, as though set forth in full.

15        71.    Plaintiff is informed and believes, and based thereon alleges, that at least one or

16    more of the ACE NYC Pre-Petition Transfers occurred within two years prior to the Petition Date.

17        72.    Plaintiff is informed and believes, and based thereon alleges, that the Debtor made,

18    or Chrismas caused the Debtor to make, the ACE NYC Pre-Petition Transfers with the actual

19    intent to hinder, delay, or defraud any entity to which the Debtor was or became, on or after the

20    date that such transfer was made or such obligation was incurred, indebted.

21        73.    Interest on each of the ACE NYC Pre-Petition Transfers has accrued, and continues

22    to accrue, from the date of each such transfer.

23        74.    Plaintiff is entitled to an order and/or judgment that each of the ACE NYC Pre-

24    Petition Transfers is avoided and/or providing any other remedy available under applicable law.

25    **FIFTH CLAIM FOR RELIEF**

26    **(For Avoidance of Transfer Under 11 U.S.C. § 548(a)(1)(B))**

27    **(against Defendant ACE NYC)**

28        75.    Plaintiff realleges and incorporates herein by this reference each and every

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   allegation contained in paragraphs 1 through 74, above, inclusive, as though set forth in full.

2        76.    Plaintiff is informed and believes, and based thereon alleges, that at least one or

3   more of the ACE NYC Pre-Petition Transfers occurred within two years prior to the Petition Date.

4        77.    Plaintiff is informed and believes, and based thereon alleges, that in exchange for

5   each of the OLD ACE NYC Pre-Petition Transfers, the Debtor received no value, or less than

6   reasonably equivalent, value.

7        78.    Plaintiff is informed and believes, and based thereon alleges, that, at the time of

8   each of the ACE NYC Pre-Petition Transfers, the Debtor: (a) was insolvent or became insolvent as

9   a result of each of the ACE NYC Pre-Petition Transfers; (b) was engaged in business or a

10  transaction, or was about to engage in business or a transaction, for which any property remaining

11  with the Debtor was an unreasonably small capital; and/or (c) intended to incur, or believed that it

12  would incur, debts that would be beyond its ability to pay as such debts matured.

13       79.    Interest on each of the ACE NYC Pre-Petition Transfers has accrued, and continues

14  to accrue, from the date of each such transfer.

15       80.    Plaintiff is entitled to an order and/or judgment that each of the ACE NYC Pre-

16  Petition Transfers is avoided and/or providing any other remedy available under applicable law.

17                          **SIXTH CLAIM FOR RELIEF**

18          **(For Avoidance of Preferential Transfer Under 11 U.S.C. § 547)**

19                      **(against Defendant ACE NYC)**

20       81.    Plaintiff realleges and incorporates herein by this reference each and every

21  allegation contained in paragraphs 1 through 80, above, inclusive, as though set forth in full.

22       82.    Plaintiff is informed and believes, and based thereon alleges, that at least one or

23  more of the ACE NYC Pre-Petition Transfers occurred within one year prior to the Petition Date

24  (the "1-year ACE NYC Transfers"), and of those 1-year ACE NYC Transfers, certain were made

25  within 90 days prior to the Petition Date (the "90-Day ACE NYC Transfers").

26       83.    Plaintiff is informed and believes, and based thereon alleges, that each of the One-

27  Year ACE NYC Transfers and 90-Day ACE NYC Transfers (each, an "ACE NYC Preferential

28  Transfer," and together, the "ACE NYC Preferential Transfers"), was made to or for the benefit of

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    a creditor.

2        84.    Plaintiff is informed and believes, and based thereon alleges, that each of the ACE

3    NYC Preferential Transfers was made on account of an antecedent debt owed by the Debtor

4    before such transfer was made.

5        85.    Plaintiff is informed and believes, and based thereon alleges, that each of the ACE

6    NYC Preferential Transfers was made while the Debtor was insolvent.

7        86.    Plaintiff is informed and believes, and based thereon alleges, that each of the ACE

8    NYC Preferential Transfers enabled Defendants to receive more than they would receive if this

9    case were a case under chapter 7 of the Bankruptcy Code, the transfer had not been made, and they

10    received payment on their debt to the extent provided by the Bankruptcy Code.

11        87.    Interest on each such ACE NYC Preferential Transfer has accrued, and continues to

12    accrue, from the date of each such transfer.

13        88.    Plaintiff is entitled to an order and/or judgment that each such ACE NYC

14    Preferential Transfer is avoided and/or providing any other remedy available under applicable law.

15                    **SEVENTH CLAIM FOR RELIEF**

16                **(For Recovery of Transfer Under 11 U.S.C. § 550)**

17        **(against Defendants ACE NYC, OLD ACE NYC, Chrismas, Ace Museum)**

18        89.    Plaintiff realleges and incorporates herein by this reference each and every

19    allegation contained in paragraphs 1 through 88 above, inclusive, as though set forth in full.

20        90.    Plaintiff is informed and believes, and based thereon alleges, that either ACE NYC,

21    OLD ACE NYC, Chrismas, and/or Ace Museum (the "ACE NYC Pre-Petition Transferees") was

22    the initial transferee, the party for whose benefit such transfers were made, or the immediate or

23    mediate transferee, of each of the ACE NYC Pre-Petition Transfers and each of the ACE NYC

24    Preferential Transfers (collectively, the "ACE NYC Avoidable Transfers").

25        91.    Each of the ACE NYC Pre-Petition Transferees were on notice at the time that any

26    or each of them received any ACE NYC Avoidable Transfers, such as where transfers of funds

27    due to the Debtor were instead paid directly to an ACE NYC Pre-Petition Transferee by a third

28    party on account of a debt owed by a party other than the Debtor, and therefore none of the ACE

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  NYC Avoidable Transfers were received by the ACE NYC Pre-Petition Transferees in good faith.

2  92.      Plaintiff is entitled to an order and/or judgment against each of the ACE NYC Pre-

3  Petition Transferees for the recovery of each of the ACE NYC Avoidable Transfers for which any

4  of them were the initial transferee, the party for whose benefit such transfers were made, or the

5  immediate or mediate transferee, together with interest at the applicable rate from the date of each

6  such transfer.

7  <div align="center">**EIGHTH CLAIM FOR RELIEF**</div>

8  <div align="center">**(For Preservation of Transfer Under 11 U.S.C. § 551)**</div>

9  <div align="center">**(against Defendants ACE NYC, OLD ACE NYC, Chrismas, Ace Museum)**</div>

10  93.      Plaintiff realleges and incorporates herein by this reference each and every

11  allegation contained in paragraphs 1 through 92 above, inclusive, as though set forth in full.

12  94.      Plaintiff is entitled to an order and/or judgment preserving each of the ACE NYC

13  Avoidable Transfers for the benefit of the Estate.

14  <div align="center">**NINTH CLAIM FOR RELIEF**</div>

15  <div align="center">**(For Avoidance of Post-Petition Transfers Under 11 U.S.C. § 549)**</div>

16  <div align="center">**(against ACE NYC and OLD ACE NYC)**</div>

17  95.      Plaintiff realleges and incorporates herein by this reference each and every

18  allegations contained in paragraphs 1 through 94 above, inclusive, as though set forth in full.

19  96.      Plaintiff is informed and believes, and based thereon alleges, that subsequent to the

20  Petition Date, and prior to the Effective Date, Chrismas caused the Debtor and ACE NYC to carry

21  out the Unauthorized ACE NYC Transfers and to misappropriate the Converted Proceeds and

22  Cochran Converted Property, in violation of 11 U.S.C. §549 (collectively, including any further

23  unauthorized post-petition transfers to or for the benefit of ACE NYC or OLD ACE NYC that

24  have not yet been uncovered in the Plan Agent's investigation, the "ACE NYC Avoidable Post-

25  Petition Transfers").

26  97.      The ACE NYC Avoidable Post-Petition Transfers were not authorized by the

27  Bankruptcy Court or by any provision of Title 11 of the U.S. Code.

28  98.      Chrismas, with the assistance of Holst and others, actively concealed the ACE

1  NYC Avoidable Post-Petition Transfers from the Bankruptcy Court, the Committee, and others.

2  99.    Plaintiff is entitled to an order and/or judgment avoiding the ACE NYC Avoidable

3  Post-Petition Transfers, and is entitled to recovery of the value of the property transferred to or for

4  the benefit of ACE NYC, together with interest at the applicable rate.

5  **TENTH CLAIM FOR RELIEF**

6  **(For Recovery of Transfer Under 11 U.S.C. § 550)**

7  **(against ACE NYC, OLD ACE NYC, Chrismas, Ace Museum)**

8  100.    Plaintiff realleges and incorporates herein by this reference each and every

9  allegation contained in paragraphs 1 through 99 above, inclusive, as though set forth in full.

10  101.    Plaintiff is informed and believes, and based thereon alleges, that either ACE NYC,

11  OLD ACE NYC, Chrismas, and/or Ace Museum(the "ACE NYC Post-Petition Transferees") was

12  the initial transferee, the party for whose benefit such transfers were made, or the immediate or

13  mediate transferee, of each of the ACE NYC Avoidable Post-Petition Transfers.

14  102.    Each of the ACE NYC Post-Petition Transferees were on notice at the time that any

15  or each of them received any ACE NYC Avoidable Post-Petition Transfers, such as where

16  transfers of funds due to the Debtor were instead paid directly to a ACE NYC Post-Petition

17  Transferee by a third party on account of a debt owed by a party other than the Debtor, and

18  therefore none of the ACE NYC Avoidable Post-Petition Transfers were received by the ACE

19  NYC Post-Petition Transferees in good faith.

20  103.    Plaintiff is entitled to an order and/or judgment against each of the ACE NYC Post-

21  Petition Transferees for the recovery of each of the ACE NYC Avoidable Post-Petition Transfers

22  for which any of them were the initial transferee, the party for whose benefit such transfers were

23  made, or the immediate or mediate transferee, together with interest at the applicable rate from the

24  date of each such transfer.

25  **ELEVENTH CLAIM FOR RELIEF**

26  **(For Preservation of Transfer Under 11 U.S.C. § 551)**

27  **(against ACE NYC, OLD ACE NYC, Chrismas, Ace Museum)**

28  104.    Plaintiff realleges and incorporates herein by this reference each and every

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL  213.626.2311 • FAX  213.629.4520

1    allegation contained in paragraphs 1 through 103 above, inclusive, as though set forth in full.

2        105.    Plaintiff is entitled to an order and/or judgment preserving each of the ACE NYC

3    Avoidable Post-Petition Transfers for the benefit of the Estate.

4                        **TWELFTH CLAIM FOR RELIEF**

5            **(For Avoidance of Post-Petition Transfers Under 11 U.S.C. § 549)**

6                            **(against Chrismas)**

7        106.    Plaintiff realleges and incorporates herein by this reference each and every

8    allegations contained in paragraphs 1 through 105 above, inclusive, as though set forth in full.

9        107.    Plaintiff is informed and believes, and based thereon alleges, that subsequent to the

10   Petition Date, and prior to the Effective Date, Chrismas carried out a series of extensive post-

11   petition transfers to or for the benefit of Chrismas, including but not limited to, the conversion of

12   the Cochran Converted Property, conversion of the Converted Proceeds, the Chrismas Diversions

13   and the Attorney Diversions (collectively, including any further unauthorized post-petition

14   transfers to or for the benefit of Chrismas that have not yet been uncovered in the Plan Agent's

15   investigation, the "Unauthorized Chrismas Post-Petition Transfers").

16       108.    The Unauthorized Chrismas Post-Petition Transfers were not authorized by the

17   Bankruptcy Court or by any provision of Title 11 of the U.S. Code.

18       109.    Chrismas, with the assistance of Holst and others, actively concealed the

19   Unauthorized Chrismas Post-Petition Transfers from the Bankruptcy Court, the Committee, and

20   others.

21       110.    Plaintiff is entitled to an order and/or judgment avoiding the Unauthorized

22   Chrismas Post-Petition Transfers, and is entitled to recovery of the value of the property

23   transferred to Chrismas, together with interest at the applicable rate.

24                       **THIRTEENTH CLAIM FOR RELIEF**

25               **(For Recovery of Transfer Under 11 U.S.C. § 550)**

26          **(against Chrismas, Ace Museum, OLD ACE NYC, ACE NYC)**

27       111.    Plaintiff realleges and incorporates herein by this reference each and every

28   allegation contained in paragraphs 1 through 110 above, inclusive, as though set forth in full.

112.    Plaintiff is informed and believes, and based thereon alleges, that either ACE NYC, OLD ACE NYC, Chrismas, and/or Ace Museum (the "Chrismas Post-Petition Transferees") was the initial transferee, the party for whose benefit such transfers were made, or the immediate or mediate transferee, of each of the Unauthorized Chrismas Post-Petition Transfers.

113.    Each of the Chrismas Post-Petition Transferees were on notice at the time that any or each of them received any Unauthorized Chrismas Post-Petition Transfers, such as where transfers of funds due to the Debtor were instead paid directly to a Chrismas Post-Petition Transferee by a third party on account of a debt owed by a party other than the Debtor, and therefore none of the Unauthorized Chrismas Post-Petition Transfers were received by the Chrismas Post-Petition Transferees in good faith.

114.    Plaintiff is entitled to an order and/or judgment against each of the Chrismas Post-Petition Transferees for the recovery of each of the Unauthorized Chrismas Post-Petition Transfers for which any of them were the initial transferee, the party for whose benefit such transfers were made, or the immediate or mediate transferee, together with interest at the applicable rate from the date of each such transfer.

## FOURTEENTH CLAIM FOR RELIEF

### (For Preservation of Transfer Under 11 U.S.C. § 551)

### (against Defendants Chrismas, OLD ACE NYC, ACE NYC, Ace Museum)

115.    Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 114 above, inclusive, as though set forth in full.

116.    Plaintiff is entitled to an order and/or judgment preserving each of the Unauthorized Chrismas Post-Petition Transfers for the benefit of the Estate.

## FIFTEENTH CLAIM FOR RELIEF

### (For Avoidance of Post-Petition Transfers Under 11 U.S.C. § 549)

### (against Ace Museum)

117.    Plaintiff realleges and incorporates herein by this reference each and every allegations contained in paragraphs 1 through 116 above, inclusive, as though set forth in full.

118.    Plaintiff is informed and believes, and based thereon alleges, that subsequent to the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  Petition Date, and prior to the Effective Date, Chrismas caused the Debtor to carry out a series of

2  extensive post-petition transfers to or for the benefit of Ace Museum including but not limited to,

3  the conversion of the Converted Proceeds, the Ace Museum Diversions and the Late March

4  Diversions (collectively, including any further unauthorized post-petition transfers to or for the

5  benefit of Ace Museum that may be discovered in the course of the Plan Agent's investigation, the

6  "Unauthorized Museum Post-Petition Transfers").

7        119.    The Unauthorized Museum Post-Petition Transfers were not authorized by the

8  Bankruptcy Court or by any provision of Title 11 of the U.S. Code.

9        120.    Chrismas, with the assistance of Holst and others, actively concealed the

10  Unauthorized Museum Post-Petition Transfers from the Bankruptcy Court, the Committee, and

11  others.

12        121.    Plaintiff is entitled to an order and/or judgment avoiding the Unauthorized Museum

13  Post-Petition Transfers, and is entitled to recovery of the value of the property transferred to Ace

14  Museum, together with interest at the applicable rate.

## SIXTEENTH CLAIM FOR RELIEF

### (For Recovery of Transfer Under 11 U.S.C. § 550)

**(against Defendants Ace Museum, Chrismas, OLD ACE NYC, ACE NYC)**

18        122.    Plaintiff realleges and incorporates herein by this reference each and every

19  allegation contained in paragraphs 1 through 121 above, inclusive, as though set forth in full.

20        123.    Plaintiff is informed and believes, and based thereon alleges, that either Ace

21  Museum, Chrismas, OLD ACE NYC, and/or ACE NYC (the "Museum Post-Petition

22  Transferees") was the initial transferee, the party for whose benefit such transfers were made, or

23  the immediate or mediate transferee, of each of the Unauthorized Museum Post-Petition Transfers.

24        124.    Each of the Museum Post-Petition Transferees were on notice at the time that any

25  or each of them received any Unauthorized Museum Post-Petition Transfers, such as where

26  transfers of funds due to the Debtor were instead paid directly to a Museum Post-Petition

27  Transferee by a third party on account of a debt owed by a party other than the Debtor, and

28  therefore none of the Unauthorized Museum Post-Petition Transfers were received by the Museum

1   Post-Petition Transferees in good faith.

2       125.   Plaintiff is entitled to an order and/or judgment against each of the Museum Post-

3 Petition Transferees for the recovery of each of the Unauthorized Museum Post-Petition Transfers

4 for which any of them were the initial transferee, the party for whose benefit such transfers were

5 made, or the immediate or mediate transferee, together with interest at the applicable rate from the

6 date of each such transfer.

### SEVENTEENTH CLAIM FOR RELIEF

### (For Preservation of Transfer Under 11 U.S.C. § 551)

### (against Defendants Ace Museum, Chrismas, OLD ACE NYC, ACE NYC)

10       126.   Plaintiff realleges and incorporates herein by this reference each and every

11 allegation contained in paragraphs 1 through 125 above, inclusive, as though set forth in full.

12       127.   Plaintiff is entitled to an order and/or judgment preserving each of the

13 Unauthorized Museum Post-Petition Transfers for the benefit of the Estate.

### EIGHTEENTH CLAIM FOR RELIEF

### (For Turnover of Property of the Estate Under 11 U.S.C. § 542)

### (against Defendants Christmas, ACE NYC, OLD ACE NYC and Ace Museum)

17       128.   Plaintiff realleges and incorporates herein by this reference each and every

18 allegation contained in paragraphs 1 through 127 above, inclusive, as though set forth in full.

19       129.   Plaintiff is informed and believes, and on that basis alleges, that each of Chrismas,

20 ACE NYC, OLD ACE NYC and/or Ace Museum (collectively, the "Turnover Defendants") are

21 presently in possession of funds and/or artworks, or other property, that is property of the Debtor's

22 chapter 11 estate pursuant to 11 U.S.C. § 541 (the "Estate Property").

23       130.   Plaintiff is entitled to a judgment against each of the Turnover Defendants ordering

24 that they turn over to the Plan Agent any and all Estate Property in their possession, along with an

25 accounting of such Estate Property.

### NINETEENTH CLAIM FOR RELIEF

### (For Conversion of Property of the Estate)

### (against Defendants Chrismas, Ace Museum, ACE NYC, OLD ACE NYC)

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

131.   Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 130 above, inclusive, as though set forth in full.

132.   Prior to the Petition Date, and throughout the Bankruptcy Case through to the Effective Date, defendants Chrismas, Ace Museum, ACE NYC and OLD ACE NYC (collectively, the "Conversion Defendants"), actively and wrongfully took possession of artworks and other property that were property of the Debtor's estate, and which total millions of dollars in value, including but not limited to the Converted Proceeds, the Cochran Converted Property, the Chrismas Diversions, and/or the Ace Museum Diversions (collectively, including any further acts of conversion that may be discovered in the course of the Plan Agent's investigation, the "Converted Property").

133.   The Conversion Defendants intentionally and substantially interfered with the Debtor's property by taking possession of the Converted Property and asserting an interest of ownership in the Converted Property, whether by concealing the Converted Property, transferring the Converted Property, and/or selling the Converted Property to third parties.

134.   At no time did the Plan Agent consent to the Conversion Defendants' conversion of the Converted Property.

135.   The Conversion Defendants converted the Converted Property without authorization of the Bankruptcy Court, and contrary to California law and federal bankruptcy law.

136.   The Debtor has been harmed by the Conversion Defendants' acts described herein in an amount to be proven at trial, and which the Plan Agent contends will be in the millions of dollars, and the Conversion Defendants' actions and conduct were a substantial and overwhelming factor in causing such harm to the Debtor.

137.   Plaintiff is entitled to a judgment against each of the Conversion Defendants in an amount to be proven at trial.

### **TWENTIETH CLAIM FOR RELIEF**

#### **(For Fraud)**

#### **(against Defendants Christmas and Holst)**

138.   Plaintiff realleges and incorporates herein by this reference each and every

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1   allegation contained in paragraphs 1 through 137 above, inclusive, as though set forth in full.

2   139.   Plaintiff is informed and believes, and on that basis alleges, that Chrismas and

3   Holst conspired to, and did, intentionally conceal each of the wrongful, illegal and/or unauthorized

4   transfers of property of the Debtor's estate prior to, or during, the Bankruptcy Case, by repeatedly

5   misrepresenting such transfers in the Debtor's books and records (the "Fraudulent Books and

6   Records").

7   140.   Plaintiff is informed and believes, and on that basis alleges, that Chrismas and

8   Holst each prepared the Fraudulent Books and Records with the intent to defraud the Debtor and

9   its creditors of substantial funds, in excess of $16 million, by concealing the many fraudulent

10  transactions and transfers carried out by Chrismas.

11  141.   Plaintiff is informed and believes, and on that basis alleges, that Chrismas and

12  Holst knew that the Fraudulent Books and Records contained massive and repetitive fraudulent

13  entries that were false, or acted with reckless disregard with respect to the trust or accuracy of the

14  Fraudulent Books and Records.

15  142.   Plaintiff is informed and believes, and on that basis alleges, that Chrismas and

16  Holst prepared the Fraudulent Books and Records with the belief and intent that parties would rely

17  on the alleged accuracy of the Fraudulent Books and Records, including the Debtor's bankruptcy

18  counsel, the Committee, and the Bankruptcy Court, all of whom reasonably relied on the

19  Fraudulent Books and Records.

20  143.   By their actions described herein, Chrismas and Holst have caused damage to the

21  Debtor in an amount to be proven at trial.

22  144.   Plaintiff is entitled to a judgment against each of Chrismas and Holst in an amount

23  to be proven at trial.

24  **TWENTY-FIRST CLAIM FOR RELIEF**

25  **(For Breach of Fiduciary Duty to Debtor)**

26  **(Against Defendants Chrismas and Holst)**

27  145.   Plaintiff realleges and incorporates herein by this reference each and every

28  allegation contained in paragraphs 1 through 143 above, inclusive, as though set forth in full.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

146.    Chrismas's position as an officer and director of the Debtor created and imposed upon him a fiduciary duty to the Debtor corporation such that Chrismas, among other things, was duty bound to act with the utmost good faith for the benefit of the Debtor.  Also inherent in Chrismas's relationship with the Debtor was the duty of undivided loyalty that Chrismas owed to the Debtor.

147.    Holst's position as the Debtor's Accountant created and imposed upon her a fiduciary duty to the Debtor corporation such that Holst, among other things, was duty bound to act with the utmost good faith for the benefit of the Debtor.  Also inherent in Holst's relationship with the Debtor was the duty of undivided loyalty that Holst owed to the Debtor.

148.    Plaintiff is informed and believes, and based thereon alleges, that Chrismas and Holst repeatedly, knowingly and intentionally, breached their respective fiduciary duties to the Debtor by engaging in, participating in, knowing of, and facilitating, the actions described in this Complaint, including but not limited to, the various avoidable pre-petition transfers of property of the Debtor to third parties, the various unauthorized post-petition transfers of property of the Debtor to third parties, the conversion of property of the Debtor's estate, and the preparation of the Fraudulent Books and Records.

149.    The actions and omissions of Chrismas and Holst that are described in this Complaint, in breach of their respective fiduciary duties to the Debtor, were: (i) harmful and detrimental to the Debtor, (ii) the cause of the Debtor's inability to make payments to AERC under the Mid-Wilshire Lease, (iii) the cause of the Debtor's loss of the Mid-Wilshire Lease and attendant rights, and (iv) not in good faith or in the best interests of the Debtor.

150.    Plaintiff is informed and believes, and based thereon alleges, that such actions and omissions of Chrismas and Holst do not represent actions performed with such care as an ordinarily prudent person in their respective positions would engage under similar circumstances. Plaintiff is further informed and believes, and based thereon alleges, that the foregoing was a breach of Chrismas's and Holst's respective fiduciary duties to the Debtor.

151.    As a direct and proximate result of Chrismas's and Holst's breaches of their respective fiduciary duties to the Debtor, the Debtor and, in turn, the Debtor's chapter 11 estate,

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 has suffered damages in the amount of no less than the full amount of outstanding claims of

2 secured and unsecured creditors that are or will be asserted against the Debtor's estate in the

3 Bankruptcy Case.

4      152.   Plaintiff is entitled to an order and/or judgment for compensatory and other

5 damages in favor of the Estate according to proof, and the value thereof, together with interest at

6 the applicable rate.

7 <center>**TWENTY-SECOND CLAIM FOR RELIEF**</center>

8 <center>**(For Breach of Duty to Debtor's Creditors/Dissipation of Corporate Assets)**</center>

9 <center>**(Against Chrismas)**</center>

10      153.   Plaintiff realleges and incorporates herein by this reference each and every

11 allegation contained in paragraphs 1 through 152 above, inclusive, as though set forth in full.

12      154.   Plaintiff is informed and believes, and based thereon alleges, that the wrongful,

13 illegal and or unauthorized transfers of property of the Debtor's estate that were carried out or

14 orchestrated by Chrismas – each made at a time when the Debtor was insolvent, or causing the

15 Debtor's insolvency – diverted, dissipated, or unduly risked corporate assets, or caused the

16 diversion, dissipation, or unduly risk to corporate assets, that could otherwise have been used to

17 pay claims of the Debtor's creditors.

18      155.   Plaintiff is informed and believes, and based thereon alleges, that as a direct and

19 proximate cause of Chrismas's actions alleged herein, the Debtor's creditors have not been paid on

20 account of their claims, and but for Chrismas's wrongful actions alleged herein, the Debtor's

21 creditors could have been paid on account of their claims (at least in substantial part).

22      156.   Plaintiff is entitled to an order and/or judgment against Chrismas for compensatory

23 and other damages in favor of the Estate according to proof.

24      **WHEREFORE**, Plaintiff respectfully prays for judgment as follows:

25      **ON THE FIRST CLAIM FOR RELIEF:**

26      1.   For an order and/or judgment avoiding the ACE NYC Pre-Petition Transfers;

27      **ON THE SECOND CLAIM FOR RELIEF:**

28      2.   For an order and/or judgment avoiding the ACE NYC Pre-Petition Transfers;

1  **ON THE THIRD CLAIM FOR RELIEF:**

2  3.    For an order and/or judgment avoiding the ACE NYC Pre-Petition Transfers;

3  **ON THE FOURTH CLAIM FOR RELIEF:**

4  4.    For an order and/or judgment avoiding the ACE NYC Pre-Petition Transfers;

5  **ON THE FIFTH CLAIM FOR RELIEF:**

6  5.    For an order and/or judgment avoiding the ACE NYC Pre-Petition Transfers;

7  **ON THE SIXTH CLAIM FOR RELIEF:**

8  6.    For an order and/or judgment avoiding the ACE NYC Preferential Transfers;

9  **ON THE SEVENTH CLAIM FOR RELIEF:**

10  7.    For an order and/or judgment for recovery of the ACE NYC Avoidable Transfers,

11  together with interest thereon;

12  **ON THE EIGHTH CLAIM FOR RELIEF:**

13  8.    For an order and/or judgment to preserve the ACE NYC Avoidable Transfers for

14  recovery;

15  **ON THE NINTH CLAIM FOR RELIEF:**

16  9.    For an order and/or judgment avoiding the ACE NYC Avoidable Post-Petition

17  Transfers;

18  **ON THE TENTH CLAIM FOR RELIEF:**

19  10.    For an order and/or judgment for recovery of the ACE NYC Avoidable Post-

20  Petition Transfers, together with interest thereon;

21  **ON THE ELEVENTH CLAIM FOR RELIEF:**

22  11.    For an order and/or judgment to preserve the ACE NYC Avoidable Post-Petition

23  Transfers for recovery;

24  **ON THE TWELFTH CLAIM FOR RELIEF:**

25  12.    For an order and/or judgment avoiding the Unauthorized Chrismas Post-Petition

26  Transfers;

27  **ON THE THIRTEENTH CLAIM FOR RELIEF:**

28  13.    For an order and/or judgment for recovery of the Unauthorized Chrismas Post-

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  Petition Transfers, together with interest thereon;

2  **ON THE FOURTEENTH CLAIM FOR RELIEF:**

3  14.  For an order and/or judgment to preserve the Unauthorized Chrismas Post-Petition

4  Transfers for recovery;

5  **ON THE FIFTEENTH CLAIM FOR RELIEF:**

6  15.  For an order and/or judgment avoiding the Unauthorized Museum Post-Petition

7  Transfers;

8  **ON THE SIXTEENTH CLAIM FOR RELIEF:**

9  16.  For an order and/or judgment for recovery of the Unauthorized Museum Post-

10 Petition Transfers, together with interest thereon;

11 **ON THE SEVENTEENTH CLAIM FOR RELIEF:**

12 17.  For an order and/or judgment to preserve the Unauthorized Museum Post-Petition

13 Transfers for recovery;

14 **ON THE EIGHTEENTH CLAIM FOR RELIEF:**

15 18.  For an order and/or judgment ordering turnover of Estate Property;

16 **ON THE NINETEENTH CLAIM FOR RELIEF:**

17 19.  For an order and/or judgment awarding the Debtor damages in an amount

18 according to proof for the conversion of the Converted Property;

19 **ON THE TWENTIETH CLAIM FOR RELIEF:**

20 20.  For an order and/or judgment awarding the Debtor damages in an amount

21 according to proof for the fraud of Defendants Chrismas and Holst;

22 **ON THE TWENTY-FIRST CLAIM FOR RELIEF:**

23 21.  For an order and/or judgment awarding the Debtor damages in an amount

24 according to proof for Chrismas's and Holst's respective breaches of fiduciary duties owed to the

25 Debtor.

26 **ON THE TWENTY-SECOND CLAIM FOR RELIEF:**

27 22.  For an order and/or judgment awarding the Debtor damages in an amount

28 according to proof for Chrismas's breach of duties to the Debtors' creditors and dissipation of

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1    corporate assets.

2

3    DATED:  June 19, 2016                    **Sulmeyer**Kupetz
                                             A Professional Corporation
4

5

6                                            By:    _*Victor A. Sahn*_____
                                                   Victor A. Sahn
7                                                  Attorneys for Sam Leslie, Plan Agent

8

9

10   DATED:  June 19, 2016                    Law Offices of Carolyn A. Dye

11

12

13                                           By:    _*/s/ Carolyn A. Dye*_____
                                                   Carolyn A. Dye
14                                                 Attorneys for Sam Leslie, Plan Agent

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

# EXHIBIT 1

**ACE GALLERY NEW YORK CORPORATION**
**ACE GALLERY NEW YORK, INC.**
**Case Number: 2:13-bk-14135-RK**
CASH FROM FROM FEBRUARY 2013 THROUGH FEBRUARY 2016

| TRANSFERS TO ACE MUSEUM | | From Museum | To Museum |
|---|---|---|---|
| 02/22/13 | ACE MUSEUM | 10,000.00 | |
| 03/07/13 | ACE MUSEUM | 5,500.00 | |
| 03/07/13 | ACE MUSEUM | | 7,500.00 |
| 03/11/13 | ACE MUSEUM | | 135,000.00 |
| 03/20/13 | ACE MUSEUM | | 3,000.00 |
| 03/25/13 | ACE MUSEUM | | 84,000.00 |
| 04/01/13 | ACE MUSEUM | 1,000.00 | |
| 04/02/13 | ACE MUSEUM | 9,000.00 | |
| 04/02/13 | ACE MUSEUM | | 1,000.00 |
| 04/05/13 | ACE MUSEUM | 11,000.00 | |
| 04/09/13 | ACE MUSEUM | 3,000.00 | |
| 04/10/13 | ACE MUSEUM | 2,500.00 | |
| 04/17/13 | ACE MUSEUM | | 33,000.00 |
| 04/18/13 | ACE MUSEUM | | 3,500.00 |
| 05/03/13 | ACE MUSEUM | 6,000.00 | |
| 05/09/13 | ACE MUSEUM | 1,000.00 | |
| 05/09/13 | ACE MUSEUM | 500.00 | |
| 05/13/13 | ACE MUSEUM | 1,700.00 | |
| 05/20/13 | ACE MUSEUM | 1,800.00 | |
| 05/21/13 | ACE MUSEUM | | 140,000.00 |
| 05/31/13 | ACE MUSEUM | 8,000.00 | |
| 06/06/13 | ACE MUSEUM | | 150,000.00 |
| 06/20/13 | ACE MUSEUM | 2,400.00 | |
| 07/05/13 | ACE MUSEUM | | 145,000.00 |
| 07/08/13 | ACE MUSEUM | | 40,000.00 |
| 07/22/13 | ACE MUSEUM | | 15,500.00 |
| 07/25/13 | ACE MUSEUM | | 25,000.00 |
| 08/06/13 | ACE MUSEUM | | 165,000.00 |
| 08/21/13 | ACE MUSEUM | 2,000.00 | |
| 09/12/13 | ACE MUSEUM | 4,000.00 | |
| 09/17/13 | ACE MUSEUM | | 65,000.00 |
| 09/17/13 | ACE MUSEUM | | 165,000.00 |
| 09/18/13 | ACE MUSEUM | | 1,000.00 |
| 10/01/13 | ACE MUSEUM | 4,000.00 | |
| 10/17/13 | ACE MUSEUM | | 535.00 |
| 10/22/13 | ACE MUSEUM | | 66,000.00 |

00046

**ACE GALLERY NEW YORK CORPORATION**
**ACE GALLERY NEW YORK, INC.**
**Case Number: 2:13-bk-14135-RK**
CASH FROM FROM FEBRUARY 2013 THROUGH FEBRUARY 2016

| Date | Payee | Amount | Amount |
|---|---|---:|---:|
| 11/01/13 | ACE MUSEUM | 30,000.00 | |
| 11/14/13 | ACE MUSEUM | 15,000.00 | |
| 11/21/13 | ACE MUSEUM | | 5,000.00 |
| 11/25/13 | ACE MUSEUM | | 165,000.00 |
| 11/26/13 | ACE MUSEUM | | 7,500.00 |
| 12/02/13 | ACE MUSEUM | | 1,700.00 |
| 12/03/13 | ACE MUSEUM | | 85,000.00 |
| 12/04/13 | ACE MUSEUM | | 3,687.02 |
| 12/13/13 | ACE MUSEUM | | 7,000.00 |
| 12/13/13 | ACE MUSEUM | | 224,000.00 |
| 12/19/13 | ACE MUSEUM | | 25,500.00 |
| 12/20/13 | ACE MUSEUM | | 4,000.00 |
| 01/17/14 | ACE MUSEUM | | 500.00 |
| 01/17/14 | ACE MUSEUM | | 165,000.00 |
| 02/12/14 | ACE MUSEUM | 4,500.00 | |
| 02/18/14 | ACE MUSEUM | | 10,000.00 |
| 02/19/14 | ACE MUSEUM | | 3,125.00 |
| 02/19/14 | ACE MUSEUM | | 170,000.00 |
| 02/27/14 | ACE MUSEUM | 3,500.00 | |
| 03/06/14 | ACE MUSEUM | 5,000.00 | |
| 03/12/14 | ACE MUSEUM | | 3,000.00 |
| 03/14/14 | ACE MUSEUM | 2,200.00 | |
| 03/24/14 | ACE MUSEUM | | 15,800.00 |
| 04/01/14 | ACE MUSEUM | 2,000.00 | |
| 04/03/14 | ACE MUSEUM | 12,000.00 | |
| 04/10/14 | ACE MUSEUM | 1,000.00 | |
| 04/24/14 | ACE MUSEUM | 100.00 | |
| 04/24/14 | ACE MUSEUM | 150.00 | |
| 04/29/14 | ACE MUSEUM | 5,000.00 | |
| 05/06/14 | ACE MUSEUM | 5,000.00 | |
| 05/08/14 | ACE MUSEUM | 39,000.00 | |
| 05/09/14 | ACE MUSEUM | 500.00 | |
| 05/12/14 | ACE MUSEUM | 85,150.00 | |
| 05/14/14 | ACE MUSEUM | 75,000.00 | |
| 05/16/14 | ACE MUSEUM | 1,700.00 | |
| 05/28/14 | ACE MUSEUM | | 216,900.00 |
| 06/02/14 | ACE MUSEUM | 1,000.00 | |
| 06/02/14 | ACE MUSEUM | 9,400.00 | |
| 06/02/14 | ACE MUSEUM | 38,000.00 | |
| 06/17/14 | ACE MUSEUM | | 153,000.00 |

**ACE GALLERY NEW YORK CORPORATION**
**ACE GALLERY NEW YORK, INC.**
**Case Number: 2:13-bk-14135-RK**
CASH FROM FROM FEBRUARY 2013 THROUGH FEBRUARY 2016

| Date | Payee | Amount | Amount |
|---|---|---|---|
| 06/18/14 | ACE MUSEUM | 1,050.00 | |
| 06/18/14 | ACE MUSEUM | | 1,550.00 |
| 06/24/14 | ACE MUSEUM | 70.00 | |
| 07/14/14 | ACE MUSEUM | 3,000.00 | |
| 07/25/14 | ACE MUSEUM | | 5,000.00 |
| 07/25/14 | ACE MUSEUM | | 100,000.00 |
| 08/21/14 | ACE MUSEUM | | 24,000.00 |
| 08/28/14 | ACE MUSEUM | 18,000.00 | |
| 09/02/14 | ACE MUSEUM | 2,500.00 | |
| 09/04/14 | ACE MUSEUM | 650.00 | |
| 09/05/14 | ACE MUSEUM | 200.00 | |
| 09/08/14 | ACE MUSEUM | 800.00 | |
| 09/09/14 | ACE MUSEUM | 500.00 | |
| 09/10/14 | ACE MUSEUM | 100.00 | |
| 09/12/14 | ACE MUSEUM | 3,300.00 | |
| 09/22/14 | ACE MUSEUM | | 226,300.00 |
| 09/25/14 | ACE MUSEUM | | 7,300.00 |
| 09/26/14 | ACE MUSEUM | | 40,000.00 |
| 09/29/14 | ACE MUSEUM | | 20,000.00 |
| 10/01/14 | ACE MUSEUM | 4,200.00 | |
| 10/06/14 | ACE MUSEUM | 16,000.00 | |
| 10/16/14 | ACE MUSEUM | 200.00 | |
| 10/20/14 | ACE MUSEUM | | 500.00 |
| 10/21/14 | ACE MUSEUM | | 17,000.00 |
| 10/22/14 | ACE MUSEUM | | 1,200.00 |
| 10/27/14 | ACE MUSEUM | | 10.00 |
| 10/27/14 | ACE MUSEUM | | 350.00 |
| 10/28/14 | ACE MUSEUM | | 10.00 |
| 11/04/14 | ACE MUSEUM | 30.00 | |
| 11/04/14 | ACE MUSEUM | 300.00 | |
| 11/10/14 | ACE MUSEUM | 160.00 | |
| 11/12/14 | ACE MUSEUM | | 300.00 |
| 11/19/14 | ACE MUSEUM | 60.00 | |
| 11/21/14 | ACE MUSEUM | 1,000.00 | |
| 11/21/14 | ACE MUSEUM | 2,260.00 | |
| 12/04/14 | ACE MUSEUM | | 4,500.00 |
| 12/08/14 | ACE MUSEUM | 30.00 | |
| 12/08/14 | ACE MUSEUM | 50.00 | |
| 12/10/14 | ACE MUSEUM | 100.00 | |
| 12/12/14 | ACE MUSEUM | 550.00 | |

00048

**ACE GALLERY NEW YORK CORPORATION**
**ACE GALLERY NEW YORK, INC.**
**Case Number: 2:13-bk-14135-RK**
CASH FROM FROM FEBRUARY 2013 THROUGH FEBRUARY 2016

| | | | |
|---|---|---|---|
| 12/12/14 | ACE MUSEUM | 3,500.00 | |
| 12/15/14 | ACE MUSEUM | 200.00 | |
| 12/23/14 | ACE MUSEUM | 7,200.00 | |
| 12/23/14 | ACE MUSEUM | | 1,400.00 |
| 01/02/15 | ACE MUSEUM | 900.00 | |
| 01/02/15 | ACE MUSEUM | | - |
| 01/02/15 | ACE MUSEUM | | 500.00 |
| 01/02/15 | ACE MUSEUM | | 500.00 |
| 01/06/15 | ACE MUSEUM | | 2,000.00 |
| 01/06/15 | ACE MUSEUM | | 2,600.00 |
| 01/08/15 | ACE MUSEUM | 800.00 | |
| 01/09/15 | ACE MUSEUM | 230.00 | |
| 01/12/15 | ACE MUSEUM | 200.00 | |
| 01/15/15 | ACE MUSEUM | 15.00 | |
| 01/16/15 | ACE MUSEUM | | 15,000.00 |
| 01/16/15 | ACE MUSEUM | | 173,000.00 |
| 01/21/15 | ACE MUSEUM | | 70,000.00 |
| 02/03/15 | ACE MUSEUM | 10,000.00 | |
| 02/05/15 | ACE MUSEUM | 7,250.00 | |
| 02/12/15 | ACE MUSEUM | 30,000.00 | |
| 02/18/15 | ACE MUSEUM | | 100,000.00 |
| 02/19/15 | ACE MUSEUM | | 10,000.00 |
| 02/26/15 | ACE MUSEUM | | 3,000.00 |
| 03/09/15 | ACE MUSEUM | 50.00 | |
| 03/09/15 | ACE MUSEUM | 29,700.00 | |
| 03/10/15 | ACE MUSEUM | 200.00 | |
| 03/11/15 | ACE MUSEUM | 250.00 | |
| 03/11/15 | ACE MUSEUM | 260.00 | |
| 03/19/15 | ACE MUSEUM | | 5,000.00 |
| 03/19/15 | ACE MUSEUM | | 228,000.00 |
| 03/30/15 | ACE MUSEUM | 5,000.00 | |
| 03/31/15 | ACE MUSEUM | 100.00 | |
| 03/31/15 | ACE MUSEUM | 2,600.00 | |
| 04/24/15 | ACE MUSEUM | | 229,000.00 |
| 05/05/15 | ACE MUSEUM | 5,000.00 | |
| 05/05/15 | ACE MUSEUM | 10,000.00 | |
| 05/06/15 | ACE MUSEUM | 1,000.00 | |
| 05/14/15 | ACE MUSEUM | 3,000.00 | |
| 05/18/15 | ACE MUSEUM | | 160,000.00 |
| 05/21/15 | ACE MUSEUM | | 66,600.00 |

**ACE GALLERY NEW YORK CORPORATION**
**ACE GALLERY NEW YORK, INC.**
**Case Number: 2:13-bk-14135-RK**
CASH FROM FROM FEBRUARY 2013 THROUGH FEBRUARY 2016

| Date | Entity | Amount 1 | Amount 2 |
|---|---|---|---|
| 05/22/15 | ACE MUSEUM | 800.00 | |
| 06/08/15 | ACE MUSEUM | 6,000.00 | |
| 06/29/15 | ACE MUSEUM | 5,000.00 | |
| 07/01/15 | ACE MUSEUM | 5,000.00 | |
| 07/03/15 | ACE MUSEUM | 16,000.00 | |
| 07/21/15 | ACE MUSEUM | | 150,000.00 |
| 07/23/15 | ACE MUSEUM | | 2,000.00 |
| 07/29/15 | ACE MUSEUM | | 40,000.00 |
| 08/03/15 | ACE MUSEUM | | 14,180.00 |
| 08/06/15 | ACE MUSEUM | 33,000.00 | |
| 08/20/15 | ACE MUSEUM | 600.00 | |
| 08/20/15 | ACE MUSEUM | 1,000.00 | |
| 09/02/15 | ACE MUSEUM | 2,000.00 | |
| 09/02/15 | ACE MUSEUM | 30,000.00 | |
| 09/23/15 | ACE MUSEUM | 300.00 | |
| 09/29/15 | ACE MUSEUM | 200.00 | |
| 09/30/15 | ACE MUSEUM | | 234,000.00 |
| 10/01/15 | ACE MUSEUM | 600.00 | |
| 10/02/15 | ACE MUSEUM | 2,500.00 | |
| 10/05/15 | ACE MUSEUM | | 200,000.00 |
| 10/19/15 | ACE MUSEUM | | 26,000.00 |
| 10/26/15 | ACE MUSEUM | | 3,000.00 |
| 11/04/15 | ACE MUSEUM | | 190,000.00 |
| 12/14/15 | ACE MUSEUM | | 112,000.00 |
| 01/14/16 | ACE MUSEUM | | 26,000.00 |
| 01/25/16 | ACE MUSEUM | | 60,000.00 |
| 01/29/16 | ACE MUSEUM | | 170,000.00 |
| Total Transfers | | 684,165.00 | 5,252,547.02 |
| NET TRANSFERS TO ACE MUSEUM | | | 4,568,382.02 |

00050

**ACE GALLERY NEW YORK CORPORATION**
**ACE GALLERY NEW YORK, INC.**
**Case Number: 2:13-bk-14135-RK**
CASH FROM FROM FEBRUARY 2013 THROUGH FEBRUARY 2016

| TRANSFERS TO ACE GALLERY NEW YORK, INC. | From AGNYI | To AGNYI |
|---|---|---|
| 11/19/15    ACE GALLERY NEW YORK, INC | | 160,000.00 |
| TOTAL TRANSFERS TO ACE GALLERY NEW YORK, INC. | | 160,000.00 |