1  Victor A. Sahn (CA Bar No. 97299)
     vsahn@sulmeyerlaw.com
2  David J. Richardson (CA Bar No. 168592)
     drichardson@sulmeyerlaw.com
3  Asa S. Hami (CA Bar No. 210728)
     ahami@sulmeyerlaw.com
4  **Sulmeyer**Kupetz
   A Professional Corporation
5  333 South Grand Avenue, Suite 3400
   Los Angeles, California 90071-1406
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520

7

8  Carolyn A. Dye (CA Bar No. 97527)
   Law Offices of Carolyn A. Dye
   3435 Wilshire Boulevard, Suite 990
9  Los Angeles, CA 90010
   Telephone: 213-368-5000
10 Facsimile: 213-368-5009

11 Attorneys for Sam S. Leslie, Plan Agent

12                **UNITED STATES BANKRUPTCY COURT**

13         **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

14 In re                                    Case No. 2:13-bk-14135-RK
                                            Chapter 11
15 ART & ARCHITECTURE BOOKS OF THE
   21st CENTURY,                            Adv No. 2:15-ap-01679-RK
16
        Debtors.                            Consolidated with Adv. No. 2:14-ap-01771-RK
17 _____         **PLAINTIFF'S NOTICE OF MOTION AND**
                                            **MOTION PURSUANT TO F.R.C.P. 37 AND**
18 SAM LESLIE, PLAN AGENT FOR ART &         **F.R.B.P. 7037 TO ISSUE TERMINATING**
   ARCHITECTURE BOOKS OF THE 21st           **SANCTIONS AGAINST DEFENDANTS**
19 CENTURY,                                 **ACE MUSEUM AND ACE GALLERY**
                                            **NEW YORK CORPORATION FOR**
20        Plaintiff,                        **BREACHING THE COURT'S OCTOBER**
                                            **18, 2018 ORDER TO RESPOND TO**
21     vs.                                  **DISCOVERY**

22 ACE GALLERY NEW YORK CORPORATION,        **Hearing Date:**
   a California corporation; ACE GALLERY NEW    Date:        January 15, 2019
23 YORK, INC., a dissolved New York corporation;  Time:        2:30 p.m.
   ACE MUSEUM, a California corporation;       Courtroom:   1675
24 DOUGLAS CHRISMAS, an individual; 400 S. LA              255 E. Temple St.
   BREA, LLC, a California limited liability             Los Angeles, CA 90012
25 company, JENNIFER KELLEN, an individual,
   CATHAY BANK, a California corporation,
26 DARYOUSH DAYAN, an individual, KAMRAN     **[ALSO FILED HEREWITH:**
   GHARIBIAN, an individual, and MICHAEL D.  **DECLARATION OF DAVID J.**
27 SMITH, an individual,                     **RICHARDSON]**

28 _____
        Defendants.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

DJR\ 2657516.1

400 S. La Brea, LLC, a California limited
liability company,

              Cross-Complainant,

v.

ACE GALLERY NEW YORK
CORPORATION, a California corporation; ACE
GALLERY NEW YORK, INC., a dissolved New
York corporation; ACE MUSEUM, a California
corporation; DOUGLAS CHRISMAS, an
individual; SAM LESLIE as TRUSTEE OF THE
PLAN TRUST FOR ART & ARCHITECTURE
BOOKS OF THE 21st CENTURY,

              Cross-Defendants.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.     INTRODUCTION .................................................................................................3

II.    FACTUAL BACKGROUND ..............................................................................5

    A.   The Plan Agent's Claims Against the Entity Defendants ............................5

    B.   The Plan Agent's First Set of Written Discovery .......................................5

    C.   The Plan Agent Serves a Second Set of Discovery Requests ......................7

    D.   The Court Ordered the Entity Defendant to Respond to the Discovery
        Requests ..................................................................................................10

    E.   The Entity Defendants' Failed to Respond Properly to the Plan Agent's June
        Discovery, Failed to Respond to the Plan Agent's 2016 Discovery, and
        Violated The October 18, 2018 Court Order ...........................................11

    F.   The Entity Defendants' Actively Defended This Case Without Disclosing
        Documents Pursuant to F.R.C.P. 26 et seq and Informally Produced
        Documents in a Parallel State Case While Refusing to Answer Plan Agent's
        Discovery ................................................................................................14

    G.   The Entity Defendants' California Corporate Status is Now Suspended For
        Failure to Pay State Taxes to the California Franchise Tax Board ..........16

    H.   The Entity Defendants' "Document Production".......................................17

III.   ARGUMENT ....................................................................................................18

    A.   Terminating Sanctions Are Appropriate Because The Entity Defendants'
        Non-Compliance with Discovery Is Due to Willfulness, Fault, or Bad Faith .........20

    B.   The Five Malone Factors Support Terminating Sanctions....................................24

        1.   The First *Malone* Factor – The Public Interest Favors Terminating
            Sanctions Where a Party Has Violated a Court Order ...............................25

        2.   The Second *Malone* Factor – The Court's Need to Manage Its
            Docket Favors Terminating Sanctions Where a Party Has Violated a
            Court Order .............................................................................................25

        3.   The Third *Malone* Factor – Plan Agent Has Been Prejudiced Here
            By The Entity Defendants' Refusal to Respond to Discovery....................25

        4.   The Fourth *Malone* Factor – Public Policy Concerns Here Do Not
            Condone the Entity Defendants' Conduct................................................27

        5.   The Fifth *Malone* Factor – Less Drastic Sanctions Are Not Likely to
            Be Effective.............................................................................................27

    C.   Upon Awarding Terminating Sanctions, the Court Should Hold a Hearing

as to the Amount of Damages ..................................................................................29

D.    Alternatively, The Court Should Grant Evidentiary Sanctions and Monetary
Sanctions Against the Entity Defendants .............................................................30

IV.    CONCLUSION ..................................................................................................................31

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **CASES**

4

*Adriana Int'l Corp. v. Thoeren*,
　　913 F.2d 1406 (9th Cir. 1990) .................................................................................. passim

*Bellis v. United States*,
　　417 US 85, 94 S.Ct. 2179 (1974) ..................................................................................... 20

*Braswell v. United States*,
　　487 U.S. 99, 108 S. Ct. 2284, 101 L. Ed. 2d 98 (1988) .................................................. 20

*Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*,
　　67 F.3d 766 (9th Cir. 1995) .............................................................................................. 24

*Compass Bank v. Morris Cerullo World Evangelism*,
　　104 F. Supp. 3d 1040 (S.D. Cal. 2015) ............................................................................ 23

*Computer Task Group, Inc. v. Brotby*,
　　364 F.3d 1112 (9th Cir. 2004) .......................................................................................... 21

*Condon v. Condon*,
　　2008 U.S. Dist. LEXIS 126350, 2008 WL 11342681 (C.D. Cal. May 5, 2008) .......... 21, 26

*Conn. Gen. Life. Ins. Co. v. New Images of Beverly Hills*,
　　482 F.3d 1091 (9th Cir. 2007) .......................................................................................... 18

*Constr. Laborers Tr. Funds for S. California Admin. Co. v. Rosal*,
　　2008 U.S. Dist. LEXIS 79677, 2008 WL 4500757 (C.D. Cal. Oct. 6, 2008) .............. 19, 24

*Davis v. Fendler*,
　　650 F.2d 1154 (9th Cir. 1981) .......................................................................................... 29

*Doe v. United States (In re Grand Jury Subpoena)*,
　　383 F.3d 905 (9th Cir. 2004) ............................................................................................ 20

*Dreith v. Nu Image, Inc.*,
　　648 F.3d 779 (9th Cir. 2011) ....................................................................................... 21, 22

*Fab Films, LLC v. JP Morgan Chase Bank, N.A.*,
　　2017 U.S. Dist. LEXIS 51457, 2017 WL 1287675 (C.D. Cal. Feb. 28, 2017) ............. 19, 22

*Fair Hous. of Marin v. Combs*,
　　285 F.3d 899 (9th Cir. 2002) ....................................................................................... 19, 26

*Fed. Trade Comm'n v. A to Z Mktg., Inc.*,
　　2014 U.S. Dist. LEXIS 191687, 2014 WL 12591916 (C.D. Cal. Sept. 2, 2014) .... 18, 27, 29

*Garamendi v. Henin*,
　　683 F.3d 1069 (9th Cir. 2012) .......................................................................................... 30

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

*Geddes v. United Fin. Group*,
    559 F.2d 557 (9th Cir. 1977)................................................................... 19, 30

*G--K Properties v. Redevelopment Agency of the City of San Jose*,
    577 F.2d 645 (9th Cir. 1978)................................................................... 26, 28

*Hale v. Henkel*,
    201 US 43, 26 S.Ct. 370 (1906)............................................................... 20

*Henry v. Gill Indus., Inc.*,
    983 F.2d 943 (9th Cir. 1993).................................................................... 22

*Hyde & Draft v. Baker*,
    24 F.3d 1162 (9th Cir. 1994)............................................................ 18, 22, 27

*In re Exxon Valdez*,
    102 F.3d 429 (9th Cir. 1996).................................................................... 27

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006)................................................................ 24, 27

*Malone v. United States Postal Service*,
    *833 F.2d 128 (9th Cir. 1987), cert. denied sub nom Malone v. Frank*, 488 U.S. 819
    (1988) ................................................................................................... passim

*Matter of Visioneering Const.*,
    661 F.2d 119 (9th Cir. 1981).................................................................... 22

*Murphy v. Waterfront Comm'n of New York Harbor*
    (1964) 378 US 52, 84 S.Ct. 1594).............................................................. 20

*Nat'l Corp. Tax Credit Funds III, IV, VI, VII v. Potashnik*,
    2010 U.S. Dist. LEXIS 19614, 2010 WL 457626 (C.D. Cal. Feb. 4, 2010)............... passim

*Securities and Exchange Comm'n v. Seaboard Corp.*,
    666 F.2d 414 (9th Cir. 1982).................................................................... 25

*Smith v. Smith*,
    145 F.3d 335 (5th Cir. 1998).................................................................... 23

*Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*,
    105 F.3d 521 (9th Cir. 1997).................................................................... 22

*Thompson v. Housing Authority*,
    782 F.2d 829 (9th Cir. 1986).................................................................... 24

*Twitch Interactive, Inc. v. Johnston*,
    *2018 U.S. Dist. LEXIS 184300, 2018 WL 1449525 (N.D. Cal. January 22, 2018)* ............ 29

*U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*,
    857 F.2d 600 (9th Cir. 1988).................................................................... 28

*United States v. $333,806.93 in Proceeds from Foreclosure of Real Prop. Located at*
    *26948 Pac. Coast Highway, Malibu, CA*,
    2010 U.S. Dist. LEXIS 105545, 2010 WL 3733932 (C.D. Cal. Aug. 30, 2010).... 22, 24, 27

*United States v. Healthwin-Midtown Convalescent Hosp. & Rehab. Ctr., Inc.,*
    511 F. Supp. 416 (C.D. Cal. 1981) ................................................................. 23

*United States v. White,*
    322 US 694, 64 S.Ct. 1248 (1944) ................................................................. 20

*Valley Eng'rs Inc. v. Elec. Eng'g Co.,*
    158 F.3d 1051 (9th Cir. 1998) ............................................................... 24, 28

**RULES**

Fed. R. Bankr. P. 7026 ................................................................................... 4, 9

Fed. R. Bankr. P. 7033(a) .................................................................................. 7

Fed. R. Civ. P. 26 ........................................................................................... 14

Fed. R. Civ. P. 33(b)(1)(B) ............................................................................... 12

Fed. R. Civ. P. 37 ..................................................................................... 18, 29

Fed. R. Civ. P. 37(a)(4) ................................................................................... 12

Fed. R. Civ. P. 37(b) ....................................................................................... 20

Fed. R. Civ. P. 37(b)(2)(A)(vi) .......................................................................... 18

Fed. R. Civ. P. 37(b)(2)(C) ............................................................................... 30

Fed. R. Civ. P. 37(b)(2)(i) ................................................................................ 18

Fed. R. Civ. P. 37(b)(vii) .................................................................................. 18

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**TO THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE, ALL NAMED DEFENDANTS AND THEIR COUNSEL, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Sam S. Leslie, in his exclusive capacity as Plan Agent (the "Plan Agent") under the confirmed Modified Second Amended Plan of Reorganization of the Official Committee of Unsecured Creditors (the "Plan") for post-confirmation Art & Architecture Books of the 21st Century (the "Debtor" or "Ace Gallery"),[1] hereby moves by this motion (the "Motion") for entry of an order issuing terminating or evidentiary sanctions against Ace Museum Corporation ("Ace Museum") and Ace Gallery New York Corporation ("Ace NYC") (collectively, the "Entity Defendants") for both entities' failure to provide responses to written discovery propounded by the Plan Agent in the above-captioned Adversary Proceeding No. 2:15-ap-01679-RK (the "Action").

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of David J. Richardson, and all documents in the record of the above-captioned adversary proceeding and chapter 11 bankruptcy case.

**PLEASE TAKE FURTHER NOTICES** that a hearing on the Motion is scheduled to take place on January 15, 2019, at 2:30 p.m., in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, Courtroom 1675, 255 East Temple St., Los Angeles, CA 90012.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1, any opposition to the Motion must be filed with the Court and served no later than fourteen (14) days before the hearing date (*i.e.*, January 1, 2019).

---

[1] The Plan Agent files this motion under the broadest scope of the Plan Agent's authority, including on behalf of the Plan Agent, the Debtor, the Post Confirmation Debtor, and the Estate (as those terms are defined under the Plan). All references to the Plan Agent are deemed to refer to the Plan Agent, the Debtor, the Post-Confirmation Debtor, and the Estate.

1

1    DATED:  December 19, 2018          **Sulmeyer**Kupetz
                                         A Professional Corporation
2

3

4                                       By:        /s/ Victor A. Sahn
                                               Victor A. Sahn
5                                              David J. Richardson
                                               Attorneys for Sam Leslie, Plan Agent
6

7    DATED:  December 19, 2018          Law Offices of Carolyn A. Dye

8

9

10                                      By:        /s/ Carolyn A. Dye
                                               Carolyn A. Dye
11                                             Attorneys for Sam Leslie, Plan Agent

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Sam S. Leslie (the "Plaintiff" or "Plan Agent"), Plan Agent for the Post-Confirmation Bankruptcy Estate of Art and Architecture Books of the 21st Century (the "Debtor"), files this motion to terminate its cases against defendants Ace Museum Corporation ("Ace Museum") and Ace Gallery New York Corporation ("Ace NYC") (collectively, the "Entity Defendants") in favor of the Plan Agent in the present Adversary Proceeding No. 2:15-ap-01679-RK (the "Action"). The Plan Agent believes that terminating sanctions are a proper exercise of this Court's power, given the extenuating circumstances. The evidence developed to date indicates that Mr. Chrismas stole millions of dollars of the Debtor's funds, inventory and opportunity from the Debtor's estate since the Petition Date. The Entity Defendants were dominated and controlled by Mr. Chrismas, and their bank accounts were conduits used to divert the Debtor's stolen funds to transferees such as 400 S. La Brea, LLC, Cathay Bank, and personal creditors of Mr. Chrismas.

For more than two years, the Plan Agent has attempted to obtain discovery from the Entity Defendants without success, through two sets of written discovery. Having reached the end of informal negotiations, the Plan Agent moved this past September for an order compelling discovery. This Court issued an Order on October 18, 2018, compelling responses to discovery and production of documents, yet the responses that the Entity Defendants produced were materially identical to the prior deficient responses, and the Entity Defendants' late "document production" is a farce that is an insult to the process. The Entity Defendants "complied" with this Court's order only to the extent that they appointed an "agent" to answer discovery responses—a former employee of both the Debtor and the Plan Agent, who has no knowledge of either Entity Defendants' finances or operations, who asserted that he has no ability to understand their books and records, and who simply repeated the same response that no information may be provided to the Plan Agent because Mr. Chrismas asserts the Fifth Amendment privilege. Such a non-response was improper and insufficient when it was delivered by the Entity Defendants' counsel as signatory, and it is equally improper and insufficient when repeated by an "agent" who has

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  demonstrated by his own responses that he made no legitimate effort to fulfill such a role, and was

2  incapable of fulfilling such a role.

3     Moreover, during this two-year period while the Plan Agent attempted to obtain discovery

4  responses from the Entity Defendants, the Entity Defendants actively litigated their respective

5  cases, offering legal and factual theories to the Court to promote their version of the case, and

6  prevent summary judgment.  The Entity Defendants, however, cannot be allowed to proceed when

7  they have caused the Plan Agent substantial prejudice by refusing to participate in discovery.

8  Even more shocking, in connection with a judgment debtor examination of Ace Museum and Mr.

9  Chrismas that was petitioned by 400 S. La Brea in a state court action, Ace Museum's counsel has

10  been informally producing documents to 400 S. La Brea that go to the heart of Ace Museum's

11  primary defense in this case, while producing nothing to the Plan Agent.  These documents should

12  have been produced pursuant to F.R.B.P. 7026, as initial or supplemental disclosures, whether or

13  not the Plan Agent had identified the documents in outstanding document requests.  Moreover, the

14  willingness of Ace Museum's counsel to make such a production to 400 S. La Brea in an action

15  pending in another court demonstrates the falsity of its assertion in this Court that it is incapable of

16  responding to discovery because of Mr. Chrismas' Fifth Amendment invocation.

17     Based upon promises of Ace Museum's counsel that documents would be produced

18  shortly, the Plan Agent delayed this Motion beyond the thirty-day response required by this

19  Court's order.  Late on Friday, December 14, 2018, the Plan Agent received a "production" from

20  Chrismas and the Entity Defendants.  The first part of the "production" is the emails that Ace

21  Museum had already produced to 400 S. La Brea, and that the Plan Agent had already obtained

22  from 400 S. La Brea.  The second part of the "production" is hundreds of pages of Mr. Chrismas'

23  Uber/Lyft receipts from 2017-2018, hundreds of pages of spam emails from 2017-18, and

24  unrelated post-confirmation emails concerning Chrismas' efforts to sell art <u>after</u> being replaced by

25  the Plan Agent.  Not one page is a legitimate response.

26     Give these circumstances, the Plan Agent requests that this Court enter an order that: (1)

27  terminates the Plan Agent's case against Ace Museum and Ace NYC in favor of the Plan Agent;

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   (2) strikes the answers of both Ace Museum and Ace NYC[2]; (3) deems the well-pleaded

2   allegations in the Fifth Amendment Complaint admitted as to Ace Museum and Ace NYC; (4)

3   awards damages that are provable from sworn testimony, along with fees and costs; and (5) sets a

4   date for the prove up of the Plan Agent's remaining damages against Ace Museum and Ace NYC,

5   contemporaneous with trial.

6                                              **II.**

7                              **FACTUAL BACKGROUND**

8   **A.        The Plan Agent's Claims Against the Entity Defendants**

9            The Plan Agent's Fourth Amended Consolidated Complaint asserts two categories of

10  claims against the Entity Defendants: (i) claims arising primarily under state law for the collection

11  of an outstanding prepetition loan advanced to Ace Museum by the Debtor; and (ii) prepetition

12  and post-petition avoidance actions and fraud-related claims against the Entity Defendants and Mr.

13  Chrismas arising from Mr. Chrismas' use of the Entity Defendants' bank accounts as conduits to

14  divert approximately seventeen million dollars of the Debtor's post-petition sale and loan proceeds

15  out of the Debtor's estate, and to transfer over five million dollars of such post-petition funds to

16  Ace Museum's landlord, 400 S. La Brea, LLC ("400 S. La Brea").  See Docket No. 134, filed May

17  19, 2017.  Such transfers were made for the benefit of Ace Museum and Mr. Chrismas, as the

18  transfers satisfied monthly rent obligations for which both Ace Museum and Mr. Chrismas were

19  liable, under a lease agreement between Ace Museum and 400 S. La Brea.  The Plan Agent's

20  claims for relief seek to recover the prepetition and post-petition transfers from 400 S. La Brea,

21  and other transferees who received the funds.

22  **B.        The Plan Agent's First Set of Written Discovery**

23           On October 19, 2016, the Plan Agent served his first set of written discovery—Requests

24

25  ───────────────

26  [2]       As of the date of this motion, the answers of Ace Museum and Ace NYC that are on the
    docket are their answers to the Plan Agent's Fourth Amended Consolidated Complaint.  As the
27  Entity Defendants' answers to the Plan Agent's Fifth Amended Consolidated Complaint are due
    by January 30, 2019, the Plan Agent requests that this Court strike the existing answers, and
28  terminate the case based upon the same claims asserted in both complaints, and upon the
    allegations asserted in the Fifth Amended Consolidated Complaint.

1  for Production of Documents, Interrogatories, and Requests for Admission—on each of the Entity

2  Defendants, true and correct copies of which are attached to the Declaration of David J.

3  Richardson (the "Richardson Decl.") filed herewith, as Exhibits 1-6 thereto (the "First Discovery

4  Requests").  The Plan Agent served contemporaneously therewith written discovery requests on

5  Chrismas for production of document, requests for admissions, and interrogatories.  See

6  Richardson Decl. at ¶ 6.

7      On or after November 23, 2016, the Entity Defendants responded to the Plan Agent's

8  Requests for Production of Documents with unverified responses stating that each would produce

9  responsive documents.  As of the date of this Motion, no documents have been produced to the

10  Plan Agent by either of the Entity Defendants.  See Richardson Decl. at ¶ 7.

11      On December 29, 2016, following an extension of the time to respond, Ace NYC and Ace

12  Museum responded to the Plan Agent's first set of Requests for Admission by serving unverified

13  responses in which the Entity Defendants each asserted a corporate Fifth Amendment Privilege for

14  every single request for admission.  Ace Museum and Ace NYC did not serve responses to the

15  Plan Agent's first set of Interrogatories.  See Richardson Decl. at ¶ 7.  Attached to the Richardson

16  Decl. as Exhibits 7-10 are true and accurate copies of Ace Museum and Ace NYC's Responses to

17  Plan Agent's First Set of Requests for Admissions, and Requests for Production.

18      Mr. Chrismas responded to the Plan Agent's discovery in a similar fashion, serving a

19  response to the Plan Agent's request for production that promised to produce responsive

20  documents, and unverified responses to the Plan Agent's Requests for Admission and

21  Interrogatories that declined to answer on the grounds of his Fifth Amendment privilege.  See

22  Richardson Decl. at ¶ 7.

23      The Plan Agent initiated the meet-and-confer process by letter dated January 30, 2017, in

24  which the Plan Agent's counsel outlined the impermissibility of corporate assertion of the Fifth

25  Amendment privilege, requested service of responses to the first set of Interrogatories, and

26  demanded production of documents.  As of the date of this Motion, Ace Museum and Ace NYC

27  have not supplemented their responses to the first set of Requests for Admission, have not

28  produced documents responsive to the first request for production, and have not served responses

6

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    to the first set of Interrogatories.   See Richardson Decl. at ¶ 9.   Attached hereto as Exhibit 11 is a

2    true and accurate copy of the January 30, 2017 meet and confer letter.

3           Despite the Entity Defendants' failure to serve proper discovery responses, and their

4    failure to respond to the Plan Agent's meet-and-confer demands, Ace Museum filed a substantial

5    opposition brief in response to the Plan Agent's motion for summary judgment, on October 17,

6    2017 [Dkt. No. 206], including a Declaration of former counsel David Shemano [Dkt. No. 207], a

7    Request for Judicial Notice [Dkt. No. 208], an extensive proposed Statement of Genuine Issues of

8    Material Fact [Dkt. No. 209], an evidentiary objection [Dkt. No. 210], a supplemental statement of

9    genuine issues of fact [Dkt. No. 254], a supplemental opposition brief [Dkt. No. 255] and a further

10    supplemental opposition brief [Dkt. No. 312].   As a result of these extensive opposition pleadings

11    filed by Ace Museum, the Plan Agent's motion for summary judgment was denied in large part,

12    and granted only with respect to certain findings of fact, in an order entered by this Court on

13    March 26, 2018 [Dkt. No. 336].   The defense that Ace Museum asserted in response to summary

14    judgment had not been pleaded as an affirmative defense in Ace Museum's answer, and had not

15    been disclosed in any initial or supplemental disclosures.   No documents pertaining to this defense

16    have been produced to the Plan Agent.   See Richardson Decl. at ¶ 34.

17    **C.    The Plan Agent Serves a Second Set of Discovery Requests**

18           On May 29, 2018, the Plan Agent served by mail a second set of discovery to Mr.

19    Chrismas, including Interrogatories, Requests for Production and Requests for Admissions.   Mr.

20    Chrismas' responses were originally due on July 2, 2018 (the "Second Chrismas Discovery").   See

21    Richardson Decl. at ¶ 10.   The Second Chrismas Discovery exceeded the permissible number of

22    interrogatories pursuant to the Fed. R. Bankr. P. 7033(a), and the Plan Agent anticipated that a

23    second set of discovery that he would shortly serve on the Entity Defendants would also exceed

24    the limits of Rule 7033(a).   Therefore, the Plan Agent's counsel and Mr. Lieberman agreed that

25    Mr. Chrismas and the Entity Defendants could have an additional thirty (30) days to respond to the

26    second set of discovery in return for agreeing that they would answer the total number of

27    interrogatories, rather than require the Plan Agent to file a motion requesting an increased number

28    of interrogatories.   See Richardson Decl. at ¶ 12, and Exhibit 18 thereto.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    On June 11, 2018, Plan Agent served by mail a second set of discovery on Ace Museum

2    and Ace NYC.  This discovery also included Interrogatories, Requests for Production and

3    Requests for Admission (the "Second Discovery Requests").  Ace Museum and Ace NYC were

4    originally required to respond to the discovery on July 16, 2018.  See Richardson Decl. at ¶ 11.

5    True and correct copies of the Second Discovery Requests are attached to the Richardson Decl. as

6    Exhibits 12-17.

7    Based upon the parties' agreement to extend the response date, Mr. Chrismas' responses

8    were due on August 1, 2018.  Ace Museum and Ace NYC were required to serve their responses

9    by August 15, 2018.  See Richardson Decl. at ¶ 12.  On August 15, 2018, after receiving no

10   responses to the Second Discovery Requests, the Plan Agent's counsel sent a meet and confer

11   letter to Mr. Lieberman, a true and correct copy of which is attached to the Richardson Decl. as

12   Exhibit 19.

13   In response to the meet-and-confer letter, Mr. Lieberman replied by email on August 17,

14   2018, serving all discovery responses for Mr. Chrismas, and two of Ace Museum's unverified

15   discovery responses.  Mr. Lieberman's email, and the two Ace Museum responses to the Plan

16   Agent's Requests for Admission and Interrogatories are attached to the Richardson Decl. as

17   Exhibits 20-22.   Following several requests for service of the missing responses, the Plan Agent

18   received Ace NYC's responses to the Plan Agent's Requests for Admission and Interrogatories on

19   September 25, 2018, true and correct copies of which are attached to the Richardson Decl. as

20   Exhibits 23 and 24, and which are consistent with Mr. Lieberman's characterizations throughout

21   the meet-and-confer process as responses that would assert the same objection that is repeated

22   throughout the Ace Museum responses.  Neither Ace Museum nor Ace NYC served a response to

23   the Plan Agent's Requests for Production.  See Richardson Decl. at ¶ 14.

24   The Entity Defendants' responses were late under the agreed upon extension.  Moreover,

25   while Mr. Chrismas continued to assert his personal Fifth Amendment privilege to all of the Plan

26   Agent's Requests for Admission and Interrogatories, the Entity Defendants' responses were

27   blanket objections and refusals to respond based upon Mr. Chrismas' assertion of the Fifth

28   Amendment Privilege, despite having had sixty days to formulate responses.  Ace Museum and

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  Ace NYC both used some iteration of the following blanket objection to every question and

2  request presented:

3       The Museum [or Ace NYC] is unable to respond to Interrogatory
        No. 17 because the only individual with the ability to verify these
4       responses has asserted his 5th Amendment right under the United
        States Constitution not to incriminate himself.
5

6  See Exhibit 22.

7       Mr. Lieberman's email of August 17, 2018, serving some of the Chrismas and Ace

8  Museum responses, also suggested that the responses were not tardy, relying on a strange

9  reference to Bankruptcy Rule 7026.  Mr. Lieberman argued that the Plan Agent had not properly

10 complied with his requirement to issue initial disclosures, and therefore the defendants were under

11 no duty to respond to discovery.  Moreover, Mr. Lieberman suggested that invocation of the Fifth

12 Amendment was proper, and that Mr. Chrismas intended to challenge the case through

13 unidentified third party witnesses who would suggest that they would no longer work with the

14 Debtor because of the status of the bankruptcy.  See Richardson Decl. at ¶ 16.  On August 17,

15 2018, the Plan Agent's counsel sent Mr. Lieberman copies of the three joint status reports "re:

16 Early Disclosure and Discovery Plan" that were signed by the Plan Agent's counsel and by Mr.

17 Lieberman, and filed with the Court on December 8, 2016, satisfying Rule 7026 initial disclosures.

18 See Richardson Decl. at ¶ 17.  Moreover, the defendants sought no relief from the Court in the

19 form of a protective order and did not raise this objection in any of their responses.  Attached to

20 the Richardson Decl. as Exhibit 25 is true and accurate copy of the August 17, 2018 email and its

21 attachments.

22      The parties continued to meet and confer pursuant to the local rules.  On August 20, 2018,

23 the Plan Agent's counsel sent to Mr. Lieberman by email two cases that discuss a corporation's

24 responsibility to appoint an agent to answer discovery when a principal invokes the Fifth

25 Amendment.  See Richardson Decl. at ¶ 18, and Exhibit 26 thereto.  Both of these cases suggest

26 that the attorney representing the individual and/or corporate entity is a proper party to investigate

27 and answer the discovery, even where the attorney represents both the individual and the

28 corporation.  During a meet-and-confer phone call with Mr. Lieberman on August 20, 2018, Mr.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  Sahn suggested that Mr. Gary Mendelson, one of the Debtor's former controllers, might be

2  appointed as the person to represent Ace Museum and Ace NYC, and complete their discovery

3  obligations.  After a brief discussion with the Plan Agent's counsel, Mr. Mendelson declined the

4  request to be appointed as the person to investigate and to respond to discovery.  See Richardson

5  Decl. at ¶ 19.  Mr. Lieberman thereafter approached counsel to Jennifer Kellen and Shirley Holst

6  to request that they each serve as agent for Ace Museum and Ace NYC for discovery purposes,

7  and informed the Plan Agent's counsel by email on August 24, 2018, that they had declined.  See

8  Richardson Decl. at ¶ 20, and Exhibit 27 thereto.

9        In the course of the meet-and-confer process, Mr. Lieberman indicated in an email that,

10  despite refusing to respond to any discovery, Mr. Chrismas intends to contest the Plan Agent's

11  claims at trial, with evidence of his own:

12          Mr. Chrismas understands that the court may draw inferences in the
            context of a 5th Amendment assertion in the context of this civil case.
13          However, Mr. Chrismas expects to defend himself by showing that
            the Plan Agent has simply failed to prove the allegations against and
14          the court-approved stipulation that formed the Museum's defense to
            the Plan Agent's failed motion for summary judgment against the
15          Museum.    Mr. Chrismas further expects that the artists formerly
            represented by the Gallery will testify at trial that their relationship
16          was with Mr. Chrismas personally, not the Gallery, and that they were
            not comfortable doing business with an entity in bankruptcy,
17          preferring instead to transact business through other, non-debtor
            entities associated with Mr. Chrismas.
18

19  See Richardson Decl. at ¶ 22, and Exhibit 20 thereto.

20        On September 7, 2018, Mr. Lieberman filed a motion to withdraw from his representation

21  of the Entity Defendants, or for a stay of discovery, or for certain discovery sanctions against his

22  own clients (the "Withdrawal Motion").  The Plan Agent has filed a counter motion on the

23  grounds that Mr. Lieberman's alternative request within his Withdrawal Motion for certain

24  discovery sanctions did not properly present such issues to this Court.

25  **D.    The Court Ordered the Entity Defendant to Respond to the Discovery Requests**

26        On September 26, 2018, the Plan Agent filed a motion to compel the Entity Defendants to

27  respond to the Plan Agent's outstanding First and Second Discovery Requests, and to produce

28  documents [Dkt. No. 432] (the "Motion to Compel").  On October 18, 2018, the Court held a

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

hearing on the Motion to Compel sand the Withdrawal Motion, during which the Court heard

arguments and adopted the Court's tentative ruling granting and denying in part the Plan Agent's

Motion to Compel, and denying Mr. Lieberman's Withdrawal Motion.  Richardson Decl. at ¶ 22.

The Court specifically ordered the Entity Defendants:

> to produce documents in response to plan agent's document
> production requests within 30 days since defendants do not oppose
> production of non-privileged documents, but defendants must produce
> a privilege log if they withhold documents from production to plan
> agent based on privilege. Order each of defendants Ace Museum and
> Ace Gallery New York to take action, including appointing an agent, if
> they can, to fully respond to plan agent's written interrogatories and
> requests for admission within 30 days, or provide statements under
> penalty of perjury that it cannot answer because of the Fifth
> Amendment privilege asserted by the only knowledgeable person or
> persons and there is no person who can serve as an agent who could
> gather and obtain from books, records, other officers or employees, or
> other sources, the information necessary to answer the interrogatories
> and requests for admission and sign them on behalf of each defendant
> without risking self-incrimination.

See ECF Filing No. 451 ("October 18, 2018 Order").

The Court further gave the Entity Defendants clear notice that the Court would consider

terminating sanctions in the event that the discovery went unanswered, or answered with

inadequate responses:

> The court reserves ruling on whether or not defendants' responses to
> plan agent's discovery requests are adequate until after defendants
> have had an opportunity to comply with the court's rulings
> compelling further responses as set forth in this tentative ruling, and
> thus, determines that it is premature to rule on the plan agent's
> request for terminating sanctions at this time.

See October 18, 2018 Order, ECF Filing No. 451.

The Entity Defendants have failed to comply with the October 18, 2018 Order.

**E.    The Entity Defendants' Failed to Respond Properly to the Plan Agent's June Discovery, Failed to Respond to the Plan Agent's 2016 Discovery, and Violated The October 18, 2018 Court Order**

As of the date of this Motion, the Entity Defendants have failed to respond to the Plan

Agent's First and Second Discovery Requests in a manner that is adequate (with respect to

interrogatories and admissions), or at all (documents).  Richardson Decl. at ¶¶ 24-25.

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    On November 15, 2018, Mr. Lieberman served on the Plan Agent the Entity Defendants'

2  amended responses to the Plan Agent's second set of requests for admissions and interrogatories

3  (the "Amended Responses").  True and correct copies of the Amended Responses are attached

4  hereto as Exhibits 28-31.  But contrary to the explicit thirty-day requirement in the October 18,

5  2018 Order, the Entity Defendants did not produce—and still have not produced—any documents

6  to the Plan Agent.

7    The Amended Responses fail to comply with the requirements of the Court's October 18,

8  2018 Order, in that they fail to provide any material information.  Instead, they repeat blanket

9  denials to requests for admission, and blanket claims of an inability to respond to interrogatories

10  because of Mr. Chrismas' invocation of the Fifth Amended privilege—this time, in the name of an

11  "agent" instead of Mr. Lieberman.  Every answer was incomplete, evasive, and non-responsive,

12  thus violating both the letter and the spirit of the law and the Court's Order.  See F.R.C.P. 37(a)(4)

13  ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response

14  must be treated as a failure to disclose, answer, or respond.")

15    The individual who was chosen by the Entity Defendants to serve as their agent to respond

16  to the Plan Agent's discovery is named Francisco Orellana ("Mr. Orellana").  Mr. Orellana was an

17  employee of the Debtor during Mr. Chrismas' tenure as principal from the Petition Date to the

18  effective date of the Plan Agent's appointment, and his salary was disclosed as salary paid by the

19  Debtor in each Monthly Operating Report filed in this case.  See Richardson Decl. at ¶ 26.  Mr.

20  Orellana also worked as an employee of the Plan Agent from May 2017 through April 2018.  Id.

21  No disrespect to Mr. Orellana is intended, but his responsibilities while an employee of the Debtor

22  and Plan Agent was to work as a preparatory installer of artworks for shows, and carry out other

23  general tasks as needed.  Id.  Mr. Orellana claims to have worked as an employee of Ace Museum,

24  though he is not specific as to dates, and may have worked for Ace Museum for about one year

25  after the Plan Agent's term became effective, until May of 2017, when Mr. Orellana returned to

26  work for the Plan Agent.  But Mr. Orellana is not and has never been a director, executive, or

27  other high level employee of Ace Museum.  See F.R.C.P. 33(b)(1)(B) ("The interrogatories must

28  be answered: (A) by the party to whom they are directed; or (B) if that party is a public or private

1   corporation, a partnership, an association, or a governmental agency, by any officer or agent, who

2   must furnish the information available to the party.").  It is likely for this reason that the Amended

3   Responses are completely devoid of any information, and appear to show that no legitimate effort

4   was made to learn information.

5          The Amended Responses to the Plan Agent's interrogatories begin with the following

6   limitation on Mr. Orellana's responses, stating that he not only lacks knowledge about the Entity

7   Defendants' operations and finances, <u>but lacks the ability to learn about them</u>:

> Agent does not have personal knowledge of Museum [or Ace NYC]
> finances, loans, leases, transactions, governance, management, or legal
> matters.  Moreover, Agent has no personal knowledge of the books and
> records of the Museum [or Ace NYC], does not know how they were
> kept, and **does not believe that he has the experience, education or
> training to interpret, summarize or understand the Museums books
> and records**.  Chrismas has agreed to pay Agent at Agent's regular
> hourly rate for the time spent in connection with this Amended
> Response and has agreed to make available to Agent the Museum's
> books and records.  However, Chrismas has informed Agent that, on
> the advice of counsel, <u>Chrismas would not assist in the preparation of
> substantive responses to the Interrogatories by responding to my
> particular questions based on each of the Interrogatories</u>.

15  <u>See</u> <u>Exhibit 28</u>, at p. 297 (bolding added, underline in original).  By their own admission, the

16  Entity Defendants responded to this Court's October 18, 2018 Order by knowingly and

17  intentionally appointing an agent who lacks the capacity and knowledge to understand the

18  documents that would be necessary to formulating any substantive response to the discovery

19  requests.

20         The specific responses of the Entity Defendants to the Plan Agent's second set of

21  interrogatories (there is still <u>no</u> response to the outstanding first set) reflect Mr. Orellana's inability

22  to learn answers that provide any meaningful response.  For example, in response to Interrogatory

23  No. 22 served on Ace Museum, which asked for all facts upon which Ace Museum could deny the

24  allegations in Paragraph 31 of the Fourth Amended Complaint, Ace Museum through Mr.

25  Orellana responded:

> The allegations in Paragraph 31 of the operative complaint relate to
> rent due from the Museum to its landlord.  Agent has no knowledge
> or understanding regarding the Museum's rental obligations and do
> not know where he would obtain such information except from
> Chrismas who refuses to discuss the matter with Agent.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   See Exhibit 28, at p. 299.  This specific response is typical of all of the improper responses

2   contained within the Amended Responses to the Plan Agent's second set of interrogatories.

3       In the case of the Amended Responses to the Plan Agent's second set of admissions (there

4   is still no response to the outstanding first set), the Entity Defendants provided even less

5   information.  After repeating the same prefatory statement outlining Mr. Orellana's lack of

6   qualifications to serve as agent for discovery purposes, the Entity Defendants answered every

7   Request for Admission with the simple response: "Deny."  See Exhibits 29 and 31.  The Plan

8   Agent's Interrogatory No. 78 asked Ace Museum to explain its reasons for its denial of every

9   denied request for admission.  Mr. Orellana's response begins with the statement that: "Agent is

10  unaware of particular facts that support the Museum's denial of each Request for Admission

11  ("RFA").  Agent denied each RFA for lack of information or belief."  See Exhibit 28 at p. 316.

12      On November 26, 2018, counsel for the Plan Agent delivered a meet-and-confer letter to

13  Mr. Lieberman, objecting to the Amended Responses on numerous grounds, and demanding a

14  time to confer, a true and correct copy of which is attached to the Richardson Decl. as Exhibit 32.

15  On November 30, 3018, counsel for the Plan Agent spoke with Mr. Lieberman by phone to

16  complete the meet and confer process regarding this motion.  The parties were unable to reach a

17  resolution whereby the Entity Defendants would respond to the discovery requests pursuant to the

18  Court's October 18, 2018 Order.  Mr. Lieberman suggested that he had complied with the Order by

19  demonstrating that the Entity Defendants could not provide detailed responses.  But Mr.

20  Lieberman did not agree to provide any further written responses.  See Richardson Decl. at ¶ 31.

21  **F.**   **The Entity Defendants' Actively Defended This Case Without Disclosing Documents**

22      **Pursuant to F.R.C.P. 26 et seq and Informally Produced Documents in a Parallel**

23      **State Case While Refusing to Answer Plan Agent's Discovery**

24      Of all of the history that is described herein, perhaps the most egregious action of the

25  Entity Defendants arose in September 2018, at the same time that the Plan Agent was moving in

26  this Court to compel Ace Museum to provide the Plan Agent with documents and discovery

27  responses, when Ace Museum produced 2,286 pages of documents to 400 S. La Brea in a state

28  court action, which go directly to the defense that Ace Museum raised in its response to the Plan

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   Agent's motion for summary judgment (the "<u>Produced Documents</u>").  <u>See</u> Richardson Decl. at ¶

2   32.  When the Plan Agent learned of this production, he issued further Requests for Production on

3   October 9, 2018, to both 400 S. La Brea and Mr. Chrismas, demanding production of the Produced

4   Documents.  The Plan Agent received these Produced Documents in November from 400 S. La

5   Brea.  There was no timely response from Mr. Chrismas.  <u>Id</u>.  The Produced Documents have

6   nothing to do with a legitimate judgment debtor exam by 400 S. La Brea, but are focused entirely

7   on this Adversary Proceeding.  Indeed, when 400 S. La Brea first made its demands on Ace

8   Museum and Chrismas for the Produced Documents in its judgment debtor exam proceeding, Mr.

9   Lieberman noted in an email to 400 S. La Brea's counsel that the requested documents had

10  nothing to do with Chrismas' finances, but were clearly an effort to obtain documents related to

11  this pending adversary proceeding, and astoundingly assured him that Chrismas would be "happy

12  to help your [sic] informally":

13          My recollection is that some of your questions were not reasonably
            calculated to lead to the discovery of assets to satisfy your client's
14          judgment, but were only related to claims and defenses your client
            might assert in the pending adversary action brought by the trustee.
15          **Douglas is happy to help your informally** with those issues, but I
            will not let him be questioned under oath about them based on his 5th
16          Amendment rights.

17  <u>See</u> <u>Exhibit 33</u> to Richardson Decl. (emphasis added).

18          The Produced Documents are not secret or confidential.  They are largely emails.  The Plan

19  Agent may even have copies of most or all of them in his own files.  But that is irrelevant to the

20  fact that Ace Museum and Chrismas were willing to "informally" help 400 S. La Brea obtain

21  discovery relevant to this proceeding—and entirely irrelevant to the judgment debtor exam used

22  for this subterfuge—while refusing to provide <u>any</u> documents to the Plan Agent for over two

23  years, while failing to meet this Court's thirty-day production requirement in the October 18, 2018

24  Order, while refusing to disclose any initial or supplemental disclosures of documents or

25  witnesses, while providing no amended responses to the first set of interrogatories and requests for

26  admission, and while refusing to provide any legitimate responses to the second set of

27  interrogatories and requests for admission.

28          These actions are a clear violation of the discovery rules and demonstrate that the Entity

1  Defendants have no intention of adhering to the rules of discovery or the orders of this Court.

2  **G.**    **The Entity Defendants' California Corporate Status is Now Suspended For Failure to**

3  **Pay State Taxes to the California Franchise Tax Board**

4  In response to Mr. Richardson's meet-and-confer correspondence sent by email on

5  November 26, 2018, Mr. Lieberman responded by email on November 28, 2018, to indicate that

6  he was planning to withdraw from this case on the grounds that the State of California had

7  suspended both Entity Defendants' corporate status, and it was unclear to Mr. Lieberman whether

8  those corporate entities would be revived.  Mr Lieberman wrote:

9  > Following up on my email below, I learned yesterday that both Ace
   > Museum and Ace Gallery New York City have been suspended for
10 > failure to pay taxes.  I don't know when it happened or whether or when
   > they will be reinstated/revived.  However, I <u>cannot represent them so</u>
11 > <u>long as they are tax defaulted</u>. *City of San Diego v San Diegans for Open*
   > *Government* (2016) 2 CA5th 568, 578 ((It is unethical and illegal for a
12 > lawyer, knowing that a corporation is suspended for failing to pay taxes,
   > and thus prohibited from litigating in court, to file an answer on behalf of
13 > the corporation while concealing the suspension from the court and
   > opposing counsel).  Anyone who purports to exercise the rights and
14 > powers of a suspended corporation—possibly including a lawyer who
   > appears on its behalf—is guilty of a misdemeanor. [Rev & Tax. C.
15 > §19719].  In addition, a lawyer who knowingly represents a suspended
   > corporation an conceals this fact from the court may be subject to
16 > sanctions.  *Palm Valley Homeowner Ass'n, Inc. v Design MTC*, 85 CA4th
   > 563.  Based on the foregoing authorities, I intend to inform the court that
17 > the corporations have been suspended.

18 > That said, I am informed that documents responsive to your discovery
   > demands will be delivered electronically to my office tomorrow and I
19 > intend to forward them to you promptly thereafter.

20  See <u>Exhibit 34</u> to Richardson Decl. (emphasis in original).

21  While Mr. Lieberman professed in his email to having just learned of the FTB suspension,

22  Mr. Chrismas has clearly been aware of the suspension since at least early August 2018, yet has

23  permitted Ace Museum to file multiple pleadings in this Court throughout September, October and

24  November 2018, all in violation of California law.  Attached to the Richardson Decl. as <u>Exhibit 38</u>

25  is a true and correct copy of an email produced by the Entity Defendants (discussed below)

26  showing an Ace Museum employee emailing Shirley Holst (who has continued to provide

27  accounting services to Mr. Chrismas and his entities) to ask about the suspension of Ace Museum.

28  Each corporate and litigation-related action taken by Ace Museum or Ace NYC since at least

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1 August 2018 has been in violation of California law.

2 **H.      The Entity Defendants' "Document Production"**

3      Because Mr. Lieberman promised to produce "responsive" documents that he expected to

4 receive on November 28, 2018, and repeated this promise some days later, the Plan Agent delayed

5 filing the instant Motion.  Late on Friday, December 14, 2018, the Plan Agent received the

6 "responsive" documents promised by Mr. Lieberman.  The first part of the production is most of

7 the Produced Documents that Ace Museum had previously produced to 400 S. La Brea.  The

8 second part of the production is 1334 pages of non-responsive documents that appear to be an

9 intentional affront to the discovery process and jurisdiction of this Court (the "Entity Production").

10 See Richardson Decl. at ¶ 35.  Approximately one third of the Entity Production is Mr. Chrismas'

11 personal Uber/Lyft receipts documenting his travels throughout 2017-18, a true and correct copy

12 of an example of which is attached to the Richardson Decl. as Exhibit 35.  There is not a single

13 document request that has been propounded by the Plan Agent to which these receipts could be

14 responsive.

15      Approximately one fifth of the Entity Production is spam emails sent to the Entity

16 Defendants' emails accounts, such as marketing emails addressed to "Hi Executive Director," a

17 true and correct copy of an example of which is attached to the Richardson Decl. as Exhibit 36.

18      And, the remainder of the Entity Production is post-confirmation emails documenting Mr.

19 Chrismas' efforts to sell art through the name of Ace NYC, among other post-confirmation

20 business attempts, a true and correct copy of an example of which is attached to the Richardson

21 Decl. as Exhibit 37.  Given the post-confirmation timing of all of these emails, none of them are

22 remotely responsive to the Plan Agent's requests for production.

23      None of these documents are responsive to the Plan Agent's requests for production.  The

24 Entity Production is not a good faith effort to produce responsive documents, but is an intentional

25 effort to make a mockery out of Mr. Chrismas' responsibilities under the law, and of his

26 obligations under the October 18, 2018 Order issued by this Court.

27 ///

28 ///

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

# III.

## ARGUMENT

The Court may sanction a party that violates a court order or fails to participate in discovery. See Fed. R. Civ. P. 37(b)(2)(i)-(vii).  Of the many options provided for in F.R.C.P. 37(b)(2)(i)-(vii), a Court has the power to render "default judgment against the disobedient party." Fed R. Civ. P. 37(b)(2)(A)(vi).  This remedy is referred to in case law as "terminating sanctions." See Fed. Trade Comm'n v. A to Z Mktg., Inc., 2014 U.S. Dist. LEXIS 191687, 2014 WL 12591916, at *3 (C.D. Cal. Sept. 2, 2014); Conn. Gen. Life. Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1095 n.7 (9th Cir. 2007) (hereinafter "New Images") (defining the phrase "terminating sanctions" to mean a default judgment under Fed. R. Civ. P. 37).

To consider terminating sanctions, the Court must first determine that the sanctions in question are a result of willfulness, fault, or bad faith.  Nat'l Corp. Tax Credit Funds III, IV, VI, VII v. Potashnik, 2010 U.S. Dist. LEXIS 19614, 2010 WL 457626, at *11 (C.D. Cal. Feb. 4, 2010) (hereinafter "National") ("Terminating sanctions are appropriate only if the non-moving party has acted with "willfulness, bad faith, or fault.") (citing Hyde & Draft v. Baker, 24 F.3d 1162, 1166 (9th Cir. 1994)).  Disobedient conduct that is not "outside the control of the litigant" satisfies this standard.  Hyde & Draft, 24 F.3d at 1167.

Upon finding that the Entity Defendants acted in bad faith, the Court should examine the five Malone factors to determine whether terminating sanctions are appropriate.  Those factors include: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990) ("Adriana") (citing Malone v. United States Postal Service, 833 F.2d 128, 130 (9th Cir. 1987), cert. denied sub nom Malone v. Frank, 488 U.S. 819 (1988)).

The undisputed facts support terminating sanctions, as the Entity Defendants have intentionally, knowingly, and repeatedly, refused to provide the Plan Agent with proper discovery responses, or any documents, despite two years of demands by the Plan Agent.  See, e.g., Constr.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  <u>Laborers Tr. Funds for S. California Admin. Co. v. Rosal</u>, 2008 U.S. Dist. LEXIS 79677, 2008

2  WL 4500757, at *1 (C.D. Cal. Oct. 6, 2008) (hereinafter "<u>Rosal</u>") ("Despite formal requests,

3  informal requests, a Court order, and the imposition of monetary sanctions, Defendant has refused

4  to give Plaintiff basic discovery. Consequently, terminating sanctions against Defendant are now

5  appropriate.").  The Entity Defendants' refusal to cooperate in discovery has stymied the Plan

6  Agent's exploration into the true facts of this case against the Entity Defendants, and "[u]ltimately,

7  'the most critical factor to be considered in case-dispositive sanctions is whether a party's

8  discovery violations make it impossible for a court to be confident that the parties will ever have

9  access to true facts.' " <u>Fab Films, LLC v. JP Morgan Chase Bank, N.A.</u>, 2017 U.S. Dist. LEXIS

10  51457, 2017 WL 1287675, at *3 (C.D. Cal. Feb. 28, 2017).

11        Indeed, at the same time that the Entity Defendants have refused to provide proper

12  discovery responses to the Plan Agent, they have actively defended themselves in this case,

13  insisted that they will produce undisclosed witnesses at trial, and "informally" produced relevant

14  documents to co-defendants.  The intentional nature of the Entity Defendants' refusal to properly

15  respond to the Plan Agent's First and Second Discovery Requests is underscored by their

16  offensive production of the Entity Production, composed of personal Uber/Lyft receipts, spam

17  emails from 2017-18, and other post-confirmation emails that are not responsive to any document

18  request.

19        Moreover, given that the <u>Malone</u> factors are satisfied, the Court should strike the Entity

20  Defendants' Answers, deem as true the Plan Agent's well-pleaded allegations in his Fifth

21  Amended Complaint, terminate the claims against the Entity Defendants, and schedule a hearing

22  (with additional briefing) to determine the amount of damages.  <u>Fair Hous. of Marin v. Combs</u>,

23  285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default

24  judgment itself, the general rule is that well-pled allegations in the complaint regarding liability

25  are deemed true.") (citing <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977)) ("The

26  general rule of law is that upon default the factual allegations of the complaint, except those

27  relating to the amount of damages, will be taken as true."); <u>Rosal</u>, 2008 WL 4500757, at *3 (C.D.

28  Cal. Oct. 6, 2008) ("After balancing the relevant factors, the Magistrate Judge recommends that

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  the Court issue an order striking Defendant's answer and entering Defendant's default."). The

2  district court is not required to make detailed findings of fact. Adriana, 913 F.2d 1406, 1414 (9th

3  Cir. 1990). Alternatively, the Court should grant evidentiary sanctions sufficient to preclude the

4  Entity Defendants from asserting defenses or arguments based on the discovery that the Entity

5  Defendants have refused to produce. Fed. R. Civ. P. 37(b). As set forth below, the discovery that

6  the Entity Defendants have refused to provide goes directly to the claims against them, as well as

7  to the affirmative defenses and arguments they have made to date.

8  **A.**    **Terminating Sanctions Are Appropriate Because The Entity Defendants' Non-**

9         **Compliance with Discovery Is Due to Willfulness, Fault, or Bad Faith**

10        The Entity Defendants have refused to produce any legitimate discovery responses to two

11 sets of requests for production, interrogatories, and requests for admissions. For over two years,

12 these parties have evaded their responsibility by improperly relying on improper objections. The

13 Entity Defendants began their discovery obstruction by claiming a non-existent corporate Fifth

14 Amendment privilege, and then continued thereafter to refuse to provide any substantive responses

15 on the grounds that Chrismas has asserted his own Fifth Amendment privilege. The case law is

16 clear – the privilege against self-incrimination only protects *natural persons.* It may *not be*

17 *asserted* by a *corporation*, partnership or other *entity.* See Hale v. Henkel, 201 US 43, 69-70, 26

18 S.Ct. 370, 376-377 (1906) (overruled on other grounds in Murphy v. Waterfront Comm'n of New

19 York Harbor (1964) 378 US 52, 84 S.Ct. 1594)—corporation; United States v. White, 322 US

20 694, 699, 64 S.Ct. 1248, 1251 (1944)—labor union; Bellis v. United States, 417 US 85, 100-101,

21 94 S.Ct. 2179, 2189-2190 (1974)—law partnership.

22        Moreover, the Fifth Amendment privilege does not apply to requests for production of a

23 corporation's business records. Doe v. United States (In re Grand Jury Subpoena), 383 F.3d 905,

24 909 (9th Cir. 2004) ("Where the preparation of business records is voluntary, there is no

25 compulsion present, and consequently the contents of those records are not privileged by the Fifth

26 Amendment."); Braswell v. United States, 487 U.S. 99, 104, 108 S. Ct. 2284, 101 L. Ed. 2d 98

27 (1988) (a corporate "custodian may not resist a subpoena for corporate records on Fifth

28 Amendment grounds."). Yet the Entity Defendants did not produce any responsive documents to

1    the Plan Agents discovery until the Plan Agent discovered the informal production of the

2    Produced Documents to 400 S. La Brea in a state court judgment debtor exam.  The evasive nature

3    of this intentionally "informal" production outside of this adversary proceeding, combined with

4    the offensive nature of the Uber/Lyft receipts and spam emails that make up the Entity Production,

5    demonstrate that not only do the Entity Defendants have no intention of fulfilling their

6    responsibilities under the federal rules of discovery, but they intend to act in complete disregard of

7    all applicable rules, responsibilities, and orders of this Court.

8         This Court also ordered the Entity Defendants to produce written responses to the

9    discovery by November 16, 2018.  The Entity Defendants, however, violated this Court's October

10   18, 2018 Order requiring substantive responses, and instead produced Amended Responses that

11   repeat the same inability to provide any material information, this time asserted by an "agent" who

12   stated that he was incapable of understanding the corporate records.  The Entity Defendants'

13   repeated delays and obstruction rises to the level of bad faith.  <u>Computer Task Group, Inc. v.

14   Brotby</u>, 364 F.3d 1112, 1115 (9th Cir. 2004) (finding willfulness where defendant "engaged in a

15   consistent, intentional, and prejudicial practice of obstructing discovery by not complying with

16   repeated court orders and not heeding multiple court warnings"); <u>Condon v. Condon</u>, 2008 U.S.

17   Dist. LEXIS 126350, 2008 WL 11342681, at *3 (C.D. Cal. May 5, 2008) (finding that

18   Defendants' "failure to respond to multiple discovery requests or appear at properly noticed

19   depositions evidences 'willfulness, fault, [and] bad faith" on the part of the Defendants.' ").

20        The Entity Defendants received multiple warnings during the meet and confer

21   communications with the Plan Agent's counsel, as well as from this Court in its October 18, 2018

22   Order, but the Entity Defendants have refused to respond to discovery requests in an appropriate

23   manner, and have violated (and continue to violate) every aspect of the Court's October 18, 2018

24   Order.   <u>See</u> Richardson Decl., at ¶¶ 24-31.  Accordingly, terminating sanctions are justified.

25   <u>Dreith v. Nu Image, Inc.</u>, 648 F.3d 779, 788 (9th Cir. 2011) (noting that the standard on appeal for

26   terminating sanctions is whether the record leaves the "definite and firm conviction that it was

27   clearly outside the acceptable range of sanctions.") (citing <u>Malone</u>, 833 F.2d at 130).

28        The guiding question is whether The Entity Defendants' disobedient conduct was within

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   their control.  Fab Films, 2017 WL 1287675, at *3 ("The willfulness standard is met by

2   disobedient conduct that is **within the offending party's control**.") (emphasis added); Stars'

3   Desert Inn Hotel & Country Club, Inc. v. Hwang, 105 F.3d 521, 525 (9th Cir. 1997) (affirming

4   entry of default judgment against California defendant who failed to demonstrate that his "failure

5   to pay sanctions or to comply with the magistrate judge's order to submit to deposition by

6   February 10 was **beyond his control**") (emphasis added); Matter of Visioneering Const., 661 F.2d

7   119, 121 (9th Cir. 1981) (default judgment justified where party engaged in "a litany of willful

8   discovery abuses, including failure to attend a noticed deposition"); National, 2010 WL 457626, at

9   *4 ("Delay, failure to appear for depositions, failure to answer interrogatories resulting from a

10  party being out of town, and misunderstanding a party's own counsel are not matters outside of a

11  party's control.") (citing Henry v. Gill Indus., Inc., 983 F.2d 943, 949 (9th Cir. 1993).

12          The disobedient conduct at question here – namely the Entity Defendants' refusal to

13  participate in discovery in any meaningful way, and the knowing disobedience of a court order –

14  was plainly within the Entity Defendants' control.  Hyde & Draft, 24 F.3d at 1167.  The Entity

15  Defendants' violations of the Court's October 18, 2018 Order – specifically failing to perform

16  basic litigation tasks like serving valid responses and producing responsive documents evidences

17  willfulness, fault, and bad faith.  Fab Films, 2017 WL 1287675, at *2; Dreith, 648 F.3d at 788;

18  United States v. $333,806.93 in Proceeds from Foreclosure of Real Prop. Located at 26948 Pac.

19  Coast Highway, Malibu, CA, 2010 U.S. Dist. LEXIS 105545, 2010 WL 3733932, at *1 (C.D. Cal.

20  Aug. 30, 2010) ("Under Rule 37, terminating sanctions exist as a possible remedy for willful

21  noncompliance with a discovery order.").  The Entity Defendants will likely argue that they

22  complied with the October 18, 2018 Order by providing discovery responses that indicate that they

23  cannot provide proper discovery responses, as demonstrated by the claims of their agent, as this

24  has been the position taken in meet-and-confer discussions.  But it is a particularly facetious

25  argument to assert that the appointment of a discovery "agent" who states that he is incapable of

26  understanding corporate records that he hasn't even reviewed somehow entitles the corporate

27  defendant to a free pass on discovery, yet remain entitled to present evidence and witnesses at

28  trial.  Their subsequent production of Uber/Lyft receipts and spam emails from 2017-18

1   underscores the bad faith.

2       The Entity Defendants' actions to obstruct a resolution of this case on the merits is also

3   relevant.  See Compass Bank v. Morris Cerullo World Evangelism, 104 F. Supp. 3d 1040, 1053

4   (S.D. Cal. 2015) (citing Smith v. Smith, 145 F.3d 335, 344 (5th Cir. 1998)) ("In determining

5   whether the disobedient conduct was beyond the party's control, "[t]he court may consider the

6   party's motivations, and can consider his 'dilatory and obstructive conduct' in the case and other

7   related cases.").  In this case, The Entity Defendants' counsel has repeatedly failed to respond to

8   multiple sets of discovery with anything beyond improper objections.  The Plan Agent's First

9   Discovery Requests still have no responses other than the original improper responses asserting a

10  non-existent corporate Fifth Amended privilege.  The Entity Defendants have refused to produce

11  proper responses to any of the Plan Agent's discovery, yet have actively litigated the case to

12  protect their interests, as well as those of Mr. Douglas Chrismas.

13      The Entity Defendants cannot point to their FTB suspension as an excuse for failing to

14  respond to discovery over the past two years, particularly as they have continued to file pleadings

15  in this Court with knowledge of their own suspension since early August 2018.  Suspension is, by

16  itself, sufficient grounds to support entry of default.  United States v. Healthwin-Midtown

17  Convalescent Hosp. & Rehab. Ctr., Inc., 511 F. Supp. 416, 418 (C.D. Cal. 1981) (striking a

18  defendant corporation's answer and entering default judgment against that defendant because that

19  corporation had been suspended by the State of California).  But this Motion is not based upon the

20  Entity Defendants' suspension.  Rather, this Motion is based upon the Entity Defendants' flagrant

21  abuse of the discovery process for more than two years.  FTB suspension is simply a factor that

22  goes to whether the Entity Defendants may appear to oppose this Motion without violating

23  California law.  Even if the Entity Defendants promise to revive their corporate status, it will be

24  irrelevant to all of the grounds that are advanced in this Motion for entry of terminating sanctions.

25      The Entity Defendants' litigation of the case has been strategically calculated to take full

26  advantage of the procedural rules, but without providing a single responsive document, response,

27  admission or witness designation, thereby preventing the Plan Agent from preparing his own case-

28  in-chief or preparing to refute potential affirmative defenses.  The violation of a Court order to

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  advance a strategic consideration "only bolsters the finding of willfulness." See National, 2010

2  WL 457626, at *5 (C.D. Cal. Feb. 4, 2010) (citing Commodity Futures Trading Comm'n v. Noble

3  Metals Int'l, Inc., 67 F.3d 766, 771 (9th Cir. 1995) (finding that a party's "calculated course of

4  conduct" was willful).

5  **B.    The Five Malone Factors Support Terminating Sanctions**

6          The Ninth Circuit has identified five factors that a Court must consider in determining

7  whether to impose terminating sanctions. Adriana, 913 F.2d 1406, 1412 (the five factors are: "(1)

8  the public's interest in expeditious resolution of litigation; (2) the court's need to manage its

9  docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of

10  cases on their merits; and (5) the availability of less drastic sanctions.") (citing Malone, 833 F.2d

11  128, 130 (9th Cir. 1987)); Thompson v. Housing Authority, 782 F.2d 829, 831 (9th Cir. 1986)

12  (upholding default, noting the judge's "patience").

13          The Court must consider all the Malone factors, but no single factor is dispositive.

14  $333,806.93 in Proceeds, 2010 WL 3733932, at *2 (C.D. Cal. Aug. 30, 2010) ("Consideration of

15  any or all of these factors by a district judge is not mandatory.  The Circuit has provided these

16  factors simply as a roadmap to allow a district judge 'to think about what to do.' "); In re

17  Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d 1217, 1226 (9th Cir. 2006) ("These

18  factors are "not a series of conditions precedent before the judge can do anything," but a "way for

19  a district judge to think about what to do.") (quoting Valley Eng'rs Inc. v. Elec. Eng'g Co., 158

20  F.3d 1051, 1057 (9th Cir. 1998); National, 2010 WL 457626, at *6 (C.D. Cal. Feb. 4, 2010)

21  ("Generally, in order to grant terminating sanctions, the Court must find at least four factors

22  supporting dismissal or at least three factors "strongly" supporting such sanctions.").

23          The Entity Defendants' violation of the Court's October 18, 2018 Order simplifies the

24  analysis and makes the third and fifth factors "decisive." See Adriana, 913 F.2d at 1412 ("Where

25  a court order is violated, the first two factors support sanctions and the fourth factor cuts against a

26  default. Therefore, it is the third and fifth factors that are decisive."). The Court should look at all

27  of the Entity Defendants' conduct. Rosal, 2008 WL 4500757, at *2 ("In evaluating the propriety

28  of sanctions, the Court considers 'all incidents of a party's misconduct.' ") (citing Adriana, 913

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   F.2d at 1411).

2   **1.    The First _Malone_ Factor – The Public Interest Favors Terminating Sanctions**

3   **Where a Party Has Violated a Court Order**

4   The first <u>Malone</u> factor supports sanctions because the Entity Defendants violated the

5   Court's October 18, 2018 Order.  <u>Adriana</u>, 913 F.2d at 1412 ("Where a court order is violated, the

6   first two factors support sanctions. . . .").  The public has a clear interest in the "expeditious

7   resolution of litigation" and a party's failure to follow the Court's direct orders undermines that

8   court system's ability to adjudicate disputes.  Further, the Entity Defendants' main goal in this

9   litigation has been to delay any real resolution, such that the Entity Defendants' actions are

10  diametrically opposed to the public interest.

11  **2.    The Second _Malone_ Factor – The Court's Need to Manage Its Docket Favors**

12  **Terminating Sanctions Where a Party Has Violated a Court Order**

13  The second <u>Malone</u> also factor supports sanctions because the Entity Defendants violated

14  the Court's October 18, 2018 Order.  <u>Adriana</u>, 913 F.2d at 1412 ("Where a court order is violated,

15  the first two factors support sanctions. . . .").  The Court's inherent need to manage its own docket

16  is undermined when a party refuses to comply with direct court orders.  The Entity Defendants'

17  actions have undermined this Court's ability and authority to manage its docket.  Specifically, the

18  Entity Defendants' actions have "greatly impeded resolution of the case and prevented the [Court]

19  from adhering to its trial schedule."  <u>See</u> <u>Malone</u>, 833 F.2d at 128; <u>National</u>, 2010 WL 457626, at

20  *6.

21  **3.    The Third _Malone_ Factor – Plan Agent Has Been Prejudiced Here By The**

22  **Entity Defendants' Refusal to Respond to Discovery**

23  Plan Agent has been prejudiced by the Entity Defendants' refusal to participate in this

24  litigation in good faith – and is at risk of further prejudice from the Entity Defendants' refusal to

25  participate in this litigation.  The Entity Defendants' refusal to respond to discovery in any

26  meaningful manner or to produce responsive documents as ordered is sufficient to establish

27  prejudice. <u>Adriana</u>, 913 F.2d at 1412 (citing <u>Securities and Exchange Comm'n v. Seaboard Corp.</u>,

28  666 F.2d 414, 417 (9th Cir. 1982)).  The Court has already found the requested discovery to be

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1  discoverable and relevant to the litigation, such that the Entity Defendants' refusal to produce

2  valid responses or responsive documents is prejudicial.  Specifically, the Court ordered the Entity

3  Defendants to produce responses to the discovery and documents relevant to the Plan Agent's

4  discovery of key information regarding the facts of this case, and pertaining to the Entity

5  Defendants' legal positions.  See Condon v. Condon, 2008 WL 11342681, at *3 (C.D. Cal. May 5,

6  2008) (finding that Defendant's actions, including "failing to respond to written discovery, failing

7  to appear for depositions, and destroying evidence . . . greatly prejudice Plaintiffs by denying them

8  access to evidence necessary to prove their claims.").

9          The Entity Defendants have refused to respond to discovery in any good faith manner, and

10  have failed to produce any responsive documents (absent subterfuge by informal production to

11  400 S. La Brea).  In Adriana, the court held that "the repeated failure of Adriana to appear at

12  scheduled dispositions compounded by their continuing refusal to comply with court-ordered

13  production of documents constitutes an interference with the rightful decision of the case."

14  Adriana, 913 F.2d at 1412 ("A defendant suffers prejudice if the plaintiff's actions impair the

15  defendant's ability to go to trial or threaten to interfere with the rightful decision of the case.").

16  Further, the Entity Defendants' conduct has "unnecessarily delayed the resolution of this case and

17  that such delay necessarily prejudices their case because "[e]vidence becomes stale, witness

18  memories fade and documents (still not produced by defendants) are lost.' " Id.  Further still, the

19  Entity Defendants' delay has contributed to increased litigation expenses for the estate, and the

20  Entity Defendants' tactics have forced the Plan Agent to waste valuable resources. Id.  The

21  prejudice is not prospective.  It has already occurred, and the Entity Defendants cannot cure this

22  prejudice even if they produce documents or provide legitimate responses to the discovery.  See

23  Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) ("Last-minute tender of

24  documents does not cure the prejudice to opponents nor does it restore to other litigants on a

25  crowded docket the opportunity to use the courts.") (citing G--K Properties v. Redevelopment

26  Agency of the City of San Jose, 577 F.2d 645, 647-48 (9th Cir. 1978)).

27  ///

28  ///

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

4.    **The Fourth _Malone_ Factor – Public Policy Concerns Here Do Not Condone the Entity Defendants' Conduct**

While public policy favors the disposition of cases on the merits, the Entity Defendants' actions have already prevented any such decision on the merits. National, 2010 WL 457626, at *8 ("The fourth factor does not weigh against terminating sanction when the offending party fails to comply with discovery obligations in a way that prevents the case from moving toward a resolution on the merits…") (*citing* Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1234 (9th Cir. 2006) ("[T]he district court acknowledged that disposition should be on the merits, but found that in light of the inability of many of the named plaintiffs to provide any information that only they possessed regarding the critical elements of their claims, it was impossible to dispose of the case on the merits."); In re Exxon Valdez, 102 F.3d 429, 433 (9th Cir. 1996) ("The overwhelming weight of the factors supporting dismissal overcomes the policy favoring disposition of cases on their merits. But even that policy lends little support to appellants, whose total refusal to provide discovery obstructed resolution of their claims on the merits.").

The Entity Defendants' actions in this litigation are precisely the type of actions that weigh in support of terminating sanctions. See A to Z Mktg., 2014 WL 12591916, at *3 ("The fourth factor, the public policy favoring disposition of cases on the merits, weighs against terminating sanctions, but courts have held that terminating sanctions are nonetheless appropriate when a party refuses to participate in litigation.") (*citing* Hyde & Draft v. Baker, 24 F.3d 1162, 1167 (9th Cir. 1994)); $333,806.93 in Proceeds, 2010 U.S. Dist. LEXIS 105545, at *11, 2010 WL 373393 at *4. Without the facts and evidence necessary to prove the elements of its claims the Plan Agent cannot present a case on the merits.  Public policy certainly does not support the outcome that parties such as the Entity Defendants can obstruct discovery and thereby evade judgment.

5.    **The Fifth _Malone_ Factor – Less Drastic Sanctions Are Not Likely to Be Effective**

The Entity Defendants have made it abundantly clear that they do not intend to participate in this litigation.  The Entity Defendants' response to this Court's October 18, 2018 Order in the form of Amended Responses that refuse to provide information in the name of an "agent"

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    incapable of understanding corporate records, and the Entity Production that is clearly an

2    intentional insult to federal law and the jurisdiction of this Court, demonstrates that lesser

3    sanctions will not likely yield a different result.  Nonetheless, to comply with the case law, the

4    Court may give appropriate consideration to whether less drastic sanctions would be feasible

5    here—and after that consideration, the Court should decide that those less drastic sanctions would

6    be ineffective.  See Malone, 833 F.2d at 132 ("We have indicated a preference for explicit

7    discussion by the district court of the feasibility of alternatives when ordering dismissal. However,

8    we have never held that explicit discussion of alternatives is necessary for an order of dismissal to

9    be upheld. Under the egregious circumstances present here, where the plaintiff has purposefully

10    and defiantly violated a court order, it is unnecessary (although still helpful) for a district court to

11    discuss why alternatives to dismissal are infeasible.") (emphasis added, citations omitted.); G-K

12    Properties, 577 F.2d at 647-48.

13         The Entity Defendants cannot reasonably claim to be surprised by this Motion after failing

14    to follow this Court's previous order in any manner other than to demonstrate that they will not

15    respond to the Plan Agent's discovery in a good faith manner.  See Adriana, 913 F.2d at 1413

16    ("We have held that an explicit warning is not always necessary.") (citing U.S. for Use & Ben. of

17    Wiltec Guam, Inc. v. Kahaluu Const. Co., 857 F.2d 600, 605 (9th Cir. 1988) ("An explicit warning

18    is not always required, at least in a case involving 'egregious circumstances.' ")); Malone, 833

19    F.2d at 133 (finding no explicit warning necessary where harsh sanction of dismissal should not

20    have surprised plaintiff who willfully violated court's order).  Moreover, the Plan Agent raised the

21    request for terminating sanctions in his Motion to Compel, acknowledging that the request would

22    be most appropriately considered at a future hearing if the Entity Defendants did not comply with

23    an order compelling production.  Those circumstances have now come to pass.

24         Thus, while the case law encourages a trial court to consider lesser sanctions, under

25    egregious circumstances such as in this case, the imposition of lesser sanctions first is not

26    necessary.  See National, 2010 WL 457626, at *6 (C.D. Cal. Feb. 4, 2010) ("However, "despite all

27    this elaboration of factors, [the Ninth Circuit has] said that it is not always necessary for the court

28    to impose less serious sanctions first, or to give any explicit warning.") (quoting Valley Eng'rs,

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    158 F.3d at 1507 (citing Adriana, 913 F.2d at 1413.  Here, Plan Agent cannot proceed without

2    discovery, such that terminating sanctions are appropriate.  The Entity Defendants know what they

3    are doing, and their counsel is an experienced lawyer who also knows what he is doing, such that

4    lesser sanctions would be futile. See A to Z Mktg., 2014 WL 12591916, at *3.

5    **C.    Upon Awarding Terminating Sanctions, the Court Should Hold a Hearing as to the**

6    **Amount of Damages**

7            The Court can use a default to establish liability for damages.  Adriana, 913 F.2d at 1414

8    ("The default conclusively establishes the liability of Adriana. Therefore, there was sufficient

9    evidence to support the trial court's award of damages to Thoeren.") (citation omitted.)

10           If the amount of damages is "capable of mathematical calculation" through evidence, a

11   court may enter default judgment without a hearing on damages.  Twitch Interactive, Inc. v.

12   Johnston, 2018 U.S. Dist. LEXIS 184300 *25, 2018 WL 1449525 (N.D. Cal. January 22, 2018);

13   see also Davis v. Fendler, 650 F.2d 1154, 1163 (9th Cir. 1981) ("a default judgment for money

14   may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of

15   mathematical calculation").

16           The Plan Agent asserts that the claims to recover the outstanding loan obligation owed by

17   Ace Museum may be determined by the statements of Mr. Chrismas that were filed in the Debtor's

18   monthly operating reports ("MORs"), signed under penalty of perjury.  While the Plan Agent

19   alleges that the loan balance stated in the MORs has been fraudulently reduced by Mr. Chrismas,

20   the last MOR that was filed under his signature states that the museum owes the Debtor

21   $3,187,539.80.  See Exhibit 39 to Richardson Decl., at p. 406, and Exhibits 40 and 41.  The Plan

22   Agent contends that the funds that were diverted from the Debtor to "pay down" the museum loan

23   will be encompassed within the damages amount on his fraud-based claims.

24           In addition to the damages requested above, F.R.C.P. 37 requires that a court award fees

25   and costs associated with the expense of compelling discovery and seeking terminating sanctions:

26                   Instead of or in addition to the orders above, the court must order the
                     disobedient party, the attorney advising that party, or both to pay the
27                   reasonable expenses, including attorney's fees, caused by the failure,
                     unless the failure was substantially justified or other circumstances
28                   make an award of expenses unjust.

29

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1    F.R.C.P. 37(b)(2)(C). The Plan Agent has incurred $47,182.50 in fees and $18.54 in costs (total,

2    $47,201.04) preparing and advancing his Motion to Compel, meet and conferring with Ace

3    Museum counsel, as well as preparing the instant Motion for terminating sanctions, and requests

4    that such fees and costs be added to any judgment. See Richardson Decl. at ¶38.

5         For all claims other than the claims to recover the museum loan, the court must hold a

6    hearing as to the amount of damages. Geddes, 559 F.2d at 560. At that hearing, Plan Agent will

7    present a calculation based on the business records of Ace Museum and Ace NYC that were

8    housed at Debtor's offices. Since the Entity Defendants have refused to produce any such

9    documents, they should be precluded from now producing documents or evidence to counter the

10   damage amounts proved at the hearing.

11        The Plan Agent acknowledges that where, as here, there are multiple defendants to the

12   same claims set for default against co-defendants, issues of damages may properly be continued to

13   trial, rather than forcing co-defendants to seek leave to appear in an earlier damages hearing to

14   address issues that might impact the outcome of the trial against them. Garamendi v. Henin, 683

15   F.3d 1069, 1083 (9th Cir. 2012) (noting that court followed "proper" procedure by determining

16   damages of defaulting defendant following trial against non-defaulting defendants).

17        Wherefore, the Plan Agent requests entry of judgment at this time, with damages on the

18   breach of loan claim and common counts set at $3,187,539.80, and a hearing on the damages for

19   all other claims for relief set to take place contemporaneous with trial.

20   **D.    Alternatively, The Court Should Grant Evidentiary Sanctions and Monetary**

21          **Sanctions Against the Entity Defendants**

22        If the Court stops short of granting terminating sanctions, the Court should preclude the

23   Entity Defendants from presenting evidence or argument that corresponds to the issues upon

24   which the Plan Agent has sought discovery, but that they have failed to produce. Such preclusion

25   sanctions mitigate the prejudice that has resulted and will continue to result from the Entity

26   Defendants' actions. The Court should recommend sanctions in the form of entry of the facts

27   below as deemed established for purposes of this litigation, such that the Entity Defendants and

28   their counsel are precluded from presenting argument or evidence to the contrary. The Court

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

1   should, at a minimum, impose the following sanctions:

2       1.      The Entity Defendants may not present any evidence in support of any of their

3   affirmative defenses, or present any other support of them.

4       2.      The Entity Defendants may not oppose the Plan Agent's claims, including by

5   presenting evidence (through direct or cross-examination or otherwise) against them.  This

6   includes, but is not limited to, preclusion from presenting any evidence regarding:

7       a.      Ace NYC and Ace Museum were conduits used by Mr. Chrismas to fraudulently

8               convey Debtor's funds away from the Bankruptcy Estate;

9       b.      Ace NYC and Ace Museum were conduits for the purposes of transferee liability;

10      c.      Ace NYC and Ace Museum had no active contracts demonstrating the entities had

11              any viable interests in the business of Debtor;

12      d.      All of the inventory sold through Ace NYC belonged to Debtor or was subject to

13              the Debtor's consignment/resale rights;

14      e.      Ace NYC and Ace Museum were not entitled to receive any of Debtor's funds; and

15      f.      Ace NYC and Ace Museum committed fraud.

16      Finally, no matter what else it does, the Court should impose monetary sanctions against

17  the Entity Defendants, payable to the estate, in an amount equal to the Plan Agent's and his

18  counsel's expenses and attorney's fees, related to the discovery at issue, and this Motion.  And

19  finally, the Court should impose any further sanctions it deems appropriate under its inherent

20  authority.

21                                      **IV.**

22                                  **CONCLUSION**

23      Wherefore, the Plan Agent respectfully requests that the Court grant Plaintiffs' Motion for

24  Terminating Sanctions, strike Defendants' combined Answers (Dkt. No. 371), and find the Entity

25  Defendants liable for the claims asserted against them in the Fifth Amended Complaint (the First

26  through Eleventh, and Twentieth through Twenty-Fourth claims for relief).

27      The Plan Agent further requests entry of judgment at this time on all claims for relief, with

28  damages established for the breach of contract claim and common count claim (Twentieth through

1    Twenty-Fourth claims for relief) set at $3,187,539.80, plus $47,201.04 in fees and costs, and a

2    hearing on the damages for all other claims for relief (the First through Eleventh claims for relief),

3    set to take place contemporaneous with trial.

4        Alternatively, the Court should grant evidentiary sanctions precluding the Entity

5    Defendants from disputing facts relating to the discovery requests that the Plan Agent propounded,

6    or presenting evidence at trial.

7

8    DATED:  December 19, 2018         **Sulmeyer**Kupetz
                                        A Professional Corporation

9

10

11                              By:       */s/ Victor A. Sahn*

12                                    Victor A. Sahn
                                   David J. Richardson

13                                    Attorneys for Sam Leslie, Plan Agent

14    DATED:  December 19, 2018         Law Offices of Carolyn A. Dye

15

16

17                              By:       */s/ Carolyn A. Dye*

18                                    Carolyn A. Dye
                                   Attorneys for Sam Leslie, Plan Agent

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071-1406.

A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF'S NOTICE OF MOTION AND MOTION PURSUANT TO F.R.C.P. 37 AND F.R.B.P. 7037 TO ISSUE TERMINATING SANCTIONS AGAINST DEFENDANTS ACE MUSEUM AND ACE GALLERY NEW YORK CORPORATION FOR BREACHING THE COURT'S OCTOBER 18, 2018 ORDER TO RESPOND TO DISCOVERY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

## 1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 19, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Simon Aron on behalf of Interested Party Courtesy NEF - saron@wrslawyers.com
- Jason Balitzer on behalf of Plaintiff, Cross/Counter-Defendant Sam Leslie as Trustee of the Plan Trust for Art & Architecture Books of the 21st Century - jbalitzer@sulmeyerlaw.com, jbalitzer@ecf.inforuptcy.com; dwalker@ecf.inforuptcy.com; kmccamey@sulmeyerlaw.com
- Keith Patrick Banner on behalf of Defendant 400 S La Brea, LLC a California limited liability company - kbanner@greenbergglusker.com, sharper@greenbergglusker.com; calendar@greenbergglusker.com
- Brian L Davidoff on behalf of Defendant, Cross-Claimant 400 S La Brea, LLC a California limited liability company - bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com; jking@greenbergglusker.com
- Carolyn A Dye on behalf of Plaintiff Sam Leslie - trustee@cadye.com
- Fahim Farivar on behalf of Defendant, Cross-Claimant 400 S La Brea, LLC a California limited liability company - ffarivar@foley.com, amcdow@foley.com; khernandez@foley.com; scvasquez@foley.com
- Alan W Forsley on behalf of Defendants Ace Museum, a California corporation; Ace Gallery New York Corporation, a California corporation; Ace Gallery New York, Inc., a dissolved New York corporation; Douglas Chrismas - alan.forsley@flpllp.com, awf@fkllawfirm.com, awf@fl-lawyers.net,addy.flores@flpllp.com
- J. Bennett Friedman on behalf of Defendant Jennifer Kellen - jfriedman@flg-law.com, msobkowiak@flg-law.com; jmartinez@flg-law.com
- Asa S Hami on behalf of Plaintiff, Cross/Counter-Defendant Sam Leslie as Trustee of the Plan Trust for Art & Architecture Books of the 21st Century - ahami@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com; agonzalez@ecf.inforuptcy.com; ahami@ecf.inforuptcy.com
- Matthew P Kelly on behalf of Interested Party Courtesy NEF - mkelly@sulmeyerlaw.com
- Daniel A Lev on behalf of Plaintiff, Cross/Counter-Defendant Sam Leslie as Trustee of the Plan Trust for Art & Architecture Books of the 21st Century - dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com; dlev@ecf.inforuptcy.com; dwalker@sulmeyerlaw.com
- Ashley M McDow on behalf of Defendant, Cross/Counter-Claimant 400 S La Brea, LLC a California limited liability company - amcdow@foley.com, scvasquez@foley.com; Ffarivar@foley.com
- Krikor J Meshefejian on behalf of Interested Party Courtesy NEF - kjm@lnbrb.com
- Susan I Montgomery on behalf of Interested Party Susan I. Montgomery - susan@simontgomerylaw.com, assistant@simontgomerylaw.com; simontgomerylawecf.com@gmail.com; montgomerysr71631@notify.bestcase.com
- Kurt Ramlo on behalf of Interested Party Courtesy NEF - kr@lnbyb.com, kr@ecf.inforuptcy.com
- David J Richardson on behalf of Plaintiff, Cross-Defendant Sam Leslie - drichardson@sulmeyerlaw.com, drichardson@ecf.inforuptcy.com
- Ronald Rus on behalf of Defendant 400 S La Brea, LLC a California limited liability company - rrus@brownrudnick.com, tlangford@brownrudnick.com
- Victor A Sahn on behalf of Plaintiff, Cross-Defendant Sam Leslie as Trustee of the Plan Trust for Art & Architecture Books of the 21st Century - vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com; agonzalez@ecf.inforuptcy.com; asokolowski@sulmeyerlaw.com; vsahn@ecf.inforuptcy.com
- Michael C Schneidereit on behalf of Interested Party AERC Desmond's Tower, LLC - mschneidereit@jonesday.com, scollymore@jonesday.com; tckowalski@jonesday.com
- David B Shemano on behalf of Defendants Ace Museum, a California corporation/Douglas Chrismas - dshemano@shemanolaw.com
- Jonathan Shenson on behalf of Interested Party Jonathan Seligmann Shenson - jshenson@shensonlawgroup.com
- Mark Shinderman on behalf of Mediator Mark Shinderman - mshinderman@milbank.com, dmuhrez@milbank.com
- United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov
- Michael W Vivoli on behalf of Defendant, Cross-Claimant 400 S La Brea, LLC a California limited liability company/Witness Fortuna Asset Management/Witness Kamran Gharibian - auzcategui@vivolilaw.com, sbrown@vivolilaw.com
- Jessica Vogel on behalf of Interested Party Courtesy NEF - Jvogel@sulmeyerlaw.com, jvogel@ecf.inforuptcy.com; mviramontes@sulmeyerlaw.com
- Howard J Weg on behalf of Defendant Ace Museum, a California corporation - hweg@robinskaplan.com
- Beth Ann R Young on behalf of Interested Party Courtesy NEF - bry@lnbyb.com

☐ Service information continued on attached page.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                   **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL**:

On (*date*) December 19, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Attorneys for Cathay Bank** - (courtesy copy)
Reed S. Waddell, Esq.
Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Blvd, 19th Floor
Los Angeles, CA 90017

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) December 19, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Robert Kwan – **VIA PERSONAL DELIVERY**
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012 - Bin outside of Suite 1682

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 19, 2018 | Andrea Gonzalez | */s/ Andrea Gonzalez* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**