Victor A. Sahn (CA Bar No. 97299)
vsahn@sulmeyerlaw.com
David J. Richardson (CA Bar No. 168592)
drichardson@sulmeyerlaw.com
Asa S. Hami (CA Bar No. 210728)
ahami@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Carolyn A. Dye (CA Bar No. 97527)
Law Offices of Carolyn A. Dye
3435 Wilshire Boulevard, Ste 990
Los Angeles, CA 90010
Telephone: 213-368-5000
Facsimile: 213-368-5009

Attorneys for Sam Leslie, Plan Agent

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ART & ARCHITECTURE BOOKS OF THE 21st CENTURY,<br><br>Debtors.<br><br>―――――――――――――――――<br>SAM LESLIE, PLAN AGENT FOR ART & ARCHITECTURE BOOKS OF THE 21st CENTURY,<br><br>Plaintiff,<br>vs.<br><br>ACE GALLERY NEW YORK CORPORATION, a California corporation; et al.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS AND CROSSCLAIMS | Case No. 2:13-bk-14135-RK<br><br>Chapter 11<br><br>Adv No. 2:15-ap-01679-RK<br><br>Consolidated with Adv. No. 2:14-ap-01771-RK and Adv. No. 2:15-ap-01680-RK<br><br>**REPLY OF PLAN AGENT IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS OF DOUGLAS CHRISMAS**<br><br>[FILED CONCURRENTLY WITH DECLARATION OF DAVID J. RICHARDSON, REQUEST FOR JUDICIAL NOTICE, AND APPENDIX OF LEXIS CASE LAW]<br><br>Date:    March 13, 2019<br>Time:    1:30 p.m.<br>Place:   U.S. Bankruptcy Court<br>         Courtroom 1675<br>         255 E. Temple St.<br>         Los Angeles, CA 90012 |

DJR\ 2659827v3

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I. INTRODUCTION ...............................................................................................................1

II. LEGAL ARGUMENT .........................................................................................................1

    A. The Counterclaims Brought in the Name of Douglas Chrismas Fail to State a Claim ......................................................................................................................1

        1. Application of Judicial Estoppel Post-Confirmation is a Per Se Rule ...........1

        2. Omissions of Property Interests Are Affirmatively Fraudulent .....................3

        3. Chrismas' Omissions Go Far Beyond Section 14 of the SOFA .....................5

        4. Section 14 of the SOFA Applies to the Property Right Asserted by Chrismas ...........................................................................................................7

        5. The Plan Also Estops the Counterclaims .......................................................8

        6. Dismissal Should Be Without Leave to Amend ...........................................10

    B. The Conversion Claim Should Be Dismissed ............................................................11

        1. The Plan Agent's Status Report Does Not Support a Conversion Claim ...............................................................................................................11

        2. The Conversion Claim Is an Improper Claim Against the Plan Agent ........12

    C. The Counterclaims Brought in the Name of Ace Museum Should Be Dismissed ...................................................................................................................14

III. CONCLUSION .................................................................................................................14

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

# TABLE OF AUTHORITIES

**Page**

**CASES**

Adelphia Recovery Trust v. Goldman, Sachs & Co.,
  748 F.3d 110 (2d Cir. 2014) .................................................................................... 4, 5

Ah Quin v. Cty. of Kauai Dep't of Transp.,
  733 F.3d 267 (9th Cir. 2013) .................................................................................. passim

An-Tze Cheng v. K & S Diversified Invs., Inc. (In re An-Tze Cheng),
  308 B.R. 448 (B.A.P. 9th Cir. 2004) ........................................................................... 2

Berkley v. Dowds,
  152 Cal. App. 4th 518, 61 Cal. Rptr. 3d 304 (2007) ................................................ 13

Bochene v. MFRA Trust 2014-2,
  2018 U.S. Dist. LEXIS 11751, 2018 WL 558769 (E.D. Cal. January 23, 2018) ........ 10

Coleman v. Bank of N.Y. Mellon,
  2018 U.S. Dist. LEXIS 156869, 2018 WL 4387612 (D. Nev. September 13, 2018) ........ 4

Hamilton v. State Farm Fire & Cas. Co.,
  270 F.3d 778 (9th Cir. 2001) .................................................................................. passim

Hay v. First Interstate Bank of Kalispell, N. A.,
  978 F.2d 555 (9th Cir. 1992) ..................................................................................... 2

In re Ivy Rest. Group, Inc.,
  2011 Bankr. LEXIS 481, 2011 WL 282758 (Bankr. D. Mass. January 24, 2011) ........ 13

Jethroe v. Omnova Solutions, Inc.,
  412 F.3d 598 (5th Cir. 2005) ..................................................................................... 5

Lee v. City of Los Angeles.
  250 F.3d 668 (9th Cir. 2001) ................................................................................. 7, 10

Marshall v. Marshall (In re Marshall),
  2008 Bankr. LEXIS 274, 2008 WL 298821 (Bankr. E.D. Cal. February 1, 2008) ........ 8

Mestena, Inc. v. Atravasada Land & Cattle Co. (In re Atravasada Land & Cattle Inc.),
  388 B.R. 255 (Bankr. S.D. Tex. 2008) ....................................................................... 9

Monge v. Jayme (In re Jayme),
  2018 Bankr. LEXIS 1987 (Bankr. D. N.M. June 29, 2018) ......................................... 8

Moore v. Pflug Packaging & Fulfillment, Inc.,
  2018 U.S. Dist. LEXIS 90236, 2018 WL 2430903 (N.D. Cal. May 30, 2018) ............ 13

Munson v. Wells Fargo Bank,
  2018 U.S. Dist. LEXIS 208660, 2018 WL 6515131 (D. Or. December 11, 2018) ........ 7

New Hampshire v. Maine,
    532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) .................................................... 3

Nuno v. Wells Fargo Bank, N.A.,
    2017 U.S. Dist. LEXIS 149549 (C.D. Cal. September 13, 2017) .................................. 7, 10

Patriot Mfg. LLC v. Hartwig, Inc.,
    2014 U.S. Dist. LEXIS 127229, 2014 WL 4538059 (D. Kan. Sept. 11, 2014) .................... 4

Residential Capital,
    519 B.R. 606 (S.D.N.Y. 2014) ............................................................................................ 5

Richardson v. Von Behren (In re Von Behren),
    314 B.R. 169 (Bankr. C.D. Ill. 2004 .................................................................................... 8

Sure-Snap Corp. v. State St. Bank & Trust Co.,
    948 F.2d 869 (2d Cir. 1991) ................................................................................................. 5

Svenningsen v. Ultimate Prof'l Grounds Mgmt.,
    2017 U.S. Dist. LEXIS 113617, 2017 WL 3105871 (S.D.N.Y. July 20, 2017) .................. 3

Talosig v. US Bank N.A.,
    2016 U.S. Dist. LEXIS 19279, 2016 WL 632796 (E.D. Cal. February 16, 2016).............. 10

United States v. Kersting,
    1996 Bankr. LEXIS 1636 (Bankr. Haw. February 28, 1996) .............................................. 8

United States v. Lindholm,
    24 F.3d 1078 (9th Cir. 1994)................................................................................................. 3

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071
TEL 213.626.2311 • FAX 213.629.4520

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Plan Agent files this Reply Brief in support of his Motion to dismiss the Chrismas Counterclaims, and in response to the opposition brief filed by Chrismas (the "Opposition").

Douglas Chrismas is judgment proof. Or at least, that is the impression he has portrayed to the world for years, given the extensive judgments against him. It is the likely motive that caused him to refrain from listing his alleged personal artworks in the Debtor's SOFA and Amended SOFA. Creditors who hold judgments jointly and severally against Chrismas and the Debtor would be served with the SOFA, and would discover that they had another source for judgment collection unrestrained by an automatic stay. It's the same ample motive that he had to file a false Schedule B in his personal bankruptcy case in 2004 (discussed below and in the Reply Request for Judicial Notice) claiming that he only owned $5,000 in art. But the SOFA and Schedule B, both signed under penalty of perjury, are presumptively accurate, and confirm that Chrismas owned $5,000 in artworks in 2004, and that none of those artworks were stored among the Debtor's inventory in 2013.

Or, it is possible that the SOFA and Schedule B are not accurate, were intentionally false despite being signed under penalty of perjury, and Chrismas actually did own the collection of artworks that he now seeks to recover from the Debtor by his Counterclaims.

But it is one or the other. And under the doctrine of judicial estoppel, the SOFA and Schedule B, signed under penalty of perjury, have a terminating impact on the claims Chrismas now seeks to pursue.

Further, as Ace Museum has confirmed that it cannot revive its corporate status, all claims asserted in the name of, or by assignment from, Ace Museum, must be dismissed.

## II.

## LEGAL ARGUMENT

**A.   The Counterclaims Brought in the Name of Douglas Chrismas Fail to State a Claim**

   **1.   Application of Judicial Estoppel Post-Confirmation is a Per Se Rule**

Chrismas' Opposition argues a surface analysis of the doctrine of judicial estoppel without

DJR\ 2659827v3                                    1

application to the facts of this case. The doctrine has unique application in bankruptcy, particularly once a plan of reorganization has been confirmed or a discharge has been granted. Courts repeatedly hold that a bankruptcy court does not abuse its discretion when it applies judicial estoppel to disclosures that were made or omitted in a debtor's schedules and statement of financial affairs, after a plan of reorganization has been confirmed. See Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 784 (9th Cir. 2001) ("In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."); Ah Quin v. Cty. of Kauai Dep't of Transp., 733 F.3d 267, 271 (9th Cir. 2013) (explaining that a debtor obtains an "unfair advantage" through "discharge or plan confirmation without allowing the creditors to learn of the pending lawsuit" (emphasis added)); Hay v. First Interstate Bank of Kalispell, N. A., 978 F.2d 555, 557 (9th Cir. 1992) (confirmation of plan without disclosure of accurate information estopped debtor from later litigation); An-Tze Cheng v. K & S Diversified Invs., Inc. (In re An-Tze Cheng), 308 B.R. 448, 453 (B.A.P. 9th Cir. 2004) ("The meaning of 'acceptance' in the bankruptcy context is construed broadly to protect the integrity of the bankruptcy process. Among other possibilities, the grant of a discharge (even if later revoked) or the confirmation of a plan may constitute sufficient 'acceptance' of the accuracy of schedules so as to permit judicial estoppel.") (citations omitted).

Although courts typically apply a three-prong analysis to judicial estoppel in a non-bankruptcy context—which is the analysis cited in the Chrismas Opposition—the Ninth Circuit has held that this test is satisfied *per se* when a plan is confirmed without accurate disclosures in the debtor's schedules:

> In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action. The reason is that the plaintiff-debtor represented in the bankruptcy case that no claim existed, so he or she is estopped from representing in the lawsuit that a claim does exist. **That basic rule comports fully with the Supreme Court's decision in New Hampshire**: (1) the positions are clearly inconsistent ("a claim does not exist" vs. "a claim does exist"); (2) the plaintiff-debtor succeeded in getting the first court (the bankruptcy court) to accept the first position; and (3) the plaintiff-debtor obtained an unfair advantage (discharge or plan confirmation without allowing the creditors to learn of the pending lawsuit). The general rule also

DJR\ 2659827v3            2

> comports fully with the policy reasons underlying the doctrine of judicial estoppel: to prevent litigants from playing "fast and loose" with the courts and to protect the integrity of the judicial system.

Ah Quin, 733 F.3d at 271 (citations omitted, emphasis added) (citing New Hampshire v. Maine, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)); see also Svenningsen v. Ultimate Prof'l Grounds Mgmt., 2017 U.S. Dist. LEXIS 113617 *7, 2017 WL 3105871 (S.D.N.Y. July 20, 2017) (describing the Ninth Circuit's rule in Ah Quin as "a basic default rule").

A debtor's disclosures in schedules or in a SOFA satisfy the judicial estoppel standard because creditors and the Bankruptcy Court rely on the accuracy of such information throughout the case:

> In this case, we must invoke judicial estoppel to protect the integrity of the bankruptcy process. The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets. The Bankruptcy Code and Rules impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims.  The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding.  Hamilton's failure to list his claims against State Farm as assets on his bankruptcy schedules deceived the bankruptcy court and Hamilton's creditors, who relied on the schedules to determine what action, if any, they would take in the matter.

Hamilton, 270 F.3d at 784-85.

A judgment creditor of the Debtor, whose judgment was a joint and several liability of both the Debtor and Chrismas, should have been able to rely upon the accuracy of the Debtor's Schedules and SOFA, and determine thereby that Chrismas did or did not not have assets of his own stored at the Debtor's premises that might be the subject of judgment collection free from the restraints of the automatic stay.  But the SOFA was false, and intentionally so.

The Plan was confirmed without any corrections to the Debtor's SOFA.  Chrismas' omissions in Section 14 of the SOFA meet the Ninth Circuit's standard for per se application of judicial estoppel.  The Opposition's analysis of judicial estoppel is contrary to Ninth Circuit authority.

**2.    Omissions of Property Interests Are Affirmatively Fraudulent**

Contrary to Chrismas' assertion, omissions in schedules are as important as affirmative but mistaken admissions for purposes of judicial estoppel.  In United States v. Lindholm, 24 F.3d 1078

1 (9th Cir. 1994), a defendant responded to charges of bankruptcy fraud by insisting that he had just

2 omitted certain information from his petition papers. The Ninth Circuit explained that "an omission

3 is the equivalent of a false statement," and held that the debtor's listing of prior bankruptcy cases as

4 "none" was an affirmative fraudulent statement to the court. 24 F.3d at 1085.

5 The uniform application of judicial estoppel in bankruptcy cases is not limited to a failure to

6 disclose litigation claims. A failure to disclose an interest in property—like here—will bar a later

7 lawsuit that asserts such a property interest. For example, in Coleman v. Bank of N.Y. Mellon, 2018

8 U.S. Dist. LEXIS 156869, 2018 WL 4387612 (D. Nev. September 13, 2018), the Court held that a

9 plaintiff was judicially estopped from pursuing a lawsuit in which he asserted that he held an interest

10 in certain real property, because his earlier bankruptcy schedules had disclaimed any interest in the

11 same property. 2018 U.S. Dist. LEXIS 156869 at *9 ("Plaintiff's position of asserting a claim

12 regarding the interest of the Property is clearly inconsistent with his earlier claim that he had no

13 interest in the Property and with his failure to assert the claims in this lawsuit in his Bankruptcy

14 Action."); see also Adelphia Recovery Trust v. Goldman, Sachs & Co., 748 F.3d 110, 118 (2d Cir.

15 2014) (applying judicial estoppel to dispute over ownership of assets where plan of reorganization

16 was confirmed based on schedules of assets and liabilities that differed from post-confirmation

17 positions); Patriot Mfg. LLC v. Hartwig, Inc., 2014 U.S. Dist. LEXIS 127229, 2014 WL 4538059,

18 at *1 (D. Kan. Sept. 11, 2014) (plaintiffs "sole member" omitted "his ownership interest in [the

19 plaintiff LLC] or th[e] lawsuit in his personal bankruptcy filing," requiring application of judicial

20 estoppel to LLC's breach of contract claims).

21 When judicial estoppel is applied to litigation that was not disclosed, it is because creditors

22 and the court should have been informed that such an asset might contribute to payments to creditors.

23 The rationale is no different when the omission is a failure to disclose an insider's asserted property

24 interest in property possessed by the debtor, as the debtor's creditors and the Court would otherwise

25 deem such property to be available to satisfy their claims, while the insider's creditors would be left

26 unaware of property available to satisfy their claims. "Determination of the ownership of assets is

27 at the core of the bankruptcy process, and particularly the creation of a bankruptcy reorganization

28 plan, which involves 'a schedule of all [the debtors'] liquid assets and liabilities,' and thereafter

operates, with full preclusive effect, to 'bind its debtors and creditors as to all the plan's provisions, and all related, property or non-property based claims which could have been litigated in the same cause of action.'" Adelphia, 748 F.3d at 118 (quoting Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 873 (2d Cir. 1991)).  When a court confirms a plan, it "accepts the veracity" of the debtor's "asset schedules."  Residential Capital, 519 B.R. 606, 612 (S.D.N.Y. 2014) (citing Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 599-600 (5th Cir. 2005).

The Debtor's Plan was confirmed with an expectation of the veracity of the Debtor's schedules and SOFA, and the truthfulness of Chrismas' testimony about the Debtor's inventory, none of which included a single claim of personal ownership.  Those statements properly estop contrary positions taken post-confirmation.

### 3. Chrismas' Omissions Go Far Beyond Section 14 of the SOFA

The Chrismas Opposition confirms that his Counterclaims are about far more than the brief Schedule 1 attached to the Counterclaim, and that Chrismas is actually claiming ownership of every artwork in the Debtor's inventory that was stored in the Debtor's Mid-Wilshire premises prior to the Debtor's incorporation in 1999.  Opposition at p. 8.  None of this alleged property interest was disclosed by Chrismas prior to plan confirmation.

Chrismas' claim of a property right in artwork that preceded the Debtor's incorporation suggests that he is claiming that he did not capitalize the Debtor with any art investments.  This suggests that he is repudiating the transfer of inventory from Ace Galley New York Incorporated to the Debtor when it dissolved in 2012, as repayment of a massive loan.  This also completely repudiates Chrismas' own argument in the Opposition that his alleged artworks were not "commingled" with the Debtor's artworks, as he is not just claiming artworks that had a label on the back with his name on it, but every artwork in the Debtor's inventory that pre-existed the Debtor's formation in 1999.  His Counterclaims describe a single example of alleged conversion.  But his Counterclaims are an attempt to claim ownership of a large portion of the Debtor's estate despite his intentional omission of this interest in the Schedules and SOFA, and despite never saying a word about this alleged claim until after he had been removed from his position as the Debtor's principal. If ever there was a case for applying judicial estoppel to bar a principal from claiming ownership of

1 the Debtor's assets years after plan confirmation, this is it.

2 The Ninth Circuit's rule in Ah Quin has one potential limitation, which is a good faith excuse for the failure to disclose the omitted property interest. But it does not apply to Chrismas. Where, as here, the party or debtor asserting the property interest has not made any effort to correct the error, such as reopening a closed case to amend schedules, the application of this defense is "narrow." 733 F.3d at 272-73. Under this "narrow" application, if the party knew of the claim, and had a motive to conceal, then judicial estoppel applies. Id. Chrismas knew of the claim, as the Opposition asserts his own knowledge of his alleged property interest, dating back to before 1999. He also had a significant motive to conceal this interest. In 2004, in his own personal bankruptcy case, Chrismas filed a Schedule B that claimed ownership of only $5,000 of artwork, signed under penalty of perjury. See Exhibit D to Declaration of David J. Richardson ("Richardson Decl."), and Reply Request for Judicial Notice. Given the total value of his disclosed assets, these artworks were exempt from the claims of his creditors. But Schedule B was materially false, as demonstrated by Chrismas' Counterclaims asserting ownership of the Debtor's pre-1999 inventory, as well as everything listed on Schedule 1 to his Counterclaims. Chrismas had a strong motive to file a false SOFA in this case, because if he had disclosed his alleged interest in these artworks in the Debtor's SOFA, it would have shown that he had filed a materially false Schedule B in his personal case, and it would have exposed his alleged personal artworks to the claims of his extensive personal creditors. Chrismas had both knowledge and motive, and made no effort to correct the schedules in this case (or his personal case). Judicial estoppel applies. 733 F.3d at 272-73.

Chrismas' Schedule B is not merely proof of motive, it is also independent grounds for judicial estoppel. Judicial estoppel applies to two contrary statements made "in two different cases," not just the same case. Hamilton, 270 F.3d at 783. If for any reason this Court does not find that the Debtor's SOFA judicially estops Chrismas' Counterclaims, then his Schedule B is independent grounds to estop his claim to any artworks in excess of $5,000 in value.

This issue is appropriate for a motion to dismiss. The Ninth Circuit has held that a court may take judicial notice of court documents that are in the public record without converting a motion to dismiss to a motion for summary judgment. Lee v. City of Los Angeles, 250 F.3d 668, 688-89

(9th Cir. 2001). Bankruptcy schedules from a debtor's prior case, in which assets were intentionally omitted, are precisely the type of documents in the public record that are appropriately admitted by judicial notice for consideration of a motion to dismiss, as they go to legal arguments barring the claims, rather than development of the factual record. See <u>Munson v. Wells Fargo Bank</u>, 2018 U.S. Dist. LEXIS 208660 *5, 2018 WL 6515131 (D. Or. December 11, 2018) (accepting eight bankruptcy pleadings on judicial notice without converting motion to dismiss to motion for summary judgment "because they are true and correct copies of a United States Bankruptcy Court judicial record in a case filed by Plaintiff on his own behalf."); <u>Nuno v. Wells Fargo Bank, N.A.</u>, 2017 U.S. Dist. LEXIS 149549 *12-14 (C.D. Cal. September 13, 2017) (taking judicial notice of debtor's bankruptcy schedules, and granting motion to dismiss without leave to amend on judicial estoppel grounds). If Chrismas owns any artwork in excess of the small amount claimed within his exemptions in his personal case, it should have been available to creditors in his personal bankruptcy case, and it should have been noticed to creditors in the Debtor's SOFA in this case. Instead, Chrismas apparently chose to hide his property interest until now, when he has raised it in Counterclaims replete with allegations of wrongdoing by others.

Indeed, by filing his Counterclaim and taking the positions he now asserts, Chrismas has opened a Pandora's Box, and must answer the question "which lie was perjury?" If he owned artworks that have been stored on the Debtor's premises before its 1999 incorporation, as he now claims, why did his Schedule B claim ownership of only $5,000 of art in 2004? If he received substantial gifts of art, did he disclose these on his tax returns? If he owned any art at all, why did he sign two versions of a SOFA that did not list any of his ownership claims? And did he knowingly file false declarations in this case attaching inventories of the Debtor's artworks, along with trial and deposition testimony pertaining to inventory? If this Counterclaim proceeds in any manner, it will be about far more than Chrismas' alleged property rights. Chrismas' own signature on the SOFA's and his Schedule B show that he filed false pleadings in two bankruptcy cases to hide his own personal assets, and is therefore estopped from asserting such a property interest now.

**4.    Section 14 of the SOFA Applies to the Property Right Asserted by Chrismas**

Chrismas argues without any authority that Section 14 of the SOFA only pertains to "bailee,

1 trust and/or consignment arrangements."  Opposition at p. 5.  This is incorrect.  Any property that
2 is in the Debtor's possession, and therefore implicitly property of the estate, but is in fact the property
3 of another, must be disclosed.  See Monge v. Jayme (In re Jayme), 2018 Bankr. LEXIS 1987 *27
4 (Bankr. D. N.M. June 29, 2018) (debtors should have disclosed their possessory interest in real
5 property in Section 14 of SOFA); Marshall v. Marshall (In re Marshall), 2008 Bankr. LEXIS 274
6 *14-15, 2008 WL 298821 (Bankr. E.D. Cal. February 1, 2008) (debtor failed to disclose possession
7 of firearms that he claimed were owned by his mother); Richardson v. Von Behren (In re Von
8 Behren), 314 B.R. 169, 175 (Bankr. C.D. Ill. 2004) (debtor should have disclosed firearms in his
9 possession, allegedly owned by his sons); United States v. Kersting, 1996 Bankr. LEXIS 1636 *12
10 (Bankr. Haw. February 28, 1996) (debtor failed to list in Section 14 property in his possession that
11 was owned by his corporations).

12  The Chrismas artworks are not equivalent to the personal effects of employees, as suggested
13 by the Opposition.  They are alleged to be an extensive collection of artworks stored within the
14 inventory of an art gallery that filed bankruptcy, much of which has been a part of that inventory for
15 as long as twenty years.  It is exactly the type of property that a trustee or creditor would presume
16 was property of the estate but for notice in the SOFA that it was only held for another.  And it is
17 exactly the type of property that Chrismas did list in Section 14 when it was owned by an artist.  He
18 just omitted all of the same property if it was allegedly owned by him.

19 **5.  The Plan Also Estops the Counterclaims**

20  Although mere confirmation of a plan of reorganization based upon inaccurate schedules
21 judicially estops contradictory positions in later litigation, it bears noting that the terms of the
22 Modified Second Amended Plan of Reorganization of Official Committee of Unsecured Creditors,
23 confirmed on March 18, 2016 ("Plan") specifically provide that all competing claims to property of
24 the Debtor were resolved in the Debtor's favor.  Article II of the Plan provides that:

> The Plan resolves all claims and interests against the Debtor or
> property of the Debtor of whatever character, whether disputed,
> contingent, or unliquidated, or whether allowed by the Bankruptcy
> Court pursuant to Section 502(a) of the Bankruptcy Code.

28 See Exhibit E to Richardson Decl. (the "Plan), at Article II, p. Exhibit E – 25, lines 19-22, and Reply

DJR\ 2659827v3                                         8

Request for Judicial Notice. Section 14.3 of the Plan further provides that all of the Debtor's property—which implicitly includes all assets in its possession not otherwise disclosed as property of another—is held free and clear of all claims upon confirmation:

> 14.3 Estate Property Post-Confirmation. Except as otherwise provided in the Plan, on the Effective Date, all property and rights of the Estate of the Debtor shall be free and clear of all claims, liens, and rights of creditors and interests or interest holders, and the Plan Agent shall be the sole and exclusive representative of the Debtor's Estate for purposes of the Plan. Subject to the Plan, such property and rights include, without limitation, all alter ego and derivative claims existing as of the Effective Date, and the Reserved Claims. As of the Effective Date, and subject to the Plan Agent's sole and exclusive authority as representative of the Debtor's post-confirmation estate, the Post-Confirmation Debtor may operate its business without the need for supervision of, or any authorization from, the Bankruptcy Court or the United States Trustee, and free of any restriction of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions specifically provided for in the Plan of in the Confirmation Order. As of the Effective Date, all property of the Post-Confirmation Debtor's estate will be free and clear of all claims, liens, and other rights of creditors and interests of interest holders, except as otherwise expressly provided in the Plan.

Id. at p. Exhibit E – 67, lines 2-16. The purpose of such terms was to avoid concealed claims of the type that Chrismas now asserts, but kept to himself throughout Plan confirmation. These terms were proposed in multiple versions of the Plan, yet Chrismas said nothing about any alleged personal interest in the Debtor's inventory. The binding effect of plan terms such as these bar a debtor's principals from asserting a conflicting property interest that was not disclosed during plan confirmation. See Mestena, Inc. v. Atravasada Land & Cattle Co. (In re Atravasada Land & Cattle Inc.), 388 B.R. 255, 277 (Bankr. S.D. Tex. 2008) (where debtor's principals failed to disclose alleged property interest in debtor's plan, they were barred by confirmed plan from asserting that interest).

This is not a case of an unsophisticated debtor or its principal accidentally failing to list an asset or property interest on a debtor's schedules, correcting the error, and then seeking to avoid application of judicial estoppel. This is a case of a sophisticated businessman who knew that disclosure of his alleged interest in artworks stored on the Debtor's premises would expose the fact that he filed a materially false Schedule B in his personal case. This is a case of a practiced litigant with a long list of judgments against him, who knew that disclosure of his alleged art collection would expose those assets to judgment creditors. And this is a case of a bankruptcy-savvy executive

1 who intentionally permitted Plan confirmation to proceed without any notice to creditors or to this

2 Court that a large portion of the assets stored on the Debtor's premises were his alleged personal

3 property. Now, he seeks to reverse his repeated omissions of such a property interest and pursue

4 litigation that not only asserts that same alleged and concealed property interest, but also asserts tort

5 liability on the theory of wrongdoing by someone other than himself. The only wrongdoing in this

6 case that pertains to the Counterclaims is Chrismas' intentional concealment of his alleged property

7 interest. His claims are barred by judicial estoppel.

### 6.  Dismissal Should Be Without Leave to Amend

The Plan Agent understands and respects the concerns that this Court has expressed in past proceedings about granting a motion to dismiss without leave to amend for a first version of a pleading. However, where dismissal is on grounds of judicial estoppel, based upon schedules filed in the plaintiff's or counter-plaintiff's previous bankruptcy case, dismissal is properly without leave to amend, even on a first version of the pleading.

In Nuno, 2017 U.S. Dist. LEXIS 149549, Judge Wu of the District Court for the Central District of California dismissed a first version of a complaint without leave to amend on the grounds of the plaintiff's failure to list the alleged property interest in schedules in her personal bankruptcy case:

> At least one such argument would dispose of Plaintiff's entire case if the Court accepts it — that Plaintiff should be judicially estopped from pursuing any of her causes of action because of her failure to list, in her bankruptcy schedules, her alleged claims against Defendants.

Nuno, 2017 U.S. Dist. LEXIS 149549 at *3-4. The Court followed Ninth Circuit case law cited in the Plan Agent's Motion and this Reply, accepted the plaintiff's bankruptcy schedules into evidence without converting the case to summary judgment, and dismissed the complaint "without leave to amend." Id. at *14. See also Bochene v. MFRA Trust 2014-2, 2018 U.S. Dist. LEXIS 11751 *9-13, 2018 WL 558769 (E.D. Cal. January 23, 2018) (following Lee, Hamilton, and Ah Quin, and dismissing first version of complaint without leave to amend based on judicial estoppel grounds and prior inconsistent bankruptcy schedules); Talosig v. US Bank N.A., 2016 U.S. Dist. LEXIS 19279 *9-12, 2016 WL 632796 (E.D. Cal. February 16, 2016) (following Lee, Hamilton, and Ah Quin,

and dismissing first version of complaint without leave to amend based on judicial estoppel grounds and prior inconsistent bankruptcy schedules).

Chrismas' Opposition did not advise this Court of any new facts that Chrismas could plead to get around the judicial estoppel effect of his prior omissions made under penalty of perjury. Dismissal of the Counterclaims with prejudice, and without leave to amend, is appropriate.

**B.     The Conversion Claim Should Be Dismissed**

The conversion claim is subject to judicial estoppel, described above, along with every other claim in the Chrismas Counterclaim. But the following arguments are particular to the conversion claim.

**1.     The Plan Agent's Status Report Does Not Support a Conversion Claim**

Chrismas' primary argument to rescue his conversion claim is his citation to the Plan Agent's Status Report filed on May 12, 2016 (the "Status Report"), in which the Plan Agent informs the Court that Chrismas had wrongly converted 60 artworks (the "Removed Artworks") immediately before the Effective Date of the Plan Agent's term by moving the Removed Artworks to a storage facility, while claiming that he owned the Removed Artworks. It is an odd argument to make, and misquotes the Plan Agent's Status Report. First, it incorrectly claims that the Status Report states Chrismas moved the Removed Artworks to another of the "Debtor's premises," and claims that this is proof that Chrismas was "asserting interests in property on the Debtor's premises." Opposition at p. 7. This misstates the content of the Status Report, which actually explains that the storage facility was under Chrismas' control and leased in the name of Ace Gallery New York, and was not a "Debtor" facility. See Exhibit A to Chrismas Opposition, at ¶ 13. Thus, the Plan Agent's statements made in the Status Report are actually evidence that Chrismas recovered all of his alleged "personal" Removed Artworks before the Plan Agent took over by moving them out of the Debtor's premises, not evidence that the Plan Agent "converted" artworks left behind in the Debtor's premises. Chrismas' assertion that he had already taken the Removed Artworks he owned—truthful or not— naturally left the impression that everything that remained was owned by the Debtor.

And, to whatever extent any of those Removed Artworks remained in the Cochran storage facility in January 2017, the Plan Agent was given the authority to recover and administer such

artworks by this Court in the TRO entered by this Court on January 25, 2017. See Exhibit F to Richardson Decl., p. Exhibit F – 97, lines 1-3.[1] Thus, if any Removed Artworks that remained in the Cochran storage facility were owned by Chrismas (or claimed by Chrismas), the Plan Agent's possession of such artworks is pursuant to an order of this Court, and is not "wrongful."

### 2. The Conversion Claim Is an Improper Claim Against the Plan Agent

In the Motion the Plan Agent explained his concern that the conversion claim stated against the Debtor is really an implicit claim against the Plan Agent. The Plan Agent had expected that Chrismas' response to this concern in his Opposition brief would be a simple statement reassuring the Plan Agent and this Court that the claim is only intended against the Debtor, since the Debtor is the only named defendant.

Instead, Chrismas confirmed in his Opposition that he believes the Plan Agent is the true defendant to the conversion claim (and presumably the entire Counterclaims) because the Plan Agent allegedly cannot "show his acts were within the scope of his authority." Opposition at p. 8. Chrismas is incorrect. The Plan Agent's quasi-judicial immunity is not derived merely from case law, but also from the terms of the confirmed Plan and its incorporated Plan Trust Agreement. Section 9.3 of the Plan Trust Agreement provides:

> Limitation on Liability. The Plan Trustee will not be liable for any action taken or omitted by him in good faith and believed by him to be authorized hereby or within the rights or powers conferred upon him hereunder, or taken or omitted by him in accordance with advice of counsel (which counsel may be of the Plan Trustee's own choosing), **and will not be liable for any mistake of fact or error of judgment or for any acts or omissions of any kind unless caused by willful misconduct or gross negligence**.

---

[1] The Temporary Restraining Order: (1) Prohibiting Ace Museum, Douglas Chrismas, and any Party Acting on Their Behalf from Taking Action to Move, Sell or Encumber the Property Described Herein, or from Taking any Actions to Interfere with Plaintiffs Actions Authorized Herein; (2) Prohibiting Mary Corse, and any Party Acting on Her Behalf, from Interfering with Plaintiff's Right to Possess the Art Described Herein; and (3) Authorizing Plaintiff to Take All Necessary Actions to Secure The Artworks Described Herein, and to Secure the Real Property Described Herein, entered January 25, 2017 [Dkt. No. 77] (the "TRO") was amended by this Court with respect to terms affecting a Mary Corse painting owned by Michael Straus, by an order entered January 27, 2017 [Dkt. No. 84], but was otherwise unamended.

See Exhibit E to Richardson Decl. at p. Exhibit E – 60, lines 15-23 (emphasis added). The Chrismas Counterclaims do not allege facts that meet the pleading standard that is required to plead that the Plan Agent acted with willful misconduct or gross negligence. Moore v. Pflug Packaging & Fulfillment, Inc., 2018 U.S. Dist. LEXIS 90236 *14, 2018 WL 2430903 (N.D. Cal. May 30, 2018) ("Three essential elements must be present to raise a negligent act to the level of wilful [sic] misconduct: (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that the injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril.") (quoting Berkley v. Dowds, 152 Cal. App. 4th 518, 526, 61 Cal. Rptr. 3d 304 (2007)).

The one example of "conversion" alleged in the Counterclaims—the McCracken drawings—does not state a claim for conversion, given the application of judicial estoppel, above. It does not matter that certain artworks may have contained a label on the back stating "collection of Douglas Chrismas" when he had otherwise disavowed any ownership of artwork in prior testimony, schedules, and other disclosures. Principals of wholly owned companies routinely contribute personal assets to their companies, often for tax reasons. For example, where Chrismas claims that he received certain art as a gift, a failure to declare such a gift on his personal tax returns might be explained by a decision to donate the artwork to his company as an investment. And where, as here, he has made statements under penalty of perjury disclaiming any interest in such assets, a court may properly find that an artwork, even an artwork labeled as his own personal property, was clearly gifted to his wholly owned company. See In re Ivy Rest. Group, Inc., 2011 Bankr. LEXIS 481, 2011 WL 282758 (Bankr. D. Mass. January 24, 2011) ("the credible and plausible inference is that Ashmore intended that the items he now claims constitute part of his investment in the Debtor. The credible evidence supports the ruling that the property contributed by Ashmore to the Debtor is property of the estate."). After Chrismas has already removed his alleged 60 artworks, and after the filing of SOFA's that assert no personal interest, a simple label on the back of an artwork that lists Douglas Chrismas' name is meaningless.

The conversion claim cannot be stated, whether it is against the Debtor in name, or against the Plan Agent by implication.

DJR\ 2659827v3

13

**C.  The Counterclaims Brought in the Name of Ace Museum Should Be Dismissed**

As noted in footnote 1 of the Chrismas Opposition, Ace Museum has filed a pleading in this Court stating that it will not be able to reinstate its corporate status [Dkt. No. 519]. For all of the reasons argued in the Motion, the Counterclaims that are brought in the name of, or by assignment from, Ace Museum, cannot be stated under California law, and should be dismissed.

### III.
### CONCLUSION

WHEREFORE, for all of the reasons argued in the Motion and this Reply brief, the Plan Agent respectfully requests that this Court enter an order: (i) granting the Motion; (ii) dismissing the entire Counterclaims on the grounds of judicial estoppel; (iii) dismissing all Counterclaims that assert alleged property interests of Ace Museum without leave to amend; (iv) dismissing the Fourth Counterclaim in its entirety, without leave to amend; and (v) granting such other relief as the Court deems equitable.

DATED: March 6, 2019

**Sulmeyer**Kupetz
A Professional Corporation

By: */s/ Victor A. Sahn*
Victor A. Sahn
David J. Richardson
Attorneys for Sam Leslie, Plan Agent

DATED: March 6, 2019

Law Offices of Carolyn A. Dye

By: */s/ Carolyn A. Dye*
Carolyn A. Dye
Attorneys for Sam Leslie, Plan Agent

DJR\ 2659827v3

14

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071-1406.

A true and correct copy of the foregoing document entitled (*specify*): **REPLY OF PLAN AGENT IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS OF DOUGLAS CHRISMAS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 6, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Simon Aron on behalf of Interested Party Courtesy NEF - saron@wrslawyers.com
- Jason Balitzer on behalf of Plaintiff, Cross/Counter-Defendant Sam Leslie as Trustee of the Plan Trust for Art & Architecture Books of the 21st Century - jbalitzer@sulmeyerlaw.com, jbalitzer@ecf.inforuptcy.com; dwalker@ecf.inforuptcy.com; kmccamey@sulmeyerlaw.com
- Keith Patrick Banner on behalf of Defendant 400 S La Brea, LLC a California limited liability company - kbanner@greenbergglusker.com, sharper@greenbergglusker.com; calendar@greenbergglusker.com
- Brian L Davidoff on behalf of Defendant, Cross-Claimant 400 S La Brea, LLC a California limited liability company - bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com; jking@greenbergglusker.com
- Carolyn A Dye on behalf of Plaintiff Sam Leslie - trustee@cadye.com
- Fahim Farivar on behalf of Defendant, Cross-Claimant 400 S La Brea, LLC a California limited liability company -ffarivar@foley.com, amcdow@foley.com;scvasquez@foley.com
- Alan W Forsley on behalf of Defendants Ace Museum, a California corporation; Ace Gallery New York Corporation, a California corporation; Ace Gallery New York, Inc., a dissolved New York corporation; Douglas Chrismas - alan.forsley@flpllp.com, awf@fkllawfirm.com, awf@fl-lawyers.net,addy.flores@flpllp.com
- J. Bennett Friedman on behalf of Defendant Jennifer Kellen - jfriedman@flg-law.com, msobkowiak@flg-law.com; jmartinez@flg-law.com
- Asa S Hami on behalf of Plaintiff, Cross/Counter-Defendant Sam Leslie as Trustee of the Plan Trust for Art & Architecture Books of the 21st Century - ahami@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com; agonzalez@ecf.inforuptcy.com; ahami@ecf.inforuptcy.com
- Matthew P Kelly on behalf of Interested Party Courtesy NEF - mkelly@sulmeyerlaw.com
- Daniel A Lev on behalf of Plaintiff, Cross/Counter-Defendant Sam Leslie as Trustee of the Plan Trust for Art & Architecture Books of the 21st Century - dlev@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com; dlev@ecf.inforuptcy.com; dwalker@sulmeyerlaw.com
- Ashley M McDow on behalf of Defendant, Cross/Counter-Claimant 400 S La Brea, LLC a California limited liability company - amcdow@foley.com, scvasquez@foley.com; Ffarivar@foley.com
- Krikor J Meshefejian on behalf of Interested Party Courtesy NEF - kjm@lnbrb.com
- Susan I Montgomery on behalf of Interested Party Susan I. Montgomery - susan@simontgomerylaw.com, assistant@simontgomerylaw.com; simontgomerylawecf.com@gmail.com; montgomerysr71631@notify.bestcase.com
- Kurt Ramlo on behalf of Interested Party Courtesy NEF - kr@lnbyb.com, kr@ecf.inforuptcy.com
- David J Richardson on behalf of Plaintiff, Cross-Defendant Sam Leslie - drichardson@sulmeyerlaw.com, drichardson@ecf.inforuptcy.com
- Ronald Rus on behalf of Defendant 400 S La Brea, LLC a California limited liability company - rrus@brownrudnick.com, tlangford@brownrudnick.com
- Victor A Sahn on behalf of Plaintiff, Cross-Defendant Sam Leslie as Trustee of the Plan Trust for Art & Architecture Books of the 21st Century - vsahn@sulmeyerlaw.com, agonzalez@sulmeyerlaw.com; agonzalez@ecf.inforuptcy.com; asokolowski@sulmeyerlaw.com; vsahn@ecf.inforuptcy.com
- Michael C Schneidereit on behalf of Interested Party AERC Desmond's Tower, LLC - mschneidereit@jonesday.com, scollymore@jonesday.com; tckowalski@jonesday.com
- David B Shemano on behalf of Defendants Ace Museum, a California corporation/Douglas Chrismas - dshemano@shemanolaw.com
- Jonathan Shenson on behalf of Interested Party Jonathan Seligmann Shenson - jshenson@shensonlawgroup.com
- Mark Shinderman on behalf of Mediator Mark Shinderman - mshinderman@milbank.com, dmuhrez@milbank.com
- Michael D Sobkowiak on behalf of Defendant Jennifer Kellen - msobkowiak@flg-law.com, jmartinez@flg-law.com;jfriedman@flg-law.com
- United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov
- Michael W Vivoli on behalf of Defendant, Cross-Claimant 400 S La Brea, LLC a California limited liability company/Witness Fortuna Asset Management/Witness Kamran Gharibian - auzcategui@vivolilaw.com, sbrown@vivolilaw.com
- Jessica Vogel on behalf of Interested Party Courtesy NEF - Jvogel@sulmeyerlaw.com, jvogel@ecf.inforuptcy.com; mviramontes@sulmeyerlaw.com
- Reed S Waddell on behalf of Defendant Cathay Bank, a California corporation - rwaddell@frandzel.com, sking@frandzel.com
- Howard J Weg on behalf of Defendant Ace Museum, a California corporation - hweg@robinskaplan.com
- Beth Ann R Young on behalf of Interested Party Courtesy NEF - bry@lnbyb.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 6, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Robert Kwan – **VIA PERSONAL DELIVERY**
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012 - Bin outside of Suite 1682

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 6, 2019 | Andrea Gonzalez | */s/ Andrea Gonzalez* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  **F 9013-3.1.PROOF.SERVICE**