Marc A. Lieberman, Esq. (SBN 157318)
marc.lieberman@flpllp.com
Alan W. Forsley, Esq. (SBN 180958)
alan.forsley@flpllp.com
**FREDMAN LIEBERMAN PEARL LLP**
1875 Century Park East, Suite 2230
Los Angeles, California 90067
Telephone:    (310) 284-7350
Facsimile:    (310) 432-5999

Attorneys for Defendant Douglas Chrismas

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

|  |  |
|---|---|
| In re<br><br>ART & ARCHITECTURE BOOKS OF THE 20TH CENTURY,<br><br>        Debtor,<br><br><br>SAM LESLIE, PLAN AGENT FOR ART & ARCHITECTURE BOOKS OF THE 20TH CENTURY,<br><br>        Plaintiff,<br><br>vs.<br><br>ACE GALLERY NEW YORK, CORPORATION, a California corporation; ACE GALLERY NEW YORK, INC., a New York corporation; ACE MUSEUM, a California corporation; DOUGLAS CHRISMAS, an individual; SHIRLEY HOLST, an individual,<br><br>        Defendants. | Case No:   2:13-bk-14135-RK<br><br>Chapter 11<br><br>Adv. Case No. 2:15-ap-01679-RK<br><br>**OPPOSITION OF DOUGLAS CHRISMAS TO PLAN AGENT'S MOTION TO (1) INTERPRET CONFIRMATION ORDER AND CONFIRMED PLAN; AND (2) TO VACATE ORDER APPROVING STIPULATION WITH ACE MUSEUM, AND STRIKE STIPULATION; DECLARATION OF DAVID SHEMANO**<br><br><br>Hearing:<br>Date:  April 16, 2019<br>Time:  2:30 p.m.<br>Place:  Courtroom 1675 |

1

## **TABLE OF CONTENTS**

2

Page(s)

3   TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

4   I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5   II.  THE PLAN AGENT'S STRAINED INTERPRETATION CONFLICTS WITH
        THE PLAIN MEANING OF THE STIPULATION . . . . . . . . . . . . . . . . . . . . . . . . . 5

6
        a.   The Plain Meaning of the Stipulation Controls . . . . . . . . . . . . . . . . . . . . . . . 5

7
        b.   The "Term Sheet" Does Not Conflict with the Plain Meaning of the

8            Stipulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9       c.   The Confirmed Plan Does Not Conflict with the Plain Meaning of the
             Stipulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
10
        d.   Chrismas and the Museum Performed Timely Under the Stipulation . . . . . . . . . 9
11
        e.   The Significance of the Bench Marks or March Conditions Under
12           the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

13      f.   The Committee had good reason to negotiate the Dismissal of the
             Museum Adversary Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
14
        g.   The March 15 Conditions are Immaterial and unrelated to Paragraph 9 . . . . . . 12
15
        h.   The Stipulation is Crystal Clear and Creditors Profited Immensely
16           from It . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

17      i.   There Was No Need for Mr. Shemano to File a Motion to Dismiss . . . . . . . . . 12

18  III. THERE IS NO FRAUD ON THE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

19  IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

20  Declaration of David Shemano . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

21

22

23

24

25

26

27

i

# TABLE OF AUTHORITIES

Page(s)

CASES

In re Old Carco, LLC, ............................................. 15, 16
    423 B. R. 40, 52 (S.D. N.Y. 2010)

In re Pryor, ........................................................... 16
    2016 W.L. 400119

In re Roussos, ........................................................ 16
    541 B.R. 721, 729 (C.D. Cal. 2015)

Pizzuto v. Ramierez, ................................................. 16
    783 F.3d 1171, 1181 (9th Cir. 2015)

In re Pasadena Adult Residential Care, Inc., ..................... 16
    2015 WL 6443216

RULES

Federal Rule of Bankruptcy Procedure 9019 ...................... 14, 15

Federal Rule of Bankruptcy Procedure 9024 .......................... 1

Federal Rule of Civil Procedure 60(d)(3) ..................... 1, 15, 16

Defendant Douglas Chrismas ("**Defendant**" or "**Chrismas**") hereby files this opposition ("**Opposition**") to plaintiff Sam Leslie's ("**Plaintiff**" or "**Plan Agent**") motion to (1) Interpret Confirmation Order and Confirmed Plan and (2) to Vacate Order Approving Stipulation with Ace Museum, and Strike Stipulation from the Docket Pursuant to F..R.B.P. 9024 and Fed. R. Civ. P. 60(d)(3) (the "**Motion**"), and requests that the Motion be denied.[1]  This Opposition is based on the Declaration of David Shemano ("**Shemano II Decl.**") and the Request for Judicial Notice ("**RJN**"), both attached hereto.

# I.

# **INTRODUCTION**

Plaintiff ties himself in knots explaining why the plain language of the Court-approved Stipulation, drafted by his own counsel, doesn't mean what it clearly says, and that even if it does mean what it says, it should be ignored because his predecessor-in-interest (the Creditors Committee) was hoodwinked by allegedly inaccurate Monthly Operating Reports, despite having warranted that it did not rely on "any statement, representation, or promise from the other party."[2]

The operative provisions of the Stipulation are as follows (all emphasis supplied):

"3.     *Unless the specific performance conditions set forth below are satisfied, the Creditors Committee shall have the right to lodge an order confirming David R. Haberbush as an officer of Ace Museum, to exercise the Purchase Option and enter into and consummate a sale of the La Brea and Sycamore Parcels (the 'Order')*. . . The only questions with respect to the Court signing the Order is whether or not the specific performance conditions set forth below have been met. This applies to the performance obligation of Ace Museum and/or Douglas Chrismas, which are set for thin paragraphs 4, 5, 6, and 8, below."

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as in the Stipulation or as in the Motion.

[2] A copy of the Stipulation is attached as Exhibit "A." For convenience, a copy is also attached as Exhibit "A" to the RJN with the "Term Sheet" that is referenced in the Stipulation as Exhibit "6."

4.      [Defining the "February 17 Condition" as obtaining a 120 day extension of the Purchase Option.] *If the extension is not obtained by the deadline, the Committee will have the right to lodge the Order. . . . ."*

5.      [Defining the "March Conditions" as the receipt by March 15, 2015 of **either** a $40 million purchase offer for the Beverly Hills Property[3] **or** a $35 million purchase offer for the LaBrea/S. Sycamore Property.] *"If the March Conditions, as alternatively stated, are not satisfied, the Committee will have the right to lodge the Order. . . .."*

6.      [Defining the March 31 Condition as a purchase or refinancing by March 31, 2105] *"If the March 31 Condition is not satisfied, the Committee will have the right to lodge the Order."*

8.      [Requiring Ace Museum to grant access to its property to a broker and potential buyers.]

"9.     . . . *If the Beverly Hills Property is sold, the March 31 Condition is satisfied, or the Loan is otherwise satisfied, the Committee will dismiss this adversary proceeding with prejudice. . . . Further, this will operate to extinguish the Promissory Note."* Stipulation ¶ 9. *("**Paragraph 9**")*

"12.    <u>Mutual Warranties and Representations</u>.  Each of the signatories to this Stipulation hereby represent [sic] and warrant [sic] to each other that as of the date of this Stipulation:

    a.  The signing party . . . fully understands the Stipulation . . .."

    b.  *The signing party has made such investigation of the fact and matters pertaining to this Stipulation and settlement* as each of them has deemed necessary.

    c.  Except for the statements, representations and promises contained in the Stipulation, *the parties hereto are not relying upon any statement, representation , or promise from the other party* hereto or any of the

---

[3] 9430 Wilshire Boulevard, Beverly Hills, CA 90210 (the "**B.H. Property**" or the "**Beverly Hills Property**").

other party's agent, employees, representatives, or attorneys in entering into this stipulation.

d. Each person executing this Stipulation . . . has been duly authorized .

e. As to the matters addressed herein, this Stipulation is intended to be final and binding upon the parties hereto, regarding of any mistake of fact or law made by the parties hereto. ***The Parties each assume the risk of any mistake of fact or law in relation to this Stipulation ad may not set aside the Stipulation, or any provision thereof based on the subsequent discovery of any such mistake of fact or law.***"

"13. Complete Stipulation. . . . Should a dispute arise under this Stipulation, ***the Parties may not introduce evidence of any alleged prior or contemporaneous agreements or understands to alter the terms of this Stipulation.***"

"17.    Successors. This Stipulation shall bind and inure to the benefit of the parties hereto and their respective successors, predecessors and assigns.

"21. Further Assurances.  The Parties hereby agree to, on the request of the other party hereto, to [sic] perform all acts reasonably necessary, including execution of further document, to effectuate the intent of this Stipulation.

The Plan Agent correctly acknowledges that, at the time the Parties entered into the Stipulation, "the Committee wanted to incentivize Chrismas to sell the Beverly Hills Property quickly, for a minimum price." [4]  As the Committee acknowledged through its counsel to Defendant's counsel, it was motivated by the fact that the Debtor's purchase option ("**Option**") for the Beverly Hills Property in the amount of $18,575,000 was scheduled to lapse on June 30, 2015.  After June 30, 2015, the Option price would

---

[44] The Plan Agent also acknowledges that, at set forth in the Stipulation, the Committee was seeking permission to file a First Amended Complaint, to install a receiver or "responsible officer" for Ace Museum, to monetize the certain real estate purchase options, and to prevent Debtor, Chrismas, or the Museum from opposing Committee's Chapter 11 Plan unless certain "benchmarks" were met. Stipulation ¶¶ 3-8.

1    materially increase every six months and eventually expire on December 31, 2016.

2    Shemano II Decl. ¶4.

3        During negotiations, Committee counsel disclosed to Defendant's counsel the

4    Committee did not believe that a sale of the Beverly Hills Property by the Debtor would

5    exceed $30 million.  That disclosure by the Committee of its own valuation of the Beverly

6    Hills Property is critical to the correct understanding the Stipulation and to Paragraph 9 of

7    the Stipulation.

8        Defendant wanted to know from the Committee the hypothetical sale price for the

9    sale of the Beverly Hills Property that would satisfy the Committee and permit Debtor, in

10   cooperation with the Committee, to exit bankruptcy and continue Debtor's control over the

11   then-pending litigation with AERC.  Shemano II Decl. ¶6.

12       The number provided by the Committee for the "dream" price was $40 million,

13   reflecting the Committee's own valuation of $30 million (as admitted to Defendant's

14   counsel), *plus* the approximately $4 million owed by Ace Museum under the Museum

15   Note, *plus at least* $6 million of additional proceeds—all  as consideration for the

16   dismissal with prejudice of the Adversary Action against Mr. Chrismas.  At the time, the

17   Committee believed that the $40 million hypothetical sales price for the Beverly Hills

18   Property was a fantasy number that had no chance of being achieved, but it had nothing to

19   lose by agreeing to the term. Shemano Decl.¶ 7.

20       To the delight of the Committee at the time, Mr. Chrismas achieved a $40 million

21   sale of the Beverly Hills Property to the Los Angeles Metropolitan Transportation

22   Authority.  There is no doubt that the Stipulation agreed to by the Committee incentivized

23   Mr. Chrismas to negotiate that deal.  Shemano Decl.¶ 8.

24       ///

25       ///

26       ///

27

28

## II.

## THE PLAN AGENT'S STRAINED INTERPRETAION CONFLICTS WITH THE

## PLAIN MEANING OF THE STIPULATION

a.    **The Plain Meaning of the Stipulation Controls**.  The Stipulation is clear and unambiguous:  If the Beverly Hills Property is sold (it was), the March 31 Condition is satisfied, *or* the note is otherwise satisfied, the Committee will dismiss the adversary proceeding with prejudice and the Promissory Note will be extinguished.  Stipulation ¶ 9. The Plan Agent spends 35 pages attempting to explain why the plain language of the Stipulation, *which his counsel drafted*, [5] is "ridiculous" (Motion at 9, ln. 14) and "a nonsensical, one-sided, irrational settlement." Young Decl. ¶13.

Plan Agent reasons that if "either of the Stipulation's Benchmarks were missed, the Committee could lodge its order to appoint a responsible officer, but a confirming sale of the BH Property and repayment of the Museum Loan would still be required to release Chrismas and the Debtor for their plan support obligations."  Yes, if any of the so-called "Benchmarks" were missed, the Committee could have lodged the agreed form of Order appointing a "responsible officer" (or not, because the Stipulation explicitly gives the Plan Agent the "absolute right to extend such deadlines without further order of the Bankruptcy Court"[6]).

Notably, however, the Stipulation does not contain a clause stating time to be of the essence in the performance of any obligations, which thus prevented the Committee from insisting on strict compliance with any timeliness deadline.  The fact that the Plan Agent accepted the benefits of Mr. Chrismas's and the Museum's performance evidences that (a)

---

[5] The caption page on the Stipulation states that it was being submitted by Attorneys for Plaintiff Official Committee of Unsecured Creditors," and the footer is the same on the caption page and each of the subsequent pages:  "VAS\244391.5."  "VAS" evidently refers to then Committee Counsel (now Plan Agent's counsel) Victor A. Sahn.

[6] Stipulation, ¶ 11

March 15, 2015 date was either a non-material term of the Stipulation or (b) that the timeliness issue was waived by the Committee, as was its "absolute right."

     Indeed, the Stipulation and the timeliness of the February 17 Condition and March Conditions (referred to in the Motion and the First and Second Benchmarks) was the subject of a hearing on March 18, 2018:[7]

> "**THE COURT**: . . . . And then with respect to  . . number 4, which is the adversary matter.  It say, 'Motion for leave to amend complaint, appoint receiver, and issuance of temporary restraining order.'  And this is the committee's adversary proceeding.  It's Ace Museum.  Mr. Sahn, is there anything that needs to be discussed?
>
> "**MR. SAHN**: "Your Honor, I don't know if Mr. Shemano is on the phone or not.
>
> "**MR SHEMANO** (Telephonic): Your Honor, I have been listening.  I am on the phone.  David Shemano on behalf of –
>
> "**THE COURT**: Sorry to keep you on the line so long.
>
> "**MR. SHEMANO**:  No. No. This is important information.
>
> "**THE COURT**:  All right.  Mr. Sahn?
>
> "**MR. SAHN**: Your Honor, my suggestion is that this be continued. ***We have an agreement.  The agreement addresses the amended complaint, addresses the motion for receiver.  Your Honor has approved that agreement.  I don't think it's time now to move forward with the underlying allegations until we find out what takes place with regard to the Beverly Hills property, the plan***—maybe not the plan, but the Beverly Hills Property, and as may be necessary, the La Brea property that is owned by the defendant, Ace Museum.  So I would suggest at this be put over for 30 days.
>
> "**THE COURT**:  Mr. Shemano, comments?
>
> "**MR. SHEMANO**:  Your Honor I have not objection to that.

---

[7] See RJN, Exh. "___" (Transcript of March 18, 2015 hearing); 69:1- 70:13

1    **"THE COURT**: All right."

2

3    The Court then continued the March 18, 2015 hearing to April 15, 2015.

4    The significance of the above exchange is that Committee counsel, three days *after*

5    the "March Conditions" or "Second Benchmark" is waiving on behalf of the Committee

6    (as is its "absolute right" under the Stipulation) the March 15 deadline.  The Committee's

7    waiver of strict compliance with the March Conditions/benchmarks how the focu of the

8    Stipulation was to get the Beverly Hills Property  sold before the expiration of the Option,

9    not the arbitrary dates in the Stipulation.

10   Plan Agent's other argument—that performance by Chrismas and the Museum

11   merely relieved them of their obligation to support the Committee's plan -- is a gross

12   misreading of the Stipulation and ignores that a $40, million sale of the Beverly Hills

13   Property required "dismissal of the Adversary Action with prejudice."  Stipulation ¶ 9.

14   The party that is supposed to dismiss the Adversary Action is the Estate, on whose behalf

15   the Committee brought the action.  However, because the Stipulation binds successors, and

16   the Plan Agent is the successor to the Estate (and to the Committee), the Plan Agent is now

17   required to dismiss the Adversary Action.

18

19   b.    **The "Term Sheet" Does Not Conflict with the Plain Meaning of the**

20   **Stipulation**. Committee Counsel (now Plan Agent counsel) in his declaration argues that

21   paragraph 5 of Exhibit "6" to the Stipulation (the "**Term Sheet**") contemplates *both* a $40

22   million sale of the Beverly Hills Property *and* the separate payment of the Museum Note.

23   Counsel misreads both the Stipulation and the Term Sheet.  Paragraph 5(c) of the Term

24   Sheet merely provides that if the Museum Note is paid:

25

26   "Debtor, Chrismas and the Committee agree to attempt and [sic] negotiate over the
     terms and conditions of a consensual plan, in good faith in order to address the

27   balance of the indebtedness, if any, remaining due and owing to creditors." Term

28   Sheet ¶5(c).

---

7

1    In sum, paragraph 5(c) merely allows for the possibility that Mr. Chrismas and the

2    Museum might both sell the Beverly Hills Property and separately pay the Museum Note,

3    and that if they do both these things, the Committee will be nice to Mr. Chrismas and

4    "attempt" to "negotiate" in "good faith" over the terms of a "consensual plan." And so it

5    happened that, while Mr. Chrismas negotiated a $40 million sale of the Beverly Hills

6    Property (thereby earning his dismissal with prejudice and the extinguishment of the

7    Museum Note), he was unable to cause the Museum Note to be separately paid.

8    Consequently, the Committee made no attempt to negotiate in good faith with Mr.

9    Chrismas over the terms of a consensual plan, as it would otherwise have been required to

10    do pursuant to paragraph 5(c) of the Term Sheet.

12        c.    **The Confirmed Plan Does Not Conflict with the Plain Meaning of the**

13    **Stipulation**. In ¶14 of her declaration, then Debtor's counsel Beth Young states:

15    "Along with other attorneys at LNBYB, I oversaw the Debtor's preparation of a
     proposed plan of reorganization. Each version of the Debtor's proposed plan
16    included terms that preserved the Museum Adversary and recovery of the
     indebtedness which is the subject of the Museum Adversary; vesting the Plan
17    Agents right to proceed with the Museum Adversary after Plan confirmation, all of
     which was in order to fund consummation of the Plan with the anticipated
18    recoveries of the undisputed debts owing by Ace Museum. If Mr. Shemano
     believed that there was no basis to proceed with the Museum Adversary, I would
19    have expected him to object to the inclusion of the continuation of the Museum
     adversary through the Plan Agent, but no such object was lodged by Mr. Shemano
20    or anyone on behalf of Ace Museum." Young Decl. ¶14.
21

24    Counsel's expectations notwithstanding, preservation of the Plan Agent's rights against the

25    Museum or Mr. Chrismas in the Plan were unimportant to Defendant, because whatever

26    rights the Estate, Committee (or future Plan Agent) might have would be circumscribed by

27    the Court-Approved Stipulation. In essence, the Plan merely quitclaimed to the Plan

28    Agent whatever rights then belonged to the Estate. The Plan did not (and could not) create

1   *new* claims against Defendant, and it did not (and could not) resurrect claims settled and

2   released in the Stipulation.

3        On the other hand, under the confirmed Plan, the Plan Agent could continue to

4   prosecute the Museum Adversary Action against defendants other than Mr. Chrismas or

5   the Museum, and he has done so.  See Stipulation ¶11 ("There are no third party

6   beneficiaries to this Stipulation and no releases or settlement provided for in this

7   Stipulation shall be used or alleged to be in favor of any other party, other than the parties

8   to this Stipulation.")

9        The foregoing language about the "releases or settlement provided for in this

10  Stipulation" evidences the fact that the Stipulation provides both a conditional settlement

11  and a release of Mr. Chrismas and Ace Museum.  After all, when Committee counsel

12  inserted into the Stipulation language about "releases or settlement provided for in this

13  Stipulation," what other releases or settlement could he have been referring to other than

14  those in paragraph 9 the Stipulation?  On this issue, the Plan Agent is silent.

15

16        d.    **Chrismas and the Museum Performed Timely Under the Stipulation**.

17        While Committee (now Plan Agent's) counsel acknowledges that his negotiations

18  over the Stipulation with Defendant's counsel were driven by the Committee's desire for

19  "a quick and profitable sale of the BH Property by a fixed deadline," he incorrectly

20  conflates the "fixed deadline" with the deadlines set forth in the resulting settlement

21  agreement ("**Settlement**").  Sahn Decl. at 4:22-23.

22        Rather, the "fixed deadline" of concern was the December 16, 2016 deadline on

23  which the Option expired, not the other deadlines set forth in the Settlement (February 17,

24  2015; March 15, 2015; March 31, 2015), which were manifestly *arbitrary* deadlines

25  selected by Committee counsel who drafted the Settlement.  The arbitrary nature of those

26  deadlines, described throughout the Motion as "benchmarks," is evidenced *both* (i) by the

27  absence of a "time is of the essence" clause in the Stipulation *and* (ii) by the ease with

28  which the Stipulation allows the deadlines to be changed unilaterally:

1

2    "Any deadlines for performances set forth in this Stipulation are for the sole benefit

3    of the Creditor's Committee, which shall have the absolute right to extend such

deadlines without further order of the Bankruptcy Court." Stipulation, ¶11.

4

5    The elasticity of the benchmarks is further evidenced by Committee counsel's

6    representations to the Court during a status conference on March 18, 2018. (All emphasis

7    supplied):[8]

8

9    "**THE COURT**: . . . . And then with respect to . . . number 4, which is the

10    adversary matter.  It say, 'Motion for leave to amend complaint, appoint receiver,

11    and issuance of temporary restraining order.'  And this is the committee's adversary

12    proceeding.  It's Ace Museum. Mr. Sahn, is there anything that needs to be

13    discussed?

14    "**MR. SAHN**: "Your Honor, I don't know if Mr. Shemano is on the phone or not.

15    "**MR SHEMANO** (Telephonic): Your Honor, I have been listening.  I am on the

16    phone.  David Shemano on behalf of –

17    "**THE COURT**: Sorry to keep you on the line so long.

18    "**MR. SHEMANO**:  No. No. This is important information.

19    "**THE COURT**:  All right.  Mr. Sahn?

20    "**MR. SAHN**: Your Honor, my suggestion is that this be continued. *We have an*

21    *agreement.  The agreement addresses the amended complaint, addresses the*

22    *motion for receiver.  Your Honor has approved that agreement.  I don't think it's*

23    *time now to move forward with the underlying allegations until we find out what*

24    *takes place with regard to the Beverly Hills property, the plan*—maybe not the

25    plan, but the Beverly Hills Property, and as may be necessary, the La Brea property

26

27

28    [8] See RJN, Exh. "___" (Transcript of March 18, 2015 hearing); 69:1- 70:13

that is owned by the defendant, Ace Museum.  So I would suggest at this be put over for 30 days.

"**THE COURT**:  Mr. Shemano, comments?

"**MR. SHEMANO**:  Your Honor I have not objection to that.

"**THE COURT**: All right."

e.    **The Significance of the Bench Marks or March Conditions Under the Plan.**  Under the plain language of the Stipulation, a failure to meet the any of the date-related conditions had limited (though important) consequences:  It permitted the Committee to lodge the Order that would install a third party as the Museum's "responsible officer," allowed that person to market and sell the B.H. Property, and prevented Mr. Chrismas or the Museum from objecting the Committee's Plan.  That's it.  See Stipulation ¶¶ 3, 4, 5, 6, and 8.

However, the Committee's obligation to dismiss the Adversary Proceeding and the extinguishment of the Promissory Note were **not** conditioned on meeting the date-related benchmarks or "conditions."  Those issues are governed by Paragraph 9, which requires the Mr. Chrismas/the Museum achieve one of three (3) conditions:  (1) The sale of the Beverly Hills Property, (2) the March 31 Condition, *or* (3) the Loan being otherwise satisfied.  Because the above-reference sentence in Paragraph 9 is written in the disjunctive, there is no requirement that all three (3) conditions be met, only that one be met.  To read it otherwise is to turn "or" into "and."  Note, too, that in Paragraph 9 there is *no temporal condition* on the sale of the Beverly Hills property.  This is because the parties knew that the property would either be sold before the expiration of the Option or it would never be sold at all.

f.    **The Committee had good reason to negotiate the Dismissal of the Museum Adversary Proceeding**.  In ¶13(A) of her declaration filed in support of the Motion ("**Young Decl**"), Beth Young queries:

1

2       "What would be the point of dismissing the Museum Adversary if the loan was not

3       otherwise satisfied' as set forth in ¶9 [of the Stipulation].  Mr. Shemano's

      declaration [filed earlier in the Museum Adversary Action] does not address this."

4       Young Decl. ¶13(A).

5       As the Shemano II Declaration makes clear, it made perfect sense for the

6 Committee to dismiss the Museum Adversary whether or not the Museum Loan had been

7 "otherwise satisfied" *to motivate the Mr. Chrismas and the Museum to achieve a $40*

8 *million sale of the Beverly Hills Property at a time when the Committee could not*

9 *envision more than a $30 million sale.*  In hindsight, the Committee made a fantastic deal,

10 because both Mr. Chrismas and the Museum appear judgment proof[9] and the $10 million

11 more that the Debtor received in 2015 is far better than an uncollectible judgment for $3.3

12 million (or any other amount) that the Plan Agent may otherwise have obtained in 2020.[10]

13

14       g.    **The March 15 Conditions are Immaterial and unrelated to Paragraph 9**

15 **of the Stipulation**.  In  ¶13(B) of her declaration, Ms. Young states:

16

17       "By Mr. Shemano's admission [in his prior declaration], the Debtor failed to obtain

      a bona fide offer for the Beverly Hills Property by the March 15, 2015 condition

18       deadline. If the point of the Stipulation was to incentivize Mr. Chrismas to sell the

      Beverly Hills Property expeditiously, as suggested by Mr. Shemano, then there

19       would be no basis to reward Ace Museum with debt forgiveness for Mr. Chrismas

20       having failed to achieve the single critical condition."  Young Decl. ¶13(B).

21 Ms. Young is wrong for five (5) reasons:

22       First, as stated above, there was nothing "critical" about the March Conditions,

23 which were just arbitrary dates that the Committee could extend on a whim and, as

24

25

---

26 [9] The Museum has even been tax-defaulted because it could not afford to pay its taxes and
judgment has been entered against it.

27 [10] Defendant's financial condition can also be inferred by the number and amount of unsatisfied
judgments entered against him.  See request for Judicial Notice, Exhibit _____ (copies of
28 Judgments).

1 | evidenced by the above-quoted language from the March 18, 2015 status conference, did

2 | extend.

3 | Second, the March 15, 2015 date was not critical because it was not even close to

4 | the last date for the exercise of the Option, which was December 31, 2016.

5 | Third, the incentive for Mr. Chrismas and the Museum to meet the arbitrary, non-

6 | critical March Conditions was to prevent the appointment of a "responsible officer" over

7 | the Museum and to retain the right to object to the Committee's plan (Stipulation ¶¶ 3-5),

8 | not the forgiveness of the Museum Loan or the dismissal of the Museum Adversary Action

9 | (Stipulation¶9) .

10 | Fourth, under the Stipulation, the greatest reward for Mr. Chrismas and the

11 | Museum—dismissal of the Museum Adversary Action and the extinguishment of the

12 | Museum Loan—could only happen if the Beverly Hills Property were sold or the Museum

13 | Loan was actually paid in full.

14 | And fifth, the "single critical condition," therefore, was not one of the March

15 | Conditions but the sale of the Beverly Hills Property **OR** the payment of the Museum

16 | Loan, because only the satisfaction of one of those conditions would lead to the dismissal

17 | of the Museum Adversary Action (as to Mr. Chrismas and the Museum) and the

18 | extinguishment of the Museum Note.

19 |

20 |     h.    **The Stipulation is Crystal Clear and Creditors Profited Immensely from**

21 | **It**. In her ¶13(C)  of her  declaration, Ms. Young states:

22 |

23 | "Any resolution as proposed by Mr. Shemano with the estate walking a way from

24 | $3,500,000 to $3,700,000, would have required a 9019 Motion outlining the benefits to the estate of making such an agreement, or an indication of the inherent

25 | risks of the Museum Adversary warranting such a settlement, along with the consent of the Bankruptcy Court.  As Debtor's counsel, if I had any understanding

26 | that this is what the Stipulation provided, I would never have filed such a motion or

27 | requested the Court's approval of such a nonsensical, one-sided, irrational settlement.  Indeed, it would be contrary to the requirement in the Stipulation that

28 |

---

the Ace Museum 'Loan is otherwise satisfied." How would dismissal for no money achieve this statement purpose that the Ace Museum 'Loan is otherwise satisfied.'"

The Stipulation, plainly read, is not at all nonsensical, one-sided, or irrational. Indeed, it is eminently logical, crystal clear, and provides enormous benefits – at least $10 million worth-- to the estate from defendants that would otherwise have paid the estate nothing. Shemano II Decl. ¶5-8. Regarding the form of Court approval—a stipulation filed under seal rather than a 9019 Motion—that was a procedural device elected by the Committee, which actually did represent all general unsecured creditors. It was also a device that the Court, to protect the possibility of a $40 million sale, justifiably found to be reasonable under the circumstances.

i..    **The Was No Need for Mr. Shemano to File a Motion to Dismiss**. In ¶13(D) of her declaration, Ms. Young writes:

"D.    Finally, if the Stipulation meant what Mr. Shemano now argues, I would have expected to see Mr. Shemano immediately file a Motion to Dismiss the Museum Adversary at or about the time that the Beverly Hills Property sale closed in June 2015. However, no such motion was ever filed by Mr. Shemano, then, or ever, thus undermining the very argument that Mr. Shemano now asserts. It was at this same time (June 2015) that I advised Mr. Shemano in a telephone conversation that his interpretation of the Stipulation was ridiculous and without any merit. I assumed Mr. Shemano did nothing further because he agreed with my assessment that the argument was ridiculous and without merit." Young Decl. ¶13(D).

Neither counsel's unmet expectations nor her casting of ridicule are relevant here. What is relevant is that shortly after the closing of the sale of Beverly Hills Property for $40 million to the Metropolitan Transit Authority, the Adversary Action was continued for months at a time with the perfunctory filing of status reports as other case-related matters (e.g. prosecuting other adversary complaints, amending the complaint to add more parties, consolidating the complaint with other complaints, negotiating with AERC and Eric

1  Wilson, etc.) appeared to take on greater urgency for the Committee and the Plan Agent.

2  Consistent with Defendant's understanding of the Stipulation, the Committee made no

3  effort to actually prosecute the Museum Adversary Action against Mr. Chrismas or the

4  Museum until after Mr. Shemano was no longer counsel for Mr. Chrismas or the Museum,

5  both were unable to meet their financial obligations to their then counsel Robbins and

6  unable to afford expensive and elective motion practice, which appeared unnecessary

7  because the Committee was not actively prosecuting the Museum Adversary Action

8  against them and because the Stipulation required the dismissal of the Adversary Action

9  upon "request" to "effectuate the intent of [the] Stipulation." Stipulation ¶21.   However,

10  counsel's lack of follow-through does not change the plain meaning of the Stipulation,

11  what the parties agreed to, the fact that the Court approved their Stipulation, and the fact

12  that Mr. Chrismas performed under the Stipulation to the great benefit of the estate.

### III.

### THERE IS NO FRAUD ON THE COURT.

15      Plan Agent also seeks to set aside the Stipulation for fraud on the Court under

16  FRCP 60(d)(3), not because he has the facts to do so, but because the statute of limitations

17  to set aside a judgment on general fraud under FRCP 60(b)(3) ran years ago.  A party can

18  seek to set aside a judgment or order based on fraud under either FRCP 60(b)(3) or

19  60(d)(3).  FRCP 60(b)(3) includes fraud, misrepresentation, or misconduct by an opposing

20  party, but must be made within one year of entry of the judgment or order. *In re Old*

21  *Carco, LLC*, (S.D. N.Y. 2010) 423 B.R. 40, 52.  Here, the Stipulation was approved on

22  February 17, 2015, so any motion to set aside the judgment had to be filed by February 16,

23  2016.  Notwithstanding that by December 2015 the Committee knew of the alleged fraud,

24  because it filed an adversary matter alleging Chrismas fraudulently transferred about

25  $4,000,000 to Ace Museum to pay its rent, the Committee never filed a motion to set aside

26  the judgment under FRCP 60(b)(3).  As a result, the Plan Agent, is barred from setting

27  aside the Stipulation under FRCP 60(b)(3).

28

1    Nor can the Plan Agent "set aside a judgment for fraud on the court," because he

2    has not presented evidence of such fraud. "Fraud on the court must encompass conduct

3    other than that proscribed by Rule 60(b)(3)." *Old Carco, LLC*. at 52 (noting that otherwise

4    the time limitation for Rule 60(b)(3) motions would be rendered "meaningless"). "Not all

5    'fraud connected with the presentation of a case to a court is necessarily a fraud on the

6    court.'" *In re Pryor*, 2016 W.L. 400119 at 4. "[F]raud on the court embraces only that

7    species of fraud which does or attempts to, 'defile the court itself, or is a fraud perpetrated

8    by officers of the court so that the judicial machinery can not perform in the usual manner

9    its impartial task of adjudging cases that a presented for adjudication.'" *In re Roussos*, 541

10   B.R. 721, 729 (C.D. Cal. 2015). Additionally, the Plan Agent "must establish fraud on the

11   court by clear and convincing evidence." *Pizzuto v. Ramierez*, 783 F.3d 1171, 1181 (9[th]

12   Cir. 2015)  Here, the stipulation was not supported by a declaration of Mr. Chrismas or a

13   Mr. Chrismas attorney and thus there was no fraud on the Court.

14   The Plan Agent mistakenly argues that this case is similar to *In re Pasadena Adult

15   Residential Care, Inc.*, 2015 WL 6443216. In Pasadena, the debtor and its counsel made

16   continued representations to the Court that its financing was approved and that the funding

17   of the loan was imminent. Based upon those representations, the Court dismissed the case

18   as part of a settlement. Those representations were not true, so the Court revoked the

19   dismissal order. In contrast, here neither Chrismas nor his counsel made any

20   representations to the Court to support the approval of the Stipulation. With no such

21   representations to the Court, there is no fraud upon the court that would justify setting

22   aside approval of the Stipulation.

23   //

24   //

25   //

26   //

27   //

28

1

## IV.
## <u>CONCLUSION</u>

2

Based on the foregoing, the Court should deny the Motion.

3

4

DATED:  April 2, 2019                     FREDMAN LIEBERMAN PEARL LLP

5

6

By: _____

7

Marc A. Lieberman, Esq.
Alan W. Forsley, Esq.

8

Attorneys for defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF DAVID B. SHEMANO

2

I, David B. Shemano, declare as follows:

3

    1.    I am an attorney at law, duly licensed to practice before all of the courts of

4

the State of California and before this Court. I am the owner of the law firm of

5

ShemanoLaw and a former partner in the law firm of Robins Kaplan LLP ("**Robins**").

6

Robins is former counsel to Ace Museum, a California corporation (suspended) (the

7

"**Museum**") and to Douglas Chrismas in the matter of *Committee v Ace Museum and*

8

*Douglas Chrismas*, Adv. No. 2:14-ap-01771-RK (the "**Museum Adversary Action**"). I

9

have personal knowledge of the facts set forth herein and, if called to testify could and

10

would competently testify thereto.

11

    2.    In January and February 2015, I negotiated on behalf of Chrismas and the

12

Museum with Victor Sahn, then counsel to the Official Committee of Unsecured Creditors

13

("**Committee**") of the bankruptcy estate of Art & Architecture of the 21st Century ("**Ace**

14

**Gallery**" or "**Debtor**"). Those negotiations resulted in a Stipulation Authorizing (1) Leave

15

to Amend Complaint and (2) Appointment of Responsible Officer Ace Museum

16

("**Stipulation**") filed under seal and subsequently approved by the Court on February 18,

17

2015.

18

    3.    I have reviewed the Plan Agent's Motion; (1) to Interpret Confirmation

19

Order And Confirmed Plan and (2) to Vacated Order Approving Stipulation, etc. (the

20

"**Motion**") and believe that the Motion is predicated on an incomplete characterization of

21

the negotiations between Mr. Sahn and me in February 2015 that resulted in the

22

Stipulation.

23

    4.    As the Plan Agent acknowledges in the Motion, "the Committee wanted to

24

incentivize Chrismas to sell the property located at 9430 Wilshire Boulevard, Beverly

25

Hills, CA 90210 (the "**B.H. Property**") quickly, for a minimum price." That motivation

26

was driven by the fact that the Debtor's purchase option ("**Option**") for the B.H. Property

27

was $18,575,000 and was scheduled to increase every six (6) months after June 30, 2015

28

until the Option would eventually expire on December 31, 2016.

5.    In our negotiations, Mr. Sahn disclosed to me that the Committee did not believe that a sale of the B.H. Property would exceed $30 million.  Among other things, Los Angeles Metropolitan Transportation Authority had announced its intent to utilize the B.H. Property as part of the construction of the Beverly Hills Purple Line subway station. That construction was projected to take almost a decade, which severely and detrimentally affected the value of the B.H. Property to any potential buyer.

6.    The Committee's belief that the B.H. Property was worth no more than $30 million is critical to the understanding why Paragraph 9 of the Stipulation provided for the conditional dismissal of the Museum Adversary Action and the extinguishment of the Museum Note.

7.    In short, Mr. Chrismas needed to know from the Committee a "dream" price for the sale of the B.H. Property that would satisfy the Committee and permit the Debtor, in cooperation with the Committee, to exit bankruptcy and continue the Debtor's control over the litigation with AERC.  Under the Committee's then proposed plan, Chrismas would have lost control over both the existing gallery and the AERC litigation, which litigation Chrismas believed had considerable value.

8.    The number provided by the Committee for the "dream" price was $40 million.  That $40 million figure reflected the Committee's valuation of $30 million, plus the $4 million owed by Ace Museum, plus millions of additional proceeds.  It was apparent to me at the time, based on my conversations with Mr. Sahn, that the Committee thought the $40 million number was a fantasy that had no chance of ever occurring, and that the Committee had nothing to lose by agreeing to dismiss Mr. Chrismas and the Museum from the Museum Adversary Action if Mr. Chrismas could achieve a $40 million sale for the B.H. Property.

9.    When I communicated to Mr. Sahn that Chrismas came through and somehow convinced the Los Angeles Metropolitan Transportation Authority to purchase the B.H. Property for $40 million and to agree to resell the B.H. Property back to the

Debtor at the conclusion of construction, I believe it is a fair characterization that Mr. Sahn was initially stunned and then extremely pleased.

10.     There is no doubt in my mind that the Stipulation agreed to by the Committee incentivized Chrismas to negotiate the deal with the Los Angeles Metropolitan Transportation Authority that resulted in over $21 million of net proceeds to the Debtor's estate, which was approximately $10 million more than what the Committee believed was realistic at the time.

I declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct.

Executed this 2nd day of April 2019 at Los Angeles, California.

DAVID SHEMANO

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
FREDMAN LIEBERMAN PEARL LLP 1875 Century Park East, Suite 2230, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION OF DOUGLAS CHRISMAS TO PLAN AGENT'S MOTION TO (1) INTERPRET CONFIRMATION ORDER AND CONFIRMED PLAN; AND (2) TO VACATE ORDER APPROVING STIPULATION WITH ACE MUSEUM, AND STRIKE STIPULATION; DECLARATION OF DAVID SHEMANO** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**I. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 2, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**II. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*), I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u> (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **April 2, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Chambers of the Honorable
Robert N. Kwan
United States Bankruptcy Court
255 E. Temple Street, Suite 1682
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| April 2, 2019 | ADELAIDA FLORES | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## ADDITIONAL SERVICE LIST
## VIA ECF

- Simon Aron    saron@wrslawyers.com
- Jason Balitzer    jbalitzer@sulmeyerlaw.com,
  jbalitzer@ecf.inforuptcy.com;dwalker@ecf.inforuptcy.com;kmccamey@sulmeyerlaw.com
- Keith Patrick Banner    kbanner@greenbergglusker.com,
  sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Brian L Davidoff    bdavidoff@greenbergglusker.com,
  calendar@greenbergglusker.com;jking@greenbergglusker.com
- Carolyn A Dye    trustee@cadye.com
- Fahim Farivar    lawyercpa@gmail.com,
  amcdow@foley.com;scvasquez@foley.com;scvasquez@foley.com
- Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-
  lawyers.net,addy.flores@flpllp.com
- J. Bennett Friedman    jfriedman@flg-law.com, msobkowiak@flg-law.com;jmartinez@flg-law.com
- Asa S Hami    ahami@sulmeyerlaw.com,
  agonzalez@sulmeyerlaw.com;agonzalez@ecf.inforuptcy.com;ahami@ecf.inforuptcy.com
- Matthew P Kelly    mkelly@sulmeyerlaw.com
- Daniel A Lev    dlev@sulmeyerlaw.com,
  asokolowski@sulmeyerlaw.com;dlev@ecf.inforuptcy.com;dwalker@sulmeyerlaw.com
- Ashley M McDow    amcdow@foley.com, sgaeta@foley.com;Ffarivar@foley.com;swilson@foley.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Susan I Montgomery    susan@simontgomerylaw.com,
  assistant@simontgomerylaw.com;simontgomerylawecf@gmail.com;montgomerysr71631@notify.
  bestcase.com
- Kurt Ramlo    kr@lnbyb.com, kr@ecf.inforuptcy.com
- David J Richardson    drichardson@sulmeyerlaw.com, drichardson@ecf.inforuptcy.com
- Ronald Rus    rrus@brownrudnick.com, tlangford@brownrudnick.com
- Victor A Sahn    vsahn@sulmeyerlaw.com,
  agonzalez@sulmeyerlaw.com;agonzalez@ecf.inforuptcy.com;asokolowski@sulmeyerlaw.com;vsahn@
  ecf.inforuptcy.com
- Michael C Schneidereit    mschneidereit@jonesday.com,
  scollymore@jonesday.com;tckowalski@jonesday.com
- David B Shemano    dshemano@shemanolaw.com
- Jonathan Shenson    jshenson@shensonlawgroup.com
- Mark Shinderman    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- Michael D Sobkowiak    msobkowiak@flg-law.com, jmartinez@flg-law.com;jfriedman@flg-law.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Michael W Vivoli    srhiley@vivolilaw.com, sbrown@vivolilaw.com
- Jessica Vogel    Jvogel@sulmeyerlaw.com,
  jvogel@ecf.inforuptcy.com;mviramontes@sulmeyerlaw.com
- Reed S Waddell    rwaddell@frandzel.com, sking@frandzel.com
- Howard J Weg    hweg@robinskaplan.com
- Beth Ann R Young    bry@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.