

FILED & ENTERED

MAY 05 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

In re:

ART & ARCHITECTURE BOOKS OF
THE 21st CENTURY,

Debtor.

_____

SAM LESLIE, Plan Agent for Art &
Architecture Books of the 21st Century,

Plaintiff,

vs.

ACE GALLERY NEW YORK
CORPORATION, et al.,

Defendants.

_____

Case No. 2:13-bk-14135-RK

Chapter 11

Adv. No. 2:15-ap-01679-RK

Consolidated with Adv. No. 2:14-ap-01771-RK
and Adv. No. 2:15-ap-01680-RK

**MEMORANDUM DECISION AND ORDER
ON PLAN AGENT'S MOTION FOR LEAVE
TO AMEND SIXTH AMENDED COMPLAINT**

Hearing Dates:    January 7, 13 and 26, 2021

**HEARINGS CONDUCTED REMOTELY BY
ZOOM FOR GOVERNMENT**

Having considered the Motion of Plaintiff Sam Leslie, Plan Agent ("Plaintiff"), for Leave to Amend Sixth Amended Complaint ("motion") (Docket No. 808), filed on December 10, 2020, the oppositions filed by Defendants 400 South La Brea, LLC, and

1  related parties, Cathay Bank and Douglas Chrismas, the Plaintiff's response, and

2  related supplemental briefs filed by the parties, and the oral arguments of the parties,

3  the court rules as follows.

4      As a preliminary matter, the court must decide whether Rule 15(a) and/or Rule

5  16(b) of the Federal Rules of Civil Procedure ("Civil Rules") apply.[1]  These rules are

6  made applicable to these adversary proceedings by Federal Rules of Bankruptcy

7  Procedure 7015 and 7016.  Generally, a court considers a motion for leave to amend

8  pleadings pursuant to the permissive standard of Civil Rule 15(a).  *James v. J2 Cloud*

9  *Services, Inc.,* No. 2:16-cv-05769 CAS (PJWx), 2019 WL 184330 (C.D. Cal. Jan. 14,

10  2019), slip op. at *2, citing, *Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th

11  Cir.1997).  However, if the court has entered a scheduling order establishing a deadline

12  for amending pleadings, Civil Rule 16(b) applies once the deadline has passed.  *Id.,*

13

14  ─────────────

[1] In the motion, Plaintiff also argues that his motion is not even necessary, even though he made it.  Motion, Docket
15  No. 808 at 11.  Specifically, Plaintiff's argument is as follows: "Further, the recovery of transfers between four and
seven years prior to the bankruptcy filing is plead in the Sixth Amended Complaint (which is the reason this Motion
16  is not necessary) because the Plan Agent has plead the applicability of Section 3439 [of the California Civil Code] to
the claims asserted against 400 S. La Brea."  *Id.*  In explaining this argument, Plaintiff states:

17      The Sixth Amended Complaint (Docket No. 699) pleads allegations for the recovery of Fraudulent
Transfers under California Civil Code Section 3439 in three separate claims for relief.  [T]hey are the
18      Second, Third and Fourth Claims for Relief. . . There is no mention in the separately plead Third and
Fourth Claims for relief that the recovery of the transfers that the Plan Agent seeks to avoid are limited by
19      the four years.  The four years plead are only plead in the Second Claim for relief. . . The claims plead by
the Plan Trustee in the Third Claim for Relief are made against the Defendants pursuant to Section 3439.05
20      of the California Civil Code and the claims in the Fourth Claim for Relief are made pursuant to Section
3439.05 of the California Civil Code.  Each of these provisions, respecting the recovery of the very same
21      transfers as are discussed in the Second Claim for Relief are governed as to the limitations' period of
California Civil Code Section 3439.09 [which provides for a seven year statute of limitations from the date
22      of the transfer. . . There is no need to permit an amendment to the Sixth Amended Complaint.  But the
Court may do so, as stated above, by simply changing one word in paragraph 213 so that the Second Claim
23      for Relief is consistent with what is already plead in the Third Claim for Relief and the Fourth Claim for
Relief that is found in the Sixth Amended Complaint . . . .

24  *Id.* at 15-18.  In essence, the argument is that the Third and Fourth Claims for Relief are not subject to the limitation
25  of the Second Claim for Relief which expressly alleges fraudulent transfers within four years of the petition date in
paragraph 213 and may utilize the entire seven year period before the petition date under California Civil Code
26  Section 3439.09.  The argument is flawed because: (1) the Third and Fourth Claims for Relief are subject to the
same pleading limitation of four years as the Second Claim for Relief because those claims incorporate by reference
27  paragraph 213 which specifically alleges actionable transfers only within four years of the petition date; and (2)
constructive fraudulent transfers are subject to an absolute statute of limitations of four years of the transfers under
28  California Civil Code Section 3439.09.  There is no need to permit amendment based on this argument, and the
court declines to do so.

citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir.2000).  This is because once the scheduling order deadline passes, the court must first modify the scheduling order to permit an amendment of pleadings pursuant to Civil Rule 16(b)(4). *Id.*, citing O'Connell & Stevenson, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California and Ninth Circuit Edition, ¶ 8:1469 (online edition April 2021), citing inter alia, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

   After the status conference in these adversary proceedings on May 29, 2019, the court filed and entered a scheduling order on June 6, 2020 which set a deadline to complete nonexpert fact discovery by January 31, 2020 and expert discovery by April 30, 2020.  Docket No. 594 (the "Scheduling Order").  The Scheduling Order, however, did not set a specific deadline for further amending the pleadings.  *Id*.  On January 22, 2020, the court filed and entered an amended scheduling order in anticipation of the filing of the Sixth Amended Consolidated Complaint which had been allowed by motion. This amended scheduling order, however, did not set a specific deadline for further amending the pleadings, such as the then soon to be filed Sixth Amended Complaint, but otherwise set deadlines for completing nonexpert witness and expert witness discovery, Docket No. 689.  The Scheduling Order was further amended by stipulated schedule extension orders, Docket Nos. 717, 826 and 840, filed on April 9, 2020, December 16, 2020 and January 25, 2021 respectively.  Pursuant to the Scheduling Order as further amended, the deadline for nonexpert fact discovery was extended to September 30, 2020, and nonexpert fact discovery is now closed, and the deadline for completion of expert discovery was extended to April 2, 2021.  *Id*.  After a further hearing on Plaintiff's motion to further amend the complaint on January 26, 2021, the court further amended the Scheduling Order pending a ruling on Plaintiff's motion to amend as follows: "(a) the deadline for service of expert rebuttal reports is extended from March 2, 2021 to forty-five (45) days following the Court's issuance of a written ruling on the Motions (the "Rebuttal Deadline"); and (b) the deadline for completion of

1    expert witness discovery is continued from April 2, 2021 to thirty (30) days after the

2    Rebuttal Deadline."[2]  Docket No. 861.

3         On December 10, 2020, Plaintiff filed his motion for leave to amend the Sixth

4    Amended Complaint now before the court, which was ten and one-half months after the

5    court entered the original Scheduling Order now in effect on January 22, 2020.  In the

6    Sixth Amended Complaint, the current operative complaint, Plaintiff alleges that in the

7    Second, Third and Fourth Claims for Relief, transfers of Debtor's assets as prepetition

8    rent obligations were made by Debtor to Defendant 400 S. La Brea within four years

9    before the petition date with the actual intent to hinder, delay or defraud creditors of the

10   Debtor to pay the rent obligations of a related nondebtor entity, Ace Museum, or such

11   transfers were constructive fraudulent transfers and are otherwise avoidable.  Sixth

12   Amended Complaint, ¶¶ 212–228.

13        As alleged in the Sixth Amended Complaint, Defendant Douglas Chrismas

14   incorporated the Debtor in 1999 and was its principal and sole shareholder since

15   incorporation through the effective date of Plaintiff's appointment as the plan agent in

16   this case on April 6, 2016.  *Id*., ¶ 27.  As also alleged in the Sixth Amended Complaint,

17   in 2006, Defendant Chrismas entered into a three-year lease of, with a purchase option

18   for, two parcels of real property with the street addresses of 400 S. La Brea Avenue,

19   Los Angeles, CA, and 407 S. Sycamore Avenue, Los Angeles, CA, with Defendant 400

20   S. La Brea LLC as lessor and himself as lessee, which is known as the "Museum

21   Lease" as it was the business location of Defendant Ace Museum, which was

22   incorporated by Defendant Chrismas in 2009.  *Id*. ¶¶ 36–40.  As also alleged in the

23   Sixth Amended Complaint, rent related charges on the Museum Lease totaling $2.9

24   million was paid by or on behalf of the Debtor into Defendant 400 S. La Brea's checking

25   account with Defendant Cathay Bank. *Id*., ¶ 37.  As further alleged in the Sixth

26   Amended Complaint, in 2009, Defendant Chrismas, Defendant 400 S. La Brea LLC and

27

28   [2] The reference to "Motions" in this further scheduling order is to Plaintiff's motion to further amend the complaint and Defendants' motion to strike portions of the expert report of Plaintiff's expert, Jennifer Ziegler, Docket No. 805.

Defendant Ace Museum executed an amendment of the Museum Lease with the

purchase option assigning Chrismas's rights to Ace Museum, and the amendment and

assignment noted that the two parcels of real property were subject to an existing $11.9

million secured loan from Defendant Cathay Bank.  *Id.*, ¶ 41.  As also alleged in the

Sixth Amended Complaint, the rent on the Museum Lease totaling over $5.4 million was

also paid by the Debtor from 2009 to 2013 when Debtor filed its bankruptcy petition in

this case, and some of this money went to pay down the loan on the properties owed by

400 S. La Brea to Cathay Bank.  *Id.*, ¶¶ 46–57.  As further alleged in the Sixth Amended

Complaint, in order to legitimize the Debtor's transfers of rent payments on behalf of

Ace Museum, Defendant Chrismas caused a purported resolution of the Ace Museum

board of directors or trustees to authorize Ace Museum to borrow the money paid by the

Debtor for Ace Museum's rent as a loan with a maturity date of June 11, 2014, and that

this loan known as the "Museum Loan" grew to over $4.4 million.  *Id.*, ¶¶ 43–44.  In the

Eighth Claim for Relief in the Sixth Amended Complaint, Plaintiff seeks to recover as

avoidable prepetition fraudulent transfers the rent related payments by Debtor on behalf

of Ace Museum during the four year period before the petition date from Defendants

400 S. La Brea LLC and related parties and Defendant Cathay Bank pursuant to 11

U.S.C. § 550.  *Id.*, ¶¶ 245–250.

In the Motion, Plaintiff now seeks amendment of the Sixth Amended Complaint to

expand his fraudulent transfer claims to encompass alleged fraudulent transfers

occurring within a new three year time period between four and seven years before the

petition date, 2006 to 2009, with an alleged value of approximately $12 million, as the

existing complaint only alleges fraudulent transfers occurring four years before the

petition date, 2009 to 2013.[3]  Motion, Docket No. 808 at 11–13.  Plaintiff argues that he

---

[3] As set forth in the motion, Plaintiff contends that payments made to Defendant 400 S. La Brea between four and seven years prior to Debtor's bankruptcy filing total $5,583,065.28 and to the other defendants total $6,948,702.35 during these years, and he should be allowed to further amend the complaint to avoid and recover these transfers as fraudulent transfers.  Motion, Docket No. 808 at 11–12.  These amounts would be in addition to the payments made to Defendant 400 S. La Brea between zero and four years before the bankruptcy filing totaling $1,321,619.15 and to the other defendants totaling $4,735,519.28 during these years that Plaintiff is seeking to avoid and recover as fraudulent transfers in the existing complaint.  *Id.*  Moreover, Plaintiff in the existing complaint is also seeking to

only needs to satisfy the standard for amendment under Civil Rule 15(a), but Defendants argue that Plaintiff's proposed amendment of the existing complaint that would require modifications to the scheduling order, and thus, in addition, must satisfy the standard of Civil Rule 16(b)(4).  *Id.* at 2; Opposition, Docket No. 830 at 9–13; Opposition, Docket No. 832 at 13.  Defendants assert that such amendment would necessitate the modification of the Scheduling Order because nonexpert discovery is now cut off and expert discovery would have to be extended because as the alleged fraudulent transferees, they need modification of the Scheduling Order to take further discovery to defend against Plaintiff's expanded fraudulent transfer claims. *Id.*

Civil Rule 16(b)(4) provides that a scheduling order may be modified "only for good cause and with the judge's consent."  *See also James v. J2 Cloud Services, Inc.*, No. 2:16-cv-05769 CAS(PJWx), 2019 WL 184330 (C.D. Cal. Jan. 14, 2019), slip op. at *3, citing, Fed. R. Civ. P. 16(b)(4).  This requirement "primarily considers the diligence of the party seeking the amendment." *Id.*, citing, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The scheduling order may be modified only "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.*

If the moving party shows good cause under Civil Rule 16(b), the court then applies Civil Rule 15(a)'s liberal standards in determining whether to grant leave to amend a pleading.  *Id.*, citing, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d at 608. Civil Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." *Id.*, citing, Fed. R. Civ. P. 15(a)(2). Generally, leave to amend under this standard is "denied only upon showing of bad faith, undue delay, futility, or undue

---

avoid and recover as postpetition transfers the payments made after the bankruptcy filing to Defendant 400 S. La Brea totaling $5,766,762.32 and to the other defendants totaling $7,305,747.80.  *Id.*

1   prejudice to the opposing party." *Id.*, citing *Chudacoff v. Univ. Med. Ctr. of S. Nevada*,

2   649 F.3d 1143, 1152 (9th Cir. 2011) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

3   Civil Rule 15(a) "is to be applied with extreme liberality," *Id.*, citing, *Morongo Band of*

4   *Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), and whether to permit

5   amendment is a decision "entrusted to the sound discretion of the trial court." *Id.*, citing,

6   *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir. 1982).

7          Thus, the court must first consider whether Plaintiff's proposed amendment of the

8   existing complaint, the Sixth Amended Complaint, requires modification of the

9   Scheduling Order pursuant to Civil Rule 16(b)(4).  According to Plaintiff, he only

10  requests leave of court to amend the change one word in the entire Sixth Amended

11  Complaint by changing the word "four" to "seven" in paragraph 213, which could be

12  accomplished by a modification, but admits that if formal amendment of the entire

13  complaint is required, he asks for leave to file a Seventh Amended Complaint.  Motion,

14  Docket No. 808 at 1.  The effect of the amendment of the complaint in changing the one

15  word in paragraph 213 has the following effects:  (1) paragraph 213 of the complaint in

16  the second claim for relief for avoidance of transfers under 11 U.S.C. § 544 and

17  California Civil Code § 3439.04(a)(1) (i.e., actual fraudulent transfers) would expand the

18  scope of the alleged fraudulent transfers in the claim for an additional three year period

19  between 2006 and 2009 in addition to alleged fraudulent transfers for the four year

20  period between 2009 and 2013 in the existing complaint; and (2) because paragraph

21  213 of the complaint is incorporated by reference in other claims for relief in the

22  complaint, the proposed amendment would also amend the third, fourth, eighth and

23  eleventh claims for relief for avoidance of transfers under 11 U.S.C. § 544 and

24  California Civil Code §§ 3439.04(a)(2) and 3439.05 (i.e., constructive fraudulent

25  transfers), for recovery of transfers under 11 U.S.C. § 550, for recovery of transfers

26  under 11 U.S.C. § 551 and for conversion of property of the estate under state common

27  law, would also expand these claims to include the additional alleged fraudulent

28  transfers for years 2006 to 2009.  Motion, Docket No. 808 at 1; Sixth Amended

Complaint, Docket No. 699 at 83–90.  Thus, in so amending the complaint, this would

have the effect of greatly expanding Plaintiff's fraudulent transfer and related claims by

adding alleged fraudulent transfers to the complaint over a new three year time period

between 2006 and 2009 with an alleged value totaling $12 million.  *Id*.

Plaintiff argues that Civil Rule 16(b)(4) is inapplicable because there would be no

modification of the Schedule Order as he is not seeking any such modification.  In

opposition to the motion, Defendants argue that Plaintiff's proposed amendment

requires modification of the Scheduling Order under Civil Rule 16(b)(4) because the

expanded claims concern different property transfers totaling over $12 million not

alleged in the prior complaints and would thus require additional discovery necessitating

modifications to the Scheduling Order pursuant to Civil Rule 16. Docket No. 832 at 12–

14; Docket No. 830 at 9–11.   When Plaintiff filed the motion to amend on December 10,

2020, the parties had already agreed previously that they would complete nonexpert

discovery by September 30, 2020 deadline, which deadline had already passed, and

that they would complete expert discovery by January 31, 2021.  Defendants argue, and

the court agrees, that the further amendment of the complaint resulting in addition of

alleged fraudulent transfers for an additional three year period, 2006 to 2009, beyond

the existing four year claims period, 2009 to 2013, would require modifications to the

Scheduling Order to allow the parties to conduct discovery with respect to these

additional claims as the discovery taken in this matter was premised on the prior

complaints only alleging fraudulent transfers between the petition date and four years

before, 2009 to 2013.  Opposition, Docket No. 832 at 12–14.  That is, based on the prior

and current complaints, Defendants only had to defend the claims alleged against them

fraudulent transfers between 2009 and 2013, and took discovery accordingly, and, if the

further amended complaint is allowed, they would have to defend the claims against

them amended to allege fraudulent transfers for an additional three years, 2006 to 2009,

allegedly worth $12 million, with discovery now closed.   Defendants argue that they

would have to conduct discovery regarding Plaintiff's expanded claims of intentional and

constructive fraudulent transfers covering an additional three years of alleged transfers with a total value of $12 million, which would also include analysis of the Debtor's alleged insolvency during this time period as well as the alleged knowledge of Defendants' agents for each of these transfers.[4]   Therefore, the court determines that Plaintiff must demonstrate good cause pursuant to Civil Rule 16(b) to modify the existing Scheduling Order in order to amend the Sixth Amended Complaint by expanding his transfer avoidance claims to add additional alleged fraudulent transfers for a different three year time period not alleged in the prior complaints.

Accordingly, Civil Rule 16(b)(4) provides the applicable standard for plaintiff's proposed amendment of the complaint that would require modifications to the court's Scheduling Order. *James v. J2 Cloud Services, Inc.*, No. 2:16-cv-05769 CAS(PJWx), 2019 WL 184330 (C.D. Cal. Jan. 14, 2019), slip op. at *3, citing, *Jones v. City of Tulare*, No. 1:17-CV-1260-SKO, 2018 WL 6271577, at *3 (E.D. Cal. Nov. 30, 2018) ("Although the Court's scheduling Order does not set a specific deadline for amending the complaint, Plaintiffs' motion to amend the complaint is governed by Rule 16(b)(4) because granting Plaintiffs leave to amend the complaint would require amending other dates in the Scheduling Order."); contra*, Santa Clara Water District v. Olin Corp.*, No. C-

---

[4] Defendant 400 S. La Brea's argument fairly summarizes Defendants' predicament arising from Plaintiff's proposed amendment:

> What is conspicuously absent from the voluminous Sixth Amended Complaint is any allegation that 400 SLB received rent payments at any time prior to the four-year pre-petition period, nor has any iteration before it made such an allegation. Based on this, the 400 SLB Defendants have conducted discovery and otherwise have been defending this adversary proceeding over the last four years within the bounds of the Plan Agent's unambiguous allegations. If the Plan Agent were allowed, overnight, to add an entirely new three-year pre-petition period to his allegations and pre-petition claims totaling at least $5.58 million, the 400 SLB Defendants will be forced to essentially start from scratch regarding the new allegations. Though the 400 SLB Defendants have not had sufficient time to fully assess the gravity of the blow that it would suffer if $5.58 [million] in new claims and a new three-year pre-petition period were added at this late stage, a preliminary assessment is that the addition of such claims would required, at a minimum: (i) re-review of some portion of what now amounts to hundreds of thousands of documents served in discovery and exchange[d] between the parties; (ii) preparation and service of new discovery requests, including potentially new third-party subpoenas; (iii) conducting or the retaking of appropriate depositions; and (iv) appropriate forensic investigations through their experts. The process would invariably cost the 400 SLB Defendants tens of thousands of dollars and months to complete. The fundamental unfairness is palpable with respect to the Plan Agent's extremely late request.

*Opposition* at 14.

07-03756 RMW, 2009 U.S. Dist. LEXIS 23816 (N.D. Cal. Mar. 13, 2009); *Gerawan Farming, Inc. v. Rehrig Pacific Co.*, No. 1:11-cv-01273 LJO-BAM, 2013 U.S. Dist. LEXIS 31835 (E.D. Cal. Mar. 7, 2013); *Kingsburg Apple Packers, Inc. v. Ballantine Produce Co.*, No. 1:09-cv-00901 AWI JLT, 2012 U.S. Dist. LEXIS 28771 (E.D. Cal. Mar. 5, 2012); *Zixuan Rao v. Apple, Inc.*, No. 5:18-cv-02813 EJD, 2020 U.S. Dist. LEXIS 116928 (N.D. Cal. July 2, 2020). [5]

Civil Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent."  Regarding "good cause" under Civil Rule 16(b)(4), Plaintiff explains in the motion that he has worked diligently in pursuing these adversary proceedings and his delay in amending and adding these new transfers is due to the fact that "the information regarding the fraudulent transfers to the defendants which took place between four and seven years prior to the filing of this bankruptcy case was not discovered by [Plaintiff] until Jennifer Ziegler and Berkeley Research Group [i.e., Plaintiff's expert witnesses] discovered this information in the process of preparing their report."  Motion at 2–3.  Regarding his recent discovery of this information, Plaintiff further explains:

> First, the only person who the Plan Agent has employed to perform the forensic analysis is Ms. Ziegler of Berkeley Research Group.  The primary or sole work by Ms. Ziegler initially upon her employment was to review the postpetition transfers which were first identified by the Plan Agent within 45–60 days after he took over the Debtor's operations pursuant to the confirmed Plan of Reorganization.  That date was April 6, 2016. . . . Ms. Ziegler was never called upon to analyze the issues in the litigation (her analysis of the Postpetition Transfers necessarily pertains to the claims by the Plan Agent under Section 549 of the Bankruptcy Code) related to the prepetition transfers at all.  She did not do this work until the time period in 2020 leading up to the submission of her expert report on or about October 30, 2020 to the 400 SLB Defendants . . . The Plan Agent has spent millions of dollars litigating this case and did not call upon Ms. Ziegler to do this work until the deadline set by the Court for the parties to designate expert

---

[5]  The court determines that *J2 Cloud Services* decided by the district court in this judicial district reflects the better view that any modification of the pretrial scheduling order must comply with Federal Rule of Civil Procedure 16(b)(4) regarding amendment of pleadings is a better reading of the rule rather than *Gerawan Farming* decided by a district court outside this judicial district relied upon by Plaintiff that Rule 16(b)(4) does not apply to modifications of a pretrial scheduling order involving amendment of pleadings unless there is an explicit deadline for amendment of pleadings.  The rule does not have exceptions as concluded by the district court in *Gerawan Farming*.

witnesses and then exchange any reports prepared by them.  That is when the information to the four to seven year transfers was discovered.

Response to Oppositions, Docket No. 836 at 6–7.

Plaintiff in his reply to Defendants' oppositions further stated:

Here, the Plan Agent only knew about the recoverable transfers within four to seven years prior to bankruptcy at most, one to 1.2 years before the within Motion was filed. And even though Cathay Bank says that they provided that information in discovery (or according to 400 SLB, such information was available in tax returns), the Plan Agent did not know and could not have presumed that the Debtor was insolvent or left with unreasonably small capital or was unable to pay its obligations as they matured within four to seven years prior to bankruptcy. This was only discovered by Ms. Ziegler when she analyzed the prepetition transfers by the Debtor to 400 SLB (oftentimes from the Debtor's account rather than through Ace Museum or the yet to be formed Ace New York Corporation) and simultaneously analyzed the Debtor's financial condition at the time of those transfers and afterward. This work could not have been done by the Plan Agent (who has already incurred millions in fees tracing and trying to figure out the business practices and fraudulent postpetition practices of 400 SLB, Cathay Bank and Mr. Chrismas) and it was not until Ms. Ziegler became involved that the facts respecting the four to seven year transfers were uncovered. Had these allegations been pled at any time before the completion of Ms. Ziegler's report, and the avoidance of the $12 Million of transfers received by these same Defendants would have been subject to the same Rule 12(b) motions as were filed in the *Twombly* and *Iqbal* cases and the same lawyers who now oppose this Motion to Amend would be telling the Court how legally insufficient the Plan Agent's allegations were. In fact, in the most recent filing by 400 SLB, their lawyer has already stated that their response to the amended Complaint if the Motion is granted will be a Motion to Dismiss.

Reply to Oppositions, Docket No. 848 at 22–23.

Defendants argue that Plaintiff has failed to show good cause required under Civil Rule 16(b) that he as the party seeking amendment was diligent.  Opposition of 400 South La Brea Defendants, Docket No. 832, filed on December 24, 2020; Opposition of Defendant Cathay Bank, Docket No. 830, filed on December 24, 2020. The 400 South La Brea Defendants argue that Plaintiff had the facts available to him to discover the four to seven year prepetition alleged fraudulent transfers when he took over the books and records of the Debtor on April 6, 2016 as the plan agent pursuant to the confirmed plan of reorganization.  Docket No. 832 at 10.  Defendants argue that based on Plaintiff's review of these books and records of the Debtor, he had expanded and refined his claims in these adversary proceedings, amending the complaint a total of five times since he was appointed as plan agent in April 2016.  *Id*. at 11.  However,

1    none of these earlier complaints, including the Sixth Amended Complaint, alleged

2    claims for fraudulent transfer against Defendants for the time period between four and

3    seven years before the petition date.

4        Defendant Cathay Bank argues that Plaintiff was on notice of potential claims

5    against Defendants arising from the transfers during the four to seven year time period

6    before the petition date at least by October 3, 2018 when he filed the Fifth Amended

7    Complaint on October 3, 2018, which alleges that documents produced by Defendant

8    400 S. La Brea LLC showed that payments totaling $2,940,668.72 were paid by or on

9    behalf of Debtor paid under the terms of the Museum Lease between its execution in

10   2006 through July 2009, during which time that Defendant Chrismas was the lessee,

11   which are transfers during the four to seven year time period before the petition date

12   that Plaintiff now seeks to add in a further amended complaint.  Docket No. 842 at 5;

13   Docket No. 830 at 8; *see also*, Fifth Amended Complaint, ¶ 37.  Defendant Cathay Bank

14   further argues that by this time, October 2018, Plaintiff had been in possession of the

15   Debtor's books and records for more than two years, and was aware of the transfers

16   that he now seeks to add as new claims, but has waited another two years to assert

17   these new claims in his motion to amend, filed in December 2020. *Id*.  Moreover, as to

18   Defendant Cathay Bank itself, in August 2019, it had produced to Plaintiff bank

19   statements for 400 South La Brea's bank account during the four to seven year period

20   before the petition date and the complete loan transaction history for its loan to 400

21   South La Brea, showing subsequent transfers of the funds from Debtor through 400

22   South La Brea to Cathay Bank, but Plaintiff did not assert his new claims as to these

23   transfers until over another year later in December 2020 when he filed the motion to

24   amend. Docket No. 830 at 8.

25       Plaintiff contends that he has acted diligently with respect to these additional

26   transfers because his expert witness only analyzed the transfers during her recent work

27   for her October 2020 expert report, yet he provides no reasonable explanation for why it

28   took him so long to ask her to analyze the four to seven year prepetition fraudulent

1  transfers as the complaints as amended have alleged four year prepetition fraudulent

2  transfers since he was aware of prepetition transfers by Debtor to or on behalf of Ace

3  Museum when his appointment as plan agent became effective on April 6, 2016 when

4  he took over management of the Reorganized Debtor.  This is evident in the original

5  and first amended complaints filed by his predecessor, the official committee of

6  unsecured creditors, represented by the same counsel, SulmeyerKupetz, in November

7  2014 and January 2015 that alleged fraudulent transfers by Debtor to or on behalf of

8  Ace Museum since July 2009.  Complaint, Docket No. 1, Adv. No. 2:14-ap-01771-RK,

9  filed on November 26, 2014, ¶¶ 8-10, 51-67; First Amended Complaint, Docket No. 11,

10  Adv. No. 2:14-ap-01771-RK, filed on January 22, 2015, ¶¶ 10-15, 82-103.  These were

11  the only complaints relating to prepetition transfers involving Ace Museum filed within

12  the statute of limitations of 11 U.S.C. §546(a) of two years of the petition date of

13  February 19, 2013, which was February 19, 2015.

14          On November 26, 2014, the Official Committee of Unsecured Creditors as the

15  plaintiff filed the original complaint in Adv. No. 2:14-ap-01771-RK.  Complaint, Docket

16  No. 1, Adv. No. 2:14-ap-01771-RK.  The only defendant named in the original complaint

17  was Ace Museum.  *Id.*    There were no other parties in this adversary proceeding at this

18  time.  *Id.*

19          The original complaint in paragraph 8 alleged: "8.  Plaintiff is informed and

20  believes, and based thereon alleges, that, on or about July 9, 2009, a meeting of the

21  Board of Directors of Ace Museum occurred, at which Ace Museum resolved to borrow

22  from the Debtor an initial amount of no less than $3,143,994.02, plus additional

23  amounts as necessary from time to time, with no interest."  Complaint, Docket No. 1,

24  Adv. No. 2:14-ap-01771-RK, ¶ 8.  The original complaint in paragraph 9 alleged: "9.

25  Plaintiff is informed and believes, and based thereon alleges, that in fact, Ace Museum

26  borrowed, or otherwise obtained, from the Debtor, and the Debtor lent, or otherwise

27  provided to, Ace Museum, funds in the aggregate of no less than $4,482,586.00 (the

28  "Loan"), and that Ace Museum became indebted to the Debtor in at least that amount

1   (the "Loan Obligation").  Plaintiff is further informed and believes, and based thereon

2   alleges, that the Loan was provided or made to one or more transfers of the Debtor's

3   funds from the Debtor to Ace Museum since July 9, 2009 (each, a "<u>Transfer</u>" and

4   collectively, the "<u>Transfers</u>")."  *Id*. at ¶ 9.  The original complaint in paragraph 10 alleged:

5   "10.  Plaintiff is informed and believes, and based thereon alleges, that, at the time or as

6   a result of, each Transfer, the Debtor was or became insolvent, was left with an

7   unreasonably small capital to engage in its business, and/or otherwise was not paying

8   or became unable to pay its debts as such debts matured."  *Id*., ¶ 10.  These allegations

9   were the basis for the constructive fraudulent transfer claims in the original complaint,

10   the Sixth, Seventh and Eighth Claims for Relief, pursuant to 11 U.S.C. §§ 544 and

11   548(a)(1)(B) and California Civil Code §§ 3439.04(a)(2) and 3439.05.  *Id*., ¶¶ 51-64.

12       The original complaint did not allege or refer to transfers to parties other than Ace

13   Museum or to transfers before July 9, 2009.  *Id*., ¶¶ 1–78.  The alleged transfers

14   pertained to Debtor's transfers to Ace Museum pursuant to the purported "Loan" and did

15   not refer to any rent obligations.  *Id.*  Paragraph 9 of the original complaint alleged that

16   the actionable transfers by the Debtor to Ace Museum were "since July 9, 2009", and

17   the sixth, seventh and eighth claims for relief sought to avoid each of these transfers.

18   *Id*., ¶¶ 9, 51-64.

19       On January 22, 2015, the Official Committee of Unsecured Creditors as the

20   plaintiff filed the first amended complaint in Adv. No. 2:14-ap-01771-RK.[6] First Amended

21   Complaint, Docket No. 1, Adv. No. 2:14-ap-01771-RK.  In the First Amended Complaint,

22   Plaintiff Creditors' Committee named Douglas Chrismas as a party defendant in addition

23

24   [6] On January 22, 2015, Plaintiff Creditors' Committee also filed a motion for leave to amend the complaint to allow

25   it to file the first amended complaint, but such a motion to amend was unnecessary because the Committee could amend the original complaint as of right pursuant to Federal Rule of Bankruptcy Procedure 7015 and Federal Rule of Civil Procedure 15(a)(1)(B) within 21 days of a responsive pleading or a motion under Federal Rule of Civil

26   Procedure 12(b), (e) or (f) to the original complaint was a pleading to which responsive pleading was required and a responsive pleading or Rule 12 motion had not been served the then only defendant, Ace Museum, as indicated on

27   the case docket.  Thus, the first amended complaint was deemed filed on January 22, 2015.  In any event, the first amended complaint was deemed filed before the two year statute of limitations of 11 U.S.C. § 546(a) had expired on February 19, 2015, two years after the petition date of February 19, 2013, as by stipulation and order filed and

28   entered on February 18, 2015, the filing of the first amended complaint was authorized by the court.  Docket Nos. 26 and 28, Adv. No. 2:14-ap-01771-RK.

to Ace Museum.  *Id*.  There were no other parties in this adversary proceeding at this time.  *Id*.

The allegations of fraudulent transfers by the Debtor to Ace Museum in the original complaint were reiterated in the First Amended Complaint in paragraphs 10, 12 and 15 and amplified by paragraphs 13 and 14 to allege additional claims of intentional fraudulent transfer in the Seventh and Tenth Claims for Relief pursuant to 11 U.S.C. §§ 544 and 548(a)(1)(A) and California Civil Code § 3439.04(a)(1).  First Amended Complaint, Docket No. 11, Adv. No. 2:14-ap-01771-RK, ¶¶ 10-15, 82-103.  That is, specifically, the allegations that Debtor made transfers of funds not less than $4,482,586.00 were made to Ace Museum since July 9, 2009 to the petition date on February 19, 2013 were contained in the First Amended Complaint.  *Id*., ¶ 12. Paragraph 12 of the first amended complaint alleged: "Plaintiff is further informed and believes, and based thereon alleges, that the Museum Loan was provided or made pursuant to one or more transfers of the Debtor's funds from the Debtor to Ace Museum since July 9, 2009 or such other later date or dates before the Petition Date (defined below) (each, an 'Ace Museum Transfer'  and, collectively, the 'Ace Museum Transfers') . . . ."  *Id*.

The First Amended Complaint also referred to, and attached, copies of the Museum Lease entered into between Chrismas and 400 South La Brea LLC in 2006 as well as the amendment of the lease and assignment to Ace Museum entered into between these parties and Ace Museum in 2009.  *Id*., ¶¶ 29-32 and Exhibits 1-3 attached thereto.  The copies of the Museum Lease, assignment and amendment attached to the First Amended Complaint indicated that Plaintiff's predecessor in interest, the Creditors' Committee, had knowledge of the contractual relationship between Chrismas, Debtor's principal and sole shareholder, 400 South La Brea, LLC, the landlord, and Ace Museum, under the Museum Lease and the amendment/assignment, and had knowledge that Chrismas and Ace Museum had obligations to pay rent to 400 South La Brea LLC under the Museum Lease, and that

Ace Museum had minimal revenue other than "Contributions and Grants" as shown by

its tax returns for 2010 and 2011 to pay its rent obligations under the Museum Lease.

*Id.*, ¶ 29–38 and Exhibits 1-3 attached thereto.  The First Amended Complaint also

sought preliminary injunctive relief for appointment of a receiver to exercise the

purchase option under the Museum Lease to purchase the 400 South La Brea and

Sycamore properties.  *Id.*, and Prayer for Relief on First Claim for Relief.   The First

Amended Complaint in these allegations referred to the Debtor's prepetition transfers to

Ace Museum as "the profligate, irresponsible transfer of more than $4,000,000 from the

Debtor to Ace Museum."  *Id.*, ¶ 38.

The first amended complaint did not allege or refer to transfers to parties other

than Ace Museum or Chrismas or to transfers before four years before the petition date.

*Id.*, ¶¶ 1–146.   As in the original complaint, the alleged transfers pertained to Debtor's

transfers to Ace Museum pursuant to the purported "Loan" and did not refer to any rent

obligations under the Museum Lease.  *Id.*  Paragraph 9 of the original complaint alleged

that the alleged actionable fraudulent transfers by the Debtor to Ace Museum were

"since July 9, 2009 or such other later date or dates before the Petition Date since July

9, 2009", and the seventh, eighth, ninth, tenth and eleventh claims for relief sought to

avoid each of these transfers.  *Id.*, ¶¶ 12, 82–103.   Paragraph 83 in the seventh claim

for relief of the first amended complaint alleged that "Plaintiff is informed and believes,

and based thereon alleges, each of the Transfers was made by the Debtor within four

years before the Petition Date . . . .," therefore, indicating that the actionable transfers

were within four years of the petition date of February 19, 2013, and this allegation is

also incorporated by reference in the eighth, ninth, tenth and eleventh claims for relief.

*Id.*

Knowledge of the Ace Museum prepetition transfers and the Museum Lease as

alleged in the original and first amended complaints is imputed to Plaintiff as of April 6,

2016 when he took over Debtor's operations and control over these adversary

proceedings for the Creditors' Committee pursuant to the confirmed plan of

1    reorganization as well as Plaintiff's counsel, who were counsel for the Creditors'

2    Committee and prepared and filed the original and first amended complaints for the

3    committee in November 2014 and January 2015.

4            Each iteration of the complaint from the original complaint to the last amended

5    Sixth Amended Complaint consistently alleged claims of Plaintiff to avoid and recover

6    prepetition fraudulent transfers to or behalf of Ace Museum within four years before the

7    petition date.   On December 13, 2016, Plaintiff filed his motion to consolidate adversary

8    proceedings and to file a third amended consolidated complaint, which was granted by

9    an order filed and entered on January 13, 2017.  Docket Nos. 118 and 122, Adv. No.

10   2:14-ap-01771-RK.  In the Third Amended Consolidated Complaint, filed on January 23,

11   2017, Plaintiff named 400 South La Brea, LLC, as a party defendant for the first time in

12   these adversary proceedings, alleging that the Debtor made direct and indirect

13   prepetition transfers to 400 South La Brea, LLC, to pay the rent obligations of Ace

14   Museum under the Museum Lease, which constituted actual and constructive fraudulent

15   transfers, commencing with rent obligations for December 2009.  Third Amended

16   Consolidated Complaint, Docket No. 69, ¶¶ 30, 31, 36–46 and 135–169.   Paragraph

17   136 in the eighth claim for relief of the third amended consolidated complaint alleged

18   that "Plaintiff is informed and believes, and based thereon alleges, each of the Direct La

19   Brea Rent Transfers, the Indirect La Brea Rent Transfers, the Pre-Petition Chrismas

20   Rent Transfers, and/or the Ace Museum Pre-Petition Rent Transfers (collectively, the

21   'Prepetition Rent Transfers' was made by the Debtor within four years before the

22   Petition Date . . . .," therefore, indicating that the actionable transfers were within four

23   years of the petition date of February 19, 2013, and this allegation is also incorporated

24   by reference in the ninth, tenth, eleventh and twelfth claims for relief against 400 South

25   La Brea, LLC. *Id*.  The eighth, ninth, tenth, eleventh and twelfth claims for relief were

26   the only claims for relief against 400 South La Brea based on alleged fraudulent

27   transfers in the third amended consolidated complaint.  The third amended consolidated

28   complaint did not allege or refer to transfers relating to Ace Museum or the Museum

Lease before July 9, 2009.  *Id.*, ¶¶ 1–283.

On October 3, 2018, Plaintiff filed his motion to amend the fourth amended consolidated complaint and to file a fifth amended consolidated complaint, which was granted by an order filed and entered on November 15, 2018.  Docket Nos. 439 and 461.  In the Fifth Amended Consolidated Complaint, filed on November 16, 2018, Plaintiff named Cathay Bank as a party defendant for the first time in these adversary proceedings, alleging that the Debtor made direct and indirect prepetition transfers to 400 South La Brea, LLC, in payment of the rent obligations of Ace Museum to its landlord, 400 South La Brea, LLC, under the Museum Lease, which in turn directed the payments as subsequent transfers to the landlord's lender, Cathay Bank, and all of these transfers constituted actual and constructive fraudulent transfers, commencing with the rent payment on August 31, 2009.   Fifth Amended Consolidated Complaint, ¶¶ 1–6, 35–60, 209–247.  However, Cathay Bank was not named a defendant to the fraudulent transfer claims in the second, third, fourth, fifth and sixth claims for relief in the Fifth Amended Consolidated Complaint, but as a defendant in the eighth and ninth claims for relief for recovery and preservation of avoidable transfers under 11 U.S.C. § 550 as an alleged transferee.  *Id.*, ¶¶ 209–234, 242–247.

In paragraph 6 of the fifth amended consolidated complaint, Plaintiff summarized the alleged liability of Defendants 400 South La Brea, LLC, and its principals and Defendant Cathay Bank for the alleged prepetition fraudulent transfers by the Debtor to them:

> As detailed below, 400 S. La Brea, its principals, and its lender, Cathay Bank, had notice and actual knowledge that Ace Museum lacked the means to pay its own rent and had no reasonable prospects for remedying its lack of funds. They were aware that the Debtor had been making Ace Museum's rent payments directly to 400 S. La Brea's account for eighteen months before the Petition Date and had been the primary source of funds before that. They were aware that the Debtor's deteriorating pre-petition financial condition was the reason that the Debtor's advances to cover Ace Museum rent fell behind right before the Petition Date. They were aware, when 400 S. La Brea signed a Letter of Understanding with Ace Museum one day after the Petition Date, which provided for the dismissal of an Unlawful Detainer action in return for more than a half million dollars of catch-up rent payments, that Ace Museum could not finance the payments on its own. They were aware no later than five-and-a-half months after

the Petition Date that the Debtor was in chapter 11 proceedings, even though it was the most likely source of the monthly rent payments. And they were aware of many, many more indicia of the avoidable and/or fraudulent nature of the rent payments, from 2009 through 2016, as detailed below, yet they consciously chose to continue to receive avoidable payments in satisfaction of monthly rent.

*Id.*, ¶ 6.

In paragraphs 36 through 39 of the first amended consolidated complaint, Plaintiff made the following allegations relating to the execution of the Museum Lease between Chrismas and 400 South La Brea, LLC, in 2006 and transfers by the Debtor to 400 South La Brea under the lease:

36. In 2006, Chrismas entered into a third lease that also contained a purchase option. The AIR Commercial Real Estate Association Standard Industrial/Commercial Single-Tenant Lease-Net (the "Museum Lease"), dated July 20, 2006, was between 400 S. La Brea as lessor, and Chrismas, as lessee, and provided for a three-year lease of two parcels of real property bearing the street address of 400 S. La Brea Avenue, Los Angeles, CA (the "Museum Premises") and 407 S. Sycamore Avenue, Los Angeles, CA (the "Sycamore Lot"). The Sycamore Lot was a paved lot for parking. The Museum Premises were improved with a two-story building that had served as a car dealership prior to the Museum Lease.

37. The Museum Lease provided for base rent starting at $100,000 each month. Documents produced by or on behalf of 400 S. La Brea show that the first $2,940,668.72 in rent, property taxes, late fees, and related charges, that was paid under the terms of the Museum Lease, from its execution through to July 2009, were paid by or on behalf of the Debtor into 400 S. La Brea's checking account at Cathay Bank (the "Cathay Account"), even though the Museum Premises remained an empty shell of a building, and even though the Debtor received no value in return for paying Chrismas' rental obligations on the Museum Lease. See Exhibit 5.

38. In December 2008, in addition to paying rent, the Debtor paid $112,523.99 into the Cathay Account in satisfaction of property taxes due on the Museum Premises and Sycamore Lot. One month later, in January 2009, the Debtor paid another $69,270.50 into the Cathay Account to bring property taxes current. Six months later, the Debtor wired another $132,667.96 into the Cathay Account for property taxes on the Museum Premises and Sycamore Lot.

39. The Museum Lease provided Chrismas with an option to purchase the Museum Premises and Sycamore Lot for a price that would range between $26 million and $33 million (the "Museum Purchase Option"), depending upon the date of exercise of the option. But while the business prospects of leasing a former car dealership in the center of Los Angeles with a potentially profitable purchase option on the property may have seemed advisable in 2006, the commercial real estate market crashed in 2008, and along with it went the profit potential of the Museum Purchase Option.

*Id.*, ¶¶ 36–39.  As discussed below, these prepetition transfers were not actionable as

the claims for relief pertained to subsequent transfers referred in the fifth amended

consolidated complaint as the "Prepetition Rent Transfers." *Id.*, ¶¶70–72, 209–234.

In paragraphs 58 to 60 of the fifth amended consolidated complaint, Plaintiff

alleged that the Debtor was already insolvent before the filing of its bankruptcy petition

in 2013 as follows:

58. When Ace Museum executed the Assignment [of the Museum Lease] in 2009, and the Debtor began providing the funds for payment of Ace Museum's rent, the Debtor was already insolvent. The Debtor's tax returns for its fiscal years of 2008, 2009 and 2010 show ongoing operational losses:

2008 (June 2008 to May 2009) - Net loss of $-1,489,559
2009 (June 2009 to May 2010) - Net loss of $-4,833,371
2010 (June 2010 to May 2011) - Net loss of $-1,702,246

59. Throughout this period, the Debtor had no excess funds of its own to use for payment of Ace Museum's rent. Instead, the Debtor borrowed money on top of an already crushing debt load. The Debtor's tax return for 2008 showed total long-term and short-term loan debt of more than $7.7 million. By the time it filed its 2009 return, the Debtor's long-term and short-term loan debt was more than $11.6 million, while its 2010 return shows long-term and short-term loan debt of more than $12 million.

60. The Debtor's increasing debt load was caused in part by its payment of well over $1 million each year in Ace Museum rent, for which it borrowed extensively. For example, on April 9, 2010, the insolvent Debtor borrowed $500,000 from Eric Wilson, then made a same day wire of $350,000 from its account to the Museum Account, which allowed a $400,000 check from Ace Museum to 400 S. La Brea to clear that same day—a transaction that took place three weeks after entry of a $1.7 million judgment against the Debtor. On October 15, 2010, the Debtor borrowed another $200,000 from Wilson, then wrote a $127,000 check to the Museum Account on October 20, 2010, which allowed a $125,000 check from Ace Museum to 400 S. La Brea to clear. This was a standard practice in the years before the Petition Date. In 2011 and 2012, the Debtor borrowed at least $875,000 from Wilson, Michael Straus and Andrea Nasher in order to fund simultaneous payments to Ace Museum so that rent checks to 400 S. La Brea would clear, or to make direct rent payments from the Debtor to 400 S. La Brea. By funding Ace Museum's rent obligations with loans, the already-insolvent Debtor further increased its debt load, for which it received no reasonably equivalent value.

*Id.*, ¶¶ 58–60.

In paragraphs 70 to 72 of the fifth amended consolidated complaint, Plaintiff set

forth his allegations of what constituted the actionable fraudulent transfers to

Defendants 400 South La Brea, LLC, and its principals, and Defendant Cathay Bank, as

follows:

70. On February 19, 2013, the Petition Date, the Debtor filed its chapter 11 petition, initiating the above-captioned Bankruptcy Case. In the four years prior to the Petition Date, 400 S. La Brea had received at least $5,750,266.21 in rent, late fees, and property tax payments, on account of the Museum Lease (the "Prepetition Rent Transfers"). Of the total Prepetition Rent Transfers, at least $2,328,432.47 was paid directly by the Debtor to 400 S. La Brea by wire transfer or check into the Cathay Account, composed of the following payments, for which the Debtor received no consideration:

| Date | Check/Wire | Amount |
|------|-----------|--------|
| 07/06/09 | Wire | $132,677.96 |
| 4/13/11 | Check 3979 | $125,000.00 |
| 4/22/11 | Check 3980 | $15,867.00 |
| 9/28/11 | Wire | $137,500.00 |
| 10/04/11 | Wire | $137,500.00 |
| 10/21/11 | Wire | $125,000.00 |
| 10/24/11 | Wire | $110,000.00 |
| 11/17/11 | Wire | $247,500.00 |
| 12/23/11 | Wire | $137,525.00 |
| 12/27/11 | Wire | $139,961.45 |
| 01/25/12 | Wire | $75,000.00 |
| 01/31/12 | Wire | $28,904.57 |
| 02/03/12 | Wire | $50,000.00 |
| 03/02/12 | Wire | $12,500.00 |
| 03/26/12 | Wire | $72,000.00 |
| 04/05/12 | Wire | $36,031.28 |
| 04/12/12 | Wire | $36,000.00 |
| 05/08/12 | Wire | $280,186.00 |
| 06/05/12 | Wire | $142,279.21 |
| 08/03/12 | Wire | $125,000.00 |
| 10/23/12 | Check 6913 | $137,000.00 |
| 02/07/13 | Wire | $25,000.00 |
| TOTAL: | | $2,328,432.47 |

71. The Prepetition Rent Transfers that were paid through the conduit of the Ace Museum Account to 400 S. La Brea totaled $3,421,833.74, and were paid almost entirely with funds of the Debtor that were first transferred into the Museum Account, and were then paid to 400 S. La Brea by an Ace Museum check deposited in the Cathay Account. For example, on June 6, 2011, when the account balance in the Museum Account was only $5,328.36, the Debtor wired $126,000 into the Museum Account, thereby permitting a check made out to 400 S. La Brea in the amount of $125,000 to clear the following day. Similarly, on July 18, 2011, when the account balance in the Museum Account was only $3,375.72, the Debtor wired $110,000 into the Museum Account, thereby permitting a check made out to 400 S. La Brea in the amount of $110,000 to clear that same day. These two months are not unique, but rather reflect the standard practice during most months when rent was paid to 400 S. La Brea by an Ace Museum check or wire transfer.

72. By the Petition Date, and within four years of the Petition Date, the Debtor had paid 400 S. La Brea as much as $5,750,266.21 in satisfaction of a third party's lease obligations at a time when the Debtor was insolvent or unable to pay its own bills as they came due, for which the Debtor received no reasonably

equivalent value.

*Id.*, ¶¶ 70–72.  These allegations specifically refer to the "Prepetition Rent Transfers,"
which were described the following manner: "[i]n the four years prior to the Petition
Date, 400 S. La Brea had received at least $5,750,266.21 in rent, late fees, and
property tax payments, on account of the Museum Lease (the "Prepetition Rent
Transfers")."  *Id.*, ¶ 70.

Paragraph 210 in the second claim for relief of the fifth amended consolidated
complaint alleged that "Plaintiff is informed and believes, and based thereon alleges,
each of the Prepetition Rent Transfers of the Debtor's assets that were made to 400 S.
La Brea, whether directly or via the conduit of the Museum Account, was made by the
Debtor within four years before the Petition Date  . . .," therefore, indicating that the
actionable transfers were within four years of the petition date of February 19, 2013,
and this allegation is also incorporated by reference in the third, fourth, fifth and sixth
claims for relief against 400 South La Brea, LLC.  *Id.*  The second, third, fourth, first and
sixth claims for relief were the only claims for relief against 400 South La Brea based on
alleged fraudulent transfers in the fifth amended consolidated complaint.

The above-described circumstances indicate as of the effective date of his
appointment on April 6, 2016, Plaintiff knew about alleged prepetition transfers by
Debtor to or on behalf of Ace Museum going back at least four years before the petition
date, and even earlier, for Plaintiff's counsel, they knew about these transfers based on
their preparation and filing of the original and first amended complaints in 2014 and
2015 to avoid and recover the Ace Museum prepetition transfers.  According to Plaintiff,
not until about October 2020 when his expert, Ms. Ziegler was completing her expert
report, did he discover the alleged prepetition transfers by the Debtor to pay rent on the
Museum Lease then in Defendant's Chrismas's name before the assignment to Ace
Museum in the four to seven year time period before the 2013 petition date, that is,
2006 to 2009 years.  Plaintiff's discovery in about October 2020 would be eleven to
fourteen years after the transfers themselves in light of a general absolute statute of

repose to attack alleged fraudulent transfers of seven years under California Civil Code § 3439.09(c).  Also, as discussed above, Plaintiff's discovery in about October 2020 would be four and a half years after he was put on notice of the prospect of these four to seven year transfers before the petition date involving the Museum Lease upon the effective date of his appointment as the plan agent in this bankruptcy case on April 6, 2016 when he took over these adversary proceedings as the successor to the Creditors' Committee based on original and first amended complaints which sought to avoid and recover other prepetition transfers involving the Museum Lease.

Apparently, until about October 2020, Plaintiff and his counsel never considered the possibility of alleged prepetition transfers by Debtor relating to the Museum Lease during the three years immediately before the four prepetition years alleged in the prior complaints.  This was despite the fact that when Plaintiff's appointment as the plan agent became effective in April 2016, the original and first amended complaints had already been filed to avoid and recover alleged prepetition fraudulent transfers by Debtor relating to the Museum Lease, that is, seeking to avoid and recover transfers to Ace Museum during the four years before the petition date.  Thus, he had information to put him on notice of other potential claims of prepetition fraudulent transfers relating to the Museum Lease, such as the ones that he now seeks to assert in a further amended complaint as to transfers during the four to seven years before the petition date.

Also, after Plaintiff's appointment as the plan agent became effective, he had custody of Debtor's books and records as early as April 2016 when he took over administration of the Debtor's business as the plan agent under the confirmed plan of reorganization.  Thus, there was no impediment to Plaintiff to be able to review Debtor's business records to discover other potential prepetition fraudulent transfer claims, such as the ones that he is now trying to bring.  Soon after Plaintiff took over administration of Debtor's business in April 2016, within 45–60 days, he had asked his expert witness, Ms. Ziegler, to investigate and analyze Debtor's postpetition transfers as fraudulent transfers, but did not ask her at that time to investigate and analyze the prepetition

1  transfers which had already been alleged as claims in the complaint as amended.

2  Thus, Ms. Ziegler did not investigate and analyze the prepetition transfers during the

3  four to seven year time period before the petition date until she was completing her final

4  expert report for these adversary proceedings in October 2020 because her client,

5  Plaintiff, never asked her to look at the prepetition transfers before then.  Docket No.

6  836 at 10–11.

7          Only after Ms. Ziegler prepared her final expert report completed on October 30,

8  2020 did she and Plaintiff discover the information relating to the alleged fraudulent

9  transfers during the four to seven year time period before the petition date.  *Id*.; *see*

10  Ziegler Final Report, attached as Exhibit 1 to Declaration of Jennifer E. Ziegler, CPA in

11  Support of Motion for Summary Judgment on Plaintiff's Claims for Conversion and

12  Breach of Fiduciary Duty against Defendant Douglas Chrismas, Docket No. 873, filed

13  on February 12, 2021. [7]  In her final expert report, Ms. Ziegler concluded that alleged

14  fraudulent transfers by the Debtor to Defendant 400 South La Brea, LLC during the

15  three year period from July 2006 to July 2009 before the Museum Lease was

16  transferred to Ace Museum occurred through payments totaling $5,715,743 from

17  Debtor's bank accounts "traced directly" to 400 South La Brea, LLC's Cathay Bank

18  account #1679, which was accomplished primarily through her analysis of the Debtor's

19  bank records.  *Id*., Ziegler Final Report at 24.  In her final expert report, Ms. Ziegler

20  stated that she obtained the Debtor's tax returns and financial information in order to

21  evaluate its financial health before the voluntary bankruptcy filing in 2013 and concluded

22  that based her review of this information that the Debtor was insolvent and not liquid

23  from June 2006 through the petition date of February 19, 2013.  *Id*. at 27–31.  Based on

24  these conclusions, Ms. Ziegler opined that Debtor was damaged by these alleged

25  fraudulent transfers to Defendants.  *Id*. at 31–33.

26

27  ---

[7] Ms. Ziegler's final expert report of October 30, 2020 is not part of the record on Plaintiff's motion to amend, but
28  the court takes judicial notice of its filing as part of the pleadings relating to Plaintiff's motion for summary
judgment on his conversion and breach of fiduciary duty claims against Defendant Douglas Chrismas pursuant to
Federal Rule of Evidence 201.

Based on this description of Ms. Ziegler's discovery of the alleged fraudulent transfers by the Debtor to Defendants during the years from 2006 to 2009, it is evident that this discovery was based on information from the Debtor's own books and records, especially Debtor's bank records showing direct transfers to Defendant 400 South La Brea, LLC, and Debtor's tax returns and financial information bearing on solvency, which records were in the control and supervision of Plaintiff when his appointment as the plan agent became effective in April 2016.  Thus, at the time of his appointment in 2016, Plaintiff had access to this information for which discovery of the potential fraudulent transfer claims for the 2006 to 2009 time period could have been made, but he and his professionals did not conduct the investigation and forensic analysis to discover these potential claims until the close of nonexpert factual discovery and the deadline for exchange of expert reports was imminent in late 2020.  Not only this was four and one half years later after the effective date of his appointment in April 2016, this was also six years after his counsel had filed the original complaint on behalf of his predecessor, the Creditors' Committee, to attack similar prepetition transfers by Debtor to Ace Museum, the assignee of the Museum Lease, filed in November 2014.

As argued by Defendants, Plaintiff had been aware of the prospect of such transfers earlier than October 2020 as he had alleged in the Fifth Amended Complaint filed on November 18, 2018 that rent was paid by the Debtor under the terms of the "Museum Lease" executed on July 20, 2006 to July 2009 to Defendant 400 South La Brea through its checking account with Defendant Cathay Bank, which indicated awareness of the transfers which he now seeks to be alleged as fraudulent.  As noted before, as reflected in the first amended complaint filed in 2015, Plaintiff had earlier knowledge of the Museum Lease and the amendment and assignment of the lease by Chrismas to Ace Museum in 2009 detailed the obligations of Chrismas/Ace Museum under the lease to 400 South La Brea, LLC, which required rent payments, which are the subject of Plaintiff's new fraudulent transfer claims.  Despite this knowledge, Plaintiff did not act on it by alleging claims based on such transfers at the time the Fifth

Amended Complaint was filed in November 2018, and not until two years later when he filed the motion to amend in December 2020, and there is no indication that Plaintiff through his expert witness, Ms. Ziegler, or anyone else on his behalf, was investigating these transfers as potential claims at the time or before Ms. Ziegler was preparing her final expert report in about October 2020.

Defendants argue that the outcome of Plaintiff's motion for leave to further amend the complaint case is controlled by applicable Ninth Circuit authority in *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000):

> . . . Assuming expert analysis was necessary to assess transfers during the four to seven year period—it does not appear to be necessary in light of the allegations in the Fifth Amended Complaint about these transfers—diligence is measured by when the moving party's expert could have analyzed information suggesting viable claims, not when it actually analyzed the information. The Ninth Circuit's opinion in *Coleman* is instructive on this point. *See Coleman v. Quaker Oats Co., Civ.* 96-0828, 1999 WL 34828321 (D. Ariz. Mar. 10, 1999), affirmed *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000). In *Coleman*, three plaintiffs brought Title VII and ADEA claims against their former employer, alleging their termination was the result of disparate treatment on the basis of his age. *Coleman*, 1999 WL 34828321, at \*5-6. Following the close of fact discovery, in response to Defendant's opposition to their summary judgement motion, Coleman for the first time moved to amend his complaint to assert a disparate impact theory of liability, citing new analysis from their statistical expert as the basis for the late amendment. The Court denied the motion under Rule 16, finding that Coleman's failure to amend "surprising" because he had "secured his statistical expert over a year ago" and was "in possession of the statistics in question for months." *Id.*, at \*7. The Ninth Circuit affirmed, reiterating the District Court's disbelief for the Plaintiff's failure to amend when their expert could have analyzed the data years earlier. *See Coleman*, 232 F.3d at 1294-95 ("Despite having hired a statistical expert years before the summary judgment motions and having received the first statistical report noting the disparities between the retention of older and younger employees over a year before filing for summary judgment, the employees had never moved to amend their complaints.").

This case is on all fours with *Coleman.* Like the *Coleman* Plaintiffs, the Plan Agent retained forensic experts in this case several years ago and was in possession of discovery reflecting transfers during the four to seven year period since October 2018. Moreover, like the *Coleman* Plaintiffs, the Plan Agent did not seek to amend its complaint until it was faced with a motion to strike after the close of fact discovery. The Plan Agent's delay in asking its previously retained expert to quantify or analyze documents it has had for two years is not

commensurate with the diligence required under Rule 16. *See Johnson*, 975 F.2d at 609 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.").

Docket No. 842 at 6-7.

The court agrees with Defendants' argument that the situation in this case is much like the one in *Coleman*.  In the court's view, Plaintiff had the information which, if he or his professionals had investigated it, would have enabled him to discover the alleged fraudulent transfers involving the Museum Lease to Defendants during the four to seven years before the petition date as of the effective date of his appointment as the plan agent on April 6, 2016, or shortly thereafter, that are the basis of his new claims for which he now seeks further amendment of the complaint four and one-half years later. The court bases its view on the Plaintiff's imputed knowledge of the allegations of the original and first amended complaints filed earlier by his predecessor in interest, the Creditors' Committee, in 2014 and 2015 that had alleged fraudulent transfers totaling over $4 million by the Debtor to or on behalf of Ace Museum occurring within four years before the petition date in 2013, that is, during years 2009 to 2013, the years immediately following the 2006–2009 years in which similar transfers occurred that he now seeks to challenge.  These allegations along with the copies of the 2006 Museum Lease and the 2009 lease amendment and assignment to Ace Museum put Plaintiff on notice of the contractual relationships between Chrismas, the original lessee, Ace Museum, his assignee, and 400 South La Brea, LLC, the lessor, and substantial rent obligations under the lease that Chrismas and later Ace Museum were obligated to pay, though the means that either one had were either doubtful or unclear in the 2009 to 2013 years as the original and first amended complaints alleged the insolvency of the then lessee, Ace Museum.  Given the potential seven year reach back of the applicable statute of limitations under California Civil Code Section 3439.09(c), the allegations of substantial fraudulent transfers by the Debtor to Ace Museum totaling over $4 million in the 2009 to 2013 year period and the alleged insolvency of Ace Museum during the 2009 to 2013 year period, Plaintiff could have and should have considered potential

claims concerning transfers during the preceding three year period between 2006 and

2009 because the original Museum Lease with substantial rent obligations to 400 South

La Brea was in effect during that time period, Debtor had been incorporated and was

operating during that time period, and Chrismas, Ace Museum's principal, was the

lessee during that time period.  Apparently, based on Plaintiff's admissions, he never

considered the prospect that there were similar transfers by the Debtor to pay the rent

obligations under the Museum Lease under the immediately preceding three year time

period of years 2006 to 2009 on behalf of Chrismas, then the lessee until October 2020

when his expert, Ms. Ziegler, was completing her final expert report.  The signs were

there, meaning the information was available to Plaintiff to discover these transfers

when his appointment became effective in April 2016, he never inquired or looked for

these transfers until four and one half years later.  Whatever the reason, Plaintiff simply

failed to connect the dots.

Plaintiff was shortsighted in only asking Ms. Ziegler to analyze postpetition

transfers by the Debtor when her services were first retained immediately after his

appointment in April 2016 and never asking her to analyze the prepetition transfers

which had been fulsomely alleged in the original and first amended complaints for the

four years before the petition date.  If Plaintiff had tasked Ms. Ziegler to analyze the

prepetition transfers alleged in the original and first amended complaints filed in 2014

and 2015 when she was first retained in 2021, most likely, she would have discovered

the prepetition transfers during the 2006 to 2009 year period earlier than she did in

October 2020.  For some unknown reason, Plaintiff did not task her to look at all of the

transfers alleged in the complaint as amended until she was preparing her final expert

report in preparation for trial in late 2020, which is four years after she was retained as

his expert.

Meanwhile, the parties have conducted extensive litigation proceedings with

discovery now being closed based on the existing allegations of fraudulent transfers

only during the four years before the petition without any mention of the transfers during

three years immediately preceding that Plaintiff now wants to bring into litigation.  *See*

Declaration of Elliot C. Harvey Schatmeyer, Docket No. 830-1 at 2 ("On June 9, 2019,

the Court entered a Scheduling Order in this proceeding setting forth deadlines for,

among other things, the cut-off for taking fact discovery.  The fact discovery cut-off was

subsequently extended to September 30, 2020.  Between June 6, 2019 and September

30, 2020, the parties have exchanged thousands of documents, served written party

and third-party discovery, and deposed 8 witnesses."); Declaration of Brian L. Davidoff,

Docket No. 832 at 21 ("The 400 SLB Defendants have conducted discovery and

otherwise have been defending this adversary proceeding within the bounds of the

allegations contained in the Plan Agent's Sixth Amended Complaint, and the various

prior iterations of the Plan Agent's complaint, in which the Plan Agent asserts that 400

SLB received avoidable transfers during only a four-year prepetition period.  If the Plan

Agent were allowed to add an entirely new three-year pre-petition period in his

allegations and pre-petition claims totaling at least $5.58 million, our office, as counsel

for the 400 SLB Defendants, and the professionals engaged by the 400 SLB

Defendants, will be compelled to engage in new discovery regarding the new

allegations.").  Such further amendment of the complaint would necessitate modification

of the Scheduling Order because discovery would have to be reopened to address the

numerous alleged fraudulent transfers totaling over $12 million during this additional

three year time period, which would result in substantial additional expenditure for the

parties.

        Plaintiff's four year delay in discovering the additional alleged fraudulent transfers

under these circumstances does not demonstrate diligence in seeking modification of

the Scheduling Order to allow further amendment of the complaint since at the effective

date of his appointment in April 2016, he had the imputed knowledge to discover the

transfers if he or his professionals had investigated the information that they had in their

possession and control, that is, the business records of the Debtor, such as Debtor's tax

returns and bank records, which Ms. Ziegler had based her analysis leading to the

discovery of previously unalleged transfers, as well as the information relating to the 2006 original Museum Lease, and the 2009 lease amendment and assignment.  This lengthy delay indicates inexcusable neglect in Plaintiff's investigation and prosecution of these new claims which is incompatible with the diligence required by Civil Rule 16(b)(4).  *See Johnson v. Mammoth Recreations, Inc.,* 975 F.2d at 209 (citations omitted).  Moreover, Plaintiff's lack of diligence is also shown in that he had actual knowledge of the transfers he now seeks to avoid and recover in a further amended complaint from discovery as reflected in the Fifth Amended Complaint that he filed in November 2018, over two years before he filed his motion to further amend the complaint in December 2020.  Pursuant to the existing Scheduling Order, the parties have conducted extensive discovery and pretrial proceedings in reliance on the allegations of the existing complaint relating to alleged fraudulent transfers during the four year period of 2009 to 2013, and the Scheduling Order would have to be modified to permit additional discovery relating to Plaintiff's new claims of numerous alleged fraudulent transfers during an additional three year time period from 2006 to 2009.

Plaintiff's reply to Defendants' oppositions, he argues that the court should allow the amendment of the complaint because it only extends the avoidance period by three years within the seven year statute of limitations under California Civil Code section 3439.09(c) as was allowed in the case of *Krasnoff v. Lancaster Baptist Church*, 2018 Bankr. LEXIS 19324 (Bankr. C.D. Cal. June 26, 2018).  Reply to Oppositions, Docket No. 848 at 18–19.  Plaintiff's argument is as follows:

> In *Krasnoff v. Lancaster* Baptist Church, Adv. No. 2:17-ap-10491-ER, the plaintiff initially sought to avoid transfers made to defendants within a seven-year period; but, upon discovering new facts after a failed mediation, the plaintiff moved to amend its complaint to extend the avoidance period by an additional three years, seeking to avoid transfers made within ten years of the petition date. *See Krasnoff*, 2018 Bankr. LEXIS 19324, at *4. Plaintiff argued, successfully, that there was "no merit to [Defendant]'s contention that the Trustee has not acted diligently in seeking leave to amend the Complaint," because:
>
> > The Ninth Circuit decisions finding a lack of diligence by the party seeking leave to amend involve situations in which the party sought to raise new legal theories and/or add new parties to the action. *Here, the Trustee does not seek to add new parties or raise new legal theories; the*

> *Trustee seeks only to extend the reach-back period by an additional three years.*

> *Id.* at *9 (emphasis added).  Given that the Plan Agent similarly seeks only to extend the reach-back period by an additional three years—and makes its motion shortly after receiving, from its expert, actionable facts concerning the three-year period—the Court should grant the Plan Agent's motion in its entirety.

*Id.*  Plaintiff's reliance on *Krasnoff v. Lancaster Baptist Church* is misplaced because the circumstances of that case are distinguishable because: (1) the trustee seeking the amendment was not bringing in new parties, which is not the situation here, because Defendants 400 South La Brea, LLC, and its principals, and Defendant Cathay Bank, are new parties to the adversary proceedings since they were not parties named in the timely filed original and first amended complaints (i.e., while these defendants were named parties in subsequently filed complaints, they have asserted affirmative defenses in their answers, preserving their rights based on the statute of limitations); and (2) the court in *Krasnoff v. Lancaster Baptist Church* held that it was inefficient to deny amendment based on lack of diligence under Civil Rule 16 as the trustee could still file another adversary proceeding to prosecute the new claims because the two years statute of limitations under 11 U.S.C. § 546(a), which is not the situation here, as the statute of limitations under 11 U.S.C. § 546(a) expired before these defendants were named parties in these adversary proceedings.[8]

In conclusion, the court determines that plaintiff has not demonstrated that he acted diligently in seeking to amend the complaint to further amend the complaint to add additional fraudulent transfers between four and seven years before the petition date. Furthermore, the court concludes that the addition of these claims would fundamentally

---

[8] The status of Defendant Chrismas who is not a new party (i.e., as a named defendant in the timely first amended complaint) presents a closer case under the rationale of *Krasnoff v. Lancaster Baptist Church.*  However, the court's observations regarding the lack of diligence still applies as to the assertion of new claims against him, and the two year statute of limitations of 11 U.S.C. §546(a) extended to December 19, 2015 has now expired as to new claims against him based on the 2006-2009 transfers.  Plaintiff would have to show that the new claims relate back to the original pleadings under Federal Rule of Civil Procedure 15(c)(1). While as a named defendant in the timely filed first amended complaint, Federal Rule of Civil Procedure 15(c)(1) (C) does not apply to Chrismas; however, Rule 15(c)(1)(B) does, and Plaintiff is unable to show under Rule 15(c)(1)(B) that the amendment asserts a claim that arose out of the conduct, transaction or occurrence, or attempted to be set out, in the original pleadings, the original and first amended complaints, as those pleadings only asserted claims based on alleged fraudulent transfers occurring within four years of the petition date after the incorporation of Ace Museum in 2009.

1   alter the nature of this litigation, requiring modification of the Scheduling Order as

2   amended, because discovery would have to be reopened because discovery was only

3   taken based on the existing allegations of the complaint which did not refer in any way

4   to the numerous alleged fraudulent transfers during the new three year time period from

5   2006 to 2009 to be added to the litigation by the proposed amendment of the complaint.

6           Accordingly, the court denies Plaintiff's motion for leave to amend the Sixth

7   Amended Complaint for lack of good cause under Federal Rule of Civil Procedure

8   16(b).

9           Alternatively, assuming *arguendo* that Plaintiff is not required to satisfy the

10  standard of Federal Rule of Civil Procedure 16 regarding modification of the pretrial

11  scheduling order, Plaintiff must then satisfy the requirements of Federal Rule of Civil

12  Procedure 15 governing amendment of pleadings. In this instance, Plaintiff's proposed

13  amendment of the Sixth Amended Complaint should be denied as futile because

14  plaintiff cannot meet the requirements of "relation back" rules of Federal Rule of Civil

15  Procedure 15(c)(1)(C).  Federal Rules of Civil Procedure 15 and 16 are applicable to

16  this adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7015 and

17  7016.

18          Plaintiff's proposed pleading, either a Seventh Amended Complaint or a Modified

19  Sixth Amendment Complaint, will amend the claims for intentional and constructive

20  fraudulent transfers and transfer avoidance from four years before the petition date to

21  seven years before the petition date.  The allegations of the Sixth Amended Complaint

22  cover, or reach back to, alleged fraudulent transfers within four years before the petition

23  date, or transfers between 2009 and 2013.  Plaintiff in the proposed amended complaint

24  seeks to cover additional alleged fraudulent transfers between four and seven years

25  before the petition date, or transfers between 2006 and 2009.  The proposed

26  amendment expands the scope of the claims to encompass alleged fraudulent transfers

27  between four and seven years before the petition date rather than within four years of

28  the petition date, and in essence, adds new claims to contest additional alleged

1  fraudulent transfers.

2      The applicable statutes of limitations for Plaintiff's fraudulent transfer claims are

3  four years from the dates of the alleged constructive fraudulent transfers and up to

4  seven years from the dates of the alleged intentional fraudulent transfers pursuant to

5  California Civil Code §§ 3439.09(a) and (b) and 11 U.S.C. § 544(b).  Assuming the date

6  of filing of the proposed amendment causes of action is the date of the filing of the

7  motion on December 10, 2020, the four year and seven year statute of limitations under

8  California Civil Code § 3439.04 would have allowed claims relating to alleged fraudulent

9  transfers to "reach back" to transfers on or after December 10, 2013 and December 10,

10  2017, not accounting for the effect of 11 U.S.C. § 546(a).  California Civil Code §

11  3439.09(a) and (b).  As recognized by the Ninth Circuit Bankruptcy Appellate Panel in *In*

12  *re EPD Investment Co., Ltd.*, 523 B.R. 680 (9th Cir. BAP 2015), if the applicable state

13  statute of limitations governing the claims had not yet expired on the date that the

14  bankruptcy debtor filed its bankruptcy petition, the trustee's transfer avoidance action

15  could be brought if it was filed with the limitations period set forth in the Bankruptcy

16  Code, namely, 11 U.S.C. § 546(a).  A trustee's avoidance action under 11 U.S.C. § 544

17  is timely if it is commenced within "2 years after the entry of the order for relief."  11

18  U.S.C. § 546(a)(1)(A).  The four year and seven year "reach back" periods under the

19  state statutes of limitations under California Civil Code § 3439.09(a) and (b) are

20  established on the date of the order for relief, or here the petition date of February 19,

21  2013, and thus, Plaintiff could seek to challenge alleged constructive and intentional

22  fraudulent transfers back to February 19, 2009 and February 19, 2006 respectively, if

23  amendment is permitted under Federal Rule of Civil Procedure 15.

24      Plaintiff's proposed amended complaint is not being filed within the applicable

25  statute of limitations for the amended avoidance claims contained therein under 11

26  U.S.C. § 546(a), which requires that avoidance claims under 11 U.S.C. § 544 must be

27  brought within two years of the order for relief, or here, the date on which the Debtor's

28  voluntary petition for relief under Chapter 11 of the Bankruptcy Code was filed, on

February 19, 2013.  Thus, the two year deadline of 11 U.S.C. § 546(a) was February 19, 2015.  Certain parties consented to the extension of the two year statute of limitations to December 19, 2015, but this consent was not given by parties affected by the amendment, including the 400 South La Brea Defendants and Defendant Cathay Bank.  Thus, the two year statute of limitations on claims against these parties under 11 U.S.C. §546(a) was February 19, 2015.  Plaintiff timely filed the original complaint and first amended complaint before the two year statute of limitations of 11 U.S.C. §546(a) expired on February 19, 2015 in *Official Committee of Unsecured Creditors v. Ace Museum*, Adv. No. 2:14-ap-01771-RK, on November 26, 2014 and January 22, 2015 respectively.

Plaintiff's motion to allow the filing of a further amended complaint is opposed by the 400 South La Brea Defendants, Defendant Cathay Bank and Defendant Douglas Chrismas, who contend that the proposed amendment should not be allowed pursuant to Federal Rules of Civil Procedure 15 and 16.

The proposed amended complaint is not an amendment as a matter of course, absent written consent of the other parties, Plaintiff must obtain leave of court pursuant to Federal Rule of Civil Procedure 15(a)(2), but as this rule also provides, "[t]he court should freely give leave when justice so requires."  "Federal Rule of Civil Procedure 15(c) 'governs when an amended pleading relates back to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations.'"  *Tate v. United States,* No. CV 15-9323-FMO(JFR), 2019 WL 6799107 (C.D. Cal.Sept. 18, 2019), slip op. at *4, citing and quoting, *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010).   Thus, the proposed amended complaint must "relate back" to a timely pleading within the statute of limitations pursuant to Federal Rule of Civil Procedure 15(c)(1), which provides:

> (c)(1) ***When an Amendment Relates Back.***  An amendment to a pleading relates back to the date of the original pleading when:
>
> > (A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct or occurrence set out---or attempted to be set out---in the original pleading;

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c )(1)(B) is satisfied and if, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment:

(i)  received such notice of the action that it will not be prejudiced in defending the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Federal Rule of Civil Procedure 15(c)(1).

In this case, Plaintiff's proposed amended complaint would have to relate back to the dates of the timely filed pleadings, either the original complaint or the first amended complaint filed in Adv. No. 2:14-ap-01771 RK, before the two year statute of limitations of 11 U.S.C. § 546(a) expired on February 19, 2015.  The proposed amended complaint adds new parties and new claims which were not alleged in the original complaint and first amended complaint, that is, the proposed amended complaint adds the 400 South La Brea Defendants and Defendant Cathay Bank as new parties not named in the original complaint and the first amended complaint.  Defendant Chrismas is not a new party as he was added as a party in the first amended complaint.  The proposed amended complaint adds new claims by expanding the scope of requested relief to cover, or reach back, to additional alleged fraudulent transfers between four and seven years before the petition date, that is, alleged fraudulent transfers between February 19, 2006 and February 19, 2009, which were not alleged in the prior timely complaints.

The court notes that Plaintiff is seeking to reach back and attack transfers that occurred as long as 15 years ago, even though the California statute of repose on attacking actual fraudulent transfers under California Civil Code § 3439.09(c) is only 7 years, and this would only be possible through two year statute of limitations of 11 U.S.C. § 546(a) from the petition date, which establishes the date of the reach back

1    period under the state statute of limitations.  Plaintiff needs either a ruling that the

2    proposed amended complaint relates back to the timely filed original or first amended

3    complaint or that the statute of limitations is equitably tolled under the circumstances of

4    this case.

5          With respect to Plaintiff's constructive fraudulent transfer claims, amendment

6    would be futile as there is an absolute four year statute of limitations measured from the

7    date of the alleged transfers under California Civil Code §3439.09(b).  While Plaintiff

8    would have two years from the petition date under 11 U.S.C. §546(a) to assert claims to

9    avoid constructive fraudulent transfers if the applicable state statute of limitations had

10   not expired as to such transfers.  The four year limitation of California Civil Code

11   §3439.09(b) would only permit Plaintiff to bring constructive fraudulent transfer claims

12   as to transfers within four years before the petition date, and not earlier transfers as

13   Plaintiff seeks in a further amended complaint.

14         Plaintiff's argument in his supplemental briefing that contrary to California Civil

15   Code §3439.09(b), he may properly allege claims to avoid constructive fraudulent

16   transfers back to February 19, 2006, seven years before the petition date, on grounds

17   that where a state law fraudulent transfer claim exists on the petition date, the status

18   statute of limitations, including California Civil Code §3439.09(b), cease to have any

19   continued effect, is erroneous.  See Docket No. 868 at 8-10.  In making this argument,

20   Plaintiff relies upon the opinion of the Ninth Circuit Bankruptcy Appellate Panel in *Rund*

21   *v. Bank of America Corp.* (*In re EPD Investment Co., LLC*), 523 B.R. 680 (9th Cir. BAP

22   2015), which stated:

23           Accordingly, we hold that so long as a state-law fraudulent transfer claim exists

24           on the petition date (or the date the order for relief is entered), i.e., the state's
             applicable repose period governing the action has not yet expired on the petition

25           date (or the order for relief date), ***the trustee may bring the avoidance action***

26   ***under [11 U.S.C.] §544(b), provided it is filed within the limitations period in***
     ***[11 U.S.C.] §546(a).  The "reach back" period is established on the petition***

27   ***date (or order for relief date) and encompasses all transfers within the***
     ***relevant period provided by state law.***

28   *Id*., citing and quoting, *In re EPD Investment Co., LLC*, 523 B.R. at 692.  In making his

argument, Plaintiff apparently misreads the quoted passage from EPD Investment because the applicable repose period to avoid constructive fraudulent transfers of four years under California Civil Code § 3439.09(b) had expired as of the petition date as to transfers made more than four years before that date.  The BAP's opinion in *EPD Investment* was quite clear in stating that if the state law statute of limitations on avoiding a transfer had not expired as of the petition date, then the trustee could bring the avoidance action as long as it was within the two year statute of limitations of 11 U.S.C. § 546(a), and the opinion did not say that the state law statute of limitations was to be disregarded if that statute of limitations had expired with respect to earlier transfers as Plaintiff apparently argues.

As to actual fraudulent transfers, there is an absolute seven year statute of limitations measured from the date of the alleged transfers under California Civil Code § 3439.09(a) and (c), and Plaintiff may be potentially able to allege claims based on actual fraudulent transfers within seven years before the petition date.  However, since the 400 South La Brea Defendants and Defendant Cathay Bank are newly added defendants not included in the timely filed original complaint and first amended complaint, the stringent requirements of Federal Rule of Civil Procedure 15(c)(1)(C) apply.  The proposed claims against them must have arisen out of the conduct alleged in the timely original or first amended complaint, that the new defendants must have received sufficient notice of the original action "within the period provided by [Federal Rule of Civil Procedure] 4(m) for serving of the summons and complaint" so that they will not be prejudiced in defending the claims on the merits and that the new defendants must have known or should have known that "but for a mistake concerning the proper party's identity" they would have been named in the timely filed complaints. As indicated in *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1503 (9th Cir. 1994), the purpose of Rule 15(c) is to protect a plaintiff who mistakenly targets the wrong defendant and then discovers after the applicable statute of limitations has run before the discovery of the true identity of the proper party defendant.

1       The stringent requirements of Federal Rule of Civil Procedure 15(c)(1)(C) are not

2    met as to the 400 South La Brea Defendants and Defendant Cathay Bank because the

3    allegations of the proposed amended complaint do not arise out of the same conduct,

4    transaction or occurrence alleged in the original or first amended complaint and the

5    other conditions of Rule 15(c)(1)(C) pertinent to new parties such as these defendants

6    are not met.  The original and the first amended complaints allege that the fraudulent

7    transfers were made by the Debtor to Defendant Ace Museum and Defendant Chrismas

8    within four years of the petition date, primarily consisting of payments to or on behalf of

9    Defendant Ace Museum of approximately $4 million since July 9, 2009, and payments

10   to or on behalf of Defendant Chrismas of at least $69,041.02 within one year of the

11   petition date.  First Amended Complaint, ¶ 9–14.  However, in the original and first

12   amended complaints, there were no allegations of fraudulent transfers before four years

13   of the petition date.  *Id*.  Moreover, in the original complaint or the first amended

14   complaint, there are no allegations of alleged fraudulent transfers involving the 400

15   South La Brea Defendants or Defendant Cathay Bank as none of these defendants

16   were named as a party defendant in the original or first amended complaints or were

17   referred to in any way in the original or first amended complaints, and thus, the

18   provisions governing relation back of proposed pleadings of Rule 15(c)(1)(C) applicable

19   to these defendants as newly added parties must be met.  Specifically, the requirement

20   of Federal Rule of Civil Procedure 15(c)(1)(B) that the amendment asserts a claim or

21   defense that arose out of the conduct or occurrence set out---or attempted to be set out-

22   --in the original pleading is not satisfied because the original and first amended

23   complaints do not assert claims relating to alleged fraudulent transfers more than four

24   years before the petition date, and that there is no showing by Plaintiff that within the

25   period provided by Federal Rule of Civil Procedure 4(m) then in effect for service of the

26   summons and complaint, that is, 120 days of the filing of the original and first amended

27   complaints on November 26, 2014 and January 22, 2015, respectively, that the parties

28   to be brought in by amendment, i.e., the 400 South La Brea Defendants and Defendant

Cathay Bank had (i) received such notice of the action that they will not be prejudiced in defending the merits; and (ii) knew or should have known that the action would have been brought against them, but for a mistake concerning the proper party's identity.

There is no evidence in the record that within the 120 day time period of Rule 4(m) ending about the end of May 2015, the 400 South La Brea Defendants and Defendant Cathay Bank had received notice of the action against them so that they would not be prejudiced in defending the merits and would have known or should have known that the action would have been brought against them, but for a mistake concerning their identity as proper party defendants.  Based on this record, evidence of such a showing is nonexistent because the original and first amended complaint did not allege claims of fraudulent transfers more than four years before the petition date, specifically the prepetition rent transfers, and these defendants were not even named as parties defendant until the Third Amended Complaint for the 400 South La Brea Defendants filed on January 23, 2017 and the Fifth Amended Complaint for Defendant Cathay Bank filed on November 17, 2018.  Because the proposed amended complaint does not meet the requirements of Rule 15(c)(1)(C) to relate back to the timely filed original and first amended complaints, the amendment is futile as to the claims asserted against the 400 South La Brea Defendants and Defendant Cathay Bank,

Plaintiff's argument that the amended claims relate back to the original complaint filed on November 26, 2014 is that both the 400 South La Brea Defendants and Defendant Cathay Bank had notice of Debtor's bankruptcy petition and both had suspected that Debtor's transfers to them may be voidable by July 2013, if not sooner. Docket No. 868 at 13–20.  In support of this argument, Plaintiff submitted various exhibits including copies of email messages from 2013 between agents or representatives of these defendants showing knowledge of Debtor's bankruptcy petition and requesting information from Debtor's principal, Chrismas, about the source of the rent payments for Debtor's affiliate, Ace Museum, on the lease with 400 South La Brea, Cathay Bank's borrower, and discussing Chrismas's credit history, and copies of

1   postpetition, preconfirmation emails between Debtor's bankruptcy counsel and

2   Chrismas, Debtor's principal, regarding potential avoidance claims against transferees

3   of Debtor's assets.  *Id*.  Based on this evidence showing Defendants' knowledge of

4   Debtor's bankruptcy case and suspicions about the source of the rent payments on the

5   Museum Lease by Debtor's affiliate, Ace Museum, Plaintiff argues that further

6   amendment of the complaint should be allowed on grounds that the new claims relate

7   back to the timely filed original complaint:

> When taken together, Exhibits A through F demonstrate that no later than July of 2013, both Defendants 400 SLB and Cathay Bank (i.) knew of Debtor's Feb. 19, 2013 voluntary bankruptcy petition and (ii.) doubted the Debtor's ability to make payments so much that Cathay Bank informed Debtor via email on Aug. 9, 2013 that Cathay Bank determined that Debtor's mortgage loan encumbering the 400 SLB property had matured and was already in default. They determined that the situation could only be cured by providing eleven items of reassurance, including financial statements from Ace Museum to show the "repayment source to Debtor's rent payment" and an explanation written by Mr. Chrismas about the bankruptcy matter and its resolution. *See* Ex. A.  Furthermore, Debtor's own bankruptcy counsel had advised him as early as December 2014, if not before, to bring actions against parties who received Debtor's transfers that would be subject to avoidance actions, or to negotiate extended deadlines with these parties—i.e., parties such as Defendants 400 SLB and Cathay Bank.
>
> Accordingly, both defendants 400 SLB and Cathay Bank had adequate notice that they might be subject to avoidance actions beginning no later than August 9, 2013 or before. As stated earlier, the Plan Agent's predecessor filed the Original Complaint in this matter on November 26, 2014. That Defendants 400 SLB and Cathay Bank were not named until the filing of the third and fourth amended complaints in 2017 and 2018, respectively, says nothing about their notice and knowledge as of July 2013 that they may be named in a fraudulent transfer action in connection with the Debtor's February 19, 2013 voluntary bankruptcy petition. Defendants 400 SLB and Cathay Bank thus had more than adequate notice and time to prepare their defense, and the amended claims, including claims 2, 3, 4, 8, 9, and 11 affected by paragraph 213, "relate back" to the original complaint filed in November 2014 under Rule 15(c). *See FDIC v. Jackson,* 133 F.3d 694, 702 (9th Cir. 1998) ("While it is generally true that an amendment supersedes an original pleading, this Circuit has held that the filing date of an original complaint remains operative for relation-back purposes even where otherwise superseded by amendments.").

25   *Id*. at 18–19.

26        However, the problem with Plaintiff's argument is that it does not address the

27   stringent standard of Federal Rule of Civil Procedure 15(c)(1)(C) for amending

28   pleadings adding new parties, which is not met here as discussed above.  That is,

1   Plaintiff has not shown that (1) the proposed amendment asserts claims that arose out

2   of the conduct or occurrence set out---or attempted to be set out---in the original

3   pleadings, i.e., the original and first amended complaints, as the claims reaching back to

4   the four to seven year time period before the petition date would be new, not previously

5   asserted; (2) that the added defendants, 400 South La Brea Defendants and Defendant

6   Cathay Bank, within the period provided by 120 day time period of Federal Rule of Civil

7   Procedure 4(m) for service of the summons and original or first amended complaint,

8   received such notice of the action that they will not be prejudiced in defending the

9   merits; and (3) that they, within the period provided by 120 day time period of Federal

10  Rule of Civil Procedure 4(m) for service of the summons and original or first amended

11  complaint, knew or should have known that the action would have been brought against

12  it, but for a mistake concerning the proper party's identity, as they were not first named

13  or referred to in a complaint until December 2016 for the 400 South La Brea Defendants

14  and until October 2018 for Defendant Cathay Bank, which would be way behind the 120

15  day time period under Rule 4(m) measured from the filing of the original or first

16  amended complaints in November 2014 and January 2015.

17      The new claims do not arise from the conduct set forth in the original or first

18  amended complaints.  As argued in Cathay Bank's supplemental brief, Docket No. 876

19  at 10–11:

20      An amendment asserting a new or changed claim relates back to the date of the
        original pleading if the amendment "arose out of the conduct, transaction, or
21      occurrence set out . . . in the original pleading." *ASARCO, LLC v. Union Pacific
        R.R. Co.,* 765 F.3d 999, 1004 (9th Cir. 2014) (quoting Rule 15(c)). To relate
22      back, "the original and amended pleadings [must] share a common core of
        operative facts so that the adverse party has fair notice of the transaction,
23      occurrence, or conduct called into question." *Martell v. Trilogy Ltd.*, 872 F.2d 322,
        325 (9th Cir. 1989). "In the context of avoidance actions, each preferential and
24      fraudulent transaction is treated separately and distinctly, because the proof
        offered for one transaction does not govern as to another and, as such, relation
25      back cannot be ordered between different transactions merely for being similar or
        arising from the same conduct." *See Sec. Investor Prot. Corp. v. Bernard L.
26      Madoff Inv. Sec. LLC*, 594 B.R. 167, 210 (Bankr. S.D.N.Y. 2018) (internal
        citations and quotation marks omitted); *In re M. Fabrikant & Sons, Inc.,* 480 B.R.
27

28

480, 492 (S.D.N.Y. 2012).

The Plan Agent's Brief ignores this issue completely. That is fatal for the proposed amendment. The Original Complaint does not identify any fraudulent transfers arising from rent paid by the Debtor on the 400 SLB property. Nor does it identify (i) the recipient of any purported rent, (ii) the amounts transferred, (iii) the dates on which the transferred occurred, or (iv) any facts suggesting an "intent to hinder, delay, or defraud any creditor," e.g., the factors set forth in Civ. Code § 3439.04(b), on the part of any defendant. The Original Complaint merely alleges that the Debtor made a loan to Ace Museum is several installments post-dating July 9, 2009:

> Plaintiff . . . alleges [that] Ace Museum borrowed, or otherwise obtained, from the Debtor, and the Debtor lent, or otherwise provided, to Ace Museum, funds in the aggregate of no less than $4,482,586.00 (the "Loan"), and that Ace Museum became indebted to the Debtor in at least that amount (the "Loan Obligation"). Plaintiff is further informed and believes, and based thereon alleges, that the Loan was provided or made pursuant to one or more transfers of the Debtor's funds from the Debtor to Ace Museum since July 9, 2009 (each, a "Transfer" and, collectively, the "Transfers").

Orig. Compl., ¶ 9. The Original Complaint then asserts several causes of action arising from the unpaid balance of the loan and, in the alternative, that the post-2009 loan advances made to Ace Museum amount to constructive fraudulent transfers under Civ. Code §§ 3439.04(a)(2) and 3439.05. *Id.*, ¶¶ 18-59. However, these allegations are not hooks on which to hang a later amended complaint. The facts in the Original Complaint relate exclusively to the time period after July 9, 2009 whereas the claims in the proposed amendment arise from transfers that pre-date February 19, 2009. In addition, the allegations in the Original Complaint relate to a set of transactions (loan advances) that are entirely distinct from the transactions in the proposed amendment (prepetition rent transfers to 400 S. La Brea LLC). Put simply, there is no common core of operative facts between the Original Pleading and the new claims in the proposed amendment.

*Id*. The court agrees with Cathay Bank's argument and holds that Plaintiff's amendment as to it and the 400 South La Brea Defendants does not meet the stringent standards of Federal Rule of Civil Procedure 15(c)(1)(B) and (C).

For the foregoing reasons, Plaintiff's motion for leave to amend should be denied because the proposed amended complaint adding new parties and claims is filed after the applicable two year statute of limitations under 11 U.S.C. §546(a) expiring on February 19, 2015 and the claims added by the proposed amended complaint do not

1  relate back to the timely filed original and first amended complaints as required by

2  Federal Rule of Civil Procedure 15(c)(1)(C).

3      Plaintiff alternatively argues that the two year statute of limitations of 11 U.S.C.

4  §546(a) expiring on February 19, 2015 should be equitably tolled at least to the date of

5  the filing of the motion for leave to amend on December 10, 2020.  Plaintiff's

6  Memorandum on the Issue of "Futility", filed on February 8, 2021, at 15–21, citing inter

7  alia, *Gladstone v. U.S. Bancorp*, 811 F.3d 1133 (9th Cir. 2016) and *In re Milby*, 545 B.R.

8  613 (9th Cir. BAP 2016).  The Bankruptcy Appellate Panel in *Milby* recognized that the

9  statute of limitations of 11 U.S.C. §546(a) may be subject to equitable tolling.  The Ninth

10  Circuit in *Gladstone* stated: "Under the equitable tolling doctrine, where a party 'remains

11  in ignorance of [a wrong] without any fault or want of diligence or care on his part, the

12  bar of the statute does not begin to run until the fraud is discovered, though there be no

13  special circumstances or efforts on the party committing the fraud to conceal it from the

14  knowledge of the other party.'"  811 F.3d at 1143.  Plaintiff argues that he did not

15  discover the fraud relating to the transfers more than four years before the petition date

16  due to the Debtor's "track record of non-cooperation," not only in discovery in this

17  adversary proceeding, but also, as debtor in possession, when the debtor failed to take

18  legal action on behalf of the bankruptcy estate which indicates the Debtor's history of

19  concealment and refusal to produce relevant information.  Plaintiff's Memorandum on

20  the Issue of "Futility", filed on February 8, 2021, at 19.  In referring to Debtor, Plaintiff

21  apparently meant the Debtor as controlled by Defendant Chrismas while the Debtor was

22  in possession during the preconfirmation phase of this bankruptcy case until the plan

23  effective date on April 6, 2016.   Plaintiff further argues that he did not discover the

24  Debtor's prepetition insolvency beginning from at least February 19, 2006 through

25  February 19, 2013, the petition date, until after the completion of the expert report of his

26  expert witness, Ms. Ziegler, on or about October 30, 2020.  *Id*. at 21; Plaintiff's

27  Response to Oppositions, filed on December 31, 2020, at 6.  According to Plaintiff, he

28  had engaged Ms. Ziegler, a forensic accountant, to examine Debtor's postpetition

1  transfers within 45–60 days of his taking over the operations of the Debtor pursuant to

2  the confirmed plan of reorganization on April 6, 2016.  Plaintiff's Response to

3  Oppositions, filed on December 31, 2020, at 6.

4         The court determines that based on this record, equitable tolling of the two year

5  statute of limitations under 11 U.S.C. § 546(a) to December 10, 2020 is not appropriate

6  to allow the filing of the proposed amended complaint.  The two year statute of

7  limitations of 11 U.S.C. § 546(a) measured from the petition date of February 10, 2013

8  expired on February 10, 2015, and based on the allegations of fraud against Defendant

9  Chrismas who was in control of the Debtor during the preconfirmation phase of this

10  bankruptcy case through the plan effective date, April 6, 2016, Plaintiff can make a

11  reasonable argument for equitable tolling through April 6, 2016, the date when his

12  appointment as the plan agent became effective, and prior to that, according to Plaintiff,

13  Defendant Chrismas was supervising the Debtor during the preconfirmation phase of

14  this bankruptcy case, which concealed and refused to produce relevant information to

15  Plaintiff's predecessor, the Creditors' Committee. Docket No. 868 at 24–26.  Assuming

16  *arguendo* that based on Debtor's preconfirmation concealment and refusal to produce

17  relevant information with the Creditors' Committee, equitable tolling was appropriate

18  until the effective date of Plaintiff's appointment on April 6, 2016, equitable tolling is not

19  appropriate afterwards through October 30, 2020 when his expert, Ms. Ziegler,

20  completed her report as Plaintiff could have discovered the alleged fraudulent transfers

21  between four and seven years before the petition date within a reasonable time after he

22  took over Debtor's operations on April 6, 2016.  Around that time, or at least within 45–

23  60 days, Plaintiff had engaged Ms. Ziegler to examine Debtor's postpetition transfers,

24  and he could have at the same time asked her to examine its prepetition transfers

25  instead of waiting years later to ask her as part of her preparation of a final expert report

26  for trial in these adversary proceedings.  When Plaintiff took over Debtor's operations on

27  April 6, 2016, Defendant Chrismas was ousted from control of Debtor's operations, and

28  Plaintiff had access to Debtor's business records and could have with diligence

discovered the alleged fraudulent transfers between four and seven years before the petition date at least within two years of his taking over Debtor's business operations, or by April 6, 2018.  From the timely filed original and first amended complaints filed by Plaintiff's predecessor in interest, the Official Committee of Unsecured Creditors, Plaintiff must have been aware of the allegations of fraudulent transfers by Debtor to, or on behalf of, Ace Museum made within four years before the petition as alleged in those pleadings.  As alleged in the first amended complaint, Plaintiff's predecessor in interest had alleged that Ace Museum had leased premises from Defendant 400 South La Brea, LLC, in 2009, and there is no explanation why Plaintiff did not investigate Debtor's transfers before then because the lease of the museum premises preexisted 2009. Plaintiff's reason for not doing so is that he did not ask his expert to look into such transfers until she was preparing her final report in 2020, but he has not provided a reasonable explanation why he could not have discovered such transfers earlier since he took over the business operations and records of the Debtor in April 2016, had engaged Ms. Ziegler as his expert shortly thereafter, and Defendant Chrismas was no longer an impediment to discovery of the Debtor's books and records.

Accordingly, the court determines that equitable tolling is not available to allow the filing of the proposed complaint amending the Sixth Amended Complaint.

For the foregoing reasons, the court denies the Plan Agent's motion for leave to amend the Sixth Amended Complaint.

IT IS SO ORDERED.                    ###

Date: May 5, 2021

_____
Robert Kwan
United States Bankruptcy Judge