BRIAN L. DAVIDOFF (SBN 102654)
BDavidoff@GreenbergGlusker.com
KEITH PATRICK BANNER (SBN 259502)
KBanner@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California  90067
Telephone:  310.553.3610
Fax:  310.553.0687

Attorneys for Defendants
400 S. La Brea, LLC, Daryoush Dayan, Kamran
Gharibian and Michael D. Smith

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| ART & ARCHITECTURE BOOKS OF THE 21st CENTURY,<br><br>Debtor. | Case No. 2:13-bk-14135-RK<br><br>Chapter 11<br><br>Adv. No. 2:15-ap-01679-RK |
| SAM LESLIE, Plan Agent for Art & Architecture Books of the 21st Century,<br><br>Plaintiff,<br><br>v.<br><br>ACE GALLERY NEW YORK CORPORATION, a California Corporation, *et al.*,<br><br>Defendants. | Consolidated with:<br>Adv. No. 2:14-ap-01771-RK<br><br>**400 S. LA BREA, LLC'S RESPONSE TO PLAN AGENT'S POST-TRIAL BRIEF ADDRESSING ISSUES RAISED IN JANUARY 21, 2022 SCHEDULING ORDER IN THE "BANKSY" CONTESTED MATTER**<br><br><u>Trial Held</u><br>Date:    December 15, 16, 2021<br>             January 13,14, 20, 2022<br>Time:   9:00 a.m.<br>Place:   ZoomGov |
| 400 S. LA BREA, LLC, a California limited liability company,<br><br>Cross-Claimant,<br><br>v.<br><br>ACE MUSEUM, a California Corporation, *et al.,*<br><br>Cross-Defendants. | |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

# TABLE OF CONTENTS

                                                                                                                    **Page**

I.     DISCUSSION .................................................................................................. 1

       A.     The Plan Agent Continues to Ignore Critical Provisions of the Lease ................... 1

       B.     California Civil Code § 1019 is Not Applicable to this Contested Matter ............ 2

              1.     The Lease Supersedes the Default Statutory Rules on Trade
                     Fixtures.......................................................................................... 2

              2.     Even if the Lease did not Supersede California Civil Code § 1019,
                     it Would not Apply to the Pilaster or Banksy ................................... 5

       C.     The Doctrine of Accession is Limited to the Banksy, Not the Pilaster.................. 6

       D.     California Civil Code § 1013.5 is Not Applicable to this Contested Matter ......... 8

              1.     The Plan Agent Lacks Standings to Bring a Claim under California
                     Civil Code § 1013.5 ......................................................................... 8

              2.     Any Claim Under California Civil Code 1013.5 is Beyond the
                     Applicable Statute of Limitations .................................................... 9

              3.     If California Civil Code § 1013.5 Applied, the Plan Agent Is
                     Required to First Compensate 400 SLB for All Damages and Also
                     Pay 400 SLB its Attorneys' Fees ................................................... 10

       E.     The Plan Agent Fails to Meaningfully Distinguish the *Dreamland Leisure*
              Case from this Contested Matter........................................................................ 12

II.    CONCLUSION ............................................................................................... 14

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alden v. Mayfield,*
    163 Cal. 793 (1912) ..................................................................................6

*C. R. Fedrick, Inc. v. State Bd. of Equalization,*
    204 Cal. App. 3d 252 (1988) ....................................................................4

*Creative Foundation v Dreamland Leisure Ltd,*
    [2015] EWHC 2556 (Ch) (11 September 2015) ......................12, 13, 14

*Crocker Nat'l Bank v. City &Cty. of San Francisco,*
    49 Cal. 3d 881, 782 P.2d 278 (1989) .......................................................7

*Okuda v. Superior Ct.,*
    144 Cal. App. 3d 135, 192 Cal. Rptr. 388 (Ct. App. 1983) ....................8

*Peiser v. Mettler,*
    50 Cal. 2d 594, 328 P.2d 953 (1958) ...................................................7, 8

*R. Barcroft & Sons Co. v. Cullen,*
    217 Cal. 708 (1933) .............................................................................3, 6

*Teater v. Good Hope Development Corp.,*
    14 Cal. 2d 196, 93 P.2d 112 (1939) .........................................................8

*Tremper v. Quinones,*
    115 Cal. App. 4th 944 (2004) .................................................................11

*Wilmerton v. Morton,*
    74 Cal. App. 2d 891 (1946) ..................................................................3, 6

**STATUTES**

Cal. Civ. Code § 340(e) ...................................................................................9

Cal. Civ. Code § 1013.5(b) .....................................................................10, 11

Cal. Civ. Code § 1013.5(e) ..............................................................................8

Cal. Code Civ. P. § 338(e) ...............................................................................9

Cal. Code Civ. P. § 695.010, *et seq.* ..............................................................9

Cal. Code Civ. P. § 871.1, *et seq.* ................................................................8, 9

Cal. Code Civ. P. § 871.3 .................................................................................8

Cal. Code Regs. tit. 18, § 1521 ........................................................................4

California Civil Code § 101.3.5 ........................................................................8

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

400 SLB'S RESPONSE TO
PLAN AGENT'S POST-TRIAL BRIEF

# TABLE OF AUTHORITIES
### (continued)

Page

California Civil Code § 1013 ...........................................................................................7, 8

California Civil Code § 1013.5 ...........................................................................8, 9, 10, 11

California Civil Code § 1013.5(a)...........................................................................................11

California Civil Code § 1013.5(b) ...........................................................................................11

California Civil Code § 1019 ................................................................................... passim

California Civil Code § 1025 ...........................................................................................7

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

**TO THE HONORABLE ROBERT N. KWAN, UNITED STATES BANKRUPTCY JUDGE, ALL PARTIES-IN-INTEREST HEREIN, AND THEIR RESPECTIVE COUNSEL:**

As permitted by the Court's *Post-Trial Scheduling Order Re: Banksy Ownership Contested Matter* [Docket No. 1224] (the "Scheduling Order"), 400 S. La Brea, LLC ("400 SLB") respectfully submits this responsive brief (this "Response") to the *Plan Agent's Brief Addressing Issues Raised in January 21, 2022 Scheduling Order* [Docket No. 1235] (the "Plan Agent's Post-Trial Brief") filed by Plaintiff and Plan Agent, Sam S. Leslie (the "Plan Agent") in connection with the multi-day evidentiary hearing (the "Evidentiary Hearing") held on December 15 and 16, 2021 and on January 13, 14 and 20, 2022 regarding the ownership of the artwork referred to herein as the "Banksy" with respect to the *Application of Sam S. Leslie, Plan Agent, for Issuance of Writ of Execution and Appointment of Plaintiff as Substitute Custodian for U.S. Marshal in Furtherance of Execution of Writ and Notice of Levy; and for Order Approving Sale of Artworks Free and Clear of Any Claim of Lien or Interest* [Docket No. 713] ("Application"). As part of this Response, 400 SLB incorporates by reference its arguments stated in *400 S. La Brea, LLC's Supplemental Post-Trial Brief Regarding the "Banksy" Contested Matter* [Docket No. 1236] ("400 SLB's Post-Trial Brief").

## I.   DISCUSSION

### A.   The Plan Agent Continues to Ignore Critical Provisions of the Lease

In order to reach his conclusion under the law of accession that Ace Museum owned the Banksy, the Plan Agent begins with a false assumption that Ace Museum held complete ownership of the pilaster on which the Banksy was painted.  In making this false assumption, the Plan Agent's Post-Trial Brief, much like the Plan Agent's Pre-Trial Brief[1] and his arguments made at the Evidentiary Hearing continue to ignore three of the most important undisputed facts in this contested matter: (1) that any "Alteration" under the Lease[2], even "Lessee Owned Alterations" were, at all times "*considered a part of the Premises*" (Lease, §7.4(a); Exh. D10, at

---

[1] *Plan Agent's Trial Brief* [Docket No. 1179] ("Plan Agent's Pre-Trial Brief").

[2] Exh. D10 (the "Lease").

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

p. 124) (emphasis added); (2) that at the expiration or termination of the Lease, "all Lessee Owned Alterations … become the property of Lessor and [are] surrendered by Lessee with the Premises" (*Id.*); and (3) without exception, no improvement could be removed without the consent of 400 SLB (*Id.* at § 7.3(b); Exh. D10, at p. 123).  By continuing to ignore these crucial Lease provisions, the Plan Agent has artificially inflated the "bundle of rights" held by Ace Museum during, and following the termination of its tenancy.  The parties need not speculate as to what this "bundle of rights" consisted of.  The delineation of rights is very clearly laid out under sections 7.3(a) and 7.4(a) of the Lease, the latter of which is appropriately entitled "Ownership".  Under those provisions, 400 SLB *did not* give Ace Museum the "stick" allowing it to remove or dispose of any "Alteration" to its Property, and all "sticks" in the bundle were automatically given back to 400 SLB at the termination of the Lease.

The Plan Agent treats the pilaster as if it was owned outright by Ace Museum without any contractual restrictions, and not subject to any ownership rights of 400 SLB.  When one duly considers the above Lease provisions, the fallacy in the Plan Agent's argument becomes clear.  The pilaster was, at all times, considered part of the 400 SLB's real property (the "Property"); the Banksy painted thereon then must also be considered part of the Property; Ace Museum lost all ownership rights it held over the pilaster once the Lease terminated; and Ace Museum was never permitted to remove the pilaster without the consent of 400 SLB.

## B.    California Civil Code § 1019 is Not Applicable to this Contested Matter

### 1.    The Lease Supersedes the Default Statutory Rules on Trade Fixtures

In the Plan Agent's Post-Trial Brief, he relies heavily on California Civil Code § 1019, a statute that addresses trade fixtures, arguing that the pilaster could somehow be construed as a "trade fixture" removable by a lessee under this statute.  In making this argument *post*-trial, the Plan Agent overlooks the inconsistent assertion he made *pre*-trial that California Civil Code § 1019 is inapplicable to this contested matter in light of a binding Lease between Ace Museum and 400 SLB.  In the words of the Plan Agent:

> While California law provides that the tenant would be able to remove the [pilaster] even if it was a fixture, that [sic] California Civil Code Section ("CC"), CC 1019, applies only in the absence of a specific agreement about fixtures between the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

1  landlord and tenant. *R. Barcroft & Sons Co. v. Cullen*, 217 Cal. 708, 712 (1933).
2  Here, there *is* a specific agreement, and thus general California property law principles do not apply.

3  Plan Agent's Pre-Trial Brief, at 2:8-12 (emphasis original).

4      The Plan Agent's previous assertion is a correct statement of law inasmuch as California

5  Civil Code § 1019 does not apply to this contested matter in light of the binding Lease between

6  the parties:

7      The rule is well settled in this and other states that a lessor and lessee can covenant
8  away any rights that they might otherwise have under the trade fixture rule, and that where the contract speaks on the subject it controls the implications that might
9  otherwise arise under that rule.

10  *Wilmerton v. Morton*, 74 Cal. App. 2d 891, 894 (1946); *see also R. Barcroft & Sons Co. v.*

11  *Cullen,* 217 Cal. 708, 712 (1933) ("[W]hatever may be the right of a tenant by mere force of

12  relation and the law to remove a fixture, this right, as between landlord and tenant, may be

13  regulated by the contract between the parties.").

14      Here, in addition to those provisions discussed above regarding "Alterations" and "Lessee

15  Owned Alterations" the Lease also specifically addresses "Trade Fixtures".  Section 7.3(a) of the

16  Lease defines "Trade Fixtures" as "Lessee's machinery and equipment that can be removed

17  without doing material damage to the Premises".  Lease, §7.3(a), Exh. D10, at p. 123.  The

18  definition of "Trade Fixtures" under the Lease is notably much more narrow than the statutory

19  definition under California Civil Code § 1019, the latter of which includes "anything affixed [to

20  real property] for purposes of trade, manufacture, ornament, or domestic use" as long as it can be

21  removed without injury to, and has not become integral to the premises.  Cal. Civ. Code § 1019.

22      "Trade Fixtures" under the Lease are restricted to two categories: *machinery* and

23  *equipment*.  The pilaster is neither.  The record reflects that the pilaster was an element of

24  construction incorporated into the façade of the building, serving both an aesthetic purpose of

25  providing a uniform exterior to the street facing view of the Property, and serving a functional

26  purpose of vertically supporting a glass storefront window on one side and an interior wall on the

27

28

400 SLB'S RESPONSE TO
PLAN AGENT'S POST-TRIAL BRIEF

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

other.  *See* Chrismas Decl.[3], at ¶ 11.  The width of the pilaster itself would create a sort of interior corridor, whereby a Robert Irwin light sculpture attached to the interior wall would be displayed through the large exterior glass window, so that the artwork could be viewed by anyone who happened to drive along La Brea Avenue.  *See* Chrismas Decl., at ¶¶ 11-13.

Though common sense dictates that a pilaster, wall, or other element of construction do not constitute "equipment" or "machinery", the case of *C. R. Fedrick, Inc. v. State Bd. of Equalization*, which examined California's definition of the same in a tax context, is instructive. 204 Cal. App. 3d 252 (1988).  In *C. R. Fedrick, Inc.*, court analyzed whether the installation of tank settings in an oil production system were nontaxable "machinery and equipment" or taxable as fixtures under section 1521 of the California Code of Regulations ("CCR"):

> [Under CCR 1521] "'Machinery and equipment' means and includes property intended to be used in the production manufacturing or processing of tangible personal property, the performance of services or for other purposes (e.g., research, testing, experimentation) not essential to the fixed works, building, or structure itself, but which property incidentally may, on account of its nature, be attached to the realty without losing its identity as a particular piece of machinery or equipment and, if attached, is readily removable without damage to the unit or to the realty.

*C. R. Fedrick, Inc.* 204 Cal. App. 3d 260-61, quoting Cal. Code Regs. tit. 18, § 1521.

Analyzing this definition, the court in *C. R. Fedrick, Inc.* found that "machinery and equipment" as defined under CCR 1521 did not include "fixtures" for tax purposes. *Id.* at 267-69. Since the court determined the tank settings were, in fact, fixtures, the court concluded that they were not excluded from tax pursuant to CCR 1521. *Id.* at 269-70.

Although this contested matter does not involve taxation, CCR 1521's definition of "machinery and equipment" as "property intended to be used in the production manufacturing or processing of tangible personal property, the performance of services or for other purposes (e.g., research, testing, experimentation) …" reflects a practical understanding of machinery and equipment.  They all actively perform a service.  Printing presses produce printed materials, cash registers record transactions and retain currency, and soda machines dispenses soft drinks.  Here, the pilaster provided no active service.  It was an immovable wall attached to the Property.  Upon

---

[3] *Declaration of Douglas Chrismas in Connection with the "Banksy" Contested Matter* [Docket 1028] ("Chrismas Declaration").

400 SLB'S RESPONSE TO
PLAN AGENT'S POST-TRIAL BRIEF

construction, the components of the pilaster (i.e. drywall, steel beams, nails and bolts) lost their individual identity and became a single pilaster.  The pilaster then lost its identity the moment it was destroyed through the use of a power saws and crowbars.  *See* Exh. D27 (YouTube video showing the destruction of the pilaster).

In no sense could the pilaster be viewed as machinery or equipment under the Lease.

### 2. Even if the Lease did not Supersede California Civil Code § 1019, it Would not Apply to the Pilaster or Banksy

Even if one were to disregard the fact that the Lease reflects a clear agreement between the parties regarding trade fixtures, the default rule on trade fixtures codified in California Civil Code § 1019 does not assist the Plan Agent.

First, the Banksy cannot be found to be something affixed by a lessee for the purposes of "trade, manufacture, ornament, or domestic use".  Cal. Civ. Code § 1019.  The evidence is clear that Ace Museum, the lessee of the Property, did not affix the Banksy to the pilaster, the latter of which was contractually "part of the Premises". Lease, § 7.4(a); Exh. D10, at p. 124.  Rather, the Banksy was affixed to the Property *without the knowledge or consent of Ace Museum*.; Chrismas Decl., at ¶ 18.  Therefore,  as acknowledged by the Plan Agent, Cal. Civ. Code § 1019 does not apply to an item affixed by a third party. *See* Plan Agent's Post-Trial Brief, at 5:8-9 ("[California Civil Code] 1019 does not apply to spray paint applied by an unknown person, as that statute applies only when a tenant affixes something.").

Second, as to the pilaster, it had become an integral part of the Property. *See* Pagliassotti Decl.[4], at Exh. 1, p. 20.  Not only was the pilaster installed to support and encase a glass wall, but it was also an integral component of the aesthetic look of the building exterior.  *See* Chrismas Decl., at ¶ 18.

It is of no consequence that the glass wall was never installed.  The record reflects that the pilaster was attached and integrated into a uniform look of the building that was drastically different from its former state as a car dealership.  One must only compare Exhibit D4 – a photo

---

[4] *Declaration of John L. Pagliassotti in Connection with the "Banksy" Contested Matter* [Docket No. 1123] (the "Pagliassotti Declaration").

400 SLB'S RESPONSE TO
PLAN AGENT'S POST-TRIAL BRIEF

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

taken of the exterior of the Property in July 2007 shortly after the car dealership vacated – to Exhibit D14 – a photo taken of the same area in May 2009 – to see that the building had been substantially modified in line with Mr. Chrismas' vision, including the pilaster along with a near identical pilaster mirrored on the opposite side of the first-floor of the Property (*See* Exh. D7, at p. 23). Both pilasters, upon installation, were necessary components of the desired uniform aesthetic look of the Property.

Furthermore, as the Court observed during the Evidentiary Hearing, the pilaster served no specific purpose relating to Ace Museum's "trade". It was not intended to hold any art when installed. It was intended to be a pilaster covering a split face cinderblock wall and integrated with the building's general architectural design. The pilaster, along with the exterior glass wall and the interior wall the pilaster were to support were intended to be there permanently (even after Ace Museum was no longer an owner according to Mr. Chrismas).

If every wall or pilaster installed by a lessee could be considered a "trade fixture" nothing would stop lessees from tearing down every wall they constructed on a lessor's property under the authority of California Civil Code § 1019. Certainly that was not the intention of the legislature in drafting that provision, even if a wall or pilaster may have some loose relationship to the lessee's trade. *See Alden v. Mayfield,* 163 Cal. 793, 795–96 (1912) ("Concededly a beautiful store front of plate glass and marble may be expected to exercise a trade attraction superior to unkempt windows and dirty wood, but the plate glass and stone front do not for this reason suffer conversion from their true character as part of the building, into a mere trade ornament.").

### C.    The Doctrine of Accession is Limited to the Banksy, Not the Pilaster

As detailed in 400 SLB's Post-Trial Brief, the doctrine of accession has limited applicability to this contested matter in light of the Lease. The rights of both the lessor and lessee to alterations and improvements are clearly set forth therein, and thus California law regarding accession is not applicable as to improvements or alterations made by the lessee. *See Wilmerton,* 74 Cal. App. 2d at 894; *see also R. Barcroft & Sons Co.,* 217 Cal. at 712.

The only aspect of this contested matter where accession may apply is as to the Banksy

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

1  itself, which was not an improvement or alteration made by the lessee.[5]  California Civil Code §

2  1013 answers the question of ownership when a third party affixes their improvement to the land

3  of another – it "belongs to the owner of the land".  Cal. Civ. Code § 1013.

4      In the Plan Agent's Post-Trial Brief, he appears to argue that the pilaster may have been

5  considered personal property at the time the Banksy was painted.  On that basis, he argues that

6  California Civil Code § 1025, the statute relating to accession to personal property, may be

7  applicable.  This assertion is incorrect based on the unequivocal terms of the Lease and California

8  law regarding fixtures.

9      As discussed above and in 400 SLB's Post-Trial Brief, the pilaster, the moment it was

10  constructed became an "Alteration" pursuant to Paragraph 7.3(a) of the Lease, which is defined as

11  "*any* modifications of the improvements… whether by addition or deletion."  Lease, § 7.3(a);

12  Exh. D10, at p. 123 (emphasis added).  All "Alterations" performed by the lessee are, in turn,

13  "considered part of the Premises".  *Id.* at 7.4(a), at p. 124.  As such, the Lease dictates that the

14  pilaster was part of the Property.

15      Similarly, the pilaster would be considered a "fixture" under California law as it is (1)

16  physically attached to the premises using nails and bolts; (2) has been adapted to the real

17  property, as it fits within the comprehensive design of the façade and was intended to support an

18  adjoining wall and glass window; and (3) was intended by Mr. Chrismas to serve that very

19  purpose. *See Crocker Nat'l Bank v. City & Cty. of San Francisco*, 49 Cal. 3d 881, 887, 782 P.2d

20  278 (1989) (explaining three-part test for a fixture under California law being attachment,

21  adaptation and intent).  Whether one considers the Lease or California fixture law, the pilaster

22  was part of the real property owned by 400 SLB at the time the Banksy was painted thereon.

23      The pilaster became personal property only *after* the Banksy was painted, and *after* Mr.

24  Chrismas elected to cut out the pilaster from the Property, including the underlying metal support

25  beams. *Peiser v. Mettler,* 50 Cal. 2d 594, 606, 328 P.2d 953 (1958) (finding that a fixture that is

26

27  [5] Though, as discussed at length in 400 SLB's Post-Trial Brief, the Lease does broadly define "Alterations" as *any* modifications of the improvements… whether by addition or deletion"  (Lease, § 7.3(a); Exh. D10, at p.123), and there is nothing in the Lease that gives the lessee any ownership rights to an "Alteration" not made by the lessee.

28  Thus, the Lease directs that the lessor is the owner of the Banksy itself.

1   detached and removed from the realty becomes personal property).  Even so, the pilaster, as an

2   item of personal property remained subject to 400 SLB's right to immediate possession.  *Id.; see*

3   *also Teater v. Good Hope Development Corp.*, 14 Cal. 2d 196, 208, 93 P.2d 112 (1939).

4       Because the pilaster was, at the time the Banksy was painted, contractually and legally

5   considered part of 400 SLB's real property, and because the Banksy was permanently affixed to

6   that real property by way of spray paint, California Civil Code § 1013 requires that the Banksy

7   "belongs to the owner of the land".  Cal. Civ. Code § 1013.

8       **D.    California Civil Code § 1013.5 is Not Applicable to this Contested Matter**

9           **1.    The Plan Agent Lacks Standings to Bring a Claim under California**

10              **Civil Code § 1013.5**

11      The Plan Agent mischaracterizes California Civil Code § 1013.5 as simply an "exception"

12  to the general rule of accession set forth under California Civil Code § 1013.  California Civil

13  Code § 1013.5 is not merely a statutory "exception", it creates a private right of action which can

14  be exercised by an improver of real property, provided that certain conditions precedent are met.

15  This statutory relief is otherwise known as the "good faith improver" remedy.[6]

16      California Civil Code § 1013.5  "affords *the good faith improver* only one remedy,

17  removal of the improvements upon payment of the value to the owner of the land."  *Okuda v.*

18  *Superior Ct.*, 144 Cal. App. 3d 135, 139 (1983) (emphasis added).  As explicitly stated in

19  subsection (e) of California Civil Code § 1013.5:

20      The right created by this section is a right to remove improvements from land *which*
21      *may be exercised at the option of one* who, acting in good faith and erroneously
        believing because of a mistake either of law or fact that he has a right to do so,
22      affixes such improvements to the land of another.") (emphasis added).

23  Cal. Civ. Code § 1013.5(e) (emphasis added).

24      Putting aside for a moment the requirement under this remedy that the improver pay costs

---

[6] California later enacted a second "good faith improver" statute under California Code of Civil Procedure § 871.1, *et
seq.*, but that "remedy is available only to those improvers who acted under a good faith belief that they *owned* the
land in question".  *Okuda v. Superior Ct.*, 144 Cal. App. 3d 135, 139, 192 Cal. Rptr. 388, 390 (Ct. App. 1983)
(emphasis original); *see also* Cal. Code Civ. P. §871.3.  The record in this matter does not reflect that there was any
mistaken belief by Mr. Chrismas that he *owned* 400 SLB's real property, and thus this second "good faith improver
statute" is inapplicable.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

                                         400 SLB'S RESPONSE TO
                                         PLAN AGENT'S POST-TRIAL BRIEF

to the landowner *before* removal, the statute, on its face, provides a remedy *only* to the alleged good faith improver if certain criteria are met.

The Plan Agent has never been, nor could he ever be considered an "improver" of 400 SLB's real property.  It is undisputed that the subject pilaster was an improvement made by Ace Museum – a non-debtor third party.  The Plan Agent lacks any authority whatsoever to assert claims on behalf of Ace Museum.  To the contrary, he is asserting claims *against* Ace Museum as a judgment creditor and seeks to execute against Ace Museum's property pursuant to California Code of Civil Procedure § 695.010, *et seq*.  The Plan Agent cannot "step into the shoes" of Ace Museum and assert an affirmative remedy on Ace Museum's behalf, such as the specific remedy afforded to improvers of real property under California Civil Code § 1013.5.  Accordingly, to the extent the Plan Agent, post-trial, now seeks to assert a remedy under California Civil Code § 1013.5, he lacks standing to do so.

### 2.    Any Claim Under California Civil Code 1013.5 is Beyond the Applicable Statute of Limitations

Even if the Plan Agent were somehow able to step into the shoes of Ace Museum and seek a remedy under California Civil Code § 1013.5, he would be subject to the same three-year statute of limitations to seek such relief that Ace Museum would be subject to. *See* Cal. Code Civ. P. 338(e) (three-year statute of limitations for actions based on mistake).[7]  In this matter, the record reflects that Mr. Chrismas installed the pilaster sometime between July 2007 and September 2008.  *Compare* Exh. D4 *with* Exh. D19.  As such, if Ace Museum sought to remove the pilaster under California Civil Code § 1013.5, it was required to bring an action to remove it sometime between July 2011 and September 2012 (depending upon the date of installation).  Moreover, Ace Museum was required to bring such an action *before* removal of the pilaster.  *See* Cal. Civ. Code § 1013.5 (permitting removal only "upon payment" to the landowner).  Based on the record before this Court, Ace Museum never sought to exercise any rights it may have had under California Civil Code § 1013.5.

---

[7] Notably, the newer "good faith improver" statute under California Code of Civil Procedure § 871.1, *et seq.* referenced in footnote 6 *supra*, is subject to a one-year statute of limitations.  *See* Cal. Civ. Code § 340(e).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

**3.** **If California Civil Code § 1013.5 Applied, the Plan Agent Is Required to First Compensate 400 SLB for All Damages and Also Pay 400 SLB its Attorneys' Fees**

In raising California Civil Code § 1013.5, the Plan Agent conspicuously fails to acknowledge that the remedy afforded to an improver of real property is subject to harsh limitations. First, the plain language of the statute requires that the remedy be sought *before* a good faith improver removes their improvement from another's real property. As quoted in the Plan Agent's Post-Trial Brief, subsection (a) of California Civil Code § 1013.5 reads:

> (a) When any person, acting in good faith and erroneously believing because of a mistake either of law or fact that he has a right to do so, affixes improvements to the land of another, such person, or his successor in interest, shall have the right to remove such improvements ***upon payment***, as their interests shall appear, to the owner of the land, and any other person having any interest therein who acquired such interest for value after the commencement of the work of improvement and in reliance thereon, of ***all their damages proximately resulting from the affixing and removal of such improvements***.

Cal. Civ. Code § 1013.5(a) (emphasis added).

The statute explicitly provides a condition precedent prior to the removal of any improvement – payment to the landowner of all their damages proximately resulting from both the affixation and removal of the subject improvement. It is undisputed that Ace Museum failed to even notify 400 SLB of its intention to remove the pilaster, let alone provide 400 SLB any compensation on account of the affixing and removal of the same.

Further, the "damages proximately resulting from the affixing and removal" of the pilaster, must necessarily include the value of the Banksy. As addressed in detail above and in 400 SLB's Post-Trial Brief, it is undisputed that the Banksy itself was *not* an Alteration made by the lessee, and therefore, at no time was it ever subject to any ownership rights of Ace Museum. *See* Chrismas Decl. , at ¶ 18. With Ace Museum not the "improver" regarding the Banksy, it could not invoke the "improver" remedy. Indeed, the Plan Agent concedes in the Plan Agent's Post-Trial Brief that the California Civil Code § 1013.5 could not apply to the Banksy since it was not installed by the lessee. *See* Plan Agent's Post-Trial Brief, at 5:4-6 ("[California Civil Code] 1013.5 does not apply, because the person could have no "good faith" belief that they were

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

1    permitted to spray graffiti on the Drywall").

2        The Banksy was affixed to the pilaster which, by contract, constituted "part of the

3    Premises". Lease, §7.4(a); Exh. D10, at p. 124. As such, Ace Museum's removal of the pilaster

4    harmed 400 SLB by removing a valuable artwork that was at all times owned by 400 SLB. Under

5    California Civil Code § 1013.5, Ace Museum could only remove the pilaster if it *first* paid to 400

6    SLB the value of that artwork as part of the damages proximately resulting from the pilaster's

7    removal.

8        Lastly, the Plan Agent conspicuously overlooks an additional relevant subsection of

9    California Civil Code § 1013.5 – subsection (b), which provides:

10       In any action brought to enforce such right the owner of the land and encumbrancers
         of record shall be named as defendants, a notice of pendency of action shall be
11       recorded before trial, and ***the owner of the land shall recover his costs of suit and
         a reasonable attorney's fee*** to be fixed by the court.
12

13   Cal. Civ. Code § 1013.5(b).

14       To the extent that the Plan Agent now seeks to affirmatively assert a claim under

15   California Civil Code § 1013.5 – despite his lack of the standing and an expired statute of

16   limitations – the Plan Agent is required by statute to compensate 400 SLB, not only for its

17   damages as set forth under California Civil Code § 1013.5(a), but for all its attorneys' fees

18   proximately resulting from the removal of the pilaster and the Banksy. This would include, at a

19   minimum, all the attorneys' fees and costs relating to this contested matter, from 400 SLB's

20   initial opposition to the Plan Agent's Application through final adjudication of this matter. *See*

21   *Tremper v. Quinones*, 115 Cal. App. 4th 944, 950 (2004) (reversing trial court's decision to limit

22   attorneys' fees to landowner in good faith improver action to just those relating to the good faith

23   improver cross-claim, finding that the landowner was entitled to all attorneys' fees and costs

24   relating to the underlying action).

25       California Civil Code § 1013.5 is wholly inapplicable to this contested matter, given that

26   the Plan Agent lacks standing to assert any expired right Ace Museum may have had at one time

27   to remove the pilaster upon payment to 400 SLB, and the Plan Agent's apparent unwillingness, or

28   inability to provide the compensation to 400 SLB required under that statute.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

E.      **The Plan Agent Fails to Meaningfully Distinguish the *Dreamland Leisure* Case from this Contested Matter**

In the Plan Agent's Post-Trial Brief, he downplays the importance of the *Dreamland Leisure*[8] case, contending that Ace Museum held a larger "bundle of rights" and broader maintenance rights than the lessee in *Dreamland Leisure*.  In attempting to distinguish the English case, the Plan Agent begins with the incomplete and misleading premise recited throughout his brief and reiterated during closing arguments that the "Banksy appeared on a wall owned – according to the Lease – by Ace Museum".  Plan Agent's Post-Trial Brief, at 8:9-10.  Once again, the Plan Agent only acknowledges one aspect of the pilaster's ownership.  He has ignored that any rights Ace Museum may have held in the pilaster were subject, at all relevant times, to the following express provisions of the Lease: (1) that all "Alterations" were part of the Property; (2) that upon Lease termination, all "Lessee Owned Alterations" became property of 400 SLB; and (3) that, without exception, no improvement could be removed without the consent of 400 SLB.  Lease §§ 7.3(b) and §7.4(a), Exh. D10, at pp. 124-125.  Once one acknowledges the above Lease provisions, this case is very similar to *Dreamland Leisure*.  In both matters a Banksy appeared on a part of the lessor's real property and in both, the lessee removed the Banksy without the lessor's permission.

The Plan Agent next points to the Lease addendum in an attempt to assert that Ace Museum had broader rights than the lessee in *Dreamland Leisure*, arguing that Ace Museum could build and remove interior nonstructural walls.  This contention, as the Court observed at the Evidentiary Hearing, falls flat.  The referenced portion of the addendum adds, among others, the following additional provisions to section 7.3(b) of the Lease:

…**Lessee has informed Lessor** that in Lessee's art gallery business, it is customary that frequent construction work will be necessary to construct and remove interior, nonstructural walls (and perform related drywall finish and repair) as necessary to accommodate exhibitions and showings. With respect to such customary work, if permitted by Applicable Requirements (including, without limitation, the California Contractor's State Licensing Law), **Lessee shall have the right to have its own employees** experienced in such work perform such work.

---

[8] *Creative Foundation v Dreamland Leisure Ltd*, [2015] EWHC 2556 (Ch) (11 September 2015) ("*Dreamland Leisure*")

Lease, Addendum ¶ 3, Exh. D10, at p. 138.

As Mr. Pagliassotti testified at trial, this clause is nothing more than a disclosure by lessee of the type of work it may perform, and the only rights conferred upon lessee thereunder is that it may use its own employee for such work.  There is no authorization given by the lessor to perform such work, which is at all times subject to the provisions of the Lease relating to tenant construction and improvements (including that all "Alterations" require lessor consent and are considered part of the property under sections 7.3(a) and 7.4(a) of the Lease).

So with the Lease addendum conferring no additional rights to Ace Museum, much like the lessee in *Dreamland Leisure*, the Plan Agent is left only with a maintenance clause to justify Ace Museum's removal of the Banksy.  This is where the English Court's reasoning in *Dreamland Leisure* is particularly persuasive.  The English Court rightfully considered the potential value of the Banksy mural and differentiated it from typical "graffiti", which was frequently applied to the subject property and regularly "painted over or 'buffed out'" *Dreamland Leisure* (400 SLB's Post-Trial Brief, Exh. 1), at ¶¶ 7, 10.  Unlike such graffiti, the Banksy mural was not painted over or buffed out.  The Banksy mural, along with the underlying wall, were ripped out of the real property improvements and sent to an art gallery for potential sale.  *Id.* at 11.  The only explanation as to such disparate treatment between regular graffiti and the Banksy mural is the latter's significant value.

The potential value of the Banksy must be similarly considered here.  Mr. Chrismas did not simply paint over, discard or otherwise clean up the pilaster.  Rather, he: (1) hired a 24-hour guard to protect it; (2) drafted a press release explaining that the Banksy was under the "care of" Ace Museum and would be returned; and that (3) moved it to a secure storage facility.  The Plan Agent has similarly treated the Banksy as an artwork of substantial value by, among other things, having a Condition Report prepared and seeking to appraise and sell the artwork.

Based on the significant value of the Banksy mural, the English court rightfully concluded that there was no repair even necessary, as "the addition of a (valuable) work of art to a wall did not adversely affect the repair or condition of the wall." *Id.* at ¶ 24.  Such was the view of Mr. Chrismas, as the record reflects that Mr. Chrismas was not seeking to "repair" the pilaster through

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

400 SLB'S RESPONSE TO
PLAN AGENT'S POST-TRIAL BRIEF

1  his actions, but sought to preserve a valuable artwork ostensibly created by a world-renowned

2  artist.  Indeed, the evidence reflects that Mr. Chrismas intended to replace the Banksy in the

3  identical spot once the Property was secured.  The Plan Agent cannot argue now that Mr.

4  Chrismas' actions somehow inadvertently fell under the repair provisions of the Lease, when such

5  actions actually *diminished* the value of the Property by the extraction of a valuable artwork

6  affixed thereto.

7  Even if the removal could somehow "accidently" fall under the repair provision of the

8  Lease, *Dreamland Leisure* illustrates that removal of the underlying wall could not be viewed as a

9  reasonable "repair", when a single coat of paint would have accomplished the same goal.  Of

10  course, that is only *if* repair was the ultimate goal.  The actions of the lessee both in *Dreamland*

11  *Leisure* and Ace Museum in in this contested matter, clearly demonstrate that repair was not the

12  objective when the respective lessees extracted each Banksy from their lessor's property.

13  Overall, the Plan Agent fails to meaningfully distinguish *Dreamland Leisure* from this

14  matter, and it remains the only known case addressing a landlord-tenant dispute over a Banksy

15  after a lessee removed the Banksy, along with an underlying portion of the premises, without the

16  consent of the lessor.  The facts, lease provisions, and applicable law here are remarkably similar

17  to those addressed in *Dreamland Leisure* and its well-founded reasoning should be adopted.

18  **II.**   **CONCLUSION**

19  Based on the foregoing, and those arguments submitted by 400 SLB in its pre-trial

20  briefing, 400 SLB's Post-Trial Brief, and during its closing arguments, 400 SLB respectfully

21  requests that the Court enter an order: (1) denying the Plan Agent's Application as to the Banksy;

22  (2) declaring that the Banksy is the property of 400 SLB; (3) requiring the Plan Agent's prompt

23  surrender of the Banksy to 400 SLB; and (4) such further relief as the Court may deem just and

24  proper.

25  / / /

26  / / /

27  / / /

28  / / /

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

400 SLB'S RESPONSE TO
PLAN AGENT'S POST-TRIAL BRIEF

1

DATED:  February 17, 2022

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP

2

3

4

By:____/s/ Brian L. Davidoff_____
       BRIAN L. DAVIDOFF
       KEITH PATRICK BANNER
       Attorneys for Defendants
       400 S. La Brea, LLC, Daryoush Dayan,
       Kamran Gharibian and Michael D. Smith

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2049 Century Park East, Ste. 2600, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **400 S. LA BREA, LLC'S RESPONSE TO PLAN AGENT'S POST-TRIAL BRIEF ADDRESSING ISSUES RAISED IN JANUARY 21, 2022 SCHEDULING ORDER IN THE "BANKSY" CONTESTED MATTER** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **February 17. 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **February 17. 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Messenger
The Honorable Robert N. Kwan
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street Ste. 1682
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 17, 2022 | Sherry Harper | /s/ Sherry Harper |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                                           Page 1
00101-00002/4166037.1

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Simon Aron    saron@wrslawyers.com, eweiman@wrslawyers.com
- Jason Balitzer    jbalitzer@sulmeyerlaw.com,
  jbalitzer@ecf.inforuptcy.com;dwalker@ecf.inforuptcy.com;kmccamey@sulmeyerlaw.com
- Keith Patrick Banner    kbanner@greenbergglusker.com,
  sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Brian L Davidoff    bdavidoff@greenbergglusker.com,
  calendar@greenbergglusker.com;jking@greenbergglusker.com
- Carolyn A Dye    trustee@cadye.com
- Fahim Farivar    fahim@farivarlaw.com, catherine@farivarlaw.com;lisa@farivarlaw.com
- Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
- J. Bennett Friedman    jfriedman@flg-law.com, msobkowiak@flg-law.com;jmartinez@flg-law.com
- Michael I. Gottfried    mgottfried@elkinskalt.com
- Asa S Hami    ahami@sulmeyerlaw.com,
  pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;ahami@ecf.inforuptcy.com
- Elliot C Harvey Schatmeier    ehs@birdmarella.com, dthrockmorton@birdmarella.com
- Matthew P Kelly    mkelly@sulmeyerlaw.com
- Daniel A Lev    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- Krikor J Meshefejian    kjm@lnbyb.com
- Susan I Montgomery    susan@simontgomerylaw.com,
  assistant@simontgomerylaw.com;simontgomerylawecf.com@gmail.com;montgomerysr71631@notify.bestcase.com
- Alan I Nahmias    anahmias@mbn.law, jdale@mbnlawyers.com
- Kurt Ramlo    kr@lnbyb.com, kr@ecf.inforuptcy.com
- Ekwan E Rhow    eer@birdmarella.com, blee@birdmarella.com
- David J Richardson    drichardson@bakerlaw.com, aagonzalez@bakerlaw.com
- Ronald Rus    rrus@brownrudnick.com, tlangford@brownrudnick.com
- David V Sack    dsack@sulmeyerlaw.com, dvsack@gmail.com
- Victor A Sahn    vsahn@sulmeyerlaw.com,
  pdillamar@sulmeyerlaw.com;pdillamar@ecf.inforuptcy.com;vsahn@ecf.inforuptcy.com;cblair@sulmeyerlaw.com;
  cblair@ecf.inforuptcy.com
- Michael C Schneidereit    mschneidereit@jonesday.com, scollymore@jonesday.com;tckowalski@jonesday.com
- David B Shemano    dshemano@shemanolaw.com
- Jonathan Seligmann Shenson    jshenson@shensonlawgroup.com
- Mark Shinderman    mshinderman@milbank.com, dmuhrez@milbank.com;dlbatie@milbank.com
- Michael D Sobkowiak    msobkowiak@flg-law.com, jfriedman@flg-law.com;jmartinez@flg-law.com
- Stephen Sorensen    , joseperez@tafsattorneys.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Michael W Vivoli    mvivoli@vivolilaw.com, sbrown@vivolilaw.com
- Jessica Vogel    Jvogel@sulmeyerlaw.com, jvogel@ecf.inforuptcy.com;mviramontes@sulmeyerlaw.com
- Howard J Weg    hweg@robinskaplan.com
- Beth Ann R Young    bry@lnbyb.com
- Roye Zur    rzur@elkinskalt.com, cavila@elkinskalt.com;myuen@elkinskalt.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012    Page 2
00101-00002/4166037.1