**FILED & ENTERED**

**MAR 31 2022**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY vandenst DEPUTY CLERK

<u>**OPINION NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>ART & ARCHITECTURE BOOKS OF THE 21st CENTURY,<br><br>Debtor.<br><br><br><br><br><br><br><br><br><br><br><br><br>SAM LESLIE, PLAN AGENT FOR ART & ARCHITECTURE BOOKS OF THE 21st CENTURY,<br><br>Plaintiff,<br>vs. | Case No. 2:13-bk-14135-RK<br><br>Chapter 11<br><br>Adv. No. 2:15-ap-01679-RK<br><br>Consolidated with Adv. No. 2:14-ap-01771-RK and Adv. No. 2:15-ap-01680-RK<br><br>**MEMORANDUM DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING: (1) ALLEGED PRE-PETITION DIRECT RENT PAYMENTS FOM DEBTOR TO 400 S. LA BREA, LLC BASED ON STATUTE OF LIMITATIONS; (2) ALL PRE-PETITION AVOIDANCE CAUSES OF ACTION ASSERTED DIRECTLY AGAINST 400 S. LA BREA, LLC; (3) ALLEGED PRE-PETITION PREFERENTIAL TRANSFERS TO 400 S. LA BREA, LLC; AND (4) CONVERSION CLAIM ASSERTED AGAINST 400 S. LA BREA, LLC; ORDER THEREON**<br><br><u>Hearings</u><br>Date:  October 20, 2021 and October 29,2021<br>Time:  2:00 p.m.<br><br>Hearings conducted via Zoom for Government |

ACE GALLERY NEW YORK
CORPORATION, et al.,

                                        Defendants.
_____
400 S. LA BREA, LLC,

                        Cross-Complainant,

    vs.

ACE GALLERY NEW YORK
CORPORATION, et al.,

                        Cross-Defendants.

**BACKGROUND**

Pending before this court in this adversary proceeding is the Motion of

Defendants/Cross-Complainants 400 S. La Brea, LLC, Daryoush Dayan, Kamran

Gharibian and Michael Smith ("Defendants" or collectively referred to as the "400 S. La

Brea Parties") for Partial Summary Judgment Regarding: (1) Alleged Pre-petition Direct

Rent Payments from the Debtor to 400 S. La Brea, LLC Based on Statute of Limitations;

(2) All Pre-petition Avoidance Causes of Action Asserted Directly Against 400 S. La

Brea, LLC; (3) Alleged Pre-petition Preferential Transfers to 400 S. La Brea, LLC; and

(4) Conversion Claims Asserted Against 400 S. La Brea, LLC, Electronic Case Filing

Number ("ECF") 1032 ("motion"), filed on July 12, 2021, which it had taken under

submission after conducting hearings on the motion on October 20, 2021 and October

29, 2021 and the filing of supplemental briefs on the "relation back" doctrine under

Federal Rule of Civil Procedure 15(c)(1)(B) last filed on November 21, 2021, ECF 1170

and 1173.

Based on the record, it appears to the court that unless equitable tolling applies,

the two-year statute of limitations under 11 U.S.C. § 546(a)(1) expired on February 19,

2015 for bringing transfer avoidance claims against the 400 S. La Brea Parties, though

the statute of limitations was extended as to other parties to June 19, 2016.  The first

transfer avoidance claims against any of the 400 S. La Brea Parties were filed on January 23, 2017 in the Plan Agent's Third Amended Consolidated Complaint, which was after the expiration of the statute of limitations as to them.  Accordingly, the 400 S. La Brea Parties seek partial summary judgment as to the so-called Direct Prepetition Rent Transfers, i.e., the direct payments of rent from the Debtor to 400 S. La Brea, LLC, on behalf of Ace Museum to pay Ace Museum's rent obligations under the lease it had with 400 S. La Brea, LLC.

On December 13, 2016, the Plan Agent filed his motion for leave to file a Third Amended Consolidated Complaint in these consolidated adversary proceedings, Adv. No. 2:15-ap-01679-RK, ECF 60, which formally named the 400 S. La Brea, LLC as a defendant in these adversary proceedings for the first time.  The claims against the 400 S. La Brea, LLC included claims for avoidance of preferential and fraudulent transfers by Debtor to them and recovery and preservation of fraudulently transferred property under 11 U.S.C, §§ 544, 547, 548, 550 and 551.  The motion stated the purpose of adding 400 S. La Brea, LLC, as a new defendant as follows:

> By this Motion, the Plan Agent also requests leave to amend the Second Amended Complaint, in substantially the form of the redlined Third Amended Complaint attached hereto as Exhibit A, to: (i) consolidate the causes of action in each of the pending Related Adversary Proceedings; (ii) to add further defendants who were the transferees of funds belonging to the Debtor's estate; (iii) to add further factual allegations derived from the Plan Agent's ongoing forensic analysis; and (iv) to simplify the complaint by consolidating related and overlapping claims for relief brought under 11 U.S.C. §§ 549, 550 and 551. The additional defendants to be added in the Third Amended Complaint are the following transferees: (i) 400 S. La Brea, LLC; (ii) the Nunley Family Trust; and (iii) Trizec 5670 Wilshire, LLC, a Delaware limited liability company (collectively, the "Landlord Defendants"). The Plan Agent's investigation has revealed that each of the Landlord Defendants received funds belonging to the Debtor – both prepetition and postpetition – for the payment of rent in relation to facilities that were not occupied by the Debtor, from which the Debtor received no value, and without postpetition authorization of this Court. The total amount of funds transferred to the Landlord Defendants in violation of 11 U.S.C. § 549, or as a prepetition fraudulent transfer, remains to be finalized, but is in the millions of dollars.

Motion for Leave to File Third Amended Consolidated Complaint, ECF 60, at 14-15

(internal page citation 8-9).  On January 13, 2017, the court entered its order granting

the Plan Agent's motion for leave to file the Third Amended Consolidated Complaint,

and on January 23, 2017, the Plan Agent formally filed the Third Amended Consolidated

Complaint.  ECF 65 and 69.

Paragraph 30 of the Third Amended Consolidated Complaint, ECF 69, alleges

avoidable prepetition transfers of Debtor's funds to 400 S. La Brea directly and

indirectly, specifically over $2 million in direct payment transfers:

> 30. Additionally, there were significant prepetition transfers from the
> Debtor to defendant Ace Museum, from the Debtor to defendant Douglas
> Chrismas, from the Debtor to 400 S. La Brea, and from Debtor to other
> defendants and third parties which transfers were without consideration in favor
> of the Debtor and came at a time when the Debtor was insolvent or was rendered
> insolvent by such transfers. Within two years of the Petition Date, the Debtor
> made at least the following direct transfers (the "Direct La Brea Rent Transfers")
> to 400 S. La Brea for which the Debtor received no consideration:

| Date | Check/Wire | Amount |
|---|---|---|
| 4/13/11 | Check 3979 | $125,000.00 |
| 4/22/11 | Check 3980 | $15,867.00 |
| 9/28/11 | Wire (c/o Fortuna Management) | $137,500.00 |
| 10/04/11 | Wire (c/o Fortuna Management) | $137,500.00 |
| 10/21/11 | Wire | $125,000.00 |
| 10/24/11 | Wire | $110,000.00 |
| 11/17/11 | Wire (c/o Fortuna Management) | $247,500.00 |
| 12/23/11 | Wire (c/o Fortuna Management) | $137,525.00 |
| 12/27/11 | Wire (c/o Fortuna Management) | $139,961.45 |
| 01/25/12 | Wire | $75,000.00 |
| 01/31/12 | Wire | $28,904.57 |
| 02/03/12 | Wire | $50,000.00 |
| 03/02/12 | Wire | $12,500.00 |
| 03/26/12 | Wire | $72,000.00 |
| 04/05/12 | Wire | $36,031.28 |
| 04/12/12 | Wire | $36,000.00 |
| 05/08/12 | Wire | $280,186.00 |
| 06/05/12 | Wire | $142,279.21 |
| 08/03/12 | Wire | $125,000.00 |
| 10/23/12 | Check 6913 | $137,000.00 |
| 02/07/13 | Wire | $25,000.00 |
| TOTAL: | | $2,195,754.51 |

Without limitation, the payments received directly from the Debtor from

May 2012 forward came at a time when the Debtor was simultaneously defaulting on its rental obligations to AERC.

Paragraphs 41 through 45 of the Third Amended Consolidated Complaint, ECF 69, allege that Debtor made avoidable prepetition transfers to Ace Museum, which included direct and indirect rent payments on Ace Museum's behalf to 400 S. La Brea, LLC:

41. Plaintiff alleges that, consistent with the Museum Board Resolution, Ace Museum borrowed, or otherwise obtained, from the Debtor, and the Debtor lent, or otherwise transferred, to Ace Museum, funds in the aggregate of no less than $4,482,586.00 (the "Museum Loan"), which amounts included some or all of the AERC Payment, and that Ace Museum became indebted to the Debtor on account of the Museum Loan in at least that amount (the "Museum Loan Obligation"). Plaintiff further alleges that that the Museum Loan, and other pre-petition transfers that were not part of the Museum Loan, were provided or made pursuant to one or more transfers of the Debtor's funds from the Debtor to Ace Museum since July 9, 2009 or such other later date or dates before the Petition Date (defined below) (each, an "Ace Museum Pre-Petition Transfer" and, collectively, the "Ace Museum Pre-Petition Transfers"), and that the Debtor used the AERC Payment to fund a portion of the Ace Pre-Petition Museum Transfers.

42. Plaintiff alleges that Chrismas alone determined on behalf of the Debtor that the Debtor would make the Museum Loan to Ace Museum and alone decided on behalf of the Debtor when and whether the Debtor would transfer any funds to Ace Museum, including, but not limited to, the decision to use the AERC Payment to make the Ace Museum Pre-Petition Transfers. Plaintiff further alleges that that, given the Museum Board Resolution and Chrismas's controlling position within Ace Museum, Ace Museum and the Ace Museum Board conspired with Chrismas, and otherwise was complicit with Chrismas's decision, to make the Ace Museum Pre-Petition Transfers, including, but not limited to, the transfer of a portion of the AERC Payment to Ace Museum.

43. Plaintiff alleges that at the time or as a result of each of the Ace Museum PrePetition Transfers, the Debtor was or became insolvent, was left with an unreasonably small capital to engage in its business, and/or otherwise was not paying or became unable to pay its debts as such debts matured. Plaintiff further alleges that that each of the Ace Museum PrePetition Transfers was a transfer of property of the Debtor for which the Debtor receive no value, or did not receive reasonably equivalent value.

44. Plaintiff alleges that Ace Museum paid most, if not all, of the funds that comprised the Ace Museum Pre-Petition Transfers to 400 S. La Brea for, among other things, payment of monthly rent due on the Museum Real Property (the "Indirect La Brea Rent Transfers"), for which the Debtor received no value, or no

reasonably equivalent value. The Indirect La Brea Rent Transfers were in addition to the Direct La Brea Transfers that were made directly by the Debtor to 400 S. La Brea. Plaintiff alleges that at the time or as a result of each of the Indirect La Brea Rent Transfers, the Debtor was or became insolvent, was left with an unreasonably small capital to engage in its business, and/or otherwise was not paying or became unable to pay its debts as such debts matured.

45. Through discovery conducted prior to the commencement of the instant adversary proceeding, Ace Museum produced tax returns for 2010 and 2011, which demonstrate that, whatever business was being done by Ace Museum, that business, at least as of the end of 2011, was insufficient on an annual basis to pay more than a couple months of base rent on the La Brea Property.

46. Plaintiff is informed and believes, and based thereon alleges: (i) that 400 S. La Brea knew, or should have known, that Ace Museum did not conduct its purported business in a manner that would have raised the funds that comprised the Indirect La Brea Rent Transfers, and would be avoidable transfers if the true source of the funds were to file a chapter 11 petition; (ii) that 400 S. La Brea knew or should have known that the Direct La Brea Rent Transfers were not paid on account of a service or product from which the Debtor would obtain value, and would be avoidable if the Debtor were to file a chapter 11 petition; and (iii) that 400 S. La Brea's receipt of the Indirect La Brea Rent Transfers and the Direct La Brea Rent Transfers was not in good faith.

These allegations were the bases of the Plan Agent's eighth through fifteenth claims for relief for fraudulent and preferential transfers and recovery and preservation of such transfers pursuant to 11 U.S.C. §§ 544, 547, 548, 550 and 551.

In opposition to the pending motion for partial summary judgment, the Plan Agent asserts that his Third Amended Consolidated Complaint filed on January 23, 2017, relates back to the avoidance claims in timely filed complaints filed by the Official Committee of Unsecured Creditors in this case before the statute of limitations under 11 U.S.C. § 546(a) expired on February 19, 2015, namely, the original and first amended complaints against Ace Museum.

On February 19, 2013, Debtor Art & Architecture Books of the 21st Century ("Debtor") commenced this bankruptcy case by filing its voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. (Main Bankruptcy Case, ECF 1).  As a debtor-in-possession, the Debtor had the authority to institute certain transfer

avoidance actions pursuant to 11 U.S.C. §§ 544, 545, 547, 548 or 553, subject to a general statute of limitations under 11 U.S.C. § 546(a) that such actions must be filed within two years of the order for relief, that is, the date on which Debtor had filed its voluntary bankruptcy petition, and the general statute of limitations based on the petition date of February 19, 2013 would have been February 19, 2015.

Debtor and certain parties entered several stipulations approved by the court to extend the transfer avoidance statute of limitations of 11 U.S.C. § 546(a), but 400 S. La Brea, LLC, and its members, were not such stipulating parties (Main Bankruptcy Case, ECF 872, 873, 874, 878, 879, 880, 1516, 1522, 1523, 1524, 1535, 1536, 1537, 1538). Based on the stipulations between Debtor and certain parties and orders thereon to extend the statute of limitations under 11 U.S.C. § 546(a) from February 19, 2013, the statute of limitations was last extended to, and expired on, June 19, 2016.

On March 28, 2013, the United States Trustee (the "UST") filed its notice of appointment of the Official Committee of Unsecured Creditors in this bankruptcy case (the "Committee") (Main Bankruptcy Case, Docket No. 66).  The Committee originally included Eric Wilson, Seth Landsberg, and Simon Rubinstein. On December 10, 2013, the UST filed its amended notice of appointment of the Committee, appointing Alan and Vivien Hassenfeld to the Committee in place of Mr. Rubinstein (who voluntarily resigned) (Main Bankruptcy Case, ECF 417).  On April 10, 2013, the Committee filed its application to employ the law firm of SulmeyerKupetz as its counsel, which was approved by order of the court on May 8, 2013 (ECF 84 and 146), and Victor A. Sahn of that firm was its lead counsel.  *Id.;* Declaration of Victor A. Sahn in Support of Opposition of the Plan Agent to the Motion for Partial Summary Judgment, filed on September 27, 2021, ECF 1099, ¶¶ 21 and 22.

On or about October 17, 2014, the Committee entered into a stipulation with the Debtor pursuant to which: (a) the Debtor transferred and assigned to the Committee any and all of the Debtor's rights to pursue collection of the outstanding balance of the loan obligation of Ace Museum to the Debtor (whatever the amount may be), which had been

listed as an asset of the bankruptcy estate on the Debtor's bankruptcy schedules and to

otherwise enforce the loan obligation, including, but not limited to, the right to

commence and prosecute any legal proceedings for this purposes, on behalf of the

bankruptcy estate; and (b) the Committee was conferred with any and all requisite

standing and authority to pursue collection of the outstanding balance (whatever the

amount may be) and to otherwise enforce the loan obligation on behalf of the estate by

any necessary or appropriate means, including, but not limited to, through the

commencement and prosecution of any legal proceedings (the "Standing Stipulation").

Ace Museum was a nondebtor entity owned and controlled by Douglas Chrismas, the

Debtor's principal.  The Standing Stipulation was executed by counsel for the

Committee, counsel for the Debtor, and Chrismas as the Debtor's president. On

October 23, 2014, this Court entered an order approving the Standing Stipulation,

authorizing the Committee to act on behalf of the estate to enforce the loan obligation of

Ace Museum.

On November 26, 2014, the Committee commenced an adversary proceeding,

Adversary Number 2:14-ap-01771-RK by filing a complaint against Defendants Ace

Museum ("the Museum Adversary").  According to the complaint, the Committee

brought the Museum Adversary solely in its capacity as the Committee in the

Bankruptcy Case for the benefit of the bankruptcy estate (the "Estate") and its creditors.

The Committee's complaint against Ace Museum included claims for turnover of estate

property, for avoidance of fraudulent transfers by Debtor to Ace Museum and recovery

and preservation of fraudulently transferred property under 11 U.S.C. §§ 542, 544, 548

and 550 by Debtor.  In paragraph 9 of this complaint, the Committee alleged:

> 9.  Plaintiff is informed and believes, and based thereon alleges, that, in
> fact, Ace Museum borrowed, or otherwise obtained, from the Debtor, and the
> Debtor lent, or otherwise provided, to Ace Museum, funds in the aggregate of no
> less than $4,482,586.00 (the "Loan"), and that Ace Museum became indebted to
> the Debtor in at least that amount (the "Loan Obligation"). Plaintiff is further
> informed and believes, and based thereon alleges, that the Loan was provided or
> made pursuant to one or more transfers of the Debtor's funds from the Debtor to
> Ace Museum since July 9, 2009 (each, a "Transfer" and, collectively, the

"Transfers").

Museum Complaint, Adv. No. 2:14-ap-01771-RK, ECF 1, ¶ 9.

On January 22, 2015, the Committee filed a first amended complaint in the Museum Adversary ("Museum FAC"), Adv. No. 2:14-ap-01771-RK, ECF 11, which added Chrismas as a defendant.   The Committee's Museum FAC against Ace Museum and Chrismas included claims for turnover of estate property, for avoidance of fraudulent transfers by Debtor to Ace Museum and Chrismas and recovery and preservation of fraudulently transferred property under 11 U.S.C, §§ 542, 544, 548 and 550.  In paragraphs 10, 11 and 12 of the Museum FAC, the Committee alleged:

> 10.  Plaintiff is informed and believes, and based thereon alleges, that, on or about July 9, 2009, a meeting of the Board of Directors of Ace Museum occurred, at which Ace Museum resolved to borrow from the Debtor an initial amount of no less than $3,143,994.92, plus additional amounts as necessary from time to time, with no interest (the "Museum Board Resolution").

> 11. Plaintiff is informed and believes, and based thereon alleges, in or about June 2012, the Debtor received a payment of approximately $4,000,000 from AERC (the "AERC Payment"), which was made in connection with the Debtor's agreement to convey a portion of the Mid-Wilshire Lease that was subject to the Mid-Wilshire Purchase Option to AERC. Plaintiff is further informed and believes, and based thereon alleges, that AERC desired to develop an apartment project on that site and, in fact, commenced construction on that project in or about June 2013.

> 12. Plaintiff is informed and believes, and based thereon alleges, that, consistent with the Museum Board Resolution, Ace Museum borrowed, or otherwise obtained, from the Debtor, and the Debtor lent, or otherwise transferred, to Ace Museum, funds in the aggregate of no less than $4,482,586.00 (the "Museum Loan"), and that Ace Museum became indebted to the Debtor on account of the Museum Loan in at least that amount (the "Museum Loan Obligation"). Plaintiff is further informed and believes, and based thereon alleges, that the Museum Loan was provided or made pursuant to one or more transfers of the Debtor's funds from the Debtor to Ace Museum since July 9, 2009 or such other later date or dates before the Petition Date (defined below) (each, an "Ace Museum Transfer" and, collectively, the "Ace Museum Transfers"), and that the Debtor used the AERC Payment to fund all, or a portion, of the Museum Loan or Ace Museum Transfers.

Museum FAC, Adv. No. 2:14-ap-01771-RK, ECF 11, ¶¶ 10-12.

Ace Museum leased its premises from 400 S. La Brea and paid rent to 400 S. La

Brea.  However, neither the original complaint in the Museum Adversary nor the first amended complaint expressly referred to payments of Ace Museum's rent to 400 S. La Brea, as the avoidable transfers using Debtor's funds, but these complaints alleged prepetition transfers of Debtor's funds to Ace Museum.  Specifically, paragraph 9 of the Museum Complaint and paragraph 11 of the Museum FAC alleged that "one or more transfers of the Debtor's funds [were made] from the Debtor to Ace Museum since July 9, 2009."  The transfers were referred to in the first amended complaint in the Ace Museum Adversary as the "Ace Museum Transfers."  Paragraph 14 of the first amended complaint in this complaint defines "Transfers" as transfers made by Chrismas and the Ace Museum Transfers." The thirteenth claim for relief (under 11 U.S.C. § 550) refers to the Transfers.

The salient language in both of these complaints assert that transfers were made to Ace Museum of no less than $4.4 million with specific descriptions of the alleged transfers in bold and underlined as follows:

> Plaintiff is informed and believes, and based thereon alleges, that, consistent with the Museum Board Resolution, **Ace Museum borrowed, or otherwise obtained, from the Debtor, and the Debtor lent, or otherwise transferred, to Ace Museum, funds in the aggregate of no less than $4,482,586.00 (the "Museum Loan"),** and that Ace Museum became indebted to the Debtor on account of the Museum Loan in at least that amount (the "Museum Loan Obligation"). Plaintiff is further informed and believes, and based thereon alleges, that **the Museum Loan was provided or made pursuant to one or more transfers of the Debtor's funds from the Debtor to Ace Museum since July 9, 2009 or such other later date or dates before the Petition Date (defined below) (each, an "Ace Museum Transfer" and, collectively, the "Ace Museum Transfers")**, and that the Debtor used the AERC Payment to fund all, or a portion, of the Museum Loan or Ace Museum Transfers.

Museum FAC, Adv. No. 2:14-ap-01771-RK, ECF 11, ¶ 12 (emphasis added).  The parties disagree whether this language encompasses the Direct Prepetition Rent Transfers, so that the Plan Agent's avoidance claims first alleged against the 400 S. La Brea Parties in the Third Amended Consolidated Complaint filed in January 2017 "relate back" to these earlier, timely filed complaints against Ace Museum.

On or about February 12, 2015, the Debtor and Defendant entered that certain "Stipulation Between Debtor and Ace Gallery New York Extending Statute of Limitations Applicable to Actions by Debtor's Estate" (Main Bankruptcy Case, ECF 873), pursuant to which the Debtor and Defendant agreed to extend the statute of limitations to pursue the claims asserted in this Complaint to December 19, 2015, without prejudice to further extensions of such statute limitations (the "Tolling Stipulation"), and on February 13, 2015, this Court entered an order approving the Tolling Stipulation.  Main Bankruptcy Case, ECF 879.

On December 18, 2015, the Committee commenced another adversary proceeding, Adversary Number 2:15-ap-01679-RK, by filing a complaint against Defendants Ace Gallery New York Corporation ("the Ace New York Adversary").  ECF 1.  According to the complaint, the Committee brought the Ace New York Adversary solely in its capacity as the Committee in the Bankruptcy Case for the benefit of the bankruptcy estate (the "Estate") and its creditors.  Ace Gallery New York Corporation was another nondebtor entity owned and controlled by Douglas Chrismas, the Debtor's principal.  The Committee's complaint against Ace Gallery New York Corporation included claims for turnover of estate property, for avoidance of preferential and fraudulent transfers by Debtor to Ace Gallery New York Corporation and recovery and preservation of fraudulently transferred property under 11 U.S.C, §§ 544, 547, 548 and 550.  In paragraph 12 of the Ace New York Adversary Complaint, the Committee alleged on information and belief that "the Debtor does not intend to pursue the claims asserted herein and, in turn, Plaintiff brings this action on behalf of, and for the benefit of, the Estate and its creditors" and that "[i]n the event Plaintiff requires an order from the Bankruptcy Court granting it standing to pursue this action in such capacity, Plaintiff hereby requests such order and standing or, if necessary, shall seek and obtain any requisite standing."

In paragraph 13 of the Ace New York Adversary Complaint, ECF 1, the Committee alleged:

13.   Plaintiff is informed and believes, and based thereon alleges, that prior to the Petition Date, the Debtor made one or more transfers to Defendant in the form of transfers of funds or artwork belonging to the Debtor (each, a 'Transfer' and, collectively, the 'Transfers').

These claims alleged that Debtor transferred funds or artwork that belonged to Debtor to Ace Gallery New York Corporation.  This complaint did not specifically refer to rent payments or to the 400 S. La Brea Parties.

On March 18, 2016, this Court entered its order confirming the Modified Second Amended Plan of Reorganization of Official Committee of Unsecured Creditors (the "Plan"), ECF 1859, which provided for the appointment of Sam Leslie as the Plan Agent on the Effective Date of the Plan on April 6, 2016.  Main Bankruptcy Case, ECF 1873. The order confirming the Plan provided: "The Plan Agent is the designated representative of the post-confirmation estate under section 1123(b)(3) of the Bankruptcy Code and shall succeed to the debtor in possession as a fiduciary to prosecute Chapter 5 causes of action (and any other claims) on behalf of the estate." Main Bankruptcy Case, ECF 1873 at 18; *see also,* Plan, ECF 1859, §§ 1.73, 5.4, 5.8 and 5.14 (providing that Plan Agent is authorized to prosecute the claims of the estate). The Plan became effective on the Effective Date of April 6, 2016, and Plan Agent Sam Leslie became involved in the bankruptcy case through his appointment pursuant to the confirmed Plan.

On June 19, 2016, the Plan Agent filed a first amended complaint in the Ace New York Adversary (Ace New York FAC"), ECF 27, which added Douglas Chrismas as a defendant.  The Plan Agent's Ace New York FAC against Ace New York and Chrismas included claims for avoidance of preferential and fraudulent transfers by Debtor to Ace New York and Chrismas and recovery and preservation of fraudulently transferred property under 11 U.S.C. §§ 544, 547, 548, 550 and 551.

Although the 400 S. La Brea Parties were not named as defendants in the Ace New York FAC, the Plan Agent in this amended complaint alleges as part of his claims that prepetition transfers and post-petition transfers of Debtor's assets were made to

400 S. La Brea to pay rent for Ace Museum.  Ace New York FAC, paragraphs 24-26, 28, 46 and 52.  That is, rent payments to 400 S. La Brea are alleged as prepetition and postpetition transfers in this complaint.  Paragraphs 24 and 25 of the Ace New York FAC"), ECF 27, alleged prepetition transfers to 400 S. La Brea for rent for Ace Museum:

> 24. Plaintiff is informed and believes, and based thereon alleges, that, consistent with the Museum Board Resolution, Ace Museum borrowed, or otherwise obtained, from the Debtor, and the Debtor lent, or otherwise transferred, to Ace Museum, funds in the aggregate of no less than $4,482,586.00 (the "Museum Loan"), which amounts included some of all of the AERC Payment, and that Ace Museum became indebted to the Debtor on account of the Museum Loan in at least that amount (the "Museum Loan Obligation"). Plaintiff is further informed and believes, and based thereon alleges, that the Museum Loan was provided or made pursuant to one or more transfers of the Debtor's funds from the Debtor to Ace Museum since July 9, 2009 or such other later date or dates before the Petition Date (defined below) (each, an "Ace Museum Pre-Petition Transfer" and, collectively, the "Ace Museum Pre-Petition Transfers"), and that the Debtor used the AERC Payment to fund all, or a portion, of the Ace Pre-Petition Museum Transfers.

> 25. Plaintiff is informed and believes, and based thereon alleges, that Chrismas alone determined on behalf of the Debtor that the Debtor would make the Museum Loan to Ace Museum and alone decided on behalf of the Debtor when and whether the Debtor would transfer any funds to Ace Museum, including, but not limited to, the decision to use the AERC Payment to make the Ace Museum Pre-Petition Transfers. Plaintiff is further informed and believes, and based thereon alleges, that, given the Museum Board Resolution and Chrismas's controlling position within Ace Museum, Ace Museum and the Ace Museum Board conspired with Chrismas, and otherwise was complicit with Chrismas's decision, to make the Ace Museum Pre-Petition Transfers, including, but not limited to, the transfer of a portion of the AERC Payment to Ace Museum.

> 26.  Plaintiff is informed and believes, and based thereon alleges, that, at the time or as a result of each of the Ace Museum Pre-Petition Transfers, the Debtor was or became insolvent, was left with an unreasonably small capital to engage in its business, and/or otherwise was not paying or became unable to pay its debts as such debts matured. Plaintiff is further informed and believes, and based thereon alleges, that each of the Ace Museum Pre-Petition Transfers was a transfer of property of the Debtor.

> *** 

> 28. Plaintiff is informed and believes, and on that basis alleges, that the Debtor made such payment to 400 S. La Brea for the benefit of Ace Museum,

and on account of outstanding rent for 400 S. La Brea, and that the Debtor made other, earlier payments to 400 S. La Brea prior to the Petition Date, for the benefit of Ace Museum, and on account of outstanding rent for the La Brea Property in the approximate amount of $886,496.

However, these prepetition transfers to rent payments were not actionable transfers because they were not referenced in the claims to avoid the Ace NYC Pre-Petition Transfers, which were the subject of the claims in the amended Ace New York adversary complaint, as opposed to the Ace Museum Pre-Petition Transfers.

Paragraphs 46 and 52 of the Ace New York FAC, ECF 27, allege post-petition transfers to 400 S. La Brea for rent for Ace Museum relating to the fifteenth claim for relief to avoid postpetition transfers under 11 U.S.C. § 549:

46. The Plan Agent's ongoing forensic analysis indicates that, of the total Converted Proceeds, at least $4,568,382 was diverted from the Debtor, via ACE NYC and other entities and parties, to Ace Museum during the Post-Petition Analysis Period, though such funds were property of the Debtor's estate (the "Ace Museum Diversions"). Much of the Ace Museum Diversions were further transferred to 400 S. La Brea, LLC in satisfaction of the Ace Museum Rent Obligations, along with a further $48,000 that was transferred directly from ACE NYC to 400 S. La Brea, LLC on account of the Ace Museum Rent Obligations, and further amounts described below that were paid directly to 400 S. La Brea, LLC by a purchaser of artwork belonging to the Debtor. Attached hereto as Exhibit 1 is a list of the Ace Museum Diversions that have been identified thus far that were made during the Post-Petition Analysis Period, of property of the Debtor's estate, from ACE NYC or other entities or parties to Ace Museum.

***

52. On March 30 and 31, 2016, Chrismas caused three transfers of funds belonging to the Debtor's estate to be carried out by which the funds were transferred to or for the benefit of Ace Museum, totaling $264,000, for the purpose of satisfying certain of Ace Museum's outstanding Ace Museum rent obligations for the La Brea Property (the "Late March Diversions"). The Late March Diversions included a check from the Debtor in the amount of $50,000 made out to Ace Museum, a $100,000 wire transfer from a purchaser of artwork that was owned by or consigned to the Debtor that was wired to the account to Ace Museum upon the specific written instructions of Chrismas, and a $114,000 payment by an art purchaser who acquired art that was owned by or consigned to the Debtor's estate and who was instructed by Chrismas to pay such funds directly to 400 S. La Brea, LLC.

On January 13, 2017, the court entered its order granting Plan Agent's motion to consolidate the Museum and Ace New York adversary proceedings and as previously noted, motion to file the proposed Third Amended Consolidated Complaint.  ECF 65.

On November 16, 2018, the Plan Agent filed his fifth amended consolidated complaint in the consolidated adversary proceedings, and added as additional defendants, Daryoush Dayan, Kamran Gharibian and Michael D. Smith, as part owners, and principals of 400 S. La Brea, LLC, on the claims under 11 U.S.C. §§ 550 and 551 for recovery and preservation of alleged fraudulent and preferential transfers to 400 S. La Brea, LLC, pursuant to 11 U.S.C. §§ 544, 547 and 548.  ECF 465.

On February 19, 2020, the Plan Agent filed his sixth amended consolidated complaint, which alleged claims against the 400 S. La Brea Parties for avoidance of preferential and fraudulent transfers by Debtor to 400 S. La Brea, LLC, and recovery and preservation of fraudulently transferred property under 11 U.S.C. §§ 544, 547, 548, 550 and 551.  ECF 699.  The Plan Agent's sixth amended consolidated complaint is the current operative complaint in these consolidated adversary proceedings.

Paragraphs 70 through 72 of the Sixth Amended Consolidated Complaint, ECF 699, allege avoidable prepetition transfers to 400 S. La Brea, LLC, through direct and indirect rent payments for Ace Museum:

70. On February 19, 2013, the Petition Date, the Debtor filed its chapter 11 petition, initiating the above-captioned Bankruptcy Case. In the four years prior to the Petition Date, 400 S. La Brea had received at least $5,750,266.21 in rent, late fees, and property tax payments, on account of the Museum Lease (the "Prepetition Rent Transfers"). Of the total Prepetition Rent Transfers, at least $2,328,432.47 was paid directly by the Debtor to 400 S. La Brea by wire transfer or check into the Cathay Account, composed of the following payments, for which the Debtor received no consideration.

| Date | Check/Wire | Amount |
|------|-----------|--------|
| 07/06/09 | Wire | $132,677.96 |
| 4/13/11 | Check 3979 | $125,000.00 |
| 4/22/11 | Check 3980 | $15,867.00 |
| 9/28/11 | Wire | $137,500.00 |
| 10/04/11 | Wire | $137,500.00 |
| 10/21/11 | Wire | $125,000.00 |

| | | |
|---|---|---|
| 10/24/11 | Wire | $110,000.00 |
| 11/17/11 | Wire | $247,500.00 |
| 12/23/11 | Wire | $137,525.00 |
| 12/27/11 | Wire | $139,961.45 |
| 01/25/12 | Wire | $75,000.00 |
| 01/31/12 | Wire | $28,904.57 |
| 02/03/12 | Wire | $50,000.00 |
| 03/02/12 | Wire | $12,500.00 |
| 03/26/12 | Wire | $72,000.00 |
| 04/05/12 | Wire | $36,031.28 |
| 04/12/12 | Wire | $36,000.00 |
| 05/08/12 | Wire | $280,186.00 |
| 06/05/12 | Wire | $142,279.21 |
| 08/03/12 | Wire | $125,000.00 |
| 10/23/12 | Check 6913 | $137,000.00 |
| 02/07/13 | Wire | $25,000.00 |
| TOTAL: | | $2,328,432.47 |

71.  The Prepetition Rent Transfers that were paid through the conduit of the Ace Museum Account to 400 S. La Brea totaled $3,421,833.74, and were paid almost entirely with funds of the Debtor that were first transferred into the Museum Account, and were then paid to 400 S. La Brea by an Ace Museum check deposited in the Cathay Account. For example, on June 6, 2011, when the account balance in the Museum Account was only $5,328.36, the Debtor wired $126,000 into the Museum Account, thereby permitting a check made out to 400 S. La Brea in the amount of $125,000 to clear the following day. Similarly, on July 18, 2011, when the account balance in the Museum Account was only $3,375.72, the Debtor wired $110,000 into the Museum Account, thereby permitting a check made out to 400 S. La Brea in the amount of $110,000 to clear that same day. These two months are not unique, but rather reflect the standard practice during most months when rent was paid to 400 S. La Brea by an Ace Museum check or wire transfer.

72. By the Petition Date, and within four years of the Petition Date, the Debtor had paid 400 S. La Brea as much as $5,750,266.21 in satisfaction of a third party's lease obligations at a time when the Debtor was insolvent or unable to pay its own bills as they came due, for which the Debtor received no reasonably equivalent value.

The 400 S. La Brea Parties now seek partial summary judgment on the claims against them in the currently operative sixth amended consolidated complaint as to the so-called direct payment transfers to them.   Specifically, these parties request partial summary judgment with respect to claims asserted against the 400 SLB Defendants in

the Plan Agent's Sixth Amended Consolidated Complaint, ECF 699, as follows:

(1)    All pre-petition transfers alleged to have been made directly from the Debtor to 400 SLB (as defined herein, the "Alleged Pre-Petition Direct Rent Payments") contained in the following causes of action:  Second Claim for Relief – Actual Fraudulent Transfer (11 U.S.C. § 544 and Cal. Civil Code § 3439.04(a)(1)); Third Claim for Relief – Constructive Fraudulent Transfer (11 U.S.C. § 544 and Cal. Civil Code § 3439.04(a)(2)); Fourth Claim for Relief – Constructive Fraudulent Transfer (11 U.S.C. § 544 and Cal. Civil Code § 3439.05); Fifth Claim for Relief – Actual Fraudulent Transfer (11 U.S.C. § 548(a)(1)(A)); Sixth Claim for Relief – Constructive Fraudulent Transfer (11 U.S.C. § 548(a)(1)(B)); Seventh Claim for Relief – Preferential Transfer (11 U.S.C. § 547); and Eighth Claim for Relief – Recovery of Transfer (11 U.S.C. § 550).

(2)    Due to summary judgment being warranted as to all Alleged Pre-Petition Direct Rent Payments (and therefore no actionable claims remain involving transfers directly from the Debtor to 400 SLB), summary judgment is also warranted as to all pre-petition avoidance claims asserted against 400 SLB under 11 U.S.C. §§ 548 and 544, as all remaining pre- petition avoidable transfers contained in the Sixth Amended Complaint are alleged to have been received by 400 SLB from non-debtor Ace Museum, and therefore the Plan Agent may only assert claims for recovery with respect to those alleged transfers under his Eighth Claim for Relief – Recovery of Transfer (11 U.S.C. § 550).

(3)    All alleged pre-petition preferential transfers alleged to have been received by 400 SLB under the Sixth Claim for Relief – Preferential Transfer (11 U.S.C. § 547).

(4)    All claims for conversion alleged against 400 SLB in the Eleventh Cause of Action.

Motion, ECF 1032 at 12-13 (internal page citation 2-3).

## DISCUSSION

### General Standard for Partial Summary Judgment

In the motion, the 400 S. La Brea Parties seek partial summary judgment (or summary adjudication) on claims against them based on avoidable fraudulent and preferential transfers to them based on direct rent payments from the Debtor pursuant to Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding through Federal Rule of Bankruptcy Procedure 7056.  The standard applied to a motion under Rule 56 seeking "partial summary judgment is identical to the standard for a

motion seeking summary judgment of the entire case." *Kennedy v. United States Citizenship and Immigration Services*, 871 F.Supp.2d 996, 1006 (N.D. Cal. 2012) (citation omitted).  Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *See,* Fed.R.Civ.P. 56(a); *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000). A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-249 (1986).  "Because summary judgment is a 'drastic device,' cutting off a party's right to present its case to a jury, the moving party bears a 'heavy burden' of demonstrating the absence of any triable issue of material fact."  Philips and Stevenson, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California & Ninth Circuit Edition, ¶ 14:123 (online edition, April 2021), *citing, Ambat v. City & County of San Francisco* 757 F.3d 1017, 1031 (9th Cir. 2014) and *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157, 160 (2nd Cir. 1999).

In *Nissan Fire & Marine Insurance Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099 (9th Cir.2000), the Ninth Circuit discussed the shifting burdens of proof with respect to a motion for summary judgment where the moving party as here does not have the ultimate burden of proof on the claims to be tried as the Plan Agent has such a burden in proving his transfer avoidance claims:

> A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. See 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2727 (3d ed.1998). In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. See id.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. *See Adickes v. S.H. Kress & Co*., 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *High Tech Gays*, 895 F.2d at 574; A. Friedenthal, A. Miller and M. Kane, *Civil Procedure* 460 (3d ed.1999). In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. *See High Tech Gays,* 895 F.2d at 574*; Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 607 (11th Cir.1991). If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. *See High Tech Gays*, 895 F.2d at 574; *Cline v. Industrial Maintenance Eng'g. & Contracting Co*., 200 F.3d 1223, 1229 (9th Cir.2000). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion. *See id.*

*Id.* at 1102-1103.

        Summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an essential element to that party's case, on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). There, the Supreme Court held that defendant could meet its initial burden for summary judgment "by 'showing' that there [was] an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see also, Samuels v. Holland American Line-USA Inc.,* 656 F.3d 948, 952 (9th Cir.2011).  Or to reiterate a point made by the Ninth Circuit in *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* where the party moving for summary judgment would not bear the ultimate burden of persuasion at trial, it must either produce evidence negating an essential element of the non-moving party's claim or show that the non-moving party does *not* have enough evidence of an essential element *to carry its ultimate burden of persuasion at trial.*  210 F.3d at 1102 (9th Cir.2000) (emphasis added).

        The standard for partial summary judgment is identical to one for seeking

summary judgment in the entire case.  Summary judgment should be granted if there is

no genuine dispute as to any material facts and as a matter of law the movant is entitled

to judgment.  Fed.R.Civ.P. 56(a).  The relevant inquiry in a summary judgment motion is

whether there is a genuine issue relating to a material fact, and whether the moving

party is entitled to judgment as a matter of law.  *State of California Dept. of Toxic*

*Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).

### **"Relating Back" Transfer Avoidance Claims as to 400 S. La Brea, LLC**

The 400 S. La Brea Parties argue that all the claims against 400 S. La Brea,

LLC, to avoid the direct pre-petition rent payments made by Debtor to it are barred by

the statute of limitations for avoidance actions under 11 U.S.C. § 546.

The essence of the argument of these parties is summarized in the motion as

follows:

> It is undisputed that the Plan Agent did not bring 400 SLB in this action as a defendant until January 13, 2017 as part of the Plan Agent's Third Amended Consolidated Complaint [Docket No. 69] ("Third Amended Complaint"). It is further undisputed that the statute of limitations to bring avoidance claims under section 546(a) expired almost two years prior on February 19, 2015 (i.e. two years from the Petition Date). The avoidance claims asserted against 400 SLB in January 2017 in the Third Amended Complaint do not "relate back" pursuant to Rule 15(c)(1)(C) to any timely filed complaint brought against other defendants. This is consistent with this Court's similar finding regarding the Plan Agent proposed seventh amended complaint, which the Court rejected. The simple and necessary conclusion is that all pre-petition avoidance claims asserted against 400 SLB are time barred.

> With all pre-petition avoidance claims asserted against 400 SLB being time barred, the Plan Agent's only possible legal route to assert such claims is through the doctrine of equitable tolling. As the Court is well-aware, the Plan Agent, in his Sixth Amended Complaint and in his numerous pleadings filed in this adversary proceeding, relies heavily on assertions that the Plan Agent came into the picture in only April 2016 and sometime thereafter he discovered what he describes as a "massive fraud" perpetrated by Douglas Chrismas during the pendency of the bankruptcy case. What the Plan Agent ignores in repeatedly hiding behind the veil of Mr. Chrismas' alleged post-petition fraud, is that it was the Plan Agent's predecessor-in-interest, the Official Committee of Unsecured Creditors (the "Committee") that filed the only two timely complaints in this action. As such, it is what the Committee knew, or should have known at the time the statute of limitations expired in February 2015 that must be the central inquiry for

any equitable tolling analysis; and discovery has revealed that the Committee knew everything it needed to know to support the timely filing of avoidance claims against 400 SLB for direct pre- petition rent payments paid from the Debtor to 400 SLB. Yet, the Committee inexplicably declined to pursue those claims.

As discussed herein, incontrovertible evidence uncovered in this case has revealed the Committee, near the inception of the case, not only had the benefit of the Debtor's schedules and statements, which disclosed information pertaining to nearly all of the pre-petition rent payments alleged to have been made directly by the Debtor to 400 SLB, but they fortuitously became the beneficiaries of a slew of discovery and fact gathering on account of the Debtor's extensive legal dispute with its then landlord AERC Desmond's Tower, LLC ("AERC") regarding whether the Debtor's pre-petition lease could be assumed. The Committee participated in every phase of that litigation, including their receipt and review of a large document production from the Debtor, which contained information identifying each of the 22 pre-petition rent payments made directly by the Debtor to 400 SLB. What's more, subsequent depositions in that matter specifically discussed direct pre-petition rent payments made by the Debtor to 400 SLB, and exhibits attached thereto described each such rent payment by date, amount, method of payment and specifically identified 400 SLB as the recipient of each. By the end of 2013, the Committee had in its possession all the information necessary to make an avoidance claim against 400 SLB for such pre-petition rent payments made by the Debtor. On top of all that, in January-February 2015, as the two-year statute of limitations quickly approached, the Debtor's counsel actually recommended to the Committee that they pursue avoidance claims against 400 SLB. For reasons known only to the Committee and its counsel, it chose not to pursue those claims prior to the expiration of the statute of limitations. It was only in January 2017 that the Plan Agent, who inherited the Committee's counsel, elected to bring such claims.

Motion, ECF 1032 at 13-14 (internal page citation 3-4) (footnote omitted).  The gist of their argument is that since the claims against them based on the direct prepetition rent transfers to 400 S. La Brea, LLC, do not relate back to any of the timely filed complaints, and they were not timely named as defendants in the adversary proceedings as required by Federal Rule of Civil Procedure 15(c), they should be entitled to partial summary judgment on the second through eighth claims for relief as to the direct rent payments to 400 S. La Brea.

The Third Amended Consolidated Complaint was not an amendment as a matter of course, lacking written consent of the other parties, and the Plan Agent had to obtain leave of court pursuant to Federal Rule of Civil Procedure 15(a)(2), but as this rule also

provides, "[t]he court should freely give leave when justice so requires."  Federal Rule of

Civil Procedure 15 applies to this adversary proceeding through Federal Rule of

Bankruptcy Procedure 7015.  The court had granted the Plan Agent leave to amend to

file this third amended complaint, but 400 S. La Brea, LLC, asserted the statute of

limitations as an affirmative defense in its answer.  Thus, the Plan Agent still must show

that the claims against it and the other 400 S. La Brea Parties are timely or "relate back"

to timely filed complaints.

"Federal Rule of Civil Procedure 15(c) 'governs when an amended pleading

relates back to the date of a timely filed original pleading and is thus itself timely even

though it was filed outside an applicable statute of limitations.'"  *Tate v. United States,*

No. CV 15-9323-FMO(JFR), 2019 WL 6799107 (C.D. Cal. Sept. 18, 2019), slip op. at

*4, citing and quoting, *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010).

Thus, the proposed amended complaint must "relate back" to a timely pleading within

the statute of limitations pursuant to Federal Rule of Civil Procedure 15(c)(1), which

provides:

> (c)(1) ***When an Amendment Relates Back.***  An amendment to a
> pleading relates back to the date of the original pleading when:
>
> > (A) the law that provides the applicable statute of limitations allows
> > relation back;
> >
> > (B) the amendment asserts a claim or defense that arose out of the
> > conduct or occurrence set out---or attempted to be set out---in
> > the original pleading;
> >
> > (C) the amendment changes the party or the naming of the party
> > against whom a claim is asserted, if Rule 15(c)(1)(B) is
> > satisfied and if, within the period provided by Rule 4(m) for
> > service of the summons and complaint, the party to be brought
> > in by amendment:
> >
> > > (i)  received such notice of the action that it will not be
> > > prejudiced in defending the merits; and (ii) knew or should
> > > have known that the action would have been brought against
> > > it, but for a mistake concerning the proper party's identity.

Federal Rule of Civil Procedure 15(c)(1).

In this case, the Plan Agent's third amended complaint would have to relate back to the dates of the timely filed pleadings, either the original complaint or the first amended complaint filed in Adv. No. 2:14-ap-01771 RK, before the two-year statute of limitations of 11 U.S.C. § 546(a) as to the 400 S. La Brea Parties expired on February 19, 2015.  The Third Amended Consolidated Complaint adds new parties and new claims which were not alleged in the original complaint and first amended complaint, that is, the third amended complaint adds 400 S. La Brea, LLC, as a new party not named in the original complaint and the first amended complaint in the Ace Museum Adversary.

The court notes that the Plan Agent is seeking to add 400 S. La Brea, LLC, as a new party defendant to his avoidance claims, and as the 400 S. La Brea Parties argue, this would only be possible through two year statute of limitations of 11 U.S.C. § 546(a) from the petition date.  In the court's view, the Plan Agent needs either a ruling that the third amended complaint relates back to the timely filed original or first amended complaint in the Ace Museum Adversary or that the statute of limitations is equitably tolled under the circumstances of this case.  (As discussed below, the court does not determine that the doctrine of relating back could apply to the original and first amended complaints in the Ace New York Adversary Proceeding because those complaints were filed after the statute expiration as to the 400 S. La Brea Parties on February 19, 2015.)

Since 400 S. La Brea, LLC, was a newly added defendant not included in the timely filed original complaint and first amended complaint, the stringent requirements of Federal Rule of Civil Procedure 15(c)(1)(C) apply.  The avoidance claims against 400 S. La Brea, LLC, must have arisen out of the conduct alleged in the timely original or first amended complaints in the Ace Museum Adversary Proceeding, that the new defendant must have received sufficient notice of the original action "within the period provided by [Federal Rule of Civil Procedure] 4(m) for serving of the summons and complaint" so that the new defendant will not be prejudiced in defending the claims on the merits and that the new defendant must have known or should have known that "but for a mistake

concerning the proper party's identity" they would have been named in the timely filed

complaints.  As the Ninth Circuit stated in *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23

F.3d 1498 (9th Cir. 1994),

> Rule 15(c) was intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party. Rule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party[.]

*Id*. at 1503 (citations omitted).

The original and the first amended complaints in the Ace Museum Adversary

allege that the fraudulent transfers were made by the Debtor to Defendant Ace Museum

and Defendant Chrismas within four years of the petition date, primarily consisting of

payments to or on behalf of Defendant Ace Museum of approximately $4 million since

July 9, 2009, and payments to or on behalf of Defendant Chrismas of at least

$69,041.02 within one year of the petition date.  Ace Museum First Amended

Complaint, ¶ 9-14.  In the original complaint or the first amended complaint, there are no

specific allegations of alleged fraudulent transfers involving the 400 S. La Brea, LLC,

apparently as it was not named as a party defendant in the original or first amended

complaints or was not referred to in any way in the original or first amended complaints,

and thus, the provisions governing relation back of proposed pleadings of Rule

15(c)(1)(C) applicable to this defendant as a newly added party must be met.

The requirement that the new claims arise out of the same conduct, transaction

or occurrence under Federal Rule of Civil Procedure 15(c)(1)(C), incorporating by

reference Rule 15(c)(1)(B) is shown here as the amended claims in the third amended

complaint are based on the same operative facts as those set forth or attempted to be

set forth in the timely filed original and first amended complaints in the Ace Museum

Adversary Proceeding.  Rule 15(c)(1)(B) provides: "An amendment to a pleading relates

back to the date of the original pleading when ... the amendment asserts a claim or

defense that arose out of the conduct, transaction, or occurrence set out—or attempted

to be set out—in the original pleading...." To relate back, "the original and amended pleadings [must] share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question."  *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989). A new legal theory based on different facts does not relate back under Rule 15(c).  *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008).  However, the relation back doctrine of Rule 15(c) is "liberally applied." *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259 n. 29 (9th Cir.1982). The operative language in the first amended Ace Museum Adversary Complaint alleges that "Ace Museum borrowed, or otherwise obtained, from the Debtor, and the Debtor lent, or otherwise transferred, to Ace Museum, funds in the aggregate of no less than $4,482,586.00 (the 'Museum Loan')" and "the Museum Loan was provided or made pursuant to one or more transfers of the Debtor's funds from the Debtor to Ace Museum since July 9, 2009 or such other later date or dates before the Petition Date (defined below) (each, an 'Ace Museum Transfer' and, collectively, the 'Ace Museum Transfers')."  These allegations relating to the Ace Museum Transfers could describe the Direct Prepetition Rent Transfers by the Debtor to 400 S. La Brea, LLC, to pay the rent of Ace Museum, and thus, such allegations, if proven, could show that these transfers were some of the Ace Museum Transfers as alleged in this complaint.

Also, this requirement could be shown to be met because such allegations as to the Direct Prepetition Rent Transfers would be likely proven by the same kind of evidence that supported the allegations in the timely filed first amended complaint in the Ace Museum Adversary.  *ASARCO, LLC v. Union Pacific Railroad Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

As to this requirement, the 400 S. La Brea Parties argue:

> The Original Museum Complaint purports to avoid only transfers made from the Debtor to Ace Museum, defining the "Transfers" the Committee sought to avoid as "one or more transfers of the Debtor's funds ***from the Debtor to Ace Museum*** since July 9, 2009". Original Museum Complaint, ¶ 9. There is no

reference to any transfers for or on account of rent, let alone rent paid to a third-party "for the benefit" of Ace Museum, nor does the Original Museum Complaint make any reference to the payment of Ace Museum's lease obligations.

Indeed, this Court, when recently tasked with evaluating the claims asserted in the Original Museum Complaint aptly made the very same observation:

> The original [Museum] complaint ***did not allege or refer to transfers to parties other than Ace Museum*** or to transfers before July 9, 2009. *Id*., ¶¶ 1-78. The alleged transfers pertained to Debtor's transfers to Ace Museum pursuant to the purported "Loan" and ***did not refer to any rent obligations***. *Id*. Paragraph 9 of the original complaint alleged that ***the actionable transfers by the Debtor to Ace Museum*** were "since July 9, 2009", and the sixth, seventh and eighth claims for relief sought to avoid each of these transfers. *Id*., ¶¶ 9, 51-64.

*In re Art & Architecture Books of the 21st Century*, No. 2:13-BK-14135-RK, 2021 WL 1821869, at *7 (Bankr. C.D. Cal. May 5, 2021) (emphasis added).

Similarly, the Amended Museum Complaint, although it contains numerous allegations regarding the lease relationship between 400 SLB and Ace Museum and even attaches a copy of the subject lease as part of the Committee's unwavering effort to sell the La Brea Property to satisfy the outstanding Ace Museum Receivable, is conspicuously silent as to any rent payments made by the Debtor for the benefit of Ace Museum, or directly to 400 SLB. Rather, the Amended Museum Complaint also seeks to avoid only transfers made ***to Ace Museum***. Such is clear in the Amended Museum Complaints definition of "Transfers" it seeks to avoid:

> 12. Plaintiff is informed and believes, and based thereon alleges, that, consistent with the Museum Board Resolution, Ace Museum borrowed, or otherwise obtained, from the Debtor, and ***the Debtor lent, or otherwise transferred, to Ace Museum***, funds in the aggregate of no less than $4,482,586.00 (the "Museum Loan"), and that Ace Museum became indebted to the Debtor on account of the Museum Loan in at least that amount (the "Museum Loan Obligation"). Plaintiff is further informed and believes, and based thereon alleges, that the Museum Loan was provided or made pursuant to ***one or more transfers of the Debtor's funds from the Debtor to Ace Museum*** since July 9, 2009 or such other later date or dates before the Petition Date (defined below) (each, an "Ace Museum Transfer" and, collectively, the "Ace Museum Transfers") ….

Amended Museum Complaint, ¶ 12 (emphasis added).

As with the Original Museum Complaint, this Court has already performed

an analysis of the claims asserted in the Amended Museum Complaint and has found that the Committee possessed knowledge of the lease relationship with 400 SLB, but nevertheless only sought to avoid transfers from the Debtor to Ace Museum:

> The First Amended Complaint also referred to, and attached, copies of the Museum Lease entered into between Chrismas and 400 South La Brea LLC in 2006 as well as the amendment of the lease and assignment to Ace Museum entered into between these parties and Ace Museum in 2009. *Id.*, ¶¶ 29-32 and Exhibits 1-3 attached thereto. The copies of the Museum Lease, assignment and amendment attached to the First Amended Complaint indicated that Plaintiff's predecessor in interest, the Creditors' Committee, had knowledge of the contractual relationship between Chrismas, Debtor's principal and sole shareholder, 400 South La Brea, LLC, the landlord, and Ace Museum, under the Museum Lease and the amendment/assignment, and had knowledge that Chrismas and Ace Museum had obligations to pay rent to 400 South La Brea LLC under the Museum Lease, and that Ace Museum had minimal revenue other than "Contributions and Grants" as shown by its tax returns for 2010 and 2011 to pay its rent obligations under the Museum Lease. *Id.*, ¶ 29-38 and Exhibits 1-3 attached thereto. The First Amended Complaint also sought preliminary injunctive relief for appointment of a receiver to exercise the purchase option under the Museum Lease to purchase the 400 South La Brea and Sycamore properties. Id., and Prayer for Relief on First Claim for Relief. The First Amended Complaint in these allegations referred to the Debtor's prepetition transfers to Ace Museum as "the profligate, irresponsible transfer of more than $4,000,000 from the Debtor to Ace Museum." *Id.*, ¶ 38.
>
> ***The first amended complaint did not allege or refer to transfers to parties other than Ace Museum or Chrismas*** or to transfers before four years before the petition date. *Id.*, ¶¶ 1-146. ***As in the original complaint, the alleged transfers pertained to Debtor's transfers to Ace Museum pursuant to the purported "Loan" and did not refer to any rent obligations under the Museum Lease***. *Id.* Paragraph 9 of the original complaint alleged that the alleged ***actionable fraudulent transfers by the Debtor to Ace Museum*** were "since July 9, 2009 or such other later date or dates before the Petition Date since July 9, 2009", and the seventh, eighth, ninth, tenth and eleventh claims for relief sought to avoid each of these transfers. *Id.*, ¶¶ 12, 82-103.

*In re Art & Architecture Books of the 21st Century*, No. 2:13-BK-14135-RK, 2021 WL 1821869, at *8 (Bankr. C.D. Cal. May 5, 2021). (emphasis added).

By asserting now that the Original Museum Complaint and the Amended Museum Complaint can, by reason of Section 550, reach 400 SLB even in the

absence of any allegations at all regarding rent payments – direct or indirect – is the Plan Agent's attempt to fit the square peg of time-barred claims into the round hole of the only timely complaints filed against Ace Museum. If the Court accepts Mr. Sahn's testimony that he was unaware of the Alleged Pre- Petition Direct Rent Payments until sometime after April 2016, then it necessarily follows that neither complaint filed against Ace Museum in 2014 and 2015 could possibly have sought to avoid such unknown direct transfers. Regardless of whether the Court accepts that testimony, the four corners of each of the complaints, which were timely filed against Ace Museum only, are unambiguous in their allegations seeking to avoid only transfers from the Debtor to Ace Museum, with no mention whatsoever of transfers on account of rent, whether to or for the benefit Ace Museum, or directly to third party 400 SLB.

Reply to Opposition, ECF 1132 at 18-20 (internal page citation 13-15; emphasis in original).

The 400 S. La Brea Parties in their supplemental briefing reiterated that this requirement is not met because the allegations in the original and first amended Ace Museum Adversary Complaints only referred to transfers made from the Debtor to Ace Museum.  ECF 1173 at 13 (internal page citation 10).  The 400 S. La Brea Parties argue that "by seeking to avoid only transfers to Ace Museum, and specifically omitting any reference to any transfers made 'on behalf of' Ace Museum, the four corners of each complaint reflect the Committee's affirmative decision to limit its avoidance claims to transfers from the Debtor *to* Ace Museum."  *Id.* (emphasis in original).  The 400 S. La Brea Parties support their argument on this point by citing again to the court's decision on the Plan Agent's motion for leave to amend the sixth amended complaint that the original and first amended complaints in the Ace Museum Adversary "did not allege or refer to transfers to parties other than Ace Museum . . . and did not refer to any rent obligations."  *Id.* at 9-10.

The counterargument made by the Plan Agent in his supplemental opposition is that

. . . the plain language of the allegation includes more than just transfers to Ace Museum. In both the "to" and "from" descriptions of transfers in Paragraph 12, there are two methods specified: one in which Ace Museum is transferred or obtains funds directly, and a contrasting second method in which it "borrows" or is "lent" funding "otherwise." In other words, what is contemplated here is not only that the Debtor's money is being transferred directly to Ace Museum, but that it is

"otherwise" tallied as a loan or borrowing on behalf of and thereby increasing the debt of Ace Museum.  That "otherwise" are transfers made directly to third persons like 400 SLB on the account of Ace Museum (i.e., the "Transfers"). Those are exactly the prepetition transfers that are detailed more specifically later—following a significant amount of forensic examination—in the 6th Amended Complaint.

Supplemental Opposition, ECF 1170 at 9 (internal page citation 3).   The court agrees with the Plan Agent on this point because the 400 S. La Brea Parties do not take into account the relevance of 11 U.S.C. § 101(54)(D) which provides that "[t]he term 'transfer' means----(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with---- (i) property; or (ii) an interest in property."   Under this statutory definition, the alleged Direct Prepetition Rent Transfers from the Debtor to 400 S. La Brea, LLC, to pay the rent of Ace Museum were direct transfers to 400 S. La Brea, LLC, and indirect transfers to Ace Museum because the transfers were transfers of property by the Debtor on behalf of Ace Museum, which benefitted from the payment of its rent obligation.  Thus, such transfers could be shown to be some of the Ace Museum Transfers as alleged in the original and first amended Ace Museum adversary complaints as avoidable fraudulent transfers.  In other words, the 400 S. La Brea Parties overlook the dual character of the direct rent transfers as not only direct transfers to 400 S. La Brea, LLC, but indirect transfers to Ace Museum in that the Debtor made transfers of funds to pay its rent under its lease with 400 S. La Brea, LLC.  However, the significance of this observation becomes evident regarding the issue of the applicability of 11 U.S.C. § 550 to the Direct Prepetition Rent Transfers because the allegations relating to the Direct Prepetition Rent Transfers by the Debtor to 400 S. La Brea, LLC, on behalf of Ace Museum can "relate back" to the alleged Ace Museum Transfers alleged in the original and first amended Ace Museum Adversary Complaints as to Ace Museum as to Ace Museum was already a party in that adversary proceeding.  Moreover, the allegations relating to the Direct Prepetition Rent Transfers by the Debtor to 400 S. La Brea, LLC, on behalf of Ace Museum can "relate back" to the alleged Ace Museum Transfers alleged in the first amended Ace New York Adversary

Complaints as to Ace Museum as to Ace Museum was timely added as a party in that adversary proceeding though its extension of the statute of limitations to June 19, 2016.

Contrary to the argument of the 400 S. La Brea Parties, the language in the court's decision on the Plan Agent's motion to amend the sixth amended complaint is not dispositive because the holding of the court in denying the motion was that the requirement that the new avoidable transfer claims arose out of the same conduct, transaction or occurrence was not met because the avoidable transfer claims in the timely filed complaints only referred to prepetition transfers between 2009 and 2013 and did not refer to pre-2009 transfers.

However, as argued by the 400 S. La Brea Parties in their motion at 29-30, the requirements of Federal Rule of Civil Procedure 15(c)(1)(C) that within the period provided by Federal Rule of Civil Procedure 4(m) then in effect for service of the summons and complaint, that is, 120 days of the filing of the original and first amended complaints on November 26, 2014 and January 22, 2015, respectively, that the party to be brought in by amendment, i.e., the 400 S. La Brea, LLC, had (i) received such notice of the action that it will not be prejudiced in defending the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.  The Plan Agent in his initial opposition to the motion and in his supplemental reply brief in support of the opposition do not address these points, though he addresses the third requirement of Rule 15(c)(1)(C) that the new claims concern the same conduct, transaction or occurrence.  There is no evidence in the record of the pending motion that within the 120 day time period of Rule 4(m) ending about the end of May 2015, 400 S. La Brea, LLC, had received notice of the action against it so that it would not be prejudiced in defending the merits and would have known or should have known that the action would have been brought against it, but for a mistake concerning its identity as a proper party defendant.

Thus, the court is inclined to find that the uncontroverted facts show that the Plan Agent's avoidance claims relating to the Direct Prepetition Rent Transfers in the Third

1  Amended Consolidated Complaint and later amended complaints do not "relate back" to

2  the timely filed original and first amended complaints in the Ace Museum Adversary

3  Proceeding as to the 400 S. La Brea Parties pursuant to Federal Rule of Civil Procedure

4  15(c)(1)(C) governing amendment of pleadings to add new parties because the

5  stringent requirements of the rule regarding service of the summonses and the original

6  and first amended complaints in the Ace Museum Adversary was not made within 120

7  days of the filing dates for those complaints under Federal Rule of Civil Procedure 4(m)

8  and receipt of notice of the action by 400 S. La Brea that it would not have been

9  prejudiced in defending the merits and that it knew or should have known that the action

10  would have been brought against it, but for a mistake concerning the proper party's

11  identity.

12      Based on this record, evidence of such a showing of compliance with the notice

13  and service requirements of Federal Rule of Civil Procedure 15(c)(1)(C) is lacking

14  because the original and first amended complaint in the Ace Museum Adversary

15  Procedures did not allege claims of prepetition fraudulent transfers to the new party,

16  400 S. La Brea, LLC, specifically based on the prepetition rent transfers.  Because the

17  Third Amended Complaint does not meet the requirements of Rule 15(c)(1)(C) to relate

18  back to the timely filed original and first amended complaints in the Ace Museum

19  Adversary Proceeding, the avoidance claims in the third amended complaint do not

20  "relate back" as against 400 S. La Brea, LLC.  Thus, the court would determine that the

21  Plan Agent's avoidance claims as to the Prepetition Direct Rent Transfers to 400 S. La

22  Brea, LLC, are not timely on grounds that they "relate back" to the timely filed original

23  and first amended Ace Museum adversary complaints.  The same holding applies to the

24  other 400 S. La Brea Parties as they were not named as party defendants until the Fifth

25  Amended Complaint was filed in 2018.

26      In this regard, the court would also reject the Plan Agent's arguments that his

27  avoidance claims as to Prepetition Direct Rent Transfers to 400 S. La Brea, LLC, relate

28  back to the timely filed original and first amended complaints in the Ace New York

Corporation Adversary Proceeding because the claims in those complaints raise the

same problems as the original and first amended Ace Museum adversary complaints,

namely, the uncontroverted evidence shows that the stringent requirements of Rule

15(c)(1)(C) regarding service of the summonses and the complaints was not made

within 120 days of the filing dates for those complaints under Federal Rule of Civil

Procedure 4(m) and receipt of notice of the action by 400 S. La Brea that it would not

have been prejudiced in defending the merits and that it knew or should have known

that the action would have been brought against it, but for a mistake concerning the

proper party's identity.  Furthermore, as to the original and first amended complaints in

the Ace New York Corporation Adversary Proceeding, those complaints were filed after

the two-year statute of limitations under 11 U.S.C. § 546(a) expired as to the 400 S. La

Brea Parties, which and who were not parties to the statute extension stipulations, and

the claims in the current complaint cannot relate back to those earlier complaints.  In so

holding, the court rejects the Plan Agent's argument in the supplemental opposition,

ECF 1178 at 9-11 (internal page citation 5-6) that these complaints were timely based

on the extended statute of limitations because the 400 S. La Brea Parties were not

parties to the stipulations to extend the two-year statute of limitations of 11 U.S.C. §

546(a).  To the extent that the Plan Agent argues that his avoidance claims are *in rem*

as thus timely because the claims originated in the original and first amended Ace

Museum Adversary Complaints referring to the "Ace Museum Loan Transaction", the

subsequent complaints added new parties, namely, the 400 S. La Brea Parties, and the

Plan Agent must meet the requirements of Rule 15(c)(1)(C) for relating back, which as

discussed above, he has not shown.  Thus, in the court's view, it does not matter that

the Plan Agent contends that his allegations regarding these transfers relate back to the

timely filed Ace Gallery New York first amended complaint because this complaint

alleged claims to avoid transfers of Debtor's property to pay rent and that the Ace

Gallery New York first amended complaint includes specific allegations of transfers from

Debtor to 400 S. La Brea for rent payments.  Moreover, as the 400 S. La Brea Parties

1  argue in their supplemental opposition, the avoidance claims in these complaints do not

2  relate to prepetition transfers by the Debtor because Ace New York Corporation was

3  created just before the petition date and the actionable transfers to it were postpetition.

4  ECF 1173 at 11-12 (internal page citation 8-9).

5      For the foregoing reasons, the court will determine that the Plan Agent's

6  avoidance claims as to the Direct Prepetition Rent Transfers in the current operative

7  complaint in his Sixth Amended Consolidated Complaint do not relate to the prior

8  original and first amended complaints in the Ace Museum and Ace New York

9  Corporation Adversary Proceedings pursuant to Federal Rule of Civil Procedure

10  15(c)(1)(C).  However, this determination favorable to the 400 S. La Brea Parties is not

11  dispositive as to their motion for partial summary judgment, which as discussed below,

12  the court must resolve issues relating to the Plan Agent's arguments that his avoidance

13  claims as to the Direct Prepetition Rent Transfers should be considered timely based on

14  his assertion of equitable tolling and that his recovery claims under 11 U.S.C. § 550 are

15  applicable to such transfers.

16      **Plan Agent's Assertion of Equitable Tolling**

17      The 400 S. La Brea Parties argue that the Plan Agent's avoidance claims as to

18  the Direct Prepetition Rent Transfers cannot be considered timely based on the doctrine

19  of equitable tolling because the Committee and its counsel knew about the direct

20  payments by the Debtor to 400 S. La Brea, LLC, for Ace Museum's rent, but did not

21  diligently pursue those claims so that they were filed in a timely manner, and such lack

22  of diligence is attributable to the Plan Agent as the Committee's successor-in-interest.

23  While the Plan Agent thus acknowledges that he did not name 400 S. La Brea, LLC, as

24  a defendant until after the statute of limitations of 11 U.S.C. § 546(a) expired on

25  February 19, 2015, he argues that he should be allowed to pursue the transfer

26  avoidance claims based on equitable tolling to at least December 13, 2016, the date on

27  which he filed his motion for leave to file the Third Amended Consolidated Complaint,

28  which asserted allowance raises genuine issues of material fact that cannot be resolved

on a motion for partial summary judgment.  That is, the Plan Agent argues that the

evidence that he has submitted demonstrates the existence of disputed material facts

whether the two-year statute of limitations of 11 U.S.C. §546(a) expiring on February

19, 2015 should be equitably tolled for the court to consider the specific claims to avoid

the rent transfers to 400 S. La Brea in the Third Amended Consolidated Complaint and

subsequent amended complaints.

    As a general rule, the equitable tolling doctrine "is read into every federal statute

of limitation." *In re United Insurance Management, Inc.,* 14 F.3d 1380, 1384-1385 (9th

Cir. 1994), *citing and quoting, Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1945).  In

order to apply equitable tolling, "a litigant seeking equitable tolling bears the burden of

establishing two elements: (1) that he has been pursuing his rights diligently, and (2)

that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S.

408, 418 (2005), citing*, Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111

S.Ct. 453, 112 L.Ed.2d 435 (1990).  In *In re Milby*, 545 B.R. 613, 619-620 (9th Cir. BAP

2016), the Bankruptcy Appellate Panel of the Ninth Circuit recognized that the statute of

limitations of 11 U.S.C. §546(a) may be subject to equitable tolling.

    Regarding equitable tolling based on fraud, the Supreme Court has stated,

"[W]here a plaintiff has been injured by fraud and remains in ignorance of it without any

fault or want of diligence or care on his part, the bar of the statute does not begin to run

until the fraud is discovered."  *Merck & Co., Inc. v. Reynolds,* 559 U.S. 633, 644-645

(2010), *citing and quoting, Holmberg v. Armbrecht*, 327 U.S. at 397.  Similarly, in

*Gladstone v. U.S. Bancorp*, 811 F.3d 1133 (9th Cir. 2016) The Ninth Circuit has stated:

"Under the equitable tolling doctrine, where a party 'remains in ignorance of [a wrong]

without any fault or want of diligence or care on his part, the bar of the statute does not

begin to run until the fraud is discovered, though there be no special circumstances or

efforts on the party committing the fraud to conceal it from the knowledge of the other

party.'"  811 F.3d at 1143.

    The question of when a plaintiff discovered or should have discovered a claim is

a question of fact.  *In re Cecchi Gori Pictures*, 607 B.R. 351, 353 (Bankr. N.D. Cal.

2019), *citing, S.E.C. v. Seaboard Corp*., 677 F.2d 1301, 1309 (9th Cir. 1982)).  Where

the "uncontroverted evidence irrefutably demonstrates that the plaintiff discovered or

should have discovered the fraudulent conduct," it may be decided as a matter of law.

*Id.*, *citing, Mosesian v. Peat, Marwick, Mitchell & Co*., 727 F.2d 873, 877 (9th Cir. 1984).

The burden of proof is on the plaintiff to designate specific facts demonstrating the

existence of genuine issues for trial.  *Id.*  This requires evidence from which a jury could

reasonably infer a decision in the plaintiff's favor.  *Id.*, *citing, In re Oracle Corp.*

*Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010)).

The Plan Agent argues that facts are disputed as to whether he pursued his

rights diligently and whether there were extraordinary circumstances that prevented the

Plan Agent (or the Committee) from bringing the transfer avoidance claims as to the

Direct Prepetition Rent Transfers.  The Plan Agent in his supplemental opposition to the

motion argues as follows:

> A plaintiff seeking equitable tolling must demonstrate: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The Court has asked whether it is the diligence of the party seeking the equitable tolling that matters—here, the Plan Agent—or if instead the diligence of his predecessors (Debtor and the Creditor's Committee) should be considered? It is the former, for several reasons.

> First, the plain language of the test as set out by the U.S. Supreme Court concerns the diligence of the party seeking equity—i.e., whether "he has been pursuing his rights diligently," *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)— and not other persons. This is consistent with 1 the jurisprudence of equity at large. Equity is equitable, and evaluates the parties' acts for fairness, and no other persons.

> Second, it is hornbook law that the trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor…" 11 U.S.C. 544(a). *Cf. In re Schraiber*, 141 B.R. 1008, 1013 (N.D. Ill. 1992) ("[T]he limitations period under § 546(a)(1) starts to run when the written order confirming trustee's appointment is signed by the judge."); *In re Kendall Meat Imports, Inc.,* 176 B.R. 80, 81 (S.D.

Fla. 1994) ("The two year statute of limitations in which a Trustee must file a Complaint, as set forth in Bankruptcy Code § 546(a)(1) commences to run upon the 'appointment of a trustee' under section 702."). The Trustee is not the creditors, and does not inherit their knowledge for all purposes.

Third, in comparable equitable situations, courts do not impute the knowledge of the Trustee's predecessors for purposes of statute of limitations. See, e.g., *Gill v. Blessing*, 2014 WL 12573667, at *3 (C.D.Cal. 2014) ("[T]he receiver asserted claims on behalf of the ponzi scheme entities, not the creditors, and [] the entities' knowledge could not be imputed to the receiver for the purposes of the statute of limitations."); *Matter of International Gold Bullion Exchange, Inc.*, 53 B.R. 660, 665 (S.D.Fla. 1985) ("[A] trustee in bankruptcy takes the foregoing interests on behalf of the general unsecured creditors without imputation of knowledge of the debtors activities or practices which may or were in actual or constructive fraud of a particular creditor of the debtor."); *In re Behrends*, 2017 WL 4513071, at *8, 26 (Bankr. D. Col. 2017) ("[T]he IRS is an actual creditor in Debtor's case. *** because the Trustee brought her claim as a creditor claim under §544(a), the law does not impute the IRS' knowledge to her and, therefore, her claim    accrued when the Debtor filed his schedules.").

Fourth, and finally, in the Ninth Circuit, courts "must take a flexible approach in applying equitable principals" and not "create blanket, prospective rules or applications." *See Smith v. Davis*, 953 F.3d 582, 590 (9th Cir. 2020). Here, the knowledge that 400 SLB would impute to the Plan Agent—essentially, a Trial Balance, and deposition testimony about it—not only conflicts with information the Plan Agent and his predecessors were independently receiving, but is itself not the proper basis in equity for triggering the Plan Agent's statute of limitations on several counts, namely:

•       The document is inherently unreliable. Trial Balance is an unsworn, computer generated document.  Any first year accountant can press print on basic accounting software and print off whatever information that comes out of Doug Chrismas's internal files. Garbage in, garbage out is an expression common to accountants and that is the danger that the Trial Balance presents – it is only as valuable as the inputter, who has proved unreliable. In contrast, as I mentioned earlier, there were sworn SOFAs and amendments to them that were provided by the Debtor both before (in March 2013) and after (in August of 2013) these depositions.

•       The testimony is inconclusive.  if you actually look at the testimony about these Trial Balances (Mot at. 15) is full of qualifiers like "I think it's rent" or that Debtor "may have made payments directly" to a third party. The theory would have to be that the Committee should drop everything they have been told differently before or after in sworn statements because of a trial balance in a deposition in a separate litigation where someone thinks payments may have been made and maybe its rent. It is not per se unreasonable lack of diligence

that this was not Committee's process.

•    The argument is misleading. There is an absolutely egregious misstatement about the Trial Balance document in Defendant 400 SLB's briefing, where counsel for 400 SLB has converted the word "Memo" to "Recipient." Viewed at its very best, this is a very meaningful error and alteration of a document because who the recipient is – and whether the predecessors were able to tell – is exactly what we talking about here so and if you change a document to make it look like an issue undisputed because it says right there "Recipient", that does not make it undisputed.

To the last, 400 SLB on reply corrects the issue and cites the proper word "Memo" but it has to because the exact same deposition on which 400 SLB relies explains that Memo does not mean recipient. See Opposition at 8. However, given that the Ninth Circuit has emphasized that the diligence required is "reasonable diligence" and not "maximum feasible diligence." See Smith at 599 (internal citations omitted), that this "reasonable diligence is tested by an objective standard," *In re United Ins. Mgmt., Inc.*, 14 F.3d 1380, 1384 (9th Cir. 1994), and the one document proffered by 400 SLB as warranting summary judgment is limited and improperly argued, it is not entitled to a summary judgment of a defense in equity.

Supplemental Opposition, ECF 1170 at 13-15 (internal page citation 7-9).

The Plan Agent also argues in his original opposition to the motion that the evidence supports specific disputed material facts that cannot be determined on partial summary judgment:

400 S. La Brea presents its interpretation of the events that took place during the bankruptcy.  As pointed out in the Declaration of Victor Sahn, 400 SLB never appeared in the bankruptcy case although they clearly knew about it. The rendition that they give of it is at odds with the events as they actually took place during the course of the bankruptcy case. 400 SLB's Separate Statement, though, requires (1) the court to weigh what Creditor's Committee knew or should of known regarding about the direct pre-petition transfers to 400 S. La Brea during the bankruptcy and (2) ignores that well establish fact that Mr. Chrismas hid his ongoing fraud from the Court and the parties in the bankruptcy.

By asking the court to weigh their evidence without any reference to the fraud that Mr. Chrismas committed, it should be impossible for 400 S. La Brea to prevail at summary judgment.

In addition to this, there are major categories of contested fact. For example:

•    It is a contested fact that SulmeyerKupetz and the Creditor's Committee

knew of the pre-petition transfers. *See* Sahn Decl.  Evidence showing (1) Mr. Sahn did not know of the pre-petition transfers; (2) that he reasonably relied on the false schedules and monthly operating reports; and (3) the strategy that was employed was based upon the false statements in the falsified documents precludes a determination that, as a matter of undisputed fact, that the Creditor's Committee was not diligent.

•      It is a contested fact as to the impact the Debtor's failure to include information from the detail trial balance on the August 15, 2013. After the deposition and the disclosure of the detail trial balance, Debtor did not revise the Amended Schedule to identify 400 SLB as the recipient of the direct payments; Debtor did not revise the Amended Schedule to include the information regarding 400 SLB from the detail trial balance; and Debtor took no steps thereafter to sue 400 SLB over the alleged transfers in the detail trial balance. Instead, Debtor stood on the material misstatements in the April 2013 Schedules that clearly stated the transfers were for Ace Museum and continued to omit the identity of 400 SLB as the direct recipient.  The Committee built its understanding of the avoidance actions off the material misrepresentations in the schedules which identified Ace Museum as the recipient of the funds.

•      It is a contested fact as to how Mr. Chrismas' fraud upon this Court and upon the Committee materially altered the outcome of the case and the discovery of the pre-petition transfers. If the Creditor's Committee had been aware of the fraud, the Committee would have immediately moved for the appointment of a Chapter 11 Trustee. A trial is necessary to determine how Mr. Chrismas's extensive bankruptcy fraud impacted the Creditor's Committee ability to bring the pre-petition claims against 400 SLB.

•      It is a contested fact that SulmeyerKupetz and the Creditor's Committee made the strategic decision to not pursue 400 SLB for the pre-petition transfers to preserve the Ace Museum option. This argument on its own is enough to deny summary judgment as it asks the Court to weigh facts establishing the state of mind of SulmeyerKupetz and the Creditor's Committee.  The evidence presented in opposition shows that (1) the Creditor's Committee was only aware of the one preference payment presented in the Schedules and (2) this information was false; and (3) the false information drove the decision on how to proceed with the avoidance actions.

•      It is a contested fact and issue of law whether the Creditor's Committee had standing to bring the claims against 400 SLB. 400 SLB suggests that SulmeyerKupetz and the Creditor's Committee should have filed the avoidance action. This is contested because the law requires that Debtor bring these actions and that Debtor never conferred standing on SulmeyerKupetz and the Creditor's Committee to bring the action.

Given these issues, it is clear that summary judgment is improper.

Opposition at 28-29 (internal citation 18-19).  The Plan Agent's asserted material facts are adequately supported by his Statement of Genuine Disputes of Material Fact and Conclusions of Law in Support of the Opposition of Plan Agent to Motion for Partial Summary Judgment by Defendant 400 S. La Brea, LLC, Daryoush Dayan, et al., filed on September 27, 2021, ECF 1098, Responses to Alleged Uncontroverted Material Fact, Nos. 7, 8, 12, 14, 15, 19, 21, 22, 23, 26, 29, 30, 31, 34, 35, 36, 37, 38, 39, 40, 41, 42, 47, 48, 49, 50, 51, 52, 53, 59, 60, 63, 64, 65, 68, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86 and 87, and Additional Asserted Uncontroverted Facts, Nos. 1-223, and evidence cited therein, as modified and supplemented by his Issues and the evidence cited therein, Supplemental Statement of Genuine Disputes of Material Fact and Conclusions of Law in Support of the Opposition of Plan Agent to Motion for Partial Summary Judgment by Defendant 400 S. La Brea, LLC, Daryoush Dayan, et al., filed on November 12, 2021, ECF 1171, Responses to Alleged Uncontroverted Material Fact, Nos. 7, 8, 9, 11, 12, 14, 15, 16, 19, 21, 22, 23, 24, 26, 27, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 47, 48, 49, 50, 51, 52, 53, 58, 59, 60, 63, 64, 65, 68, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86 and 87, and Additional Asserted Uncontroverted Facts, Nos. 1-230, and evidence cited therein; *see also,* 400 SLB Defendants' Response to Purported "Additional" Uncontroverted Facts Submitted by Plan Agent in Opposition to the 400 SLB Defendants' Motion for Partial Summary Judgment, filed on November 12, 2021, ECF 1172; Defendants' Response to Purported Supplemental "Additional Facts" Contained in Plan Agent's Supplemental Statement of Genuine Disputes and Conclusions of Law in Connection with the 400 SLB Defendants' Motion for Partial Summary Judgment, filed on November 19, 2021, ECF 1180. [1]

---

[1]  The parties have interposed objections to the declarations of the other party's witnesses.  For purposes of the pending motion, the court overrules the objections of the Plan Agent to the Davidoff and Banner declaration, and the court overrules the objections of the 400 S. La Brea Parties to the Sahn and Marticello declarations, except the court sustains the objection to the Sahn declaration based on the mediation privilege.  The court does not sustain the objections to the Sahn declaration on grounds that the testimony is argumentative, which it probably is, but the court determines that most of the declaration is factual and disregards the purely argumentative portions of the declaration. The court also overrules the Plan Agent's objections to the request for judicial notice of the 400 S. La Brea Parties since the court

Having considered this argument and the supporting statement of genuine issues and evidence, the court agrees with the Plan Agent that there are genuine issues of material fact regarding whether equitable tolling is appropriate here.  That is, there is evidence that indicates that the Committee was faced with conflicting information about the direct rent transfers as the Debtor's bankruptcy filings did not adequately disclose the prepetition direct rent transfers or other prepetition transfers as Chrismas gave intentionally misleading information in the Debtor's monthly operating reports and in his deposition testimony to the Committee and the court about the relationship between the Debtor and Ace Museum and the purported loan by the Debtor to Ace Museum, i.e., alleged repayments by Ace Museum through use of the Debtor's diverted funds, and other information given in discovery or in the Debtor's bankruptcy filings were incomplete and/or contradictory.  Supplemental Statement of Genuine Disputes of Material Fact and Conclusions of Law, ECF 1171, Responses to Alleged Uncontroverted Material Fact, Nos. 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 47, 48, 49, 50, 51, 52, 53, 58, 59, 60, 63, 64, 65, 68, 71, 72, 73 and 74, and Additional Asserted Uncontroverted Facts, Nos. 1-3 and 33-180, and evidence cited therein.  Moreover, the evidence indicates that Chrismas made it difficult for anyone to pursue timely avoidance actions on behalf of the estate, as he as Debtor's principal fired Debtor's attorneys after they had recommended that the Debtor take action to pursue such claims.  Supplemental Statement of Genuine Disputes of Material Fact and Conclusions of Law, ECF 1171, Additional Asserted Uncontroverted Facts, Nos. 181-188 and 227-230, and evidence cited therein.  Such evidence, though disputed, may indicate grounds for applying equitable estoppel here.  The court could determine at trial

---

can take judicial notice of its files and records under Federal Rule of Evidence 201.  Russell, *Bankruptcy Evidence Manual*, § 201.5 (online edition November 2021 update), *citing and quoting, In re Clark,* 525 B.R. 442, 449 n. 8 (Bankr. D. Idaho 2015), *aff'd,* BAP No. ID-15-1065-KiFJu, 2016 WL 1377807 (9th Cir. BAP Mar. 29, 2016), *aff'd,* 693 Fed. Appx. 644 (2017).  The prior statements by the declarants in this matter made in the documents filed with the court may have evidentiary value under Federal Rule of Evidence 801(d).  *In re Clark,* 525 B.R. at 449 n. 8.  It is not a productive use of the court's time in ruling on the motion to rule on each and every objection since on the whole, based on the evidence that the Plan Agent has filed, he has met his burden of establishing that there are genuine issues of material fact to preclude partial summary judgment.

the alleged uncontroverted facts that the 400 S. La Brea Parties rely upon for partial

summary judgment, but the court should not do so now because such alleged facts are

controverted by evidence of other facts as argued by the Plan Agent and should be

determined at trial when the court can weigh the credibility of the evidence.

The court determines that based on this record, there are genuine issues of

material fact whether equitable tolling of the two-year statute of limitations under 11

U.S.C. § 546(a) to December 13, 2016 is appropriate to allow the consideration of the

avoidable claims based on the Direct Prepetition Rent Transfers by the Debtor to 400 S.

La Brea, LLC.  The two year statute of limitations of 11 U.S.C. § 546(a) measured from

the petition date of February 19, 2013 expired on February 19, 2015, and based on the

allegations of fraud against Defendant Chrismas who was in control of the Debtor during

the preconfirmation phase of this bankruptcy case through the plan effective date, April

6, 2016, Plaintiff can make a reasonable argument for equitable tolling through April 6,

2016, the date when his appointment as the plan agent became effective, and prior to

that, according to Plaintiff, Defendant Chrismas was supervising the Debtor during the

preconfirmation phase of this bankruptcy case, which concealed and refused to produce

relevant information to the Creditors' Committee.  Supplemental Statement of Genuine

Disputes of Material Fact and Conclusions of Law, ECF 1171, Responses to Alleged

Uncontroverted Material Fact, Nos. 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 47,

48, 49, 50, 51, 52, 53, 58, 59, 60, 63, 64, 65, 68, 71, 72, 73 and 74, and Additional

Asserted Uncontroverted Facts, Nos. 1-3 and 33-180, and evidence cited therein.

Assuming *arguendo* that based on Debtor's preconfirmation concealment and refusal to

produce relevant information with the Creditors' Committee, equitable tolling was

appropriate until the effective date of Plaintiff's appointment on April 6, 2016, there are

genuine issues of material fact as to whether equitable tolling is appropriate afterwards

through December 13, 2016, the date on which the Plan Agent filed his motion for leave

to file the proposed Third Amended Consolidated Complaint, in which he first

specifically alleged that the Direct Prepetition Rent Transfers to 400 S. La Brea, LLC,

were avoidable fraudulent transfers.  That is, the Plan Agent could have discovered the

alleged fraudulent transfers within a reasonable time after he took over Debtor's

operations on April 6, 2016 through December 13, 2016, the date on which he filed his

motion for leave to file the proposed Third Amended Consolidated Complaint, presents

genuine issues of material fact that should not be resolved on summary adjudication.

While the 400 S. La Brea Parties as the moving parties have carried their burden

of production on their partial summary judgment motion regarding equitable tolling, the

Plan Agent as the nonmoving party was required to produce evidence to support its

claim or defense based on equitable tolling, and if the Plan Agent as the nonmoving

party produces enough evidence to create a genuine issue of material fact, the

nonmoving party defeats the motion.  *Nissan Fire & Marine Insurance Co., Ltd. v. Fritz

Companies, Inc.,* 210 F.3d at 1102-1103.  The court finds that the evidence regarding

the diligence of the Plan Agent, the current plaintiff in this adversary proceeding, in

pursuing the transfer avoidance claims relating to the Direct Prepetition Rent Transfers

against 400 S. La Brea, LLC, and filing his motion for leave to amend to add specific

claims to avoid these transfers in December 2016, eight months after the effective date

of his appointment, although over a year and ten months after the statute expiration as

to 400 S. La Brea, LLC, indicates that the Plan Agent has met his burden of producing

enough evidence to demonstrate genuine issues of material fact that based on

adequate evidence precludes the granting of partial summary judgment on these claims

based on his assertion that equitable tolling applies to his claims.  Accordingly, on this

record, the court determines that the Plan Agent has met his burden of proof to

designate specific facts demonstrating the existence of genuine issues for trial that he

may properly rely upon equitable tolling to prosecute his transfer avoidance claims

against 400 S. La Brea, LLC, as he has identified evidence from which a jury could

reasonably infer a decision in his favor.  *In re Cecchi Gori Pictures,* 607 B.R. at 353.

Thus, the court cannot conclude that the "uncontroverted evidence irrefutably

demonstrates that the plaintiff discovered or should have discovered the fraudulent

conduct" in order for the court to determine that equitable tolling is not appropriate as a matter of law. *Id.* (citing *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984)).  Accordingly, the court determines that the 400 S. La Brea Parties have not met their ultimate burden of demonstrating entitlement to partial summary judgment. *See Nissan Fire & Marine Insurance Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d at 1102-1103.

## **Issue of Attribution of Committee's Lack of Diligence to Plan Agent**

What the Committee's counsel, the SulmeyerKupetz law firm, on behalf of the Committee, knew or did not know about the transfer of Debtor's property/funds to make rent payments to 400 S. La Brea, is a triable issue of material fact.  *See Aronsen v. Crown Zelelrbach*, 662 F.2d 584, 595 (9th Cir. 1981) (citation omitted) ("equitable tolling or estoppel almost invariably involves the credibility of the various witnesses (and) [c]redibility is difficult to determine from affidavits, or depositions.") (Age Discrimination in Employment Act (ADEA) cases).  The evidence submitted by the parties is disputed as the knowledge of Committee counsel of the direct rent transfers from the Debtor to 400 S. La Brea.  The 400 S. La Brea Parties offer documentary evidence indicating that Committee counsel knew or should have known about the direct rent payment transfers from deposition testimony of Debtor's accountants, Mendelsohn and Holst, and Debtor's principal, Chrismas, and documentary evidence, including a rider to an amended bankruptcy schedule and Debtor's trial balance sheets.  Committee counsel's declaration attests that neither he nor the Committee was aware of the direct rent transfers, and the Plan Agent argues that other evidence indicates that the Committee was given misleading information about the transfers in representations in Debtor's bankruptcy schedules and other filings and from Debtor's principal, Chrismas.  The totality of the record indicates that there are genuine issues of material fact presented by the conflicting evidence as to the Committee's knowledge or lack of knowledge.

Even if Committee counsel became aware or should have known of the transfers from Debtor to 400 S. La Brea, LLC, there are genuine issues of material fact as to how

the Committee could have acted on what it knew or should have known as it was

Debtor's duty to bring suit to avoid and recover the transfers and the time for the

Committee to act was limited based on the 400 S. La Brea Parties' argument that

Debtor's counsel had urged the Committee to file suit shortly before the statute of

limitations expired.  As the Plan Agent argues, "In a Chapter 11 case, unless a trustee

has been appointed, the debtor-in-possession exercises the avoiding powers. §

1107(a)."  *In re Roman Catholic Bishop of Great Falls, Montana* 584 B.R. 335, 338

(Bankr. D. Mont. 2018).

Furthermore, whether Committee counsel knew about the direct payment

transfers to 400 S. La Brea may not be relevant because it is unclear whether the

actions of the Committee are attributable to the Plan Agent.  The Plan Agent was

appointed pursuant to the confirmed plan of reorganization which had been proposed by

the Committee, but it is unclear whether this makes him the successor-in-interest to the

Committee.  The confirmed plan provides that the Plan Agent succeeds to the interests

of the Debtor in carrying out the terms of the confirmed plan.

The 400 S. La Brea Parties assume that the Plan Agent is the successor to the

Committee, but do not cite any legal authority to support this argument.  In the motion,

this argument is not explained.  The motion simply alludes to the fact that the Plan

Agent assumed control of the adversary proceedings once his appointment became

effective:

> On March 18, 2016, the Court entered its Confirmation Order in the underlying bankruptcy case (the "Bankruptcy Case") confirming the Committee's Plan.  Under the Committee's Plan, the Committee was effectively dissolved, and the Plan Agent took over prosecution of both this Adversary Proceeding16 and the Museum Adversary. The litigation transition was seamless for the Plan Agent, as he retained former counsel for the Committee – that is, SulmeyerKupetz – as counsel in the pre-consolidated adversary proceedings.

Motion, Docket No. 1032 at 15-16 (internal page citation 5-6) (footnotes omitted).

In the reply to the Plan Agent's opposition, the 400 S. La Brea Parties argue:

> In an attempt to divert the Court's attention from the Committee's complete failure to diligently investigate the Alleged Pre-Petition Direct Rent

> Payments, despite documents in their possession as early as 2013 detailing each of the 22 rent payments, the Plan Agent's Opposition spares no ink in attempting to argue that *he* was diligent in his efforts to pursue those claims.
>
> What this argument misses is the fact the Plan Agent was not appointed until April 16, 2016 – well after the two-year statute of limitations under section 546(a) expired on February 19, 2015. The Plan Agent's alleged diligence, or lack thereof, is wholly immaterial in light of the fact that his predecessor, the Committee, failed to act diligently to pursue the claims.

Reply, Docket No. 1132 at 26 (internal page citation 21).

As stated earlier, the Plan Agent's appointment derives from the confirmed plan, which provides that he succeeds to the interests of the estate, such as its interests in the pending adversary proceedings, which the Committee was prosecuting on behalf of the estate, but the plan does not indicate that he is the successor to the Committee in all relevant respects.   As noted earlier, the plan confirmation order of March 18, 2016: "The Plan Agent is the designated representative of the post-confirmation estate under section 1123(b)(3) of the Bankruptcy Code and shall succeed to the debtor in possession as a fiduciary to prosecute Chapter 5 causes of action (and any other claims) on behalf of the estate."   Main Bankruptcy Case, ECF 1873 at 18.   Thus, it is questionable that the Committee's actions and knowledge are attributable to the Plan Agent.

The 400 S. La Brea Parties have not sufficiently addressed the issue of whether any knowledge that the Committee had regarding the transfers should be imputed to the current plaintiff in the consolidated adversary proceedings, the Plan Agent, who did not have standing to bring any causes of action and was not a party until the effective date of his appointment on April 6, 2016.   There are genuine issues of material fact as to whether the Plan Agent knew about the transfers and failed to exercise diligence in filing the avoidance claims in the Third Amended Consolidated Complaint in January 2017 Thus, the court determines that partial summary judgment is not appropriate to determine that the Plan Agent may not rely upon equitable tolling regarding his transfer avoidance claims as to the Direct Prepetition Rent Transfers as the 400 S. La Brea Parties have not shown that they are entitled to judgment as a matter of law based on

the Committee's actions and knowledge to meet their ultimate burden of demonstrating

entitlement to partial summary judgment as to equitable tolling.  *See Nissan Fire &*

*Marine Insurance Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d at 1102-1103.

**Transfer Recovery Claims under 11 U.S.C. § 550**

In the Third Amended Consolidated Complaint, ECF 69, the Plan Agent alleged a

claim against 400 S. La Brea, LLC, as a "Landlord Defendant" pursuant to 11 U.S.C. §

550:

> 165. Plaintiff alleges that either Ace Museum, Chrismas, the Landlord
> Defendants, OLD Ace NYC, and/or Ace NYC (the "Fraudulent Transferees") was
> the initial transferee, the party for whose benefit such transfers were made, or the
> immediate or mediate transferee, of any or each of: (i) the Unauthorized Museum
> Post-Petition Transfers; (ii) the Ace NYC Prepetition Transfers; (iii) the Ace NYC
> Preferential Transfers; (iv) the Avoidable Post-Petition Transfers; (v) the
> Prepetition Rent Transfers; (vi) the Museum Preferential Transfers; and/or (vii)
> other transfers that remain to be discovered and proven at trial (collectively, the
> "Avoidable Transfers").

In the opposition to the motion, the Plan Agent asserted that such claim was timely

because the statute of limitations on such a claim to recover an avoided transfer does

not begin to run as the court has not entered any order or judgment avoiding such a

transfer and such claim may be brought within one year after the avoidance of such

transfer on account of which recovery under 11 U.S.C. 550 is sought.  Opposition, ECF

1097 at 36 (internal page citation 26).

The 400 S. La Brea Parties argue that since the pre-petition transfer avoidance

claims based on the direct rent payments are time-barred, there can be no recovery

actions under 11 U.S.C. § 550 against them, and that therefore, they should be granted

summary adjudication on the eighth claim for relief for recovery of transfer under 11

U.S.C. § 550.  Their argument is stated as follows:

    C.    ***As Summary Judgment is Warranted as to the Alleged Pre-Petition
Direct Rent Payments, Summary Judgment is Also Warranted
Against all Pre- Petition Fraudulent Transfer Claims Asserted
Directly Against 400 SLB, Except Pre-Petition Recovery Claims
Asserted under 11 U.S.C. § 550***

In his Sixth Amended Complaint, the Plan Agent has included 400 SLB as

a defendant to each of his pre-petition fraudulent transfer claims (collectively, the "Pre-Petition Avoidance Claims"): Second Claim for Relief – Actual Fraudulent Transfer (11 U.S.C. § 544 and Cal. Civil Code § 3439.04(a)(1)); Third Claim for Relief – Constructive Fraudulent Transfer (11 U.S.C. § 544 and Cal. Civil Code § 3439.04(a)(2)); Fourth Claim for Relief – Constructive Fraudulent Transfer (11 U.S.C. § 544 and Cal. Civil Code § 3439.05); Fifth Claim for Relief – Actual Fraudulent Transfer (11 U.S.C. § 548(a)(1)(A)); and Sixth Claim for Relief – Constructive Fraudulent Transfer (11 U.S.C. § 548(a)(1)(B)).

Despite the Plan Agent's broad inclusion of 400 SLB as a named defendant in each of the Pre-Petition Avoidance Claims, the Plan Agent's  Exhibit 5 attached to the Sixth Amended Complaint makes it clear that the Plan Agent seeks to avoid only two categories of alleged pre- petition transfers with respect to the 400 SLB Defendants: (1) those rent payments made directly by the Debtor to 400 SLB (i.e. the Alleged Pre-Petition Direct Rent Payments); and (2) those rent payments made by non-debtor Ace Museum to 400 SLB. See Sixth Amended Complaint, Exh. 5. Because, as discussed herein, 400 SLB is entitled to summary judgment as to the first category (i.e. all Alleged Pre-Petition Direct Rent Payments), then it follows that the Plan Agent is left with only pre-petition claims with respect to the second category, which the Plan Agent concedes in his Sixth Amended Complaint were not made by the Debtor, but by non-debtor Ace Museum. As such, the underlying transfer the Plan Agent seeks to avoid would be only the initial transfer between the Debtor and Ace Museum. If 400 SLB is not a party to an alleged pre-petition avoidable transfer of the Debtor's assets, then the Plan Agent can only assert against 400 SLB a recovery cause of action under section 550 of the Bankruptcy Code for transfers alleged to have been made from Ace Museum to 400 SLB. *See e.g., Lippi v. City Bank*, 955 F.2d 599, 605 (9th Cir.1992) ("[A]voidance and recovery from transferees are distinct concepts under bankruptcy law. . . ."). Indeed, the Plan Agent recognizes that he may only seek recovery claims against parties that were not party to the underlying transfer to be avoided by seeking only section 550 claims against Cathay Bank, Dayan, Gharibian and Smith in his Sixth Amended Complaint. See Sixth Amended Complaint, at 87:16-19.

Motion, ECF 1032 at 45-46 (internal page citation 35-36; footnote 40 omitted).  In

footnote 40 in the motion, the 400 S. La Brea Parties contend: "Though summary

judgment is warranted as to all Pre-Petition Avoidance Claims – since 400 SLB is not a

party to any of the transfers the Plan Agent seeks to avoid – 400 SLB maintains its

rights under section 550 to challenge the underlying avoidability of all subject transfers,

as the Plan Agent has previously conceded in this Adversary Proceeding: "[Section 550

defendants] have a 'due process rights to contest the avoidability' of the underlying

transfers". Motion of Plan Agent for Leave to Amend Fourth Amended Complaint

[Docket No. 439], at 10:10-15 (quoting *In re Flashcom, Inc. v. Communs. Ventures III, LP (In re Flashcom, Inc.)*, 503 B.R. 99, 114 (C.D. Cal. 2013)." *Id.* at 46 (internal page citation 36) n. 40. The underlying assumption of the 400 S. La Brea Parties' argument is that the only transfers alleged in the Ace Museum complaints were transfers by the Debtor "to" Ace Museum, or only direct transfer, and not on behalf of, or indirect transfers.

In response to the argument of the 400 S. La Brea Parties, the Plan Agent argued in his opposition:

> That 400 SLB was not initially named as a defendant on the Prepetition Avoidance Claims is of no legal moment since, unlike a Recovery Claims brought under Section 550, which focuses on the transferee, a Prepetition Avoidance Claim—prepetition or post-petition—is an *in rem* claim that focuses on the transfer itself:

> > [T]he question of avoidance under the Bankruptcy Code is separate from the question of recovery. The question of avoidance is focused upon the transfer and is analyzed with respect to the transferor. Once it is determined that an avoidable transfer has been made, then the focus shifts to the relief the trustee may obtain as to the property transferred or the value of the property transferred and from whom.

> *Tabor v. Davis (In re Davis)*, Nos. 05-15794-L, 07-05152, 2016 Bankr. LEXIS 2311 *56-57 (Bankr. W.D. Tenn. June 14, 2016). "[A]voidability is an attribute of the transfer rather than of the creditor." *Official Unsecured Creditors Comm. v. United States Nat'l Bank (In re Suffola, Inc.),* 2 F.3d 977, 981 (9th Cir. 1993) (quoting *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr.)*, 874 F.2d 1186, 1195-96 (7th Cir. 1989)); *see also Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 733 (9th Cir. BAP 2008) ("The concepts of avoidance and recovery are separate and distinct.").

> A Bankruptcy Court's jurisdiction in an avoidance action is *in rem* jurisdiction, as the action seeks a declaration of avoidance:

> > Section 544, "standing alone, operates as a mere declaration of avoidance", which is an *in rem* adjudication. See Katz, at 362, 371 ("Bankruptcy jurisdiction, at its core, is in rem"). Although the recovery of any transfer to ECSU declared to be a fraudulent transfer "might itself involve in personam process", Katz held that those who crafted the Bankruptcy Clause understood it to allow Congress to authorize courts to avoid . . . transfers and to recover the transferred property.

*Rescia v. E. Conn. State. Univ. (In re Harnett),* 558 B.R. 655, 659-60 (Bankr. D. Conn. 2016) (citing *Central Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006)); *West v. Freedom Med., Inc. (In re Apex Long Term Acute Care-Katy, L.P.),* 465 B.R. 452, 464 (Bankr. S.D. Tex. 2011) (following *Katz,* and holding "[t]here is no serious question that a § 549 cause of action is within the bankruptcy court's *in rem* authority."); *Sharp v. SKMP Corp. (In re SK Foods, L.P.),* 2011 Bankr. LEXIS 5651 *56 (Bankr. E.D. Cal. October 11, 2011) ("The Court's *in rem* jurisdiction extends to property transferred from a debtor pre-bankruptcy which is subject to an avoidance claim.").

Section 550(a), which is focused on the transferee, specifies that the parties from whom an avoidable transfer may be recovered include "the initial transferee of such transfer or the entity for whose benefit such transfer was made," or "any immediate or mediate transferee …" 11 U.S.C. § 550(a)-(b). By contrast, Sections 544, 547 and 548, which are focused on the transfer, do not specify the identity of any necessary defendant. Because a claim brought under Sections 544, 547 and 548 do not specify a necessary defendant, courts hold that a trustee can bring an *in rem* action to avoid the transfer against any party that is potentially liable under Section 550, and needn't sue the initial transferee or any other entity from whom a recovery will be sought as a defendant to the avoidance action.

For example, in *Kendall v. Sorani (In re Richmond Produce Co.)*, 195 B.R. 455 (N.D. Cal. 1996), the trustee sued parties other than the initial transferee to avoid a fraudulent transfer, and sought to recover that avoided transfer under Section 550 from "BanCal," who was an immediate transferee. The Bankruptcy Court had previously determined that the initial transferee could not be sued because of his bankruptcy discharge, leaving the trustee able to sue only subsequent transferees to avoid the transfer. *Kendall v. Sorani (In re Richmond Produce Co.)*, 151 B.R. 1012, 1016 n.5 Bankr. N.D. Cal. 1993); *see also In re Richmond Produce*, 195 B.R. at 461 (noting that Bankruptcy Court had determined that "Clow," rather than the named defendants, was found to be the initial transferee).  BanCal appealed, and argued that the trustee could only recover from a subsequent transferee if he first avoided the transfer against the initial transferee.  BanCal incorrectly construes the "to the extent that a transfer is avoided" language in section 550 to mean that in order to recover from a subsequent transferee, the trustee must first successfully avoid the transfer with respect to the initial transferee. Such an interpretation conflates Chapter 11's avoidance and recovery sections and contradicts existing Ninth Circuit law. *Id*. at 463. The Court examined the list of potential defendants in Section 550, and found that "[t]he provision contains no language that suggests that recovery from immediate transferees is in any way dependent upon a prior action or recovery against the initial transferee." *Id*.

The meaning of *Richmond Produce* is that any party that is potentially

liable for recovery of the transfer under Section 550 is a proper defendant for the avoidance action, whether that defendant is the initial transferee, a subsequent transferee, or the entity for whose benefit the transfer was made. The initial transferee may be the most common defendant in an avoidance action, because the initial transferee is also the most common target for a future Recovery Claim, but there is no requirement that the initial transferee, or any particular transferee, be a defendant.

Opposition, ECF 1097 at 30-32 (internal page citation 20-22).

In the reply to the opposition to the motion, the 400 S. La Brea Parties made explicit their assumption in the motion that they believed that the only actionable transfers in the Ace Museum complaints were "transfers of the Debtor's funds from the Debtor to Ace Museum." Reply at 13. As previously discussed, the 400 S. La Brea Parties further argued in their supplemental briefing that the allegations in the original and first amended Ace Museum Adversary Complaints only referred to transfers made from the Debtor to Ace Museum. ECF 1173 at 13 (internal page citation 10). The 400 S. La Brea Parties argue that "by seeking to avoid only transfers to Ace Museum, and specifically omitting any reference to any transfers made 'on behalf of' Ace Museum, the four corners of each complaint reflect the Committee's affirmative decision to limit its avoidance claims to transfers from the Debtor *to* Ace Museum." *Id.* The 400 S. La Brea Parties support their argument on this point by citing the court's decision on the Plan Agent's motion for leave to amend the sixth amended complaint that the original and first amended complaints in the Ace Museum Adversary "did not allege or refer to transfers to parties other than Ace Museum . . . and did not refer to any rent obligations." *Id.* at 9-10.

Also, as discussed previously, the counterargument made by the Plan Agent in his supplemental opposition is that:

. . . the plain language of the allegation includes more than just transfers to Ace Museum. In both the "to" and "from" descriptions of transfers in Paragraph 12, there are two methods specified: one in which Ace Museum is transferred or obtains funds directly, and a contrasting second method in which it "borrows" or is "lent" funding "otherwise." In other words, what is contemplated here is not only that the Debtor's money is being transferred directly to Ace Museum, but that it is "otherwise" tallied as a loan or borrowing on behalf of and thereby increasing the

debt of Ace Museum.  That "otherwise" are transfers made directly to third persons like 400 SLB on the account of Ace Museum (i.e., the "Transfers"). Those are exactly the prepetition transfers that are detailed more specifically later—following a significant amount of forensic examination—in the 6th Amended Complaint.

Supplemental Opposition, ECF 1170 at 9 (internal page citation 3).

As discussed above, the court finds that the Plan Agent has the better argument on this point because the 400 S. La Brea Parties do not take into account the relevance of 11 U.S.C. § 101(54)(D) which provides that "[t]he term 'transfer' means----(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with---- (i) property; or (ii) an interest in property."  Under this statutory definition, the alleged Direct Prepetition Rent Transfers from the Debtor to 400 S. La Brea, LLC, to pay the rent of Ace Museum were direct transfers to 400 S. La Brea, LLC, and indirect transfers to Ace Museum because the transfers were transfers of property by the Debtor on behalf of Ace Museum, which benefitted from the payment of its rent obligation.  Thus, such indirect transfers "to" Ace Museum could be shown to be some of the Ace Museum Transfers as alleged in the original and first amended Ace Museum adversary complaints as avoidable fraudulent transfers.  In other words, the 400 S. La Brea Parties overlook the dual character of the direct rent transfers as not only direct transfers to 400 S. La Brea, LLC, but indirect transfers to Ace Museum in that the Debtor made transfers of funds to pay its rent under its lease with 400 S. La Brea, LLC.

As previously noted, the Plan Agent argues the transfer actions are *in rem* actions, that is, alleging the transfers as opposed to the transferees is the relevant inquiry: "[T]he Bankruptcy Code, and specifically §§ 544(b) and 548, does not identify the proper, necessary or indispensable parties to a fraudulent transfer action, and does not state that the initial transferee is necessary."  *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 743 (Bankr. S.D.N.Y. 2008) (*in rem* causes of action).  He thus argues that if the claims to avoid transfers are timely, the statute of limitations to file 11 U.S.C. § 550 claims has not expired.  Pursuant to 11 U.S.C. § 550(f)(1), "An action or proceeding under this section may not be commenced after the earlier of one year after the

avoidance of the transfer on account of which recovery under this section is sought."

Based on the plain language of 11 U.S.C. § 550(a), if a transfer is avoided under 11 U.S.C. §§ 544 and/or 548, the Plan Agent can recover transferred property or the value of such property under 11 U.S.C. § 550 against a transferee of an initial transferee.  11 U.S.C. § 550(a)(1) and (2) provide:

> to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a)(1) and (2).  The language of 11 U.S.C. § 550 does not require a trustee to successfully avoid a transfer with respect to the initial transferee in order to recover from a subsequent transferee under 11 U.S.C. § 550.  *In re Richmond Produce Co., Inc.*, 195 B.R. 455, 463 (N.D. Cal. 1996); *see Woods & Erickson, LLP v. Leonard* (*In re AVI, Inc.*), 389 B.R. 721, 735 (9th Cir. BAP 2008) ("[T]rustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2).")  Thus, the Plan Agent may assert a recovery action against the 400 S. La Brea Parties under 11 U.S.C. § 550, even if there are no avoidance claim against 400 S. La Brea, LLC itself, if 400 S. La Brea, LLC, and its principals, received transfers of the Debtor's funds.  That is, if the Plan Agent is successful on his claims to avoid the transfers to Ace Museum, including indirect transfers to Ace Museum through direct transfers to 400 S. La Brea, LLC, then the Plan Agent may seek to recover the avoided transfers from the transferees, including 400 S. La Brea, LLC, and its principals.  The recovery claims are not solely limited to direct transfers from the Debtor to Ace Museum.

Accordingly, the court determines that partial summary judgment in favor of the 400 S. La Brea Parties is not appropriate as to the Plan Agent's recovery claims against them pursuant to 11 U.S.C. § 550.

## **Preferential Transfer Avoidance Claims against 400 S. La Brea, LLC**

400 S. La Brea, LLC seeks partial summary judgment on the Plan Agent's seventh claim for relief against it in the Sixth Amended Consolidated Complaint based on alleged pre-petition preferential transfers.  400 S. La Brea, LLC, argues:

> In his Seventh Claim for Relief asserted in the Sixth Amended Complaint, the Plan Agent makes a vague and conclusory assertion that 400 SLB is allegedly the recipient of unspecified preferential transfer(s) under section 547 of the Bankruptcy Code, as follows:
>
> > 239. Plaintiff is informed and believes, and based thereon alleges, that at least one or more of the Prepetition Rent Transfers occurred within one year prior to the Petition Date, and of the Prepetition Rent Transfers, certain were made within 90 days or one year prior to the Petition Date (the "La Brea Preferential Transfers").

Motion, ECF 1032, at 46 (internal page citation 36), quoting, Sixth Amended Complaint, ¶ 239.  Paragraph 240 of the Sixth Amended Consolidated Complaint, ECF 699, alleges:

> 240.  Plaintiff is informed and believes, and based thereon alleges, that each of the La Brea Preferential Transfers was made on account of an antecedent debt owed by the Debtor before such transfer was made.

In this seventh claim for relief, the Plan Agent seeks to recover alleged preferential transfers made by Ace Museum, with Debtor's funds, to 400 S. La Brea, LLC.

400 S. La Brea, LLC, argues:

> A necessary element to any preference claim under section 547(b) of the Bankruptcy Code is that an alleged transfer is made "for or on account of an antecedent debtor owed by the Debtor before such transfer was made." 11 U.S.C. § 547(b)(2). Nowhere in the voluminous Sixth Amended Complaint is it asserted that prior to the Petition Date, the Debtor owed 400 SLB an antecedent debt. Rather, as discussed above, the Sixth Amended Complaint details the lease relationship between Ace Museum and/or Mr. Chrismas, on the one hand and 400 SLB on the other, and it further alleges that all transfers detailed in Exhibit 5 were transfers for rent on account of that lease relationship. *See* Sixth Amended Complaint, ¶¶ 36-37, 46. In this factual context, any preference claim against 400 SLB lacks any plausibility and therefore summary judgment is appropriate.

Motion, ECF 1032, at 47-48 (internal page citation 37 and 38),

The court agrees with 400 S. La Brea, LLC's argument that Plan Agent cannot recover under 11 U.S.C. § 547 because this section only allows the trustee to recover "on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2).  The uncontroverted evidence shows that Ace Museum, not the Debtor, owed the antecedent debt, i.e., rent, to 400 S. La Brea, LLC.  The plain language of 11 U.S.C. § 547(b)(2) specifies that the claim must be for a debt owed by Debtor.  There is no factual dispute that the Debtor itself did not owe a debt to 400 S. La Brea, LLC, and the Plan Agent does not argue to the contrary in his opposition to the motion.  ECF 1097 and 1170.  Accordingly, the court determines that 400 S. La Brea is entitled to summary adjudication in its favor that the Plan Agent cannot prevail on his preferential transfer claim against it as there is no genuine issue of material fact that there is no antecedent debt of the Debtor and that 400 S. La Brea, LLC, is entitled to judgment as a matter of law.  Since not all the parties to the motion for partial summary judgment consent to the jurisdiction of the bankruptcy court to enter a final judgment, the bankruptcy court will recommend to the United States District Court that summary adjudication in favor of 400 S. La Brea be entered on the Plan Agent's seventh claim for relief in the Sixth Amended Consolidated Complaint.  If the 400 S. La Brea Parties consent to allow the court to enter final judgment on the Plan Agent's preferential transfer claim against 400 S. La Brea, LLC, under 11 U.S.C. § 547, the court can enter a final judgment on such claim pursuant to Federal Rule of Bankruptcy Procedure 7054 making Federal Rule of Civil Procedure 54(b) applicable to this adversary proceeding based on an express determination that there is no just reason for delay in entering a final judgment on this claim as to 400 S. La Brea, LLC.  Otherwise, the court will issue a report and recommendation to the United States District Court that partial summary judgment be granted on this claim when the court refers the remaining claims in this adversary proceeding to the District Court for trial, so that a final judgment by that court can be entered on this claim along with the entry of final judgment on the other remaining claims in this adversary proceeding, whenever that may be.

**Conversion Claim against 400 S. La Brea, LLC**

The eleventh cause of action for conversion against 400 S. La Brea alleges that

400 S. La Brea ". . . actively and wrongfully took possession of sale proceeds from the

sale of artworks and other property that were property of the Debtor's estate, and which

total millions of dollars in value . . ."  Sixth Amended Consolidated Complaint, ECF 699,

¶ 257.

The 400 S. La Brea Parties argue:

> Similar to the Plan Agent's attempt to include 400 SLB in his implausible
> preference cause of action, the Plan Agent also – without any supporting factual
> or evidentiary basis whatsoever – attempts to lump 400 SLB with Mr. Chrismas,
> Ace New York and Ace Museum in his Eleventh Cause of Action for conversion.
> To support this very serious allegation against 400 SLB, the Plan Agent very
> generally alleges in paragraph 257 of the Sixth Amended Complaint:
>
>> 257. Prior to the Petition Date, and throughout the Bankruptcy Case
>> through to the Effective Date, defendants Chrismas, Ace Museum, Ace
>> NYC, OLD Ace NYC, and 400 S. La Brea (collectively, the "Conversion
>> Defendants"), actively and wrongfully took possession of sale proceeds
>> from the sale of artworks and other property that were property of the
>> Debtor's estate, and which total millions of dollars in value (collectively,
>> including any further acts of conversion that may be discovered in the
>> course of the Plan Agent's investigation, the "Converted Property").
>
> Without more, it is nearly impossible to discern what falls under the
> definition of "Converted Property" with respect to 400 SLB. Viewing the
> allegations of the Sixth Amended Complaint in their entirety, the only inference
> that can be drawn is that the Plan Agent is attempting to make the remarkable
> assertion that 400 SLB somehow converted the rent payments it received, as
> detailed in Exhibit 5 to the Sixth Amended Complaint.

Motion, ECF 1032 at 48 (internal page citation 38).

The 400 S. La Brea Parties thus argue:

> It is undisputed that the rent paid to 400 SLB were voluntarily payments
> made to, and accepted by, 400 SLB pursuant to the terms of the lease between
> Ace Museum and 400 SLB. See Sixth Amended Complaint, ¶¶ 36-37, 46. Based
> on these undisputed facts, 400 SLB became the owner of the rent payments
> once made pursuant to the terms of the lease, and consequently, neither the
> Debtor, Ace Museum, Mr. Chrismas, nor any other party could "assert an
> ownership or right to possession" over the rent payments made, as is a required

element of conversion. *See Hartford Fin. Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979) ("To mandate a conversion action … [plaintiff] must show that she was entitled to immediate possession at the time of conversion."); *In re Alexander*, 19 B.R. 149, 151 (Bankr. D. Or. 1981) ("A person cannot convert his own property and an action for conversion can only be maintained by one who at the time of the conversion had either a general or special ownership in the property.").

Furthermore, even assuming arguendo that Mr. Chrismas utilized the funds and property of the Debtor to ultimately make those rent payments owed to 400 SLB, that allegation, alone, is insufficient to support a conversion cause of action against 400 SLB.   There is no dispute that Mr. Chrismas was the sole officer of the Debtor, Ace New York and Ace Museum at the time of the alleged rent payments to 400 SLB – indeed, the Sixth Amended Complaint alleges those precise facts. Sixth Amended Complaint, ¶ 14. As such, Mr. Chrismas necessarily possessed the requisite corporate authority to cause those entities to voluntarily make any transfers and/or rent payments. A voluntary transfer cannot constitute conversion, even if such transfer may be avoidable on other grounds. *In re Delano Retail Partners, LLC*, No. 11-37711-B-7, 2014 WL 4966476, at *11–12 (Bankr. E.D. Cal. Sept. 29, 2014) (granting summary judgment for defendant on conversion claim in light of fact that sole member of debtor authorized the subject transactions); *In re Lau Capital Funding, Inc*., 321 B.R. 287, 304 (Bankr. C.D. Cal. 2005) ("A transfer that is voluntary is not wrongful because a voluntary transfer is consensual and thus, is not wrongful."); *In re Intelligent Direct Mktg*., 518 B.R. 579, 591 (E.D. Cal. 2014) (same).

Motion, ECF 1032, at 49-50 (internal page citation 39-40).

"Conversion is 'an act of willful interference with a chattel, done without lawful justification, by which any person thereto is deprived of use and possession.'" *Yellowcake, Inc. v. Morena Music, Inc*., 522 F.Supp.3d 747, 774 (E.D. Cal. 2021), quoting *De Vries v. Brumback,* 53 Cal.2d 643, 647, 2 Cal.Rptr. 764, 349 P.2d 532 (1960).  "Stated differently, conversion is 'the wrongful exercise of dominion over the property of another.'"  *Id*. quoting *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015).

Under California law, the elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.  *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015) (citation omitted).  "Conversion is a strict liability tort.  The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is

tortious.  Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial."  *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1998), *citing, Moore v. Regents of University of California,* 51 Cal.3d 120, 144, and n. 38 (1990) and *Oakdale Village Group v. Fong,* 43 Cal.App.4th 539, 543-544 (1996).

Based on the allegations in the complaint and elements of conversion, the court cannot grant partial summary judgment on the conversion claim as to 400 S. La Brea, LLC, because there are genuine issues of material fact that Chrismas improperly sold Debtor's artwork and diverted the sales proceeds and that the sales proceeds were used to pay rent to 400 S. La Brea, LLC, for Ace Museum, that 400 S. La Brea, LLC, collected rent under their lease agreement with Ace Museum, that 400 S. La Brea, LLC, had knowledge that Ace Museum did not have sufficient assets of its own to pay rent and that rent had come from other sources, including the Debtor, and that 400 S. La Brea, LLC, had reason to know that the rent may not have come from a proper source. The court has determined as to Chrismas, he is liable for conversion because he caused Debtor to sell its artwork and diverted the sales proceeds from the Debtor, which evidence shows that it went to pay rent to 400 S. La Brea, for Ace Museum, and while the facts of conversion by Chrismas are disputed by the 400 S. La Brea Parties, there is evidence identified by the Plan Agent that 400 S. La Brea, LLC, and its agents in collecting the rent for Ace Museum had knowledge that Ace Museum did not have sufficient assets to pay its own rent, that rent had come from other sources, including Debtor, and had reason to know that the rent had not come from a proper source, and thus could be found to be wrongful to receive.  Supplemental Statement of Genuine Disputes of Material Fact and Conclusions of Law, ECF 1171, Additional Asserted Uncontroverted Facts, Nos. 189-223, and evidence cited therein.

At oral argument on the motion, counsel for the 400 S. La Brea Parties based his argument that they are entitled to summary adjudication on the Plan Agent's conversion claim in part on a newly cited case not discussed in the briefing in *Bank of New York v. Fremont General Corp.,* 523 F.3d 902 (9th Cir. 2008), which had stated that "[a] plaintiff

in a conversion action must also prove that it did not consent to the defendant's

exercise of dominion."  5235 F.3d at 914, *citing, Farrington v. A. Teichert & Son, Inc.,* 59

Cal.App.2d 468 (1943).  In response, the Plan Agent argues:

> While it may be true *ipso facto* that a truly voluntary gift is not a conversion, the facts here concerning the "consent" are heavily disputed, particularly regarding whether 400 SLB was aware that it was receiving funds improperly from an insolvent entity. Summary judgment is not appropriate if there is a disputed question of fact as to consent. *Cf. Bailey v. County of San Joaquin*, 671, F.Supp.2d 1167, 1179 (E.D. Cal. 2009) ("While a reasonable interpretation of the facts, plaintiffs have demonstrated that a reasonable jury could also find that Kari did not ratify the conversion … Consequently, the jury could conclude that Kari in no way approved the actions of the defendant in taking possession of her property.").  Plan Agent contends that the Debtor was insolvent pre-petition. 400 S. La Brea argues otherwise. This issue is subject to competing expert opinions that will be addressed during expert discovery and the trial. "[T]he insolvency of a corporation creates an express trust under California's 'trust fund doctrine.' [A] director of a insolvent corporation is a fiduciary whose obligation 'is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders' [A]ll of the assets of a corporation, immediately upon its becoming insolvent, become a trust fund for the benefit of all of its creditors.'" *In re Houng*, 499 B.R. 751, 767 (C.D.Cal. 2013) (citations omitted). "[T]he fact of insolvency fundamentally alters the relationship between a corporation, its shareholders and its creditors. As a result, a new fiduciary relationship arises running from the directors of the insolvent corporation in favor of the corporation's creditors." *In re JTS Corp.*, 305 B.R. 529, 539 (N.D.Cal. 2003).
>
> Accordingly, if Chrismas consented to the wrongful taking of Debtor's property during insolvency, that consent cannot be imputed to the Debtor. *In re Western World Funding, Inc.*, 52 B.R. 743, 773 (D.Nev. 1985) ("When the defense of ratification is raised, [Trustee] may invoke the 'trust fund' doctrine, i.e., since creditors are also beneficiaries of the fiduciary duty when the corporation is insolvent, or its insolvency is imminent, the consent or ratification of co-beneficiaries does not bind those who did not consent."). That is, because of Chrismas's breach of fiduciary duty to the creditors, his consent to the taking of property cannot be imputed to Debtor.
>
> Finally, the Plan Agent has proffered evidence during both pre and post-petition periods that (1) that 400 SLB knew at the outset that the funds were coming from a party other than the Lessee, Ace Museum, that was controlled by Chrismas, namely the debtor (Sorensen Ex. 24); (2) that 400 SLB was knowingly accepting funds while understanding that they may have been improperly obtained, see Opp. At 42 (1/17/2014 email, Sorensen Ex. 42) (where 400 SLB expresses worry about "bad shit" the Doug Chrismas is doing); and (3) that 400

SLB demanded that payments come from Debtor and not the actual Lessee because the actual Lessee kept bouncing checks (Sorensen Ex. 36 Dep.).

The sum of these proffered facts is that any payments from the Debtor were not "voluntary" because Mr. Chrismas "consented" to his own fraud. Consent obtained by fraud does not suffice to excuse conversion. *City of Los Angeles by and through Department of Water and Power v. Asplundh Construction Corporation*, 2012 WL 12941957, at * 6 (C.D. Cal. 2012) ("Because DWP's consent was allegedly obtained by Boiner's fraudulent misrepresentations as to the amount of copper wire needed, Bank of New York is factually distinguishable. Unlike the bank supervisors in that case, who knew all of the relevant facts and nonetheless authorized the withdrawals, here, based on the allegations in the complaint, DWP did not know that Boiner was requesting more wire than required to complete the agreed-upon work.") (citing *Carter v. United States*, 1982 WL 1953, at *7 (N.D. Cal. 1981) ("[I]t is well established under California law that if the owner of property consents to its taking, but the consent is acquired by fraud, the taking amounts to a conversion.")

A jury is entitled to weigh those facts to determine whether or not 400 SLB intentionally converted the funds. To argue that a fraudster "voluntarily" embezzled funds is no defense but 400 SLB will have make that defense to a fact finder.

Supplemental Opposition, ECF 1170 at 17-19 (internal page citation 11-12).

The court agrees with the Plan Agent that there are genuine issues of material fact on the conversion claim that should not be decided on partial summary judgment. Collection of rent per se is not a wrongful act, and 400 S. La Brea was authorized to collect rent payments under the terms of the lease agreement.  However, as the court has determined, Chrismas is liable for conversion by selling Debtor's artwork and diverting the proceeds to pay nondebtor parties, including the rent for Ace Museum to 400 S. La Brea, LLC.  *See* Report and Recommendation of United States Bankruptcy Court to United States District Court on Plaintiff's Motion for Summary Judgment on Claims against Defendant Douglas Chrismas for Conversion and Breach of Fiduciary Duty, ECF 1244, filed on February 16, 2022; *see also,* Plan Agent's Statement of Genuine Issues, ECF 1098, Asserted Additional Facts Nos. 53-62 and evidence cited therein.  As stated previously, conversion is a strict liability tort, and the Plan Agent has submitted evidence that is probative that 400 S. La Brea's principals or agents knew the

funds did not belong to Ace Museum, but continued to collect the rent which could be considered a wrongful act.  *See* Plan Agent's Statement of Genuine Issues, ECF 1098, Asserted Additional Facts Nos. 189-212 and evidence cited therein.  Specifically, if 400 S. La Brea's principals and agents knew that if rent funds then came from the Debtor, which was insolvent, as Chrismas was not permitted to divert its funds as an insolvent entity under the "trust fund" doctrine for his personal benefit as an insider, which funds could have been used to pay creditors.  *See also, Berg & Berg Enterprises, LLC v. Boyle,* 178 Cal.App.4th 1020, 1040-1041 (2009).  Thus, the evidence as to whether there was a wrongful act by 400 S. La Brea, LLC to support a conversion claim raises triable issues of material fact to preclude partial summary judgment on the issues relating to conversion.  The court determines that the Plan Agent has met his burden of producing enough evidence to demonstrate genuine issues of material fact based on adequate evidence precludes the granting of partial summary judgment on his conversion claim against 400 S. La Brea, LLC.  Accordingly, the court determines that it should deny partial summary judgment on the eleventh claim for relief for conversion as to 400 S. La Brea, LLC.

### CONCLUSION AND ORDER

For the foregoing reasons, the court rules on the motion for partial summary judgment as follows:

1.   The motion is granted in part in that the motion is granted on the seventh claim for avoidance of preferential transfers in the Sixth Amended Consolidated Complaint as to 400 S. La Brea, LLC.  However, in the absence of consent of 400 S. La Brea, LLC, to the bankruptcy court's jurisdiction to enter a final judgment on this claim, the court does not enter a final order granting partial summary judgment as to this claim in favor of 400 S. La Brea, LLC, and will recommend that partial summary judgment in favor of 400 S. La Brea, LLC, on this claim be granted in a report and recommendation to the United States District Court when the other claims are referred to that court

for trial.  However, if 400 S. La Brea, LLC, files a written consent to the

bankruptcy court entering a final judgment on the seventh claim for relief in

the Sixth Amended Consolidated Complaint as to it, the court will enter a final

judgment on that claim as to 400 S. La Brea, LLC, pursuant to Federal Rule

of Bankruptcy Procedure 7054 and Federal Rule of Civil Procedure 54(b)

expressly determining that there is no just reason for delaying entry of final

judgment on such claim as to 400 S. La Brea, LLC.

2.  The motion is denied in part in that the motion is otherwise denied.

IT IS SO ORDERED.

                                                            ###

Date: March 31, 2022

_____
Robert Kwan
United States Bankruptcy Judge