1

2

3

4

5

6

FILED & ENTERED

MAY 19 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY llewis      DEPUTY CLERK

7

8

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

| | |
|---|---|
| In re: | Case No. 2:13-bk-14135-RK |
| ART & ARCHITECTURE BOOKS OF THE 21st CENTURY, | Chapter 11 |
| Debtor. | Adv. No. 2:15-ap-01679-RK |
| | **REPORT AND RECOMMENDATION OF UNITED STATES BANKRUPTCY COURT TO UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA ON PLAN AGENT'S MOTION FOR CONTEMPT AGAINST DOUGLAS CHRISMAS AND ON DEFENDANT AND COUNTERCLAIMANT DOUGLAS CHRISMAS'S COUNTERCLAIMS AS TO PRE-1999 ART POSTERS** |
| SAM LESLIE, Plan Agent, | |
| Plaintiff, | |
| v. | |
| ACE GALLERY NEW YORK CORPORATION, et al., | |
| Defendants. | |
| | **Trial** |
| | Dates:         January 6 and 21, 2022 |
| | Time:          10:00 a.m. |
| | Courtroom:   U.S. Bankruptcy Court |
| | Courtroom 1675 |
| | 255 E. Temple St. |
| | Los Angeles, CA 90012 |
| | ZOOM.GOV |

25

26

27

28

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF**

**CALIFORNIA, AND THE LITIGATING PARTIES, PLAN AGENT SAM LESLIE,**

**DOUGLAS CHRISMAS, AND THEIR COUNSEL OF RECORD:**

1      The United States Bankruptcy Court hereby issues the following report and

2 recommendation pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9033 relating to

3 two litigation disputes over ownership of certain Art Posters on:

4      (A) the Motion of Sam Leslie as Plan Agent ("Plan Agent") for Debtor Art & Architecture

5           Books of the 21st Century ("Debtor"), under the confirmed Second Amended Plan of

6           Reorganization of the Official Committee of Unsecured Creditors (the "Plan") for: (1)

7           Issuance of Order to Show Cause for Contempt against Douglas Chrismas

8           ("Chrismas"), an individual; (2) to Compel Douglas Chrismas to Issue Correspondence

9           Retracting Letter Dated October 27, 2021 Addressed to Mr. Jeff Tanenbaum of

10          ThreeSixty Asset Advisors as well as Contents of October 27, 2021 Email from

11          Jonathan Shenson, Esq. to Carolyn A. Dye, Esq. and Victor A. Sahn, Esq.; or in the

12          Alternative; (3) for Order Interpreting and Enforcing Terms and Conditions of

13          Confirmation Order on Confirmed Plan of Reorganization of Official Committee of

14          Unsecured Creditors; and (4) for Sanctions against Douglas Chrismas, Individually

15          Including Monetary Sanctions; Declarations of Victor A. Sahn and Sam Leslie in

16          Support of Motion, Electronic Case Filing  ("ECF" or Docket) No. 2661 filed in the

17          above-captioned bankruptcy case on November 8, 2021; and

18     (B) the First, Second, Third and Fourth Counterclaims for Declaratory Relief, Injunctive

19          Relief, Conversion and Replevin/Claim and Delivery in the First Amended Counter-

20          Complaint of Defendant Douglas Chrismas against Plaintiff Art & Architecture Books

21          of the 21st Century, Sam Leslie, Plan Agent ("Plaintiff"), ECF or Docket No. 640 filed

22          in the above-captioned adversary proceeding within the above-captioned bankruptcy

23          case on July 30, 2019, regarding specific personal property that Mr. Chrismas claims

24          he personally owns, namely, Art Posters created before the formation of the Debtor Art

25          & Architecture Books of the 21st Century in June 1999 ("Art Posters"). [1]

26

27  [1]  This report and recommendation is being filed and entered in both the main bankruptcy case and

28 the adversary proceeding within the bankruptcy case, and thus reflected on the separate case

1    In the first matter, the Plan Agent's motion for contempt, declaratory relief and sanctions

2    against Douglas Chrismas, the Plan Agent contends that Chrismas should be held in contempt for

3    violating the bankruptcy court's order confirming the Plan of Reorganization in this bankruptcy

4    case.  The plan confirmation order provides that the Plan Agent may sell assets of the Debtor, a

5    California corporation which operates an art gallery business.  The assets included certain valuable

6    Art Posters. Plan Agent argues that Chrismas is interfering with the Plan Agent's sales of these Art

7    Posters through auction pursuant to the confirmed Plan of Reorganization and the court's order

8    thereon by Chrismas claiming ownership of the Art Posters and threatening the Plan Agent and the

9    auctioneer with litigation. According to Chrismas, he acquired certain Art Posters before the

10    Debtor was formed or incorporated in June 1999, which included posters of artworks by famous

11    artists like Andy Warhol, Roy Lichtenstein and Robert Rauschenberg, and he never transferred

12    ownership of these posters to the Debtor after it was incorporated, though he admits that he may

13    have had that intention at some time.  The Plan Agent contends that Chrismas is acting in bad faith

14    by now asserting ownership claims to the pre-1999 Art Posters because he made representations to

15    the court and the creditors in the Debtor's bankruptcy case while he was in control of the Debtor in

16    documents filed in this bankruptcy case that the Art Posters were part of the Debtor's assets.  For

17    example, Chrismas signed a declaration under penalty of perjury in support of the Debtor's motion

18    to assume a lease on its primary business premises at 5500 Wilshire Boulevard, Los Angeles,

19    California  90036, which represented that the Debtor owned Art Posters, including the now

20    disputed pre-1999 Art Posters, which he valued as an art expert at $13 million.  This declaration

21    by Chrismas attesting to the value of the Art Posters at $13 million was intended to demonstrate

22    that the Debtor had the financial ability to meet its obligations to pay rent under the lease that it

23    sought to assume in the bankruptcy case. [2] In Chrismas's declaration in opposition to the Plan

_____

25    dockets of the main bankruptcy case and the adversary proceeding as the Plan Agent's motion for
contempt, declaratory relief and sanctions is pending in the main bankruptcy case as his motion

26    seeks to enforce an order confirming the Plan of Reorganization entered in the main bankruptcy
case and the First Amended Counter-Complaint of Douglas Chrismas is pending in the adversary

27    proceeding within the main bankruptcy case.

28    [2] While the bankruptcy court granted the Debtor's motion to assume the lease which was based on

3

1   Agent's motion for contempt, declaratory relief and sanctions, Chrismas asserted that his

2   statements in his prior declaration representing that the Debtor owned the pre-1999 Art Posters

3   was in error because he really only meant to transfer these posters to the Debtor only if the Debtor

4   was allowed to assume the lease and that the representation that the Debtor then owned the posters

5   was a mistake.  According to Chrismas, he could not be held in contempt for interfering with the

6   sales of the pre-1999 Art Posters under the confirmed Plan of Reorganization in this bankruptcy

7   case and the order thereon if he is the owner of the posters.

8          Chrismas's claims of ownership of the pre-1999 Art Posters form the bases of his

9   counterclaims against the Debtor and the Plan Agent in those assets as well as other assets.  In

10  Chrismas's First Amended Counter-Complaint, he asserts four claims for relief including

11  declaratory relief, injunctive relief, conversion and replevin/claim and delivery that he, not the

12  Debtor, owns certain art assets, including the disputed pre-1999 Art Posters, that the Plan Agent is

13  administering and trying to sell on behalf of the Debtor's creditors to pay their claims pursuant to

14  the confirmed Plan of Reorganization in this bankruptcy case. Because resolution of the Plan

15  Agent's motion for contempt, declaratory relief and sanctions raises the same material issue of fact

16  of who owns the pre-1999 Art Posters as Chrismas's counterclaims as to the posters, the

17  Bankruptcy Court concluded that the determination of this factual issue of the ownership of the

18  pre-1999 Art Poster would likely be dispositive in both litigation matters, so it set a single trial of

19  both matters, which was conducted on January 6 and 21, 2022.  *See* Trial Scheduling Order, ECF

20  or Docket No. 1192, filed on December 15, 2021, in the above-captioned adversary proceeding. [3]

21

22  _____

23  Chrismas's declaration valuing the Debtor's Art Posters at $13 million, the District Court on
    appeal reversed the bankruptcy court's order granting the Debtor's motion to assume the lease.  *In
    re Art and Architecture Books of the 21st Century,* No. 2:13-bk-14135-RK, 2013 WL 4874343

24  (Bankr. C.D. Cal. Sept. 12, 2013), *vacating and remanding,* No. 2:13-cv-6990-GW (C.D. Cal. Jan.
    12, 2014).  On remand, the bankruptcy court determined that the Debtor could not assume the

25  lease because it had waived its right to relief from forfeiture.  *In re Art and Architecture Books of
    the 21st Century,* 518 B.R. 43 (Bankr. C.D. Cal. 2014), *affirmed in part and vacated and remanded

26  in part,* No. CV 14-9009-GW, 2015 WL 139169197 (C.D. Cal. Sept. 9, 2015)

27  [3]  In his counterclaims in the First Amended Counter-Complaint, Douglas Chrismas also seeks
    relief as to other art assets that are not being adjudicated at this time.  The Bankruptcy Court's

28  adjudication of Mr. Chrismas's counterclaims at this time is limited to the pre-1999 Art Posters.

Having considered the testimony and evidence received at trial and the oral and written arguments of the parties, including proposed findings of fact and conclusions of law submitted by the parties, regarding the Plan Agent's motion to hold Douglas Chrismas in contempt and for declaratory relief and sanctions as to his claim of ownership of the disputed pre-1999 Art Posters and the counterclaims of Douglas Chrismas in his First Amended Counter-Complaint against the Plan Agent for declaratory relief, injunctive relief, conversion and replevin/claim and delivery as to the disputed pre-1999 Art Posters, the United States Bankruptcy Court recommends that the United States District Court for the Central District of California adopt the following Findings of Fact and Conclusions of Law and issue a final judgment for: (1)  granting in part and denying in part the Plan Agent's motion to hold Douglas Chrismas in contempt and for declaratory relief and sanctions in that Chrismas should not be held in contempt, that sanctions should not be imposed on him, but that declaratory relief be rendered that the Debtor, not Chrismas, owns the disputed pre-1999 Art Posters, and (2) denying and dismissing Chrismas's counterclaims in his First Amended Counter-Complaint for declaratory relief, injunctive relief, conversion and replevin/claim and delivery as to the disputed pre-1999 Art Posters on grounds that the Debtor, not Chrismas, owns the posters.

The United States Bankruptcy Court has subject matter jurisdiction over the counterclaims in the First Amended Counter-Complaint of Defendant Douglas Chrismas for declaratory relief, injunctive relief, conversion and replevin/claim and delivery under its jurisdiction of 28 U.S.C. § 1334(b) over matters related to a bankruptcy case under the Bankruptcy Code, 11 U.S.C., because such claims are based on alleged tortious acts by the Debtor in asserting ownership over property that Chrismas asserts is his and in defense of these claims, the Plan Agent on behalf of the Debtor seeks to vindicate its rights pursuant to the confirmed plan of reorganization claiming that the property belonged to the Debtor's bankruptcy estate.  However, because these disputes "otherwise related to" a bankruptcy case involve rights existing outside of bankruptcy and are thus "noncore" proceedings.  *See* March, Ahart and Shapiro, *Rutter Group California Practice Guide: Bankruptcy,* ¶¶ 1:105-1:108 (online edition, December 2021 update), *citing inter alia, Stern v. Marshall,* 564 U.S. 462, 475-477 (2011); *In re Ray,* 624 F.3d 1124, 1131 (9th Cir. 2010).  In

1   contrast, "core" proceedings "generally involve causes of action *created or determined by the*

2   *Bankruptcy Code* or administrative matters arising only in bankruptcy cases."   March, Ahart and

3   Shapiro, *Rutter Group California Practice Guide: Bankruptcy*, ¶¶ 1:450-1:451, *citing inter alia, In*

4   *re Harris Pine Mills,* 44 F.3d 1431, 1435-1436 (9th Cir. 1995).

5         The United States Bankruptcy Court may hear but not determine "noncore" proceedings

6   and thus may not enter a final judgment on Defendant Douglas Chrismas's counterclaims for

7   declaratory relief, injunctive relief, conversion and replevin/claim and delivery against Plaintiff

8   Sam Leslie as the Plan Agent for the confirmed Plan of Reorganization in the Debtor's bankruptcy

9   case, because Defendant Chrismas's counterclaims against Plaintiff Leslie as the Plan Agent for

10   declaratory relief, injunctive relief, conversion and replevin/claim and delivery are noncore claims

11   based on nonbankruptcy law under state law or the common law.   The Bankruptcy Court may

12   enter final judgment on noncore claims within its related to jurisdiction if such claims relate to the

13   claims allowance process or when the parties consent to the bankruptcy court jurisdiction.

14   *Wellness International Network, Ltd. v. Sharif,* 575 U.S. 665, 674-686 (2015).   Chrismas's

15   counterclaims are noncore claims within the bankruptcy court's "related to" jurisdiction under 28

16   U.S.C. § 1334(b), but do not relate to the claims allowance process.   As to consent to bankruptcy

17   court jurisdiction, the Plan Agent has expressly consented to bankruptcy court jurisdiction in the

18   adversary proceeding in which Chrismas's counterclaims are asserted by the Plan Agent's

19   statements of consent in status reports filed in the adversary proceeding.   Defendant Chrismas in

20   his answers to the Plan Agent's complaints in the adversary proceeding expressly stated that he

21   does not consent to the jurisdiction of the Bankruptcy Court to enter a final judgment in the

22   adversary proceeding.

23         The United States Bankruptcy Court finds that Defendant Chrismas has not impliedly

24   consented to bankruptcy court jurisdiction to enter a final judgment to determine his counterclaims

25   against Plaintiff Leslie, Plan Agent.   Absent consent of all of the parties to Defendant Chrismas's

26   counterclaims for declaratory relief, injunctive relief, conversion and replevin/claim and delivery,

27   this court lacks jurisdiction to enter a final judgment on these claims.

28         The United States Bankruptcy Court, however, does have jurisdiction to hear Defendant

1  Chrismas's counterclaims for declaratory relief, injunctive relief, conversion and replevin/claim

2  and delivery against Plaintiff Leslie, Plan Agent, which are noncore claims under its "related to"

3  jurisdiction pursuant to 28 U.S.C. § 1334(b) and issue proposed findings of fact and conclusions

4  of law for *de novo* review by the United States District Court.  28 U.S.C. § 157 (c)(1); *Executive*

5  *Benefits Insurance Agency v. Arkison*, 573 U.S. 25, 39-40 (2014).  Accordingly, the United States

6  Bankruptcy Court determines that it may issue proposed findings of fact and conclusions of law

7  pursuant to Federal Rule of Bankruptcy Procedure 9033 in submitting its rulings on the

8  counterclaims as a report and recommendation to the United States District Court for the Central

9  District of California for *de novo* review.

10      Having considered the testimony and evidence received at trial and the oral and written

11  arguments of the parties, including the Proposed Findings of Fact and Conclusions of Law submitted

12  by both parties, which the Bankruptcy Court has independently reviewed and modified, the

13  bankruptcy court adopts the following Findings of Fact and Conclusions of Law, subject to *de novo*

14  review of the United States District Court.

| **NO.** | **FINDING OF FACT** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 1. | From February 19, 2013, the date on which Debtor filed its Chapter 11 bankruptcy petition, commencing this bankruptcy case (the "Petition Date") through April 6, 2016, the effective date of the confirmed Plan of Reorganization in this bankruptcy case (the "Effective Date"), Chrismas was the primary officer of the Debtor, and was responsible for the day-to-day management of the Debtor as a Debtor-in-Possession ("DIP") and controlled the Debtor.  Before the Effective Date, Mr. Chrismas was the principal and sole owner of the Debtor. | Sixth Amended Complaint ("6AC"), Adversary Proceeding Docket No. 699 at ¶¶ 1, 14, 23 and 25. Defendant Chrismas's Answer to the Sixth Amended Complaint ("Ans."), Adversary Proceeding Docket No. or ECF 703 at ¶¶ 1, 11, 17, 18. Testimony of Douglas Chrismas, January 6, 2022. |
| 2. | At various times prior to the Effective Date, Chrismas was in control of Defendants Ace Gallery NY Corporation ("Ace NY"), Ace Gallery NY, Inc. ("Old Ace NY"), and Ace Museum, a non-profit California Corporation. | 6AC at ¶ 21. Ans. at ¶ 15. |
| 3. | On April 6, 2016, the Effective Date, the Plan Agent's appointment under the confirmed Plan of | Declaration of Sam S. Leslie ("Leslie Poster |

| | | Reorganization in this bankruptcy case took effect, and the Plan Agent took control and possession of the Debtor's premises and operations located at: (i) 5514 Wilshire Blvd, Los Angeles, CA 90036 (the "Mid-Wilshire Location"); and (ii) 9430 Wilshire Blvd., Beverly Hills, CA 90212 (the "BH Gallery"). | Dec."), Bankruptcy Case Docket No. 2688 at ¶ 29, pg. 10, lines 25-28. |
| 4. | | When the Plan Agent took over the Debtor's business pursuant to his appointment under the confirmed Plan of Reorganization in this bankruptcy case, he immediately took steps to capture the data on the computers on the premises, among other things, by "mirroring" all the hard drives of the computers on site and ensuring that all paper files were preserved, maintained and safeguarded. | Leslie Poster Dec. at ¶¶ 32-33. |
| 5. | | Based on the preservation of the data on and subsequent to the review of the Debtor's computer system and files and from the Plan Agent's interviews with former employees who helped to prepare and maintain the Debtor's books and records, by taking control of the Debtor's computers and files, the Plan Agent was also able to obtain the books and records of certain corporations owned and operated by Douglas Chrismas because they were all maintained on the same computers and server over which the Plan Agent had control. | Leslie Poster Dec. at ¶¶ 30-31. |
| 6. | | These additional records included accounting information for Ace Museum, Ace Gallery New York Corporation, and the dissolved Ace Gallery New York Inc. (collectively, the "Non-Debtor Entities"), as well as certain "paper" files relating to these entities. | Leslie Poster Dec.  at ¶ 31. |
| 7. | | When Plan Agent took over the Debtor's business, he needed to gain an immediate and intricate understanding of the Debtor's ordinary course business operations so that he could continue to operate the business as required under the Bankruptcy Court's order appointing the Plan Agent. | Leslie Poster Dec. at ¶ 30 and 35. |
| 8. | | The Plan Agent gained a first-hand familiarity along with his staff of the Debtor's operations, inventory of artwork, customers and Art Posters. | Leslie Poster Dec. at ¶ 36. |
| 9. | | The Plan Agent and his staff reviewed all the Debtor's bank records, sales invoices, and other financial and business records as well as the parallel records of Ace Museum and Ace New | Leslie Poster Dec. at ¶¶ 36-40. |

| | | | |
|---|---|---|---|
| | | York.  The Debtor's business records also included bank records, sales invoices, and other financial records of Ace Gallery New York Corporation ("Ace NYC"), and Ace Museum, a California corporation ("Ace Museum"), which were among the records that were reviewed. These records of these separate affiliated companies were among the records that were obtained by the Plan Agent, on or after April 6, 2016 | |
| | 10. | In addition, the Plan Agent became familiar with the basic business operations of Debtor, such as the form contracts used with artists, the accounting program, the procedures for invoicing purchasers, and other such ordinary course practices.  This included the sale of the Art Posters which are the subject of the current dispute between the parties, the Plan Agent and Douglas Chrismas. | Leslie Poster Dec. at ¶¶ 36-37. |
| | 11. | As a result of this analysis, the Plan Agent developed an extensive understanding of the Debtor's pre-petition and post-petition operations, including the details of the conversion of Debtor's assets that was carried out by Douglas Chrismas during his tenure controlling the Debtor's operations prior to and after the Effective Date. | Leslie Poster Dec. at ¶¶ 30-40. *See also,* Report and Recommendation of United States Bankruptcy Court that the United States District Court Adopt the Bankruptcy Court's Statement of Uncontroverted Facts and Conclusions of Law on Plaintiff's Motion for Summary Judgment on Plaintiff's Claims for Conversion and Breach of Fiduciary Duty against Defendant Douglas Chrismas and Grant Summary Judgment on These Claims, *Leslie v. Ace Gallery New York Corp. (In re Art and Architecture Books of the 21st Century),* No. 2:13-bk-14135-RK Chapter 11; Adv. No. 2:15-ap-01679-RK, 2022 WL 481880 (Bankr. C.D. Cal. Feb. 16, 2022), approved, No. CV 22-01265-PA, 2022 WL 1405660 (C.D. Cal. May 3, 2022). |

| 12. | Based on the Plan Agent's experience and on review of the undisputed business records of the Debtor, the Plan Agent concluded that the Art Posters were in fact inventory of the Debtor and proceeded to offer them for sale to the public in an auction to reduce the inventory and to generate funds needed for operating the Debtor. | Leslie Poster Dec. at ¶ 40. |

**Facts Leading to the Current Dispute over Ownership of the Art Posters**

| | **FINDING OF FACT** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 13. | The Confirmed Plan of Reorganization in this bankruptcy case specifically provided for the Plan Agent to sell the Debtor's artwork assets pursuant to the Plan.  The confirmed Plan of Reorganization provides as follows[4]: "Until a Plan Termination Event, if any, takes place (as that term is defined in the Confirmation Order), the rights, responsibilities and obligations of the Plan Agent shall, subject to the Plan and the provisions of the AERC Plan Term Sheet, include: (1) The Plan Agent shall immediately take possession of the Debtor's operating locations at 5514 Wilshire Boulevard, Los Angeles, California and 9400 Wilshire Boulevard, Beverly Hills, California and operate the galleries in the normal course of business; (2) The Debtor's employees who remain shall work for the Post-Confirmation Debtor and report to the Plan Agent; (3) The Plan Agent will have discretion to employ or not employ these parties as he/she sees fit; (4) The Plan Agent (i) will take possession of all of the Debtor's books and records including those located at its Los Angeles and Beverly Hills locations, and those which are in the possession of any third party, (ii) may employ such professionals as are necessary to enable him/her to carry out their responsibilities, (iii) notwithstanding the AERC Plan Term Sheet, shall communicate with Wilson/WASL, AERC and Chrismas, and their counsel, on a regular, as- | Plan Confirmation Order, Bankruptcy Case Docket No. 1873, pg. 7, ¶ 14, lines 12-28 (sometimes referred to herein as the "Plan Confirmation Order"); see also, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 1, lines 13-23. |

---

[4] References are to the "Motion of Sam Leslie as Plan Agent Under Confirmed Plan of Reorganization for:  (1) Issuance of Order to Show Cause for Contempt Against Douglas Chrismas, An Individual; (2) To Compel Douglas Chrismas to Issue Correspondence Retracting Letter Dated October 27, 2021 Addressed to Mr. Jeff Tanenbaum of ThreeSixty Asset Advisors as Well as Contents of October 27, 2021 Email from Jonathan Shenson, Esq. to Carolyn A. Dye, Esq and Victor A. Sahn, Esq.; Or In the Alternative (3) For Order Interpreting and Enforcing Terms and Conditions of Confirmation Order on Confirmed Plan of Reorganization of Official Committee of Unsecured Creditors; and (4) For Sanctions Against Douglas Chrismas, Individually Including Monetary Sanctions Declarations of Victor A. Sahn and Sam Leslie in Support of Motion" filed as Docket No. 2661 in this bankruptcy case (hereinafter referred to as the "Plan Agent Motion").

| | | | |
|---|---|---|---|
| 1<br>2 | | needed basis, and (iv) sell artwork vested in the Post-Confirmation Debtor in such manner as determined by the Plan Agent…;" | |
| 3<br>4<br>5<br>6<br>7<br>8<br>9 | 14. | The Plan Agent has retained the services of ThreeSixty Asset Partners and Mr. Jeff Tanenbaum of that firm to auction off certain artwork owned by the Debtor which artwork is specifically provided for in the confirmed Plan and the Plan Confirmation Order.  This artwork is the so-called Art Poster inventory ("Art Poster" or "Art Posters") which is made of up of many hundreds or thousands of Artwork Posters owned by the Debtor and transferred to Sam Leslie as Plan Agent pursuant to the confirmed Plan or Reorganization and the Plan Confirmation Order. | Declaration of Sam Leslie in Support of Order to Show Cause, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 23, ¶ 4, lines 2-7. |
| 10<br>11<br>12<br>13 | 15. | The Plan Agent's auctioneer hired an online auctioneer company who advertised the Artwork Posters for sale and was accumulating bids for the artwork under a deadline that bidders had to submit their bids.  The online auctioneer set a date of November 3, 2021 for bidders to submit their bids for those Art Posters that they wished to purchase. | Declaration of Sam Leslie in Support of Order to Show Cause, Plan Agent Motion, Docket No. 2661, pg. 23, ¶ 5, lines 8-15. |
| 14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26 | 16. | On October 27, 2021, several days before the scheduled deadline for submitting bids for the online auction sale, counsel for Douglas Chrismas, Jonathan Shenson, authored and sent the following email correspondence on behalf of his client to counsel for the Plan Agent, Victor Sahn and Carolyn Dye:<br><br>The text of the email from Jonathan Shenson dated October 27, 2021 at 2:07 p.m., Pacific Time, addressed to Carolyn Dye and Victor Sahn who are counsel to the Plan Agent stated:<br><br>"Victor & Carol,<br><br>It has come to my attention that 360 Asset Advisors is proceeding with a series of auctions to liquidate art assets in the debtor's possession with the first auction for posters already being advertised.  The advertisement misleadingly states these assets are being sold pursuant to an order of the bankruptcy court, presumably to wrongly imply that the assets are being sold free and clear of any claims or | Trial Exhibit P-24; [5] see also, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 2, lines 18-28, pg. 3, lines 1-8. |

27

28

---

[5] All of the Exhibits referred to in these Findings of Fact and Conclusions of Law were admitted by the Court into evidence.

| | | | |
|---|---|---|---|
| | | interests. As you know, my client contends he owns various art assets in the debtor's possession including the posters that were made prior to June 1999 are now being offered in the first auction (the "Disputed Assets") and my firm has an attorney's lien on any such assets. Please be advised that my client and I do not consent to the sale of any of the Disputed Assets. All rights and remedies are hereby reserved and preserved.<br><br>Thanks," (the "Shenson October 27 Email")<br><br>The Shenson October 27 Email takes the position that there is not an Order of the Bankruptcy Court permitting the sale free and clear of liens or interests. Further, the Shenson October 27 Email stated that Mr. Shenson's client (Mr. Chrismas) asserts an ownership interest in the Art Posters that are the subject of the November 3, 2021 Auction by the Plan Agent. Further, Mr. Shenson asserts an attorneys' lien on the Art Posters being sold by the Plan Agent's auctioneer. | |
| 17. | | Also, on October 27, 2021, Douglas Chrismas wrote and sent by email a letter to the Plan Agent's auctioneer, Jeff Tanenbaum. Mr. Chrismas in this letter asserted that the Plan Agent's Art Poster included property that belonged to Mr. Chrismas. The email from Mr. Chrismas to Mr. Tanenbaum transmitting the October 27, 2021 Letter stated:<br><br>"Mr. Tanenbaum,<br><br>Please find attached a letter regarding your upcoming auction of Ace Gallery's assets, a copy of my counter complaint contesting ownership of items that are offered for sale in your auction and an e-mail from my attorney to Sam Leslie's counsel.<br><br>Rest assured, if any of these items prior to June 1999 are sold we will pursue your company with the appropriate attorneys with rigor.<br><br>Douglas Chrismas" | Trial Exhibits P-25 and P-26; Declaration of Sam Leslie in Support of Order to Show Cause, Plan Agent Motion, Bankruptcy Case Docket No. 2661 ¶ 6, pg. 26, line 28, pg. 27, lines 1-26; Declaration of Victor A. Sahn in Support of Order to Show Cause, Plan Agent Motion, Bankruptcy Case Docket No. 2661 ¶ 6, pg. 18, lines 18-28; see also, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 3, ¶ 6. |
| 18. | | The October 27, 2021 letter from Douglas Chrismas to Mr. Tanenbaum, the Plan Agent's auctioneer, stated in pertinent part: | Trial Exhibit P-25; see also, Plan Agent Motion, Docket No. 2661, pg. 3, ¶ 6, lines |

| | | | 22-27. |
|---|---|---|---|
| | | "Any posters that had been printed after June 1999, Sam Leslie has the right to sell. Posters that had been created before June 1999, Sam Leslie does not have clear titles to, hence he cannot sell those free and clear of claims. If you have any artwork and/or posters that predates June 1999 you must have proof of ownership of such items evidenced by a purchase order etc. which gives you clear titles to the works offered at auction. Everything that predates June 1999 is subjected to my claim of ownership." | |
| 19. | | The assertion of ownership in the pre-1999 Art Posters by Douglas Chrismas in his October 27, 2021 correspondence to Jeff Tanenbaum, the Plan Agent's auctioneer, and Mr. Chrismas's counsel, Jonathan Shenson, to the Plan Agent's counsel, Victor Sahn and Carolyn Dye, is inconsistent with Mr. Chrismas's declaration under penalty of perjury filed in this bankruptcy case on August 5, 2013 in support of Debtor's motion to assume the master lease at 5500 Wilshire Boulevard, Los Angeles, California 90036, which identifies the Debtor's Art Poster inventory as including the pre-1999 Art Posters.<br><br>That is, Mr. Chrismas's August 5, 2013 Declaration describes the exact same Art Posters which are the subject of the Plan Agent's efforts to sell through Mr. Tanenbaum and his auction company. The Art Posters, according to this Declaration of Mr. Chrismas, were extremely valuable bankruptcy estate property worth, according to Mr. Chrismas (who described himself in the declaration as an expert on the value of artwork) $13 million at wholesale prices ($26 million retail value). Mr. Chrismas's August 2013 declaration was offered by the Debtor in evidence at the trial on the Debtor's motion to assume the lease for the purpose of satisfying at the time the Debtor's burden to show that it could provide its landlord, AERC-Desmond Tower, LLC, with adequate protection of its lease to the Debtor of the real property located at 5500 Wilshire Boulevard, Los Angeles, California by showing it had sufficient assets to make good on its lease obligations. Debtor at the time was the tenant under a lease with AERC-Desmond Tower. This Declaration of Mr. Chrismas was submitted in response to AERC's position that the Debtor was not satisfying its burden to provide AERC with "…adequate assurance of future performance…" as required under 11 U.S.C. § 365(b)(1)(C). Mr. Chrismas's August 5, | Trial Exhibit P-22; Declaration of Victor A. Sahn in Support of Order to Show Cause, Plan Agent Motion, Bankruptcy Case Docket No. 2661, ¶ 5, pg. 19, lines 8-28, pg. 20, lines 1-3; Direct Valuation Testimony of Douglas Chrismas in Support of Debtor's Motion Assume Master Lease for Real Property at 5500 Wilshire Blvd., Los Angeles, CA 90036 ("Direct Valuation Declaration" or "Chrismas Declaration"), Bankruptcy Case Docket No. 266; see also, Plan Agent Motion, Bankruptcy Case Docket No. 2661, ¶ 7, pg. 4, lines 8-24. |

| | | 2013 Declaration attesting to the Debtor's ownership and valuation of the Art Posters is Docket No. 266 in the Debtor's bankruptcy case filed on August 5, 2013. | |
| --- | --- | --- | --- |
| 20. | | Douglas Chrismas in his August 5, 2013 declaration stated under penalty of perjury that the pre-1999 Art Posters were owned by the Debtor. Specifically, in his declaration entitled Direct Valuation Testimony of Douglas Chrismas in Support of Debtor's Motion [to] Assume Master Lease for Real Property at 5500 Wilshire Boulevard, Los Angeles, CA 90036, Mr. Chrismas stated as follows: | Trial Exhibit P-22; Exhibit 6 to Plan Agent Motion, Bankruptcy Case Docket No. 2661, Bates-Stamped pgs. 061-068, especially Bates-Stamped pg. 065, lines 6-12, citing and quoting, Direct Valuation Testimony of Douglas Chrismas in Support of Debtor's Motion to Assume Master Lease for Real Property at 5500 Wilshire Blvd., Los Angeles, California 90036, Bankruptcy Case Docket No. 266. |

"I, Douglas Chrismas, declare as follows:

1. I am the President of Art And Architecture Books Of The 21st Century, dba Ace Gallery, chapter 11 debtor and debtor-in-possession (the 'Debtor'). As President of the Debtor, I am involved in virtually all aspects of the Debtor's operations and financial condition. I am also the Director and Chief Curator of the Debtor. 2. This Declaration is submitted as my direct valuation testimony of the Debtor's contemporary art work, including posters, in connection with the trial on the Debtor's Motion to Assume Master Lease as to the real property located at 5500 Wilshire Boulevard, Los Angeles, CA 90036.

***

13. During February, March, and April 2013, my staff and I also undertook the task of compiling an inventory of the Debtor's posters. I inspected and evaluated the Debtor's poster collection and formed the opinion that the Debtor's poster collection is worth in excess of $26 million at retail prices. The Debtor is marketing and selling these posters to museums, poster stores, and other galleries that engage in retail sales of posters. The wholesale value of the poster collection is in excess of of $13 million. A true and correct copy of the poster inventory (Trial Exhibit 53) is attached as Exhibit 1.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 5, 2013 at Los Angeles, California.

Leslie Poster Dec., ¶¶ 2 and 3 and Exhibits 2 and 3 attached thereto.

*See* Russell, *Bankruptcy Evidence Manual,* § 801.12 (online edition, November 2021 update), *citing inter alia,* Federal Rule of Evidence 801(d)(2).

| | | | |
|---|---|---|---|
| 1 | | /s/ DOUGLAS CHRISMAS" | |
| 2 | | Exhibit 1 to this Declaration entitled Ace Gallery Poster Inventory "2.15.13" (i.e., February 15, 2013) listed a total of 62,500 art posters, including the pre-1999 Art Posters, which are at issue in these disputed litigation matters. | |
| 3 | | | |
| 4 | | | |
| 5 | | The Bankruptcy Court finds that Mr. Chrismas's statements in this declaration filed in this bankruptcy case under penalty of perjury are evidentiary admissions constituting relevant and admissible substantive evidence probative of ownership of the pre-1999 Art Posters and support a finding that the Debtor, not Mr. Chrismas, owns the pre-1999 Art Posters | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | 21. | Douglas Chrismas in his August 5, 2013 Declaration identified the Debtor's Art Poster inventory as an exhibit to his declaration (Exhibit 1), which listed a total of 62,500 Art Posters which were the subject of his expert valuation at $26 million retail value. These are the Art Posters and no others which the Plan Agent seeks to sell through his auction.  Exhibit 1 to the Chrismas August 5, 2013 Declaration identified numerous Art Posters that predate the year 1999. There are a number of "Andy Warhol" Posters, nine rows of them, constituting 4,672 posters which are dated in 1976 and 1977. There are approximately 10 rows of posters of Robert Rauschenberg from 1977, 1978, 1980 and 1989 totaling 12,110 Art Posters. Following the Rauschenberg Art Posters are five rows of Robert Smithson Art Posters totaling approximately 106 Art Posters. There are 3,293 Art Posters from the artist Roy Lichtenstein which are dated in 1979 and right after that single row, another 2,496 Art Posters from the artist Sam Francis which are dated in 1979. There are other Art Posters interspersed through Exhibit 1 to the Chrismas August 5, 2013 Declaration which predate 1999 and which were included by Mr. Chrismas in his August 5, 2013 Declaration attesting these Art Posters were valued as the Debtor's property by him under penalty of perjury. | Trial Exhibit P-22; see also, Reply of Sam Leslie, Plan Agent, to Response to Order to Show Cause Why Douglas Chrismas Should Not Be Held in Contempt of Court for Violations of the Order Confirming Second Amended Plan of the Official Committee of Unsecured Creditors ("Leslie Reply"), Bankruptcy Case Docket No. 2672, pg. 2, lines 23-26, pg. 3, lines 1-15. |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | 22. | The Plan Agent is seeking to sell the Art Posters which are the same Art Posters as described in the Chrismas Declaration of August 5, 2013 valuing these poster's property worth $13 Million valuation at wholesale value. | Leslie Reply, pg. 4, ¶ 2, lines 18-20. |
| 26 | | | |
| 27 | | | |
| 28 | 23. | On January 6, 2016, when the Debtor was under the control of Douglas Chrismas, the Debtor filed | Debtor's Amended Plan of Reorganization, Bankruptcy |

| | | | |
|---|---|---|---|
| | | an Amended Plan of Reorganization filed in this Bankruptcy Case on January 6, 2016 which referred to its Art Posters, as follows: "**1.68 Owned Posters**. Any posters owned by the Debtor, which is not an Owned Artwork or Consigned Artwork." [6]<br><br>Douglas Chrismas signed the Debtor's Amended Plan of Reorganization filed on January 6, 2016 on behalf of the Debtor as its president. | Case Docket No. 1572, pg. 10, lines 20-21.<br><br>Finding of Fact No. 1 above. |
| 24. | | The Debtor's Amended Plan of Reorganization filed on January 6, 2016 on behalf of Debtor's management (i.e., Douglas Chrismas) further provided that the plan would be funded from the Debtor's sales of artwork, including its Art Posters referred tp as the "Owned Posters" in Section 1.68 of the plan as stated as follows:<br><br>"**5.5 Funding for the Plan.**   Distributions to holders of allowed claims will be funded primarily from the following sources:<br><br>\*\*\*<br><br>(g) the net proceeds received from the Reorganized Debtor's sale and monetization of the Owned Artwork, the Consigned Artwork, and the Owned Posters, including, but not limited to, any Owned Artwork, Consigned Artwork, or Owned Posters released to the Reorganized Debtor after payment of secured creditors with liens against such Owned Artwork, Consigned Artwork, or Owned Posters in accordance with the Plan, regardless of whether the proceeds are received prior or subsequent to the Effective Date, the Confirmation Date, or the Confirmation Order". | Debtor's Amended Plan of Reorganization, pg. 29, lines 9-18, Bankruptcy Case Docket No. 1572.<br><br>Finding of Fact No. 1 above. |
| 25. | | The Disclosure Statement accompanying the Debtor's Amended Plan of Reorganization filed on January 6, 2016 on behalf of Debtor's management (i.e., Douglas Chrismas) referred to the Debtor's Art Posters, the "Owned Posters," describing them in the same way as the Art Poster Inventory described in the August 5, 2013 Declaration of Douglas Chrismas, having a | Debtor's Disclosure Statement, pg. 8, lines 6-10, Bankruptcy Case Docket No. 1573.<br><br>Finding of Fact No. 1 above. |

---

[6] This Amended Plan of Reorganization filed by the Debtor was the proposal of Debtor's management headed by Douglas Chrismas, which made it essentially Mr. Chrismas's plan as he controlled the Debtor.  This plan was the Debtor's proposal to its creditors for its reorganization.  However, the Debtor's plan was not the one confirmed by the Bankruptcy Court.

| | | wholesale value of $13 million and a retail value of $26 million: | |
|---|---|---|---|
| | | "Additionally, during February, March, and April 2013, the Debtor also undertook the task of compiling an inventory of the Debtor's posters (the "Owned Posters"). The Debtor's principal [Douglas Chrismas] inspected and evaluated the Debtor's Owned Poster collection and formed the opinion that the Debtor's Owned Poster collection is worth in excess of $26 million at retail prices. The Debtor believes that the wholesale value of the poster collection is in excess of $13 million." | |
| | 26. | The Debtor stated in its Disclosure Statement for its Amended Plan of Reorganization filed on January 6, 2016 that its valuation of its "Owned Posters" was $13 Million.  At the time that Debtor filed this Disclosure Statement, the Debtor was under the control of Douglas Chrismas. | Debtor's Disclosure Statement, Bankruptcy Case Docket No. 1573, pg. 8, line 19. Finding of Fact No. 1 above. |
| | | The statements in the Debtor's Amended Plan of Reorganization and Disclosure Statement subscribed to by Douglas Chrismas support a finding that the Debtor's "Owned Posters" refer to the same Art Posters referred to in his prior August 5, 2013 Declaration describing the pre-1999 Art Posters as included in the Debtor's Art Poster Inventory, thus owned by the Debtor, not by Mr. Chrismas.  The purpose of identifying the Debtor's Art Posters in its Amended Plan of Reorganization and Disclosure was to show that the Art Posters were available for sale to fund the Debtor's Plan of Reorganization to demonstrate the feasibility of the Debtor's Plan in order for the Plan to be confirmed pursuant to 11 U.S.C. § 1129. | |
| | 27. | On October 28, 2021, the Plan Agent's lawyer, Victor A. Sahn, wrote an email to Jonathan Shenson, the lawyer for Douglas Chrismas, insisting that Shenson withdraw his October 27, 2021 email demanding that the Art Posters not be sold in consideration of information in the Direct Valuation Declaration and the Debtor's Chapter 11 Plan and Disclosure Statement. | Trial Exhibit P-27; see also, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 6, ¶ 8, lines 1-3. |
| | 28. | On Friday morning, October 29, Mr. Shenson, Chrismas's counsel, wrote the following email to Mr. Sahn, the Plan Agent's counsel: "Victor, | Trial Exhibit P-29; see also, Plan Agent Motion, Bankruptcy Case Docket No. 2661, ¶ 8, pg. 6, lines 2-11, and Exhibit 8, bates-stamped pg. 200. |

| | | I am withdrawing the statements made in my email to you and Carol on October 27, 2021 at 2:07 pm (below). Thanks, Jonathan S. Shenson Shenson Law Group PC 1901 Avenue of the Stars, Suite 1000 Los Angeles, CA 90067 Main: 310-400-5858 Direct: 424-233-0698 www.shensonlawgroup.com" | |
|---|---|---|---|
| | 29. | At the time of exchange of correspondence between Mr. Shenson and Mr. Sahn in Exhibits 5 and 8 to the Plan Agent Motion, the Plan Agent's counsel was not aware of Mr. Chrismas's direct correspondence to the Plan Agent's auctioneer on October 27 (Exhibit 3 to the Plan Agent Motion). As a result, an email was sent to Mr. Shenson on October 29, 2021 at 12:33 p.m. in which Mr. Sahn stated: "Jonathan, Thank you for your email withdrawing your statements made to Carolyn Dye and me regarding the auction of the posters. Attached is a letter that Mr. Chrismas wrote directly to the auctioneer. We need a withdrawal of that letter in its entirety, by 2:00 p.m., from Mr. Chrismas and you as you were copied on the correspondence. Victor." | Trial Exhibit P-30; see also, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 6, ¶ 8, lines 13-22. Exhibits 3, 5 and 8 to Plan Agent Motion, Bankruptcy Court Docket No. 2661. |
| | 30. | Mr. Shenson promptly responded to Mr. Sahn's email request and wrote an email which stated: "I did not receive a copy of the letter sent to Tannenbaum. I have asked Douglas to withdraw the letter ASAP and no later than 2 pm." | Trial Exhibit P-31; see also, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 6, ¶ 9, lines 25-27, and Exhibit 10 attached thereto, bates-stamped pg. 202. |
| | 31. | Douglas Chrismas claimed the Art Posters as his own personal property and not as the Debtor's property.  This is evident from the correspondence described above between Mr. Chrismas and his lawyer, Jonathan Shenson, and the Plan Agent, his auctioneer, Jeff Tanenbaum, and his lawyer, Victor Sahn. On November 1, 2021, Mr. Sahn wrote a clarifying email to Mr.Shenson which stated the following: | Trial Exhibit P-37; see also, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 8, ¶ 13; lines 16-22, and Exhibit 16 attached thereto, bates-stamped pg. 209. |

| | | | |
|---|---|---|---|
| 1 | | "Jonathan,<br><br>For the purpose of clarity, I want to be clear that your client is not withdrawing his correspondence dated October 27, 2021 addressed to Jeff Tanenbaum of which I attach a copy to this correspondence. I want to further be clear that this refusal applies to any art that Mr. Tanenbaum proposes to sell including the Art Posters which have been the subject of our recent communications.<br><br>Thank you."<br><br>Subsequently, the Plan Agent filed his motion to hold Mr. Chrismas in contempt.<br><br>On November 19, 2021, Mr. Chrismas filed a written response to the order to show cause issued on the Plan Agent's contempt motion, claiming ownership of the Art Posters.  In his response to the order to show cause on the Plan Agent Motion, Mr. Chrismas asserted: "The Adversary [Proceeding] will ultimately resolve the question of who owns the Art Posters predating June 18, 1999. If the Plan Agent sells them prior to any such resolution, he does so at his peril."  In other words, Mr. Chrismas asserted that the Bankruptcy Court should adjudicate the issue of ownership first in the above-captioned adversary proceeding. | Findings of Fact Nos. 14-28 described above.<br><br>Plan Agent Motion, Bankruptcy Case Docket No. 2661.<br><br>Response of Douglas Chrismas to Order to Show Cause, Bankruptcy Case Docket No. 2671. |
| 32. | | The Plan Agent in his motion asks that the Bankruptcy Court interpret the confirmed Plan of Reorganization and the other Exhibits attached to the Plan Agent Motion, most specifically the Order Confirming the Plan of Reorganization in this Chapter 11 bankruptcy Case, the Direct Valuation Declaration and Exhibit 1 to that Declaration, which identifies the inventory of Art Posters which the Plan Agent is endeavoring to sell and that the Plan Agent may continue forward with that sale based upon a determination that the Art Posters are the Debtor's Property. | Plan Agent Motion, pg. 9, subparagraph C, lines 3-8; Direct Valuation Testimony of Douglas Chrismas in Support of Debtor's Motion Assume Master Lease for Real Property at 5500 Wilshire Blvd., Los Angeles, CA 90036, Bankruptcy Case Docket No. 266. |

1

2 __Findings of Fact Regarding Prior Sales of Art Posters by the Debtor Which Are the Subject__

3 __of this Dispute as Set Forth in the "Declaration of Sam Leslie In Support of: (1) Motion for
Order to Show Cause Re: Contempt for Violation of Terms and Conditions of Confirmed__

4 __Plan of Reorganization; and (2) To Enforce Terms and Conditions of Confirmed
Reorganization Plan" (Docket No. 2688 in Bankruptcy Case)__

5

| | FINDING OF FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 33. | The document entitled "Ace Gallery Poster Inventory 2.15.13" attached as Exhibit 1 to Declaration of Sam Leslie in Support of the Plan Agent Motion (also, Trial Exhibit P-1) is the Debtor's Art Poster Inventory as of February 15, 2013, as identified by Douglas Chrismas in his declaration under penalty of perjury filed in this bankruptcy case on August 5, 2013 (Bankruptcy Case Docket No. 266).  The document is credible evidence which supports the Plan Agent's position that the Art Posters which are the subject of the current dispute between the parties all constitute the Debtor's property which the Plan Agent may sell under the confirmed Plan of Reorganization in this Bankruptcy Case.<br><br>This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment.<br><br>The court infers from these circumstances that this document dated February 15, 2013 was a business record of the Debtor created and used for the Debtor as its inventory of owned art posters while under the control of Douglas Chrismas before the Debtor filed its bankruptcy petition in this case on February 19, 2013. | Trial Exhibit P-1; Exhibit 1 to Leslie Poster Dec., Bankruptcy Case Docket No. 2688, ¶¶ 2, 3, 28-40, and Exhibit 1 attached thereto.<br><br>Direct Valuation Testimony of Douglas Chrismas in Support of Debtor's Motion [to] Assume Master Lease for Real Property at 5500 Wilshire Blvd., Los Angeles, CA 90036 and Exhibit 1 attached thereto. Bankruptcy Case Docket No. 266.<br><br>Finding of Fact No. 1 above. |
| 34. | Debtor's books and records included another document listing its inventory of its owned Art Posters (Trial Exhibit P-2 filed as Exhibit 2 to the Leslie Poster Declaration).  The discovery of this inventory is derived from the investigative work done by the Plan Agent and his staff and is a document taken from the regularly maintained books and records of the Debtor. This inventory is dated April 23, 2013, approximately two months after the Debtor's Chapter 11 bankruptcy petition was filed and about four months prior to the Declaration of Douglas Chrismas dated | Trial Exhibit P-2; Leslie Poster Dec., ¶¶ 3, 4, 28-40 and Exhibit 2 attached thereto.<br><br>Finding of Fact No. 1 above. |

| | | | |
|---|---|---|---|
| | | August 5, 2013 (Bankruptcy Case Docket No. 266 in the Bankruptcy Case) which valued the same Art Posters at $13 Million (*see* Bankruptcy Case Docket No. 2682, pages 16 of 65, Bates stamped page no. 15, lines 25-26). The document is the Debtor's own inventory of the Art Posters which further substantiates the Art Posters as the Debtor's property, which inventory was prepared by and for the Debtor during the time the Debtor was under Mr. Chrismas's control after the Debtor filed its bankruptcy petition in this case and before the Effective Date of the Plan of Reorganization. | |
| | 35. | As a regular part of its business, Debtor sold Art Posters, including the pre-1999 Art Posters, as shown by Trial Exhibit P-3 filed as Exhibit 3 to the Leslie Poster Declaration, which is a blank invoice/bill of sale entitled "Ace Gallery Poster Sales" on the Debtor's stationery showing the availability for purchase of all of the same posters that were identified as the Debtor's posters in the Declaration of Douglas Chrismas dated August 5, 2013 and Exhibit 1 attached thereto, Bankruptcy Case Docket No. 266, discussed above, and contains the same posters as are shown on the Debtor's inventory of its Art Posters from April 2013 which is attached hereto as Exhibit 2 to the Leslie Poster Declaration.<br><br>This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment.<br><br>Although the document is an undated blank invoice/bill of sale, the court infers from these circumstances that the document was a business record of the Debtor created and used by the Debtor to sell the Art Posters in the regular conduct of its business while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy | Trial Exhibit P-3; Leslie Poster Dec., ¶¶ 3, 5, 28-40, and Exhibit 3 attached thereto. [7]<br><br>Direct Valuation Testimony of Douglas Chrismas in Support of Debtor's Motion [to] Assume Master Lease for Real Property at 5500 Wilshire Blvd., Los Angeles, CA 90036 and Exhibit 1 attached thereto. Bankruptcy Case Docket No. 266.<br><br>Finding of Fact No. 1 above. |

[7]  In paragraph 5 of his declaration, the Plan Agent referred to forensic accounting investigative work of him and his staff in the preceding paragraphs of his declaration as "described above," but in paragraph 3 of the declaration, he stated that he "will leave the facts which verify the veracity and provenance of the records described below until the end of this Declaration" (i.e., paragraphs 28-40).  Thus, the declaration is a little confusing and circuitous in describing the work of the Plan Agent and his staff in authenticating business records of the Debtor, including this blank invoice/bill of sale form for the Art Posters.

| | | case. | |
|---|---|---|---|
| 36. | | Debtor actually sold pre-1999 Art Posters in the regular course of its business as shown by Trial Exhibit P-4 filed as Exhibit 4 to the Leslie Poster Declaration, which is an invoice showing a sale of the Debtor's inventory of Art Posters. Exhibit 4 is a completed sales invoice and bill of sale of one of Debtor's Art Posters to Gordon Anderson. This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank. This poster was from a work by Robert Rauschenberg created in 1977, a poster that was created prior to 1999 which are the Art Posters now claimed by Mr. Chrismas in these proceedings. | Trial Exhibit P-4; Leslie Poster Dec., ¶¶ 3, 6, 28-40 and Exhibit 4 attached thereto. Finding of Fact No. 1 above. |
| | | This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration. Each of these is written on the stationery of the Debtor. This sale further evidences that Debtor has sold the Art Posters that Mr. Chrismas now says constitute his property in these proceedings. | |
| | | This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment. | |
| | | Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| 37. | | Another sale by the Debtor of the pre-1999 Art Posters is shown by Trial Exhibit P-5 filed as Exhibit 5 to the Leslie Poster Declaration, which is an invoice and bill of sale for two Art Posters from two works by Robert Rauschenberg created in 1977, posters which were created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas as owned by him. They were sold to Mr. Robert Riskin in Greenwich, Connecticut. This document is on the Debtor's | Trial Exhibit P-5; Leslie Poster Dec., ¶¶ 3, 7, 28-40 and Exhibit 5 attached thereto. Finding of Fact No. 1 above. |

| | | | |
|---|---|---|---|
| | | stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration.  This sale further evidences that Debtor has sold the Art Posters that Mr. Chrismas now says constitute his property in these proceedings. This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank. | |
| | | This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment. | |
| | | Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| 38. | | A further sale of the pre-1999 Art Posters by the Debtor is shown by Trial Exhibit P-6 filed as Exhibit 6 to the Leslie Poster Declaration, which is an invoice and bill of sale for two Art Posters from two works by Robert Rauschenberg created in 1977, posters which were created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings.  They were sold to Mr. Christopher Bridgeman in Norfolk, Virginia.  This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration.  This sale further evidences that Debtor has sold the Art Posters that Mr. Chrismas now says constitute his property in these proceedings.  This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank. | Trial Exhibit P-6; Leslie Poster Dec., ¶¶ 3, 8, 28-40 and Exhibit 6 attached thereto.

Finding of Fact No. 1 above. |
| | | This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment. | |
| | | Although the document is a completed but | |

| | | | |
|---|---|---|---|
| | | undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| | 39. | A further example of the Debtor's sales of the pre-1999 Art Posters is shown by Trial Exhibit P-7 filed as Exhibit 7 to the Leslie Poster Declaration, which is an invoice and bill of sale for one Art Poster from a work by Andy Warhol created in 1976, a poster which was created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings. It was sold to Mr. Joseph Eagleeye in Carefree, Arizona. This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration. This sale further evidences that Debtor has sold the Art Posters that Mr. Chrismas now says constitute his property in these proceedings.<br><br>This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment.<br><br>Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | Trial Exhibit P-7; Leslie Poster Dec., ¶¶ 3, 9, 28-40 and Exhibit 7 attached thereto.<br><br>Finding of Fact No. 1 above. |
| | 40. | An additional sale of the pre-1999 Art Posters by the Debtor is shown by Trial Exhibit P-8 filed as Exhibit 8 to the Leslie Poster Declaration, which is an invoice and bill of sale for one Art Poster from a work by Andy Warhol created in 1977, a poster which was created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in this proceeding. It was sold to Mr. Ken Stephens of Vancouver, British Columbia. | Trial Exhibit P-8; Leslie Poster Dec., ¶¶ 3, 10, 28-40 and Exhibit 9 attached thereto.<br><br>Finding of Fact No. 1 above. |

| | | This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration.  This sale further evidences that Debtor has sold the Art Posters that Mr. Chrismas now says constitute his property in these proceedings.  This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank.

This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment.

Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| 41. | Another sale by the Debtor of a pre-1999 Art Poster is shown by Trial Exhibit P-9 filed as Exhibit 9 to the Leslie Poster Declaration, which is an invoice and bill of sale for one Art Poster, from Ed Moses created in 2012. [8]  It was sold to Mr. Bradley Ward c/o Access Worldwide of North Charleston, South Carolina.  It is not a pre-1999 Art Poster which Douglas Chrismas claims ownership.  This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration, which lists both pre- and post-1999 Art Posters available for sale by the Debtor.  This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank.

This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took | Trial Exhibit P-9; Leslie Poster Dec., ¶¶ 3, 11 28-40 and Exhibit 9 attached thereto.

Finding of Fact No. 1 above. |

[8] Mr. Chrismas does not claim ownership of Art Posters created after the Debtor was formed in 1999, such as this poster by Ed Moses created in 2012, which he agrees is owned by the Debtor. However, what is probative is that the Debtor's invoice/bill of sale form lists both pre- and post-1999 Art Posters for sale, which indicates the Debtor's ownership of the Art Posters.

| | | | |
|---|---|---|---|
| | | over the Debtor's business upon the effective date of his appointment.<br><br>Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| | 42. | Another documented sale of a pre-1999 Art Poster by the Debtor is shown by Trial Exhibit P-10 filed as Exhibit 10 to the Leslie Poster Declaration, which is an invoice and bill of sale for one Art Poster from a work by Robert Rauschenberg created in 1977, a poster which was created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings.  It was sold to Mr. Pablo Perez Pineiro of Weehawken, New Jersey.  This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration. This sale further evidences that Debtor has sold the Art Posters that Mr. Chrismas now says constitute his property in these proceedings.  This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank.<br><br>This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment.<br><br>Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | Trial Exhibit P-10; Leslie Poster Dec., ¶¶ 3,12, 28-40 and Exhibit 10 attached thereto. |
| | 43. | Another sale evidencing the Debtor's sales of pre-1999 Art Posters is shown by Trial Exhibit P-11 filed as Exhibit 11 to the Leslie Poster Declaration, which is an invoice and bill of sale | Trial Exhibit P-11; Leslie Poster Dec., ¶¶ 3, 13, 28-40 and Exhibit 11 attached |

| | | | |
|---|---|---|---|
| | | for one Art Poster from a work by Robert Rauschenberg created in 1977, a poster which was created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings.  It was sold to Mr. Christopher Bridgeman of Norfolk, Virginia. This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to this Court in Exhibit 3 to the Leslie Poster Declaration.  This sale further evidences that Debtor has sold the Art Posters that Mr. Chrismas now says constitute his property in these proceedings.   This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank. | thereto. Finding of Fact No. 1 above. |
| | | This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment. | |
| | | Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| | 44. | Another sale by the Debtor of a pre-1999 Robert Rauschenberg Art Poster is shown by Trial Exhibit P-12 filed as Exhibit 12 to the Leslie Poster Declaration, which is an invoice and bill of sale for one Art Poster from a work by Robert Rauschenberg created in 1977, a poster which was created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings.  It was sold to Mr. James Yelland of Melbourne, Australia.  This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to this Court in Exhibit 3 to the Leslie Poster Declaration.  This sale further evidences that the Debtor has sold the same Art Posters that Mr. Chrismas now says constitute his property in these proceedings.  This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank. | Trial Exhibit P-12; Leslie Poster Dec., ¶¶ 3, 14, 28-40 and Exhibit 12 attached thereto. Finding of Fact No. 1 above. |
| | | This document is from the books and records of the Debtor that was discovered by the Plan Agent | |

| | | | |
|---|---|---|---|
| | | and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment. Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| | 45. | An additional sale of a pre-1999 Robert Rauschenberg Art Poster by the Debtor is shown by Trial Exhibit P-13 filed as Exhibit 13 to the Leslie Poster Declaration, which is an invoice and bill of sale for one Art Poster from a work by Robert Rauschenberg created in 1977, a poster which was created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings.  It was sold to Mr. Michael Lalor of Dublin, Ireland.  This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to this Court in Exhibit 3 to the Leslie Poster Declaration.  This sale is further evidence that Debtor has sold the same Art Posters that Mr. Chrismas now says constitute his property in these proceedings.  This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank. This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment. Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | Trial Exhibit P-13; Leslie Poster Dec., ¶ 3, ¶ 15, 28-40 and Exhibit 13 attached thereto. Finding of Fact No. 1 above. |
| | 46. | A further sale of pre-1999 Art Posters by the Debtor is shown by Trial Exhibit P-14 filed as | Trial Exhibit P-14; Leslie Poster Dec., ¶¶ 3, 16, 28-40 |

| | | | |
|---|---|---|---|
| 1 through 17 | | Exhibit 14 to the Leslie Poster Declaration, which is an invoice and bill of sale for one Art Poster from a work by Dennis Hopper created in 2006.  It is not a pre-1999 Art Poster which Douglas Chrismas claims ownership.  It was sold to Mr. Richard Pajuelo of Los Angeles, California.  This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration, which lists both pre- and post-1999 Art Posters available for sale by the Debtor.  This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank.<br><br>This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment.<br><br>Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | and Exhibit 14 attached thereto.<br><br>Finding of Fact No. 1 above. |
| 18 through 28 | 47. | Another sale of a pre-1999 Art Poster by the Debtor is shown by Trial Exhibit P-15 filed as Exhibit 15 to the Leslie Poster Declaration, which is an invoice and bill of sale for one Art Poster from a work by Robert Rauschenberg created in 1977, a poster which was created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings.  It was sold to Mr. Thomas Heidig of Basel, Switzerland.  This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration.  This sale further evidences that Debtor has sold the Art Posters that Mr. Chrismas now says constitute his property in these proceedings.  This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank.<br><br>This document is from the books and records of the Debtor that was discovered by the Plan Agent | Trial Exhibit P-15; Leslie Poster Dec., ¶¶ 3, 17, 28-40 and Exhibit 15 attached thereto.<br><br>Finding of Fact No. 1 above. |

| | | | |
|---|---|---|---|
| | | and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment. | |
| | | Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| | 48. | Yet another sale of a pre-1999 Art Poster by Robert Rauschenberg is shown by Trial Exhibit P-16 filed as Exhibit 16 to the Leslie Poster Declaration, which is an invoice and bill of sale for one Art Poster from a work by Robert Rauschenberg created in 1977, a poster which was created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings.  It was sold to Lillian Lowe and Peter Lowe of Victoria, Australia.  This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration.  This sale is additional evidence that Debtor has sold the same Art Posters that Mr. Chrismas now says constitute his property in these proceedings.  This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank. | Trial Exhibit P-16; Leslie Poster Dec., ¶ 3, 18, 28-40 and Exhibit 16 attached thereto. Finding of Fact No. 1 above. |
| | | This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment. | |
| | | Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| | 49. | A further sale by the Debtor of a pre-1999 Art | Trial Exhibit P-17; Leslie |

| | | | |
|---|---|---|---|
| | | Poster by Robert Rauschenberg is shown by Trial Exhibit P-17 filed as Exhibit 17 to the Leslie Poster Declaration, which is an invoice and bill of sale for one Art Poster from a work by Robert Rauschenberg created in 1977, a poster which was created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings. It was sold to Mr. Krishna Kumar, Ph.D of Cambridge, Massachusetts. This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to this Court in Exhibit 3 to the Leslie Poster Declaration. This sale is additional evidence of a sale by the Debtor of the pre-1999 Art Posters that Mr. Chrismas says constitute his property in connection with the Order to Show Cause and Motion to Interpret the confirmed Plan of Reorganization in this bankruptcy case. This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank. | Poster Dec., ¶¶ 3, 19, 28-40 and Exhibit 17 attached thereto.<br><br>Finding of Fact No. 1 above. |
| | | This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment. | |
| | | Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| | 50. | Additional sales of pre-1999 Art Posters by the Debtor is evidenced by Trial Exhibit P-18 filed as Exhibit 18 to the Leslie Poster Declaration, which is an invoice and bill of sale for three Art Posters, one each from three works by Andy Warhol, two works from 1976 and one work from 1977, all posters which were created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings. These posters were sold to Mr. William McNally of Los Angeles, CA. This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration. This is further evidence that Debtor has sold the same Art Posters that Mr. | Trial Exhibit P-18; Leslie Poster Dec., ¶¶ 3, 20, 28-40 and Exhibit 18 attached thereto.<br><br>Finding of Fact No. 1 above. |

| | | | |
|---|---|---|---|
| | | Chrismas now says constitute his property in these proceedings. This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank. | |
| | | This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment. | |
| | | Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| 51. | | Another sale of pre-1999 Art Posters by the Debtor is shown by Trial Exhibit P-19 filed as Exhibit 19 to the Leslie Poster Declaration, which is an invoice and bill of sale for one Art Poster, from Andy Warhol which is dated in 1977, a poster which was created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings. The poster was sold to Mr. David M. Kettner of New York City. This document is on the Debtor's stationery and is from the same invoice/bill of sale form as was submitted to the Bankruptcy Court in Exhibit 3 to the Leslie Poster Declaration. This sale also shows that Debtor has sold the same Art Posters that Mr. Chrismas now says constitute his property in these proceedings. This poster sale was paid for and the funds were deposited into the Debtor's bank account at City National Bank. | Trial Exhibit P-19; Leslie Poster Dec., ¶¶ 3, 21, 28-40 and Exhibit 19 attached thereto. <br><br> Finding of Fact No. 1 above. |
| | | This document is from the books and records of the Debtor that was discovered by the Plan Agent and his staff during their investigation of the Debtor's operations when the Plan Agent took over the Debtor's business upon the effective date of his appointment. | |
| | | Although the document is a completed but undated invoice/bill of sale of Art Posters, the court infers from these circumstances that the document was a business record of the Debtor created and used for the Debtor while under the | |

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | control of Douglas Chrismas before the Effective Date of the Plan of Reorganization in this bankruptcy case and reflects an actual sale of art posters owned by the Debtor for its own account. | |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20 | 52. | Further evidence of the Debtor's sales of pre-1999 Art Posters is shown by Trial Exhibit P-20 filed as Exhibit 20 to the Leslie Poster Declaration, which is an invoice and bill of sale for sixty Art Posters by the Debtor, dated September 13, 2012.  There are five posters of each of five works by Andy Warhol, five posters of one work by Robert Lichtenstein, five posters of each of five works by Robert Rauschenberg, five posters of one work by Sam Francis.  These twelve groups of five Art Posters are from works dating from 1976, 1977, 1978, 1979, 1980 and 1989, all of these works were created prior to 1999 which are the Art Posters now claimed by Douglas Chrismas in these proceedings.  They were sold to Rare Posters located in Brooklyn, New York.  Rare Posters paid a total of $16,900.00 for these sixty (60) Art Posters.  This document is on the Debtor's stationery that it used for art sales.  This invoice is signed by Douglas Chrismas as "Director and Chief Curator" of Ace Gallery Los Angeles, the Debtor's business name, and dated "Sep 13/12." These sales also shown that the Debtor has sold the same Art Posters that Mr. Chrismas now says constitute his property in these proceedings.  These poster sales were paid for and the funds were deposited into the Debtor's bank account at City National Bank.  The Debtor was under the control of Douglas Chrismas at the time of these poster sales, which occurred before the Debtor filed its bankruptcy petition in this case. | Trial Exhibit P-20; Leslie Poster Dec., ¶¶ 3, 22, 28-40 and Exhibit 20 attached thereto.<br><br>Finding of Fact No. 1 above. |
| 21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 53. | Additional sales of pre-1999 Art Posters by the Debtor is shown by Trial Exhibit P-21 filed as Exhibit 21 to the Leslie Poster Declaration, which is an invoice and bill of sale for the sale of fifty-five Art Posters, dated January 15, 2015.  There are ten posters of a work by Roy Lichtenstein, ten posters of each of three works by Andy Warhol, ten posters of each of two works by Robert Rauschenberg, and five posters of a work by Robert Rauschenberg.  These six groups of Art Posters are from works created in 1976, 1977 and 1978, all of the works were created prior to 1999, which are the Art Posters now claimed by Douglas Chrismas in these proceedings.  They were also sold to Rare Posters | Trial Exhibit P-21; Leslie Poster Dec., ¶¶ 3, 23, 28-40 and Exhibit 21 attached thereto.<br><br>Finding of Fact No. 1 above. |

| | | |
|---|---|---|
| | located in Brooklyn, New York.  Rare Posters paid a total of $12,500.00 for these fifty-five (55) Art Posters.  This document is on the Debtor's stationery that it used for art sales.  The invoice is unsigned, but lists "Douglas Chrismas, Director and Chief Curator" on the signature block on the invoice form.  These sales also show that the Debtor has sold the same Art Posters that Mr. Chrismas now says constitute his property in these proceedings.  These poster sales were paid for and the funds were deposited into the Debtor's bank account at City National Bank.<br><br>The Debtor was under the control of Douglas Chrismas at the time of these poster sales, which occurred after the Debtor filed its bankruptcy petition in this case, but before the Effective Date of the Plan of Reorganization in this case. | |

**Findings Regarding "Notice of Filing by Plan Agent of Exhibits P-41 through P-48 in Connection with the Contested Hearing on Art Posters Dispute Between Douglas Chrismas and Plan Agent" (Docket No. 2696 in Adversary Proceeding)**

| | FINDING OF FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 54. | On August 1, 2001, Douglas Chrismas Fine Arts Inc., an entity wholly owned by Mr. Chrismas, sold its art inventory, including Art Posters, to the Debtor as evidenced by Trial Exhibit P-41, which is a "Bill of Sale" from Douglas Chrismas Fine Art Inc. to Art & Architecture Books of the 21st Century of certain artwork and other assets which is dated August 1, 2001.  The Bill of Sale includes among the assets transferred from Douglas Chrismas Fine Arts to Art & Architecture Books of the 21st Century certain "Assorted Posters" which is item number 26 on bates-stamped page 9 with a listed value of $5,000.00.  The Bill of Sale is signed by Douglas Chrismas for Art & Architecture Books of the 21st Century on August 1, 2001.  The Bill of Sale describes "Inventory of Artwork as of August 1, 2001" on bates-stamped pages 7-9 being sold as having a value of $51,145.75.  However, Mr. Chrismas was on both sides of the sales transaction as he was the principal and sole owner of Douglas Chrismas Fine Art Inc. as well as the principal and sole owner of Art & Architecture Books of the 21st Century, the Debtor, as he testified at trial.<br><br>Although the "Assorted Posters" listed in the Bill | Trial Exhibit P-41, Bankruptcy Case Docket No. 2696, bates-stamped pgs. 4-9.<br><br>Trial Testimony of Douglas Chrismas, January 6, 2022 (testimony did not dispute authenticity of the document, but contended that the sale transaction never consummated because his solely owned buyer entity failed to perform under the sale agreement with his solely owned seller entity).<br><br>*See also,* California Civil Code § 1000. |

| | | | |
|---|---|---|---|
| | | of Sale are not specifically identified, the Bill of Sale evidences a sales transaction in which Douglas Chrismas through his solely owned entity, Douglas Chrismas Fine Art Inc., sold Art Posters in 2001, which probably included pre-1999 Art Posters, transferred Art Posters to the Debtor.  This evidence supports a finding that Douglas Chrismas transferred pre-1999 Art Posters to the Debtor, contrary to his assertions that there was never any such transfer. | |
| | 55. | The Debtor posted its purchase on August 1, 2001 of the artwork, including "Assorted Posters," for $51,145.75 from Douglas Chrismas Fine Arts Inc., on its accounting books and records as shown in Trial Exhibit P-44, which is a page from the Detail Trial Balance of the Debtor Art & Architecture Books of the 21st Century which is page 67 of the Detail Trial Balance ("DTB") of the Debtor covering the period June 1, 2001 through May 31, 2002. [9] One of the entries on the page of the Detail Trial Balance is an entry under category 1-301, "Artwork" showing an entry on the Debtor's DTB of $51,145.75 on August 1, 2001, the same date as the Bill of Sale identified in Finding of Fact No. 53 above which shows a transfer of artwork from Douglas Chrismas Fine Arts to Art & Architecture Books of the 21st Century for $51,145.75. | Trial Exhibit P-44; Notice of Filing of Trial Exhibits P-41 through P-48, Bankruptcy Case Docket No. 2696, bates-stamped pg. 15.<br><br>*See also,* California Civil Code § 1000. |
| | | This evidence corroborates the sale and transfer of Art Posters to the Debtor from Douglas Chrismas though his wholly owned entity, Douglas Chrismas Fine Arts Inc., and rebuts his assertions that the sale and transfer did not occur due to a failure of consideration, that is, the Debtor had promised to rent space at its business premises to Douglas Chrismas Fine Arts Inc., but had not sufficiently prepared the rented premises for occupancy by Douglas Chrismas Fine Arts Inc.  Having considered Douglas Chrismas's testimony on this point and the posting of the sale and transfer transactions on the Debtor's accounting books and records when the Debtor was under his control, the court finds that his | |

---

[9] Trial Exhibit P-44, which is page 67 from the Debtor's Detail Trial Balance ("DTB") covering the period June 1, 2001 through May 31, 2002, showing the posting of the purchase transaction for the transfer of the artwork from Douglas Chrismas Fine Arts Inc. was received into evidence after counsel for the Plan Agent provided a true and correct copy of the entire Detail Trial Balance for that period to counsel for Douglas Chrismas.  The entire Detail Trial Balance for this period of time was marked for identification as Trial Exhibit P-47, but was not received into evidence.

| | | | |
|---|---|---|---|
| | | testimony twenty years later that the sale and transfer did not occur is not credible, and the court finds that the sale and transfer of the Art Posters from his controlled entity to the Debtor did occur as corroborated by the Bill of Sale and Detailed Trial Balance entry posting the transaction.  The evidence of the Bill of Sale and Detailed Trial Balance entry support a finding that the Debtor acquired the pre-1999 Art Posters from Douglas Chrismas by transfer. | |
| | 56. | On December 7, 2004, Douglas Chrismas filed a personal bankruptcy case under Chapter 11 of the Bankruptcy Code, 11 U.S.C. as shown by Trial Exhibit P-42, which is the voluntary Chapter 11 Bankruptcy Petition for Douglas James Chrismas dated December 7, 2004 filed as Bankruptcy Case Number LA 04-35276-BR Chapter 11, United States Bankruptcy Court, Central District of California.  Mr. Chrismas signed the petition under a declaration under penalty of perjury that the information provided in the petition was true and correct. | Petition, *In re Douglas James Chrismas*, No. LA-04-35726-BR Chapter 11 (Bankr. C.D. Cal., filed Dec. 7, 2004), Trial Exhibit P-42; Notice of Filing of Trial Exhibits P-41 through P-48, Bankruptcy Case Docket No. 2696, bates-stamped pgs. 10-11. |
| | 57. | Douglas Chrismas did not list the pre-1999 Art Posters as assets on his bankruptcy schedules to his bankruptcy petition in his 2004 personal bankruptcy case.  Mr. Chrismas admitted in his trial testimony that he did not list the Art Posters as personal property assets on Schedule B-Personal Property (Trial Exhibit P-43). [10]  Under Question Number 5, "Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles," he did not specifically describe these items, which he listed an aggregate value of $5,000.00.   He testified at trial that this item did not describe Art Posters because "a poster is a poster" and none of the objects listed in Question Number 5 applied to posters in his view.  He also testified that the value of the Art Posters he claims to own were "definitely" worth more than $5,000.00 and could have been worth $13 million." Under Question Number 28, "Inventory", Mr. Chrismas listed "None."  Under | Testimony of Douglas Chrismas, January 6, 2022. Schedule B-Personal Property, *In re Douglas James Chrismas*, No. LA-04-35726-BR Chapter 11 (Bankr. C.D. Cal., filed Dec. 22, 2004), Trial Exhibit P-43; Notice of Filing of Trial Exhibits P-41 through P-48, Bankruptcy Case Docket No. 2696, bates-stamped pgs. 12-14. Trial Testimony of Douglas Chrismas, January 6, 2022. |

[10] Douglas Chrismas filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 7, 2004, consisting of two pages, but without the schedules of assets and liabilities and statement of financial affairs, which are also considered parts of the bankruptcy petition.  He filed his asset schedules later on December 22, 2004.  Although the asset schedules were filed separately from the petition, the schedules were subject to his attestation in the petition under penalty of perjury that the information contained was true and correct.

| | | |
|---|---|---|
| | Question Number 33, "Other personal property of any kind not already listed. Itemize", Mr. Chrismas listed "None."  The total value of personal property assets owned by Mr. Chrismas listed by him on his Schedule B-Personal Property as of the date of the filing of his 2004 bankruptcy petition was $9,200.00. | |
| 58. | Douglas Chrismas testified at trial that the Art Posters which are the subject of this dispute were located at the business premises of the Debtor at 5514 Wilshire Boulevard, Los Angeles, California at the time his personal Chapter 11 bankruptcy case was filed in 2004 and afterwards. | Trial Testimony of Douglas Chrismas, January 6, 2022. |
| 59. | On March 16, 2005, the Bankruptcy Court dismissed the personal bankruptcy case of Douglas Chrismas that he had filed in 2004 as shown by Trial Exhibit P-46, which is the Order Granting Motion of the United States Trustee to Dismiss Case with One Hundred Eighty Day Prohibition Against Refiling, pertaining to the dismissal of Chapter 11 case of Douglas James Chrismas which is dated March 16, 2005. | Trial Exhibit P-46; Notice of Filing of Trial Exhibits P-41 through P-48, Bankruptcy Case Docket No. 2696, bates-stamped pgs. 25-29. |

**Findings Regarding the Specific Allegations and Testimony of Douglas Chrismas Related to His Claim of Ownership of the Art Posters**

| | FINDING OF FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 60. | In his First Amended Counter-Complaint filed against the Plan Agent in the above-captioned adversary proceeding, Douglas Chrismas alleges that he owns certain personal property described as follows:<br><br>" 29) Any and all art works, posters, art books, photos and film(s) dealing with artworks or artists (which were exhibited or sold), historical materials documenting or evidencing art exhibitions (including, without limitation, invitations, press releases, correspondence, memorabilia and newspaper and other articles), photos (negatives and prints), film and/or films that deal with artworks or artists exhibited and/or sold, architectural models, images and blueprints (including photographs and documentation concerning any architecture), art records, Books & Records and furniture, equipment and other | First Amended Counter-Complaint by Douglas Chrismas against Sam Leslie as Plan Agent ("First Amended Counter-Complaint"), Adversary Proceeding Docket No. 640, Schedule 1, ¶ 29. |

| | | | |
|---|---|---|---|
| | | personal property; in each case, to the extent such Art Asset is dated (or denotes a date) prior to June 18, 1999. 'Books & Records' means and includes books, records, accounts, contracts, documents, bank records, consignment sheets, invoices, receipts, memoranda, papers, correspondence, images, pictures, transparencies and computer and other electronic data." | |
| | 61. | In his Declaration of Douglas Chrismas in Support of Response to Order to Show Cause Why Douglas Chrismas Should Not Be Held in Contempt of Court for Violations of the Order Confirming Second Amended Plan of the Official Committee of Unsecured Creditors, Mr. Chrismas stated "I do not dispute that the Preformation Posters were included in the Valuation Declaration as inventory of the Debtor; but, in hindsight, I recognize my inclusion of these posters was not sufficiently explained. I should have explained that I would be transferring the Preformation Posters (and any other assets denoted on the inventory lists) to the Debtor if and when the AERC lease was assumed." ("Response Declaration") | Declaration of Douglas Chrismas in Support of Response to Order to Show Cause Why Douglas Chrismas Should Not Be Held in Contempt of Court for Violations of the Order Confirming Second Amended Plan of the Official Committee of Unsecured Creditors ("Response Declaration"), Bankruptcy Case Docket No. 2675, pg. 2, ¶ 4, lines 21-25. |
| | 62. | In the Declaration of Douglas Chrismas in Support of Response to Order to Show Cause Why Douglas Chrismas Should Not Be Held in Contempt of Court for Violations of the Order Confirming Second Amended Plan of the Official Committee of Unsecured Creditors, Mr. Chrismas stated: "In connection with the Debtor's motion to assume the AERC lease, I was prepared to transfer certain personal assets to the Debtor, including Preformation Posters, to facilitate the Debtor's ability to assume the AERC Lease.  However, I did not transfer any such assets because the Court did not authorize the Debtor's assumption." | Response Declaration, Bankruptcy Case Docket No. 2675, pg. 3, ¶ 6, lines 3-6. |
| | 63. | In the Declaration of Douglas Chrismas in Support of Response to Order to Show Cause Why Douglas Chrismas Should Not Be Held in Contempt of Court for Violations of the Order Confirming Second Amended Plan of the Official Committee of Unsecured Creditors, Mr. Chrismas stated: "I was also prepared to transfer certain personal assets to the Debtor in connection with the Debtor's plan of reorganization, which the Court did not confirm. To the extent the disclosure statement describing the Debtor's Plan included any of my personal assets (including the Preformation Posters) for the liquidation analysis, it was in error." | Response Declaration, Bankruptcy Case Docket No. 2675, pg. 3, ¶ 7, lines 7-10. |

| 64. | The testimony of Douglas Chrismas in his declaration in response to the Plan Agent Motion that while he acknowledged that he included the pre-1999 Art Posters in his valuation of the Debtor's art assets in his August 5, 2013 declaration, he did not "sufficiently explain" the inclusion of the posters in his valuation because he had not actually transferred the posters to the Debtor, but meant to do so if the Bankruptcy Court granted the Debtor's motion to assume the lease with AERC, flatly contradicts the unequivocal inclusion of the Art Posters in the valuation of the Debtor's owned art assets.<br><br>That is, Douglas Chrismas in his August 5, 2013 declaration stated under penalty of perjury that the pre-1999 Art Posters were owned by the Debtor. Specifically, in his declaration entitled Direct Valuation Testimony of Douglas Chrismas in Support of Debtor's Motion [to] Assume Master Lease for Real Property at 5500 Wilshire Boulevard, Los Angeles, CA 90036, Mr. Chrismas stated as follows:<br><br>"I, Douglas Chrismas, declare as follows:<br><br>2.  I am the President of Art And Architecture Books Of The 21st Century, dba Ace Gallery, chapter 11 debtor and debtor-in-possession (the 'Debtor').  As President of the Debtor, I am involved in virtually all aspects of the Debtor's operations and financial condition. I am also the Director and Chief Curator of the Debtor.  2.  This Declaration is submitted as my direct valuation testimony of the Debtor's contemporary art work, including posters, in connection with the trial on the Debtor's Motion to Assume Master Lease as to the real property located at 5500 Wilshire Boulvard, Los Angeles, CA  90036.<br><br>***<br><br>13.  During February, March, and April 2013, my staff and I also undertook the task of compiling an inventory of the Debtor's posters.  I inspected and evaluated the Debtor's poster collection and formed the opinion that the Debtor's poster collection is worth in excess of $26 million at retail prices.  The Debtor is marketing and selling these posters to museums, poster stores, and other galleries that engage in retail sales of posters.  The wholesale value of the poster collection is in excess of $13 million. | Trial Exhibit P-22; Exhibit 6 to Plan Agent Motion, Bankruptcy Case Docket No. 2661, Bates-Stamped pgs. 061-068, especially Bates-Stamped pg. 065, lines 6-12, citing and quoting, Direct Valuation Testimony of Douglas Chrismas in Support of Debtor's Motion to Assume Master Lease for Real Property at 5500 Wilshire Blvd., Los Angeles, California  90036, Bankruptcy Case Docket No. 266.<br><br>Leslie Poster Dec., ¶¶ 2 and 3 and Exhibits 2 and 3 attached thereto.<br><br>*See* Russell, *Bankruptcy Evidence Manual*, § 801.12 (online edition, November 2021 update), *citing inter alia,* Federal Rule of Evidence 801(d)(2). |

| | | | |
|---|---|---|---|
| 1 | | A true and correct copy of the poster inventory (Trial Exhibit 53) is attached as Exhibit 1. | |
| 2 | | I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. | |
| 3 | | | |
| 4 | | Executed on August 5, 2013 at Los Angeles, California. | |
| 5 | | | |
| 6 | | /s/ DOUGLAS CHRISMAS" | |
| 7 | | Exhibit 1 to this Declaration entitled Ace Gallery Poster Inventory "2.15.13" (i.e., February 15, 2013) listed a total of 62,500 art posters, including the pre-1999 Art Posters, which are at issue in these disputed litigation matters. | |
| 8 | | | |
| 9 | | | |
| 10 | | The Bankruptcy Court finds that Mr. Chrismas's statements in this declaration filed in this bankruptcy case under penalty of perjury are evidentiary admissions constituting relevant and admissible substantive evidence probative of ownership of the pre-1999 Art Posters and support a finding that the Debtor, not Mr. Chrismas, owns the pre-1999 Art Posters. | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | The Bankruptcy Court accords great weight to these admissions of Douglas Chrismas in his declaration of August 5, 2013 because these admissions are corroborated by other evidence of representations made by him to this court in this bankruptcy case and in his personal bankruptcy case as well as other actions taken by him as further discussed herein. | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | 65. | The claims of Douglas Chrismas of ownership of the pre-1999 Posters is also inconsistent with representations made by him in a declaration under penalty of perjury that the Amended Bankruptcy Schedules and Statement of Financial Affairs of the Debtor Art and Architecture Books of the 21st Century filed in this bankruptcy case on April 4, 2013 were true and correct as follows: | Trial Exhibit P-48 (Notice of Filing of Exhibits P-41 through P-48, Bankruptcy Case Docket No. 2696, bates-stamped pgs. 115-131); Submission of Amended and Corrected Schedules of Assets and Liabilities and Statement of Financial Affairs, Bankruptcy Case Docket No. 74. |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | As to the Summary and Schedules: | |
| 24 | | "I, the President of the Art and Architecture Books of the 21st Century named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of ___ sheets, and that they are true and correct to the best of my knowledge, information, and belief. | See Russell, *Bankruptcy Evidence Manual*, §801.12 (online edition, November 2021 update), citing inter alia, Federal Rule of Evidence 801(d)(2). |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | Date: 04/04/13    /s/ Douglas Chrismas". | |

As to the Statement of Financial Affairs:

"I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date: 04/04.13    /s/ Douglas Chrismas
                  Douglas Chrismas, President"

In the Debtor's Amended Statement of Financial Affairs that Mr. Christmas had attested to, the Debtor was asked:  Question Number 14 entitled "Property Held for Another Person."  The question is "List all property owned by another person that the debtor holds or controls."  The answer provided stated: *"See Attached Rider 14."*  Attached Rider 14 is found at page 51 of 52 in the document listed artworks by third party artists held by the Debtor at its business premises at 5514 Wilshire Boulevard, Los Angeles, CA 90036.  None of those works held for third parties identifies artworks or other property claimed to be owned by Mr. Chrismas as he is not identified as an owner of property held by the Debtor for him in Rider 14 or otherwise in response to the Question 14 asking for identification of Property Held for Another.

The Bankruptcy Court finds that Mr. Chrismas's statements in this declaration filed in this bankruptcy case under penalty of perjury attesting to the truth and accuracy of the Debtor's representations in its Amended Statement of Financial Affairs that it held property for others, and not Mr. Chrismas, are evidentiary admissions constituting relevant and admissible substantive evidence probative of ownership of the pre-1999 Art Posters and support a finding that the Debtor, not Mr. Chrismas, owns the pre-1999 Art Posters because if the Debtor was holding property owned by Mr. Chrismas, it should have identified such property in answer to Question 14 asking about Property Held by the Debtor for Another.

The Bankruptcy Court accords great weight to these admissions of Douglas Chrismas in subscribing to the Debtor's bankruptcy petition, including the Statement of Financial Affairs filed in April 2013, that does not list the Art Posters as property held by the Debtor for another, namely himself, even though he had valued the Art Posters of having a wholesale value of $13 million in his August 5, 2013 filed with the

| | | Bankruptcy Court later that year as these admissions are corroborated by other evidence of representations made by him to this court in this bankruptcy case and in his personal bankruptcy case as well as other actions taken by him as further discussed herein. | |
| --- | --- | --- | --- |
| | 66. | Before the Effective Date of the Plan of Reorganization in the Debtor's bankruptcy case, April 6, 2016, when the Debtor was under the control of Douglas Chrismas, the Debtor in its regular course of business conducted inventories of its owned art posters in February 2013 and April 2013, which specifically listed the pre-1999 Art Posters as part of its inventory of owned posters.  The February 2013 inventory of the Debtor's owned posters specifically listing the pre-1999 Art Posters was attached to and incorporated by reference by Douglas Chrismas in his August 5, 2013 Declaration valuing the Debtor's Art Poster Inventory at $13 million wholesale in support of the Debtor's motion to assume the master lease at the premises at 5500 Wilshire Boulevard, Los Angeles, CA  90036.<br><br>The evidence of the Debtor's Art Poster Inventories of February and April 2013 conducted while Douglas Chrismas was in control of the Debtor as its president and sole owner supports a finding that the pre-1999 Art Posters included in the Debtor's inventories were property of the Debtor when the inventories were conducted and afterwards.<br><br>The Bankruptcy Court accords great weight to the adoptive admissions of Douglas Chrismas in subscribing to the Debtor's Amended Plan of Reorganization and Disclosure Statement because these admissions are corroborated by other evidence of representations made by him to this court in this bankruptcy case and in his personal bankruptcy case, including his August 5, 2013 Declaration in particular, as well as other actions taken by him as further discussed herein. | Findings of Fact Nos. 1, 20, 21, 33, 34 above. |
| | 67. | Before the Effective Date of the Plan of Reorganization in the Debtor's bankruptcy case, April 6, 2016, when the Debtor was under the control of Douglas Chrismas, the Debtor in its regular course of business sold pre-1999 Art Posters on its own account as reflected in the sixteen poster sales transactions identified above, including sales transactions in 2012 and 2015, use of a standard form bill of sale/invoice on the Debtor's stationery and letterhead specifically | Findings of Fact Nos. 1, 35-53 above. |

| | | listing the pre-1999 Art Posters as available for sale by the Debtor, and the sales proceeds from these sales transactions were deposited into the Debtor's bank accounts.<br><br>Douglas Chrismas did not offer evidence at trial showing that the Debtor's poster sales transactions were not for its own account, but on his behalf on consignment or otherwise. | |
| 68. | | Douglas Chrismas did not disclose ownership of the pre-1999 Art Posters on his bankruptcy schedules to his bankruptcy petition in his 2004 personal bankruptcy case as he admitted in his trial testimony that he did not list the Art Posters as personal property assets as he was required on Schedule B-Personal Property.<br><br>In subscribing to his bankruptcy petition under penalty of perjury that the information contained in the petition, including the bankruptcy schedules, Mr. Chrismas was representing that all of his owned assets were listed in his asset schedules, including all personal property, which include the pre-1999 Art Posters if he owned them as of the date of filing of his bankruptcy petition.<br><br>Mr. Chrismas's failure to list the pre-1999 Art Posters on his personal property bankruptcy schedule in his 2004 personal bankruptcy case is a relevant and substantive evidentiary admission that supports a finding that he no longer owned the posters as of the date of filing of the bankruptcy petition. | Findings of Facts Nos. 56-58 above.<br><br>*See Cusano v. Klein,* 264 F.3d 936, 945-946 (9 th Cir. 2001) (stating the Bankruptcy Code places an affirmative duty on a bankruptcy debtor to schedule his assets and liabilities and to prepare the schedules "carefully, completely, and accurately"). |
| 69. | | As indicated by the bill of sale of artwork, including posters, from Douglas Chrismas Fine Arts Inc. to the Debtor in 2001, Douglas Chrismas has transferred Art Posters to the Debtor, though the bill of sale involved an indirect transfer from Mr. Chrismas to the Debtor though his wholly owned entity, Douglas Chrismas Fine Arts Inc.  Given the proximity of the transfer in time to the formation of the Debtor in 1999, the Bankruptcy Court infers that the transfer of posters included pre-1999 art posters.<br><br>The transfer was recorded as a transaction on the Debtor's accounting books and records, which shows, and the Bankruptcy Court so finds, that the transfer actually occurred. | Findings of Fact Nos. 54 and 55 above.<br><br>California Civil Code § 1000. |

| | | | |
|---|---|---|---|
| | | This evidence supports a finding that Douglas Chrismas transferred art posters to the Debtor, contrary to his assertions in these proceedings that he never did so, and that the Debtor owns the art posters that he indirectly or directly transferred to it. | |
| 70. | | As Douglas Chrismas admitted in his testimony at trial, the pre-1999 Art Posters were located at the business premises of the Debtor at 5514 Wilshire Boulevard, Los Angeles, California at the time his personal Chapter 11 bankruptcy case was filed in 2004 and afterwards, this evidentiary admission supports the finding that the posters were delivered and transferred to the Debtor, which corroborates the other evidence cited above showing the transfer of the posters to, and the ownership of the posters by, the Debtor, which it could and did sell in its ordinary course of business when the Debtor was under the control of Mr. Chrismas and after the Effective Date of the confirmed Plan of Reorganization in this bankruptcy case. | Findings of Fact Nos. 54, 55, 58 and 69 above.<br><br>California Civil Code § 1000.<br><br>*See Skellinger v. England*, 81 Cal.App. 176, 253 P. 191 (1927) (delivery may be evidence of transfer by gift). |
| 71. | | Based on the evidence described in the above Findings of Fact, including multiple representations by Douglas Chrismas to the Bankruptcy Court in this case and in his personal bankruptcy case that the Debtor owns the pre-1999 Art Posters, which the court considers to be evidentiary admissions, [11] the Bankruptcy Court | Findings of Fact Nos. 1-70 above.<br><br>*See* Russell, *Bankruptcy Evidence Manual*, § 801.12 (online edition, November 2021 update), citing inter |

---

[11] In this regard, the Bankruptcy Court considers the admissions in the statements of Douglas Chrismas that the Debtor owns the pre-1999 Art Posters to be evidentiary admissions as opposed to judicial admissions or grounds for judicial estoppel, rejecting the Plan Agent's arguments that Mr. Chrismas's statements were binding as judicial admissions or based on judicial estoppel. As the court stated in its tentative ruling of December 15, 2021 posted online on the court's website for the hearing on these matters on December 15, 2021: "After considering the moving and opposing papers, the court's tentative view is that application of the doctrines of judicial estoppel and judicial admission is problematic here because the party to the prior proceedings was not Chrismas in his individual capacity, but the debtor.  The court and the plan agent in discussing the matter in prior hearings have apparently conflated Chrismas as debtor's representative and Chrismas in his individual capacity, which was perhaps understandable because Chrismas was the 100 percent shareholder and president of the debtor and his interests were aligned with the debtor in the preconfirmation phase of this case.  Judicial estoppel applies to a party prevailing in a prior proceeding and taking advantage of a contrary position in a subsequent proceeding, see generally 1 Russell, *Bankruptcy Evidence Manual*, §6:1 (2019-2020 edition), but in this situation, the parties are different.  The debtor was the party in the prior matter of the adequate protection motion, and Chrismas in his individual capacity is the party in the adversary proceeding and in the contested

1

2   matter of the plan agent's contempt motion.  The court also preliminarily stated its tentative view
    that judicial estoppel was not applicable because the debtor/Chrismas did not prevail on the
3   adequate protection motion because the favorable ruling by this court on that matter was reversed
    on appeal, so there is no apparently inconsistent result to warrant the potential application of
4   judicial estoppel, strictly speaking.  See 1 Russell, *Bankruptcy Evidence Manual*, §6:1, citing and
    quoting inter alia, *Moore v. United Services Auto. Ass'n*, 808 F.2d 1147, 1153 (5th Cir. 1987)
5   ("The judicial estoppel doctrine requires 'an affirmative position to have been taken by the party to
    be estopped and requires that the position to have been successfully maintained.'").  Whether or
6   not the court has construed judicial estoppel too strictly may be a matter of controversy because
    parties in whatever capacity should not make contradictory statements based on what is to their
7   advantage at a particular time in the case.

8   There are differences between judicial estoppel, judicial admission and evidentiary admission.  *See
    Minish v. Hanuman Fellowship*, 214 Cal.App.4th 437, 448-459 (2013).  The statements made in
9   the Chrismas's declaration in support of the debtor's adequate protection motion were made on
    behalf of the debtor, which was the party to the prior matter in this case, and not Chrismas
10  individually, and thus, may not be a judicial admission by him as the party in the prior proceeding.
    Whether or not the admissions made in the adequate protection motion or the bankruptcy
11  schedules are considered made in a pleading may also be a subject of controversy because
    generally speaking, pleadings consist of a complaint, answer or other response to the complaint
12  and pretrial statements.  *See* Federal Rule of Civil Procedure 7.  As to bankruptcy schedules, it is
    an open question in the Ninth Circuit whether or not the doctrine of judicial admissions applies to
13  bankruptcy schedules.  *See In re Barker*, 839 F.3d 1189, 1195 (9th Cir. 2016).  Thus, the court has
    doubts about the applicability of the doctrine of judicial admission here.
14

15  However, Chrismas's statements in debtor's filings in this case are evidentiary admissions because
    in whatever capacity, the statements were made against his interest in his individual capacity, that
16  is, the posters were owned by the debtor, and not him.  Nevertheless, as recognized in the case
    law, a party against whom an evidentiary admission is asserted has the right to show that the prior
17  statements were inadvertently made or by mistake.  *Minish v. Hanuman Fellowship*, 214
    Cal.App.4th at 457.  Accordingly, the court finds that it is proper for Chrismas to have the
18  opportunity in a contested evidentiary hearing to show that his prior evidentiary admissions were
    inadvertently made or mistaken.  Thus, there appears to be a genuine factual issue regarding
19  whether the prior admissions or the declaration assertions are the truth, which would necessitate an
    evidentiary hearing.  Chrismas asserts that the dispute regarding ownership of the posters should
20  be resolved in the pending adversary proceeding, while the plan agent asserts that the court may
    summarily dismiss Chrismas's statements without an evidentiary hearing and grant him
21  declaratory relief that the debtor owns the posters.  Given that the posters may be valuable as
    Chrismas had attested in the adequate protection motion declaration that they were worth $13
22  million, the court is not inclined to determine ownership without an evidentiary hearing because of
    due process concerns.  *See Tyner v. Nicholson (In re Nicholson)*, 435 B.R. 622, 635-637 (9th Cir.
23  BAP 2010), abrogated on other grounds as recognized in *In re Tea Station Investment, Inc.,* No.
    2:20-bk-14175 NB, 2021 WL 4988436 at *4 (Bankr. C.D. Cal. Oct. 26, 2021).  As stated by the
24  Bankruptcy Appellate Panel in *In re Nicholson*, "An evidentiary hearing is generally appropriate
    when there are disputed and material factual issues that the bankruptcy court cannot readily
25  determine from the record.  Thus, if a contested matter in a bankruptcy case 'cannot be decided
    without resolving a disputed material issue of fact, an evidentiary hearing must be held at which
26  testimony of witnesses is taken in the same manner as testimony is taken in an adversary
27

28

45

| | | finds that Douglas Chrismas has not proven his claims of ownership of the pre-1999 Art Posters by a preponderance of the evidence, and the Bankruptcy Court further finds that the preponderance of the evidence shows that Douglas Chrismas transferred the pre-1999 Art Posters to the Debtor and that the Debtor, not Mr. Chrismas, owns the posters. | alia, Federal Rule of Evidence 801(d)(2). |
| --- | --- | --- | --- |
| | 72. | The Bankruptcy Court specifically finds that the testimony given by Douglas Chrismas in these litigation matters recanting his unequivocal statements to the court under penalty of perjury in his August 5, 2013 declaration that the pre-1999 Art Posters were part of the Debtor's Art Poster Inventory [12] not to be credible as his | Findings of Fact Nos. 1-71 above. |

_____

proceeding or at trial in a district court civil case.' Fed. R. Bankr.P. 9014, Advisory Committee Note to 2002 Amendment. This advisory committee note 'makes clear that this requirement is intended to require a trial when there is a genuine factual dispute.' " 435 B.R. at 636 (citation omitted).

Moreover, the court needs to resolve whether or not it may grant declaratory relief over ownership as part of the civil contempt proceedings instead of resolving ownership in the claims in the adversary proceeding. If so, the court would set an evidentiary hearing to resolve the contempt motion. Chrismas's counterclaims for ownership of the posters for conversion, replevin and declaratory relief are noncore state law claims and require entry of final judgment by the district court as he has not consented to this court's jurisdiction to enter a final judgment. *See Executive Benefits Insurance Agency v. Arkison,* 573 U.S. 25, 34 (2014)."

[12]   Mr. Chrismas made definite statements in his August 5, 2013 declaration under penalty of perjury that he and his staff compiled an inventory of the Debtor's art posters, that he inspected and evaluated the Debtor's poster collection, that he attached a true and correct copy of the Debtor's poster inventory, which included the pre-1999 Art Posters, to his declaration, that he valued the Debtor's poster collection as having a wholesale value in excess of $13 million and a retail value of $26 million and that the Debtor was marketing and selling these posters. In his trial testimony, he admitted that he made these statements, but they were mistaken that they were his instead and that he only intended to give them to the Debtor if it succeeded in its motion to assume its lease. If it were true that Mr. Chrismas owned the posters, he could have stated in his declaration that he owned the posters and would pledge to transfer them to the Debtor to support its ability to provide adequate protection of the landlord's lease rights by providing the posters as assets to fund lease payments, but he did not so state, and instead, made outright, unequivocal representations that the Debtor owned the posters which had tremendous value sufficient to constitute adequate protection of the landlord's lease rights by assuring it that the Debtor had sufficient means to pay the rent. The Bankruptcy Court accords great weight to Mr. Chrismas's evidentiary admissions that the Debtor owned the pre-1999 Art Posters as such admissions are corroborated by other evidence of its ownership of the posters in selling the posters in its own name and of the transfer of posters to the Debtor from Mr. Chrismas through another of his wholly controlled entities, Doug Chrismas Fine Arts, Inc. Mr. Chrismas's uncorroborated current

testimony is not supported by the evidentiary record in this case as shown by the other representations that he made under penalty of perjury in bankruptcy petitions and schedules and other representations in other filings in the Debtor's bankruptcy case and in his personal bankruptcy case that the Debtor owned the pre-1999 Art Posters and he did not own the posters and other actions on his part or by the Debtor under his supervision transferring Art Posters to the Debtor and selling the Art Posters by the Debtor for its own account.

Mr. Chrismas's testimony that there is no evidence of any transfer of posters to the Debtor is contradicted by his sale of posters through his wholly owned and controlled entity, Doug Chrismas Fine Art Inc. in 2001 and the accounting entries on the books and records of the Debtor, also his wholly owned and controlled entity, and the posters were delivered to and located at the Debtor's premises.

To accept Mr. Chrismas's testimony under penalty of perjury before the Bankruptcy Court that he still owns the pre-1999 Art Posters as true would mean that his other statements under penalty of perjury to the Bankruptcy Court were untrue, such as stating that the posters were part of Debtor's owned Art Poster Inventory in his August 5, 2013 declaration, that the Art Posters were not his personal property assets on his bankruptcy schedules in his 2004 personal bankruptcy case and that the Debtor was not holding on to the Art Posters as property owned by another on its bankruptcy schedules filed in 2013.   To accept this testimony would be to allow Mr. Chrismas to assert whatever happens to be in his self-interest at the time, regardless of the truth.

---

assertions that he still owns the posters lack credibility.  Moreover, Mr. Chrismas's other testimony that he and his staff omitted listing the posters as his personal property assets on his bankruptcy schedules in his personal bankruptcy case in 2004, which would disclose his ownership of the posters, lacks credibility as his explanation of his failure to disclose these assets on his bankruptcy schedules was because he and his staff held off on disclosing those assets in his personal bankruptcy case because they already knew that the presiding judge was going to dismiss his bankruptcy case anyway does not make any sense.  A more plausible explanation is that Mr. Chrismas did not list the posters as assets on the schedules for his personal bankruptcy case is that he transferred them to the Debtor and no longer owned them as reflected in his and the Debtor's treatment of the posters afterwards.

**Additional Findings Regarding Evidence that the Art Posters are the Debtor's Property and Not the Property of Douglas Chrismas**

| | FINDING OF FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 73. | The confirmed Plan of Reorganization ("Confirmed Plan" or "Second Amended Plan") in this Bankruptcy Case supports the Plan Agent's position that he was empowered under the Confirmed Plan to sell the Art Posters as necessary to satisfy the claims of creditors in this Bankruptcy Case. | Findings of Fact and Conclusions of Law Re: Confirmation of Second Amended Plan of Reorganization of Official Committee of Unsecured Creditors as Modified, Bankruptcy Case Docket No. 1872, Exhibit 2 to Declaration of Victor A. Sahn and Request for Judicial Notice Regarding Motion for Order to Show Cause re: Contempt Against Douglas Chrismas and to Enforce Terms And Conditions of Order Confirming Committee's Second Amended Plan of Reorganization [FRE 201] ("Sahn Declaration"), Bankruptcy Case Docket No. 2689. |
| 74. | Douglas Chrismas agreed and consented to confirmation of the Confirmed Plan of Reorganization as found by the Bankruptcy Court in confirming the Plan of Reorganization in the Debtor's Bankruptcy Case. | Findings of Fact and Conclusions of Law re Confirmation of Second Amended Plan of Reorganization of Official Committee of Unsecured Creditors as Modified, Exhibit 2 to Sahn Declaration, Bankruptcy Case Docket No. 2689, Bates-Stamped pg. 50, footnote 4, lines 26-28 ["As noted, the Plan does not satisfy Section 1129(a)(8) with respect to Class 8 (the insider equity interest in the Debtor), but the Plan does |

satisfy the provisions of Section 1129(b) as outlined below and Chrismas agrees to confirmation of the Plan in accordance with the Debtor Plan Term Sheet; accordingly, satisfaction of section 1129(a)(8) is not required."]

*Id.,* Exhibit 2 to Sahn Declaration, Bankruptcy Case Docket No. 2689, Bates-Stamped pg. 56, paragraph 37 to Bates-Stamped pg. 57, lines 1-3["As noted, the Plan does not satisfy Section 1129(a)(8) with respect to Class 8 (the insider equity interest in the Debtor), but the Plan does satisfy the provisions of Section 1129(b) as outlined below and Chrismas agrees to confirmation of the Plan in accordance with the Debtor Plan Term Sheet; accordingly, satisfaction of section 1129(a)(8) is not required."]

*Id.,* Exhibit 2 to Sahn Declaration, Bankruptcy Case Docket No. 2689, Bates-Stamped pg. 68, paragraph 76, lines 18-21 ["All subsections of Section 1129(a) of the Bankruptcy Code, except subsection (a)(8), have been satisfied. Although Class 8 rejected the Plan, Chrismas who is the Class 8 equity holder has agreed to confirmation of the Plan in accordance with the Debtor Plan Term Sheet (as modified as set forth in the Plan)."]

| | | | |
|---|---|---|---|
| 75. | | Douglas Chrismas consented to confirmation of the Second Amended Plan of Reorganization in this bankruptcy case as indicated by his signatures on the Plan Term Sheet, which is attached as Exhibit 3 to the Memorandum of Official Committee of Unsecured Creditors Regarding Confirmation of Second Amended Plan of Reorganization ("Committee Memorandum") (Bankruptcy Case Docket No. 1722) (Exhibit 4 to Sahn Declaration, Bankruptcy Case Docket No. 2689, starting at Bates-Stamped pg. 93). Paragraph 4 of the Committee Memorandum (Exhibit 4 to Sahn Declaration, Bankruptcy Case Docket No. 2689, beginning on Bates-Stamped pg. 95, lines 26-28 and to Bates-Stamped pg. 96, lines 1-28 and Bates-Stamped pg. 97, lines 1-6) recites the many issues which were resolved by the Term Sheet reached between the Creditors Committee, the Debtor, Eric Wilson, Telford Administrative Services, Wilson Administrative Services, and Douglas Chrismas, to allow confirmation of the Second Amended Plan of Reorganization proposed by the Creditors' Committee.  Further, the Plan Term Sheet itself which was signed by Mr. Chrismas  for the Debtor, for Ace New York, for Ace Museum, and for himself individually on February 2, 2016.  The Committee Memorandum is a 72-page document and is found at Exhibit 4 to Sahn Declaration, Bankruptcy Case Docket No. 2689 from Bates-Stamped pgs. 154-162.  The signatures of Mr. Chrismas are found on Bates-Stamped pgs. 157-158.  The Plan Term Sheet was also signed on behalf of Mr. Chrismas by his counsel, David Shemano, found on Bates-Stamped pg. 161. | Memorandum of Official Committee of Unsecured Creditors Regarding Confirmation of Second Amended Plan of Reorganization, Bankruptcy Case Docket No. 1722 ("Committee Memorandum"), Exhibit 4 to Sahn Declaration, Bankruptcy Case Docket No. 2689, Bates-Stamped pg. 95, lines 26-28 to Bates-Stamped pg. 96, lines 1-28 to Bates-Stamped pg. 97, lines 1-6; Bates-Stamped pgs. 154-162. |
| 76. | | The Plan Confirmation Order states at paragraph 21 what the general import was of the Debtor Plan Term Sheet that the so-called Monetization Transaction did not occur, which it did not, the Plan Agent was to take control of the Debtor's business, its business locations, its artwork and all its other assets as permitted in the confirmed Plan of Reorganization and the order confirming the Plan. | Plan Confirmation Order, Bankruptcy Case Docket No. 1873, Exhibit 1 to Sahn Declaration, Bankruptcy Case Docket No. 2689, Bates-Stamped pg. 32, paragraph 21, lines 8-16. |
| 77. | | The Plan Confirmation Order provides that until a "Plan Termination Event" (as defined in the Second Amended Plan of Reorganization) takes place, the Plan Agent (Mr. Leslie) was | Plan Confirmation Order, Bankruptcy Case Docket No. 1873, Exhibit 1 to Sahn |

| | | | |
|---|---|---|---|
| | | empowered to "market, sell, and otherwise monetize the Owned Artwork, the Consigned Artwork, and the Owned Posters, including, but not limited to, any Owned Artwork, Consigned Artwork, or Owned Posters released to the Plan Agent after payment of secured creditors with liens against such Owned Artwork, Consigned Artwork, or Owned Posters in accordance with the Plan,…" | Declaration, Bankruptcy Case Docket No. 2689, Bates-Stamped pg. 26, paragraph 7, lines 10-12 and Bates-Stamped pg. 27, lines 1-5. |
| | 78. | The Amended Supplemental Disclosure Statement Based on Second Amended Plan of Reorganization of Official Committee of Unsecured Creditors additionally supports a finding that the Art Posters are the Debtor's Property and that this representation was made to the Debtor's creditors and the Debtor's creditors voted for confirmation of the Committee's Plan based upon these representations. | Amended Supplemental Disclosure Statement Based on Second Amended Plan of Reorganization of Official Committee of Unsecured Creditors, Bankruptcy Case Docket No. 1599-10, Exhibit 2 to Sahn Declaration, Bankruptcy Case Docket No. 2689, Bates-Stamped pgs. 165 thru 336, specifically Bates-Stamped pg. 204. |
| | 79. | The confirmed Plan of Reorganization in this bankruptcy case is binding on Douglas Chrismas as it was confirmed with his consent, and he is bound by its terms and conditions, including the authorization of the Plan Agent to sell the Art Posters owned by the Debtor. | Findings of Fact Nos. 1-77 above. |

**Conclusions of Law Summarizing the Pleadings before the Court**

| | **CONCLUSION OF LAW** | **SUPPORTING AUTHORITY/EVIDENCE** |
|---|---|---|
| 1. | On July 30, 2019, Douglas Chrismas filed the First Amended Counter-Complaint Against Art & Architecture Books of the 21st Century ("FACC"), asserting Four Counterclaims for Declaratory Relief, Injunctive Relief, Conversion and Replevin/Claim and Delivery. | First Amended Counter-Complaint ("FACC"), Adversary Proceeding Docket No. 640, Adversary Proceeding Number 2:15-ap-01679-RK (Docket No. 640). |
| 2. | Attached to the FACC as Schedule 1 is a list of assets asserted by Douglas Chrismas to be his personal property and also asserts that such personal property is claimed by the Debtor, including Art Posters. | FACC, Adversary Proceeding Docket No. 640, ¶¶ 8-9, pg. 4. |

| 3. | In the First Counterclaim in the FACC for Declaratory Relief, Douglas Chrismas requested Declaratory Relief with respect to art assets owed by the Debtor which Mr. Chrismas claimed as his property. | FACC, Adversary Proceeding Docket No. 640, pg. 5, lines 3-22. |
|---|---|---|
| 4 | In the Second Counterclaim in the FACC for Injunctive Relief, Douglas Chrismas requested Injunctive Relief with respect to art assets owed by the Debtor which Mr. Chrismas claimed as his property. | FACC, Adversary Proceeding Docket No. 640, pg. 5, lines 23 -26, p.6, lines 1-17. |
| 5. | In the Third Counterclaim in the FACC for Conversion, Douglas Chrismas pleaded that he had demanded return of the artwork that he claimed as his property and that the Plan Agent had converted artwork that was the personal property of Chrismas. | FACC, Adversary Proceeding Docket No. 640, pg. 6, lines 18-26, pg. 7, lines 1-3. |
| 6. | In the Fourth Counterclaim in the FACC, Chrismas requested "Replevin: Claim and Delivery." | FACC, Adversary Proceeding Docket No. 640, pg. 7, lines 4-12. |
| 7. | The Plan Agent filed his Motion for Order to Show Cause re: Contempt for Violation of Terms and Conditions of Confirmed Plan of Reorganization; and (2) To Enforce Terms and Conditions of Confirmed Reorganization Plan in this Bankruptcy Case in order to have the Bankruptcy Court determine the rights of the parties to the Art Posters and to further determine the claims pleaded by Douglas Chrismas in the First, Third and Fourth Counterclaims in the First Amended Counter-Complaint. | Plan Agent Motion, Bankruptcy Case Docket No. 2661. |
| 8. | Under the terms and conditions of the Confirmed Plan of Reorganization in this Bankruptcy Case, the Plan Agent is empowered under the Confirmation Order and the Findings of Fact and Conclusions of Law in Support of the Confirmation Order to sell the Art Posters which are the subject of this proceeding on the Counterclaims of Douglas Chrismas. | Plan Confirmation Order, Bankruptcy Case Docket No. 1873, pg. 7, ¶ 14, lines 12-28, see also, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 1, lines 13-23. Declaration of Sam Leslie in Support of Order to Show Cause, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 23, ¶ 4, lines 2-7. Debtor's Disclosure Statement Attachment, Bankruptcy Case Docket No. 1570, pg. 29, lines 9-18. |

| | | Findings of Fact and Conclusions of Law Re: Confirmation of Second Amended Plan of Reorganization of Official Committee of Unsecured Creditors as Modified, Bankruptcy Case Docket No. 1872. |
| | | *See also* Declaration of Victor A. Sahn and Request for Judicial Notice Regarding Motion for Order to Show Cause Re: Contempt Against Douglas Chrismas and to Enforce Terms and Conditions of Order Confirming Committee's Second Amended Plan of Reorganization [FRE 201] ("Sahn Declaration"), Bankruptcy Case Docket No. 2689. |
| | | Plan Confirmation Order, Bates-Stamped pg. 26, paragraph 7, lines 10-12 and Bates-Stamped pg. 27, lines 1-5. |

### **Conclusions of Law Regarding Replevin**

| | **CONCLUSIONS OF LAW** | **SUPPORTING AUTHORITY** |
|---|---|---|
| 9. | "Replevin" is an action for specific recovery of property where the original taking was wrongful. In order to sustain a claim for Replevin under applicable California law, the Plaintiff must demonstrate that the personal property which the Plaintiff seeks to recover is being wrongfully withheld from the Plaintiff and that Defendant's possession or claim of ownership to it is wrongful. | *Commercial & Savings Bank of Stockton v. Foster,* 210 Cal. 76, 79, 290 P. 583 (1930); *California Packing Corp. v. Stone,* 64 Cal.App. 488, 492, 222 P. 193 (1923); *Stockton Morris Plan Co. v. Mariposa* , 99 Cal.App.2d 210, 211, 213, 221 P.2d 232 (1950). |

| 10. | The Art Posters which are the subject of this dispute are listed in the Debtor's Inventory dated February 13, 2013, a copy of which is attached to these Findings of Fact and Conclusions of Law as Exhibit 1. | Direct Valuation Testimony of Douglas Chrismas in Support of Debtor's Motion [to] Assume Master Lease for Real Property at 5500 Wilshire Blvd., Los Angeles, CA 90036, Bankruptcy Case Docket No. 266, pgs. 7-8 (Trial Exhibit P-22).<br><br>Leslie Poster Dec., ¶¶ 2, 3, 28-40 and Exhibit 1 attached thereto. |
| --- | --- | --- |
| 11. | Based upon the Findings of Fact above, the counterclaim of Douglas Chrismas for replevin should be denied because he has not proven by a preponderance of the evidence that he owns the disputed property, the Art Posters; rather, the Plan Agent has proven by a preponderance of the evidence the Art Posters are Debtor's property which the Plan Agent may sell pursuant to the confirmed Second Amended Plan of Reorganization in the Debtor's bankruptcy case. Thus, the Plan Agent's possession of the Art Posters pursuant to the confirmed Plan of Reorganization in the Debtor's bankruptcy case is not wrongful to establish the claim for replevin by Chrismas. | *Ibid.*<br><br>Findings of Fact Nos. 1-79, above. |

### Conclusions of Law Regarding Claim and Delivery

| | **CONCLUSIONS OF LAW** | **SUPPORTING AUTHORITY** |
| --- | --- | --- |
| 12. | Claim and Delivery is a provisional remedy sought in an action for Replevin of personal property. That is, it is a remedy by which a party with a superior right to a specific item of personal property may recover possession of that property before judgment through filing an application for a writ of possession which requires the plaintiff to establish the probable validity of plaintiff's claim to possession of the property. | *Simms v. NPCK Enterprises, Inc.*, 109 Cal.App.4th 233, 241-242, 134 Cal.Rptr 2d 557 (2003).<br><br>California Code of Civil Procedure, §§ 510.010 *et seq.*, 512.010 *et seq.* |
| 13. | To the extent that Douglas Chrismas asserts a counterclaim for claim and delivery, it should be denied because: (1) he has not met the statutory requirements for issuance of a writ of possession | *Id.*<br><br>Findings of Fact Nos. 1-79 above. |

| | | |
|---|---|---|
| | and (2) as discussed above regarding his claim for replevin, he has not established the validity of his claim to possession of the property at issue, the Art Posters, as the Debtor, not he, owns that property. | Conclusions of Law Nos. 1-12 above. |

**Conclusions of Law Regarding Conversion**

| | CONCLUSIONS OF LAW | SUPPORTING AUTHORITY |
|---|---|---|
| 14. | "Conversion is the wrongful exercise of dominion over property of another.  The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." | *Lee* v. *Hanley*, 61 Cal.4th 1225, 1240, 191 Cal.Rptr.3d 536 (2015). |
| 15. | The counterclaim of Douglas Chrismas for conversion should be denied because as set forth in the Findings of Fact and Conclusions of Law above, he has not proven by a preponderance of the evidence that he owns or has the right to possession of the disputed property, the Art Posters. | *Id.*<br><br>Findings of Fact Nos. 1-79 above.<br><br>Conclusions of Law Nos. 1-14 above. |

**Conclusions of Law Regarding Declaratory Relief**

| | CONCLUSIONS OF LAW | SUPPORTING AUTHORITY |
|---|---|---|
| 16. | "Declaratory relief is an equitable remedy, which is available to an interested person in a case 'of actual controversy relating to the legal rights and duties of the respective parties. . . .'" | *In re Claudia E.*, 163 Cal.App.4th 627, 633 (2008), *citing inter alia*, California Code of Civil Procedure § 1060. |
| 17. | "The purpose of a declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation." | *Maguire v. Hibernia Savings and Loan Society*, 23 Cal.2d 719, 729 (1944). |
| 18. | Both Douglas Chrismas and the Plan Agent seek declaratory relief in their pleadings for a determination of ownership of the Art Posters as discussed above.  Declaratory relief is appropriate in this case as there is an actual controversy relating to the legal rights and duties of the respective parties, Chrismas and the Plan Agent, regarding their conflicting claims of | *In re Claudia E.*, 163 Cal.App.4th 627, 633 (2008), *citing inter alia*, California Code of Civil Procedure § 1060.<br><br>Findings of Fact Nos. 1-79 |

| | | |
|---|---|---|
| | ownership of the Art Posters. As set forth in the Findings of Fact and Conclusions of Law above, the Bankruptcy Court has determined that the Plan Agent, not Chrismas, has proven by a preponderance of the evidence that the Debtor, not Chrismas, owns the Art Posters, and therefore, the Plan Agent on behalf of the Debtor is entitled to declaratory relief that the Art Posters are owned by the Debtor. | above.<br><br>Conclusions of Law Nos. 1-17 above. |

### Conclusions of Law Regarding Injunctive Relief

| | CONCLUSIONS OF LAW | SUPPORTING AUTHORITY |
|---|---|---|
| 19. | "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." | *eBay Inc.* v. *MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). |
| 20. | The counterclaim of Douglas Chrismas for injunctive relief should be denied because as set forth in the Findings of Fact and Conclusions of Law above, he has not proven by a preponderance of the evidence that he owns or has the right to possession of the disputed property, the Art Posters, to suffer any irreparable injury as to such property. | *Id.*<br><br>Findings of Fact Nos. 1-79 above.<br><br>Conclusions of Law Nos. 1-19 above. |

### Conclusions of Law Regarding the Authority Granted to the Plan Agent Under the Confirmed Chapter 11 Plan of Reorganization in this Bankruptcy Case to Sell the Art Posters Which are Found Upon Exhibit 1 to these Findings of Fact and Conclusions of Law

| | CONCLUSIONS OF LAW | SUPPORTING AUTHORITY |
|---|---|---|
| 21. | Under the confirmed Plan of Reorganization in this Bankruptcy Case, the Plan Agent is specifically authorized to sell the Art Posters which are attached to these Findings of Fact ad Conclusions of Law as Exhibit 1. | Plan Confirmation Order, Bankruptcy Case Docket No. 1873, pg. 7, ¶ 14, lines 12-28; see also, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 1, lines 13-23. |

| | | |
|---|---|---|
| | | Declaration of Sam Leslie in Support of Order to Show Cause, Plan Agent Motion, Bankruptcy Case Docket No. 2661, pg. 23, ¶ 4, lines 2-7. |
| | | Debtor's Disclosure Statement Attachment, Bankruptcy Case Docket No. 1570, pg. 29, lines 9-18. |
| | | Findings of Fact and Conclusions of Law Re: Confirmation of Second Amended Plan of Reorganization of Official Committee of Unsecured Creditors as Modified, Bankruptcy Case Docket No. 1872. |
| | | Declaration of Victor A. Sahn and Request for Judicial Notice Regarding Motion for Order to Show Cause re: Contempt Against Douglas Chrismas and to Enforce Terms and Conditions of Order Confirming Committee's Second Amended Plan Of Reorganization [FRE 201] ("Sahn Declaration"), Bankruptcy Case Docket No. 2689. |
| | | Plan Confirmation Order, Bates-Stamped pg. 26, paragraph 7, lines 10-12 and Bates-Stamped pg. 27, lines 1-5. |
| 22. | As the Plan Agent is the prevailing party in these proceedings regarding title and ownership of the Art Posters, the Plan Agent is specifically and generally authorized to sell the Art Posters as provided for in the confirmed Plan of Reorganization in this Bankruptcy Case. | *Ibid.* |

## Conclusions of Law Regarding Contempt and Sanctions

| | **CONCLUSIONS OF LAW** | **SUPPORTING AUTHORITY** |
|---|---|---|

| 23. | "The standard for finding a party in civil contempt is well-settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." | *In re Dyer*, 322 F.3d 1178, 1190-1191 (9th Cir. 2003), *citing and quoting, In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002). |
|---|---|---|
| | "[C]ivil contempt 'should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct.'" | *Taggart v. Lorenzen,* 139 S.Ct. 1795, 1801 (2019), *citing and quoting, California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885) (emphasis added). |
| 24. | The Bankruptcy Court finds that the evidence does not prove the Plan Agent's claim by clear and convincing evidence that Douglas Chrismas should be held in contempt for willfully violating its order confirming the Plan of Reorganization in the Debtor's bankruptcy case because the evidence indicates that Mr. Chrismas's warning email and letter to the Plan Agent's auctioneer to stop the sale of the Art Posters and his opposition to the Plan Agent Motion claiming ownership in the pre-1999 Art Posters were in order preserve and protect his rights to an adjudication by the Bankruptcy Court of his claims to ownership of the pre-1999 Art Posters in the above-captioned adversary proceeding in which his First Amended Counter-Complaint has been pending and that sales of the Art Posters by the Plan Agent without adjudicating his claims of ownership would prejudice his rights to an adjudication of his claims.  Thus, while the Bankruptcy Court determines that Mr. Chrismas's counterclaims lack merit, the Bankruptcy Court finds that there is a fair ground of doubt as to whether Mr. Chrismas should be held in contempt in warning the Plan Agent and his auctioneer. | *In re Dyer*, 322 F.3d at 1190-1191; *Taggart v. Lorenzen,* 139 S.Ct. at 1801.<br><br>Findings of Fact Nos. 1-79 above.<br><br>Conclusions of Law Nos. 1-23 above. |

**<u>Judgment in Pending Adversary Proceeding on Counterclaims of Douglas Chrismas Against Plan Agent Regarding Art Posters</u>**

| | **CONCLUSIONS OF LAW** | **SUPPORTING AUTHORITY** |
|---|---|---|
| 25. | Based upon the Bankruptcy Court's findings of fact and conclusions of law on the counterclaims | Findings of Fact Nos. 1-79 |

| | | |
|---|---|---|
| | of Douglas Chrismas for Declaratory Relief, Injunctive Relief, Conversion, and Replevin/Claim and Delivery in his First Amended Counter-Complaint ("FACC") in the above-captioned adversary proceeding, and the motion of the Plan Agent for contempt, declaratory relief and sanctions in the above-captioned bankruptcy case, judgment in favor of the Plan Agent should be entered in this adversary proceeding that: (1) the counterclaims in Mr. Chrismas's FACC as to the Art Posters should be denied and dismissed with prejudice; and (2) the Plan Agent's motion should be granted in part as to his request for declaratory relief that the Art Posters are property of the Debtor and its bankruptcy estate and should be denied in part as to the other relief sought by the Plan Agent. | above.<br><br>Conclusions of Law Nos. 1-24 above. |

The counterclaims of Defendant Douglas Chrismas in his First Amended Counter-Complaint for declaratory relief, injunctive relief, conversion and replevin/claim and delivery as to the disputed pre-1999 Art Posters are discrete claims separate and apart from the other claims in this adversary proceeding, and therefore, the Bankruptcy Court recommends that the United States District Court expressly determine that there is no just reason for delay and that the District Court may and should direct entry of final judgment on these claims pursuant to Federal Rule of Civil Procedure 54(b) made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7054. The claims of ownership to the pre-1999 Art Posters are now adjudicated, and the final determination of ownership of the posters will allow the Plan Agent to carry out his responsibilities to liquidate the value in the art posters to pay for operations of the Debtor and creditors under the confirmed Plan of Reorganization, which became effective now over six years ago.

The Plan Agent's motion for contempt, declaratory relief and sanctions is a discrete claim separate and apart from the other claims in the adversary proceeding and in the bankruptcy case, and therefore, the Bankruptcy Court recommends that the United States District Court expressly determine that there is no just reason for delay and that the District Court may and should direct entry of final judgment on the Plan Agent's claims on his motion for contempt, declaratory relief

1    and sanctions pursuant to Federal Rule of Civil Procedure 54(b) made applicable to this adversary

2    proceeding by Federal Rules of Bankruptcy Procedure 7054 and 9014.

3        IT IS THEREFORE RECOMMENDED by the United States Bankruptcy Court that for

4    the foregoing reasons, the United States District Court accept this Report and Recommendation,

5    adopt the above-stated findings of fact and conclusions of law, and enter a final judgment on the

6    Plan Agent's motion for contempt, declaratory relief and sanctions and on Defendant Douglas

7    Chrismas's counterclaims in his First Amended Counter-Complaint as to the disputed pre-1999

8    Art Posters as recommended herein.  Specifically, the Bankruptcy Court recommends that final

9    judgment be entered by the United States District Court that: (1) denies and dismisses with

10   prejudice the First, Second, Third and Fourth Counterclaims for Declaratory Relief, Injunctive

11   Relief, Conversion, and Replevin/Claim and Delivery in the First Amended Counter-Complaint of

12   Douglas Chrismas as to the Art Posters created before the formation of the Debtor in June 1999;

13   and (2) granting in part the Motion of the Plan Agent for contempt, declaratory relief and

14   sanctions by granting declaratory relief that the pre-1999 Art Posters are owned by the Debtor

15   which the Plan Agent may sell pursuant to the confirmed Plan of Reorganization and denying in

16   part by denying the Plan Agent's motion as to other relief sought to hold Mr. Chrismas in

17   contempt and for sanctions.

18       This Report and Recommendation containing the findings of fact and recommended

19   conclusions of law are submitted to the United States District Judge assigned to the case, pursuant

20   to the provisions of 28 U.S.C. § 157(c)(1) and Federal Rule of Bankruptcy Procedure 9033.

21   Accordingly, within fourteen days after being served with these findings and recommendations,

22   any party may file written objections with the court and serve a copy on all parties. Such a

23   document should be captioned "Objections to Bankruptcy Court's Report and Recommendation."

24       ///

25       ///

26       ///

27       ///

28       ///

1    Failure to file objections within the specified time may waive the right to object to this

2    Report and Recommendation.  Federal Rule of Bankruptcy Procedure 9033; *In re Delano Retail*

3    *Partners, LLC,* No. 11-37711-B-7, Adv. No. 13-2250-B, 2014 WL 4966476, slip op. at *13

4    (Bankr. E.D. Cal. Sept. 29, 2014), *citing, Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.1998) and

5    *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.1991).

6    IT IS SO ORDERED.

7                                      ###

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Date: May 19, 2022

25                                      Robert Kwan
                                       United States Bankruptcy Judge

26

27

28

# EXHIBIT 1

# ACE GALLERY POSTER INVENTORY  2.15.13

| ARTIST | POSTER | YEAR | SIZE | NOTES | QTY | $ EACH | TOTAL $ |
|---|---|---|---|---|---|---|---|
| Andy Warhol | American Indian - Black | 1976 | 50" x 34" | Signed | 25 | $5,000.00 | $125,000.00 |
| Andy Warhol | American Indian - Black | 1976 | 50" x 34" | Unsigned | 549 | $1,200.00 | $658,800.00 |
| Andy Warhol | American Indian - Red | 1976 | 50" x 34" | Signed | 18 | $5,000.00 | $90,000.00 |
| Andy Warhol | American Indian - Red | 1976 | 50" x 34" | Unsigned | 1472 | $1,200.00 | $1,766,400.00 |
| Andy Warhol | American Indian - Blue | 1977 | 50" x 34" | Signed | 26 | $5,000.00 | $130,000.00 |
| Andy Warhol | American Indian - Blue | 1977 | 50" x 34" | Unsigned | 1517 | $1,200.00 | $1,820,400.00 |
| Andy Warhol | Torsos | 1977 | 40" x 28" | Unsigned | 8 | $800.00 | $6,400.00 |
| Andy Warhol | Torsos | 1977 | 60" x 40" | Signed | 1 | $10,000.00 | $10,000.00 |
| Andy Warhol | Torsos | 1977 | 60" x 40" | Unsigned | 1056 | $1,200.00 | $1,267,200.00 |
| Andy Warhol | Self Portrait | | 42 1/2" x 30" | | 10 | $5,000.00 | $50,000.00 |
| Carl Andre | Zinc | 2007 | 29 1/2" x 48" | Signed | 149 | $275.00 | $40,975.00 |
| Carl Andre | Zinc | 2007 | 29 1/2" x 48" | Unsigned | 2060 | $50.00 | $103,000.00 |
| Charles Fine | Alga | 1987 | 60" x 31" | Unsigned | 1264 | $50.00 | $63,200.00 |
| Charles Fine | Earth & Sky I | 2005 | 52" x 36" | Signed | 61 | $200.00 | $12,200.00 |
| Charles Fine | Earth & Sky I | 2005 | 52" x 36" | Unsigned | 982 | $50.00 | $49,100.00 |
| Date Farmers | Date Farmers | 2011 | 39" x 27" | Signed | 63 | $100.00 | $6,300.00 |
| Date Farmers | Date Farmers | 2011 | 39" x 27" | Unsigned | 853 | $30.00 | $25,590.00 |
| David Amico | Drift Trace | 2008 | 48" x 32" | Signed | 17 | $150.00 | $2,550.00 |
| David Amico | Drift Trace | 2008 | 48" x 32" | Unsigned | 2501 | $50.00 | $125,050.00 |
| David Hammons | Flashlight Drawing | 2002-3 | 39 1/2" x 25" | Unsigned | 6 | | |
| David Hammons | Flashlight Drawing | 2002-3 | 39 1/2" x 25" | Unsigned | 79 | $5,000.00 | $395,000.00 |
| David Hammons | Flashlight Drawing | 2002-3 | 73" x 48" | Unsigned | 1236 | $100.00 | $123,600.00 |
| Dennis Hopper | A Survey | 2006 | 48" x 32" | Unsigned | 1540 | $50.00 | $77,000.00 |
| Dennis Hopper | A Survey | 2006 | 48" x 32" | Signed | 18 | | |
| Ed Moses | Egg Yolk 4 | 2012 | 39" x 27" | Signed | 41 | $200.00 | $8,200.00 |
| Ed Moses | Egg Yolk 4 | 2012 | 39" x 27" | Unsigned | 826 | $50.00 | $41,300.00 |
| Frank Gehry | | 1997 | 42" x 63 1/2" | Unsigned | 1 | | |
| H.C. Schink | L.A. Night Series | 2004-5 | 48" x 40" | Signed | 173 | $225.00 | $38,925.00 |
| H.C. Schink | L.A. Night Series | 2004-5 | 48" x 40" | Unsigned | 842 | $50.00 | $42,100.00 |
| Hector Garcia | El Sueno de la Melinche | | 50" x 83" | Signed | 1 | | |
| Hector Garcia | | | 50" x 70 1/2" | Signed | 1 | | |
| Issey Miyake | Making Things | 1999-00 | 40 1/2" x 29" | Unsigned | 509 | $50.00 | $25,450.00 |
| Issey Miyake | Making Things | 1999-00 | 75" x 50" | Unsigned | 2198 | $75.00 | $164,850.00 |
| Issey Miyake | | 2000 | 29 1/2" x 40" | Unsigned | 2321 | $60.00 | $139,260.00 |
| Issey Miyake | | 2000 | 64 1/4" x 48 1/4" | Unsigned | 1691 | $150.00 | $253,650.00 |
| John Millei | Procession | 2006 | 50" x 32" | Signed | 18 | $100.00 | $1,800.00 |
| John Millei | Procession | 2006 | 50" x 32" | Unsigned | 2786 | $40.00 | $111,440.00 |
| Jorg Immendorf | Café De Flore | 1994 | 34 1/4" x 26" | Unsigned | 342 | $125.00 | $42,750.00 |
| Lauren Bon | Bees and Meat | 2007 | 72" x 36" | Signed | 10 | $500.00 | $5,000.00 |
| Lauren Bon | Bees and Meat | 2007 | 72" x 36" | Unsigned | 2285 | $60.00 | $137,100.00 |
| Laurie Lipton | Augmental | 2012 | 39" x 27" | Signed | 171 | $225.00 | $38,475.00 |
| Laurie Lipton | Augmental | 2012 | 39" x 27" | Unsigned | 791 | $40.00 | $31,640.00 |
| Martin Schoeller | Angelina | 2007 | 52" x 32" | Signed | 214 | $300.00 | $64,200.00 |
| Martin Schoeller | Angelina | 2007 | 52" x 32" | Unsigned | 1184 | $40.00 | $47,360.00 |
| Mary Corse&James Turre | Ace LA & NYE+Brown | 2013 | 18" x 18" | Signed | 14 | $100.00 | $1,400.00 |
| Melanie Pullen | High Fashion Crime Series | 2005 | 52" x 36" | Signed | 5 | $200.00 | $1,000.00 |
| Melanie Pullen | High Fashion Crime Series | 2005 | 52" x 36" | Unsigned | 1238 | $50.00 | $61,900.00 |
| Melanie Pullen | Violent Times | 2008 | 48" x 32" | Signed | 23 | $200.00 | $4,600.00 |
| Melanie Pullen | Violent Times | 2008 | 48" x 32" | Unsigned | 1967 | $50.00 | $98,350.00 |
| Melissa Ketschmer | Plane Series | 2007 | 48" x 29 3/4" | Signed | 13 | $200.00 | $2,600.00 |
| Melissa Ketschmer | Plane Series | 2007 | 48" x 29 3/4" | Unsigned | 2205 | $40.00 | $88,200.00 |
| Michael Heizer | This Equals That | | 33 3/4" x 59 1/2" | Unsigned | 1 | NFS | |
| Michael Heizer | Untitled, Horizantal Rock | | 30" x 30 3/4" | Unsigned | 1 | NFS | |
| Michael Heizer | Untitled, Angled Rock | | 33 1/2" x 41 1/2" | Unsigned | 1 | NFS | |
| Michael Heizer | Untitled, Vertical Rock | | 37" x 27" | Unsigned | 1 | NFS | |
| Richard Serra | Ace L.A. May-April | 1970 | 32" x 44" | Unsigned | 3 | $5,000.00 | $15,000.00 |
| Robert Graham | The Female Form | 2005 | 52" x 34" | Signed | 1 | NFS | |

| Robert Graham | The Female Form | 2005 | 52" x 34" | Unsigned | 1803 | $60.00 | $108,180.00 |
|---|---|---|---|---|---|---|---|
| Robert Rauschenberg | Ace Venice USA | 1977 | 50" x 36" | Signed | 21 | $5,000.00 | $105,000.00 |
| Robert Rauschenberg | Ace Venice USA | 1977 | 50" x 36" | Unsigned | 2226 | $1,200.00 | $2,671,200.00 |
| Robert Rauschenberg | Ace Venice USA | 1977 | 72" x 50" | Signed | 40 | $5,000.00 | $200,000.00 |
| Robert Rauschenberg | Ace Venice USA | 1977 | 72" x 50" | Unsigned | 1387 | $2,500.00 | $3,467,500.00 |
| Robert Rauschenberg | Feb + Mar | 1978 | 75" x 30" | Unsigned | 2364 | $400.00 | $945,600.00 |
| Robert Rauschenberg | Ace Canada Cloister Serie | 1980 | 50" x 36" | Signed | 31 | $2,500.00 | $77,500.00 |
| Robert Rauschenberg | Ace Canada Cloister Serie | 1980 | 50" x 36" | Unsigned | 2988 | $400.00 | $1,195,200.00 |
| Robert Rauschenberg | Ace Melrose Cloister 3 | | 27" x 36" | Signed | 62 | $2,500.00 | $155,000.00 |
| Robert Rauschenberg | Ace Melrose Cloister 3 | | 27" x 36" | Unsigned | 58 | $200.00 | $11,600.00 |
| Robert Rauschenberg | Ace Los Angeles | 1989 | 60" x 38" | Unsigned | 2933 | $125.00 | $366,625.00 |
| Robert Smithson | Great Salt Lake, Spiral Jetty | | 29 1/2" x 33 1/2" | Unsigned | 87 | $1,800.00 | $156,600.00 |
| Robert Smithson | Asphalt Rundown | 1969 | 39 1/2" x 26 3/4" | Unsigned | 6 | $1,200.00 | $7,200.00 |
| Robert Smithson | Great Salt Lake, Movie Treatment | | 38" x 22" | Unsigned | 11 | $1,600.00 | $17,600.00 |
| Robert Smithson | Movie Treatment Part I | | 20" x 26" | Unsigned | 1 | $400.00 | $400.00 |
| Robert Smithson | Movie Treatment Part II | | 20" x 26" | Unsigned | 1 | $400.00 | $400.00 |
| Robert Wilson | Black Panther | 2007 | 48" x 32" | on web, not in stock | | | |
| Robert Wilson | Horned Frog | 2007 | 48" x 32" | on web, not in stock | | | |
| Robert Wilson | Snow Owl | 2007 | 48" x 32" | on web, not in stock | | | |
| Robert Wilson | South American Porcupine | 2007 | 48" x 32" | on web, not in stock | | | |
| Roger Herman | Woman on RR Tracks | 1987 | 60" x 39 1/2" | Unsigned | 1474 | $50.00 | $73,700.00 |
| Roger Herman | Ace Los Angeles | 1995 | 24 3/4" x 38" | Unsigned | 80 | $50.00 | $4,000.00 |
| Roy Lichtenstein | Surrealist Paintings | 1979 | 58" x 44" | Unsigned | 3293 | $2,500.00 | $8,232,500.00 |
| Sam Francis | Paintings and Drawings | 1979 | 55" x 40 | Unsigned | 2496 | $100.00 | $249,600.00 |
| Tara Donovan | A Survey | 2005 | 48" x 36" | on web, not in stock | | | |
| Tierney Gearon | Frame 22 | 2009 | 48" x 32" | Unsigned | 2243 | $60.00 | $134,580.00 |
| Tim Hawkinson | Sonic | 2005 | 48" x 35" | Unsigned | 1506 | $75.00 | $112,950.00 |
| | | | | | **62500** | | **$26,707,250.00** |