**FILED & ENTERED**

**DEC 09 2022**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** bakchell **DEPUTY CLERK**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>ART & ARCHITECTURE BOOKS OF THE 21st CENTURY,<br><br>            Debtor. | District Court Case No. 2:21-cv-06006-JWH<br><br>Bankruptcy Court Case No. 2:13-bk-14135-RK<br><br>Chapter 11<br><br>Adversary Proceeding No. ("Adv. No.") 2:15-ap-01679-RK |
| SAM LESLIE, PLAN AGENT FOR ART & ARCHITECTURE BOOKS OF THE 21ST CENTURY,<br><br>            Plaintiff,<br><br>      v.<br><br>ACE GALLERY NEW YORK CORPORATION, a California corporation; ACE GALLERY NEW YORK, INC., a dissolved New York corporation; ACE MUSEUM, a California corporation; DOUGLAS CHRISMAS, an individual; JENNIFER KELLEN, an individual; SHIRLEY HOLST, an individual,<br><br>            Defendants. | Consolidated with:<br><br>Adversary Proceeding No. 2:15-ap-01680-RK and Adversary Proceeding No. 2:14-ap-01771-RK<br><br>**AMENDED REPORT AND RECOMMENDATION OF THE UNITED STATES BANKRUPTCY COURT THAT THE UNITED STATES DISTRICT COURT ADOPT THE PROPOSED STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW RE: MOTION OF RAYMOND PETTIBON FOR SUMMARY JUDGMENT ON HIS COMPLAINT IN INTERVENTION AND GRANT THE MOTION FOR SUMMARY JUDGMENT; ORDER THEREON** |
| 400 S. LA BREA, LLC, a California limited liability Company, | **Hearing Date and Time:**<br>**Date:**   March 16, 2021 |

|  |  |
|---|---|
| Cross-Claimant,<br>v.<br><br>ACE GALLERY NEW YORK CORPORATION, a California corporation; ACE GALLERY NEW YORK, INC., a dissolved New York corporation; ACE MUSEUM, a California corporation; DOUGLAS CHRISMAS, an individual; SAM LESLIE as, TRUSTEE OF THE PLAN TRUST FOR ART & ARCHITECTURE BOOKS OF THE 21ST CENTURY,<br><br>    Cross-Defendants.<br><br>DOUGLAS CHRISMAS, an individual,<br><br>    Counter-Claimant,<br>v.<br><br>ART & ARCHITECTURE BOOKS OF THE 21ST CENTURY,<br><br>    Counter-Claim Respondent. | **Time:** 2:30 p.m.<br>**Place:** Courtroom 1675<br> Roybal Federal Building<br> 255 E. Temple Street, Suite 1682<br> Los Angeles, CA 90012<br><br>Hon. Robert N. Kwan |

TO THE HONORABLE JOHN W. HOLCOMB, UNITED STATES DISTRICT JUDGE, RAYMOND PETTIBON, SAM LESLIE, PLAN AGENT FOR DEBTOR ART & ARCHITECTURE BOOKS OF THE 21st CENTURY, AND DOUGLAS CHRISMAS, AND THEIR COUNSEL OF RECORD:

    The undersigned United States Bankruptcy Judge issues this amended report and recommendation amending the prior report and recommendation issued on July 21, 2021 setting forth findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9033 and recommending that the United States District Court adopt the following Statement of Uncontroverted Facts and Conclusions of Law[1] and

---

[1] In adopting this statement of uncontroverted facts and conclusions of law, the United States Bankruptcy Court has independently reviewed the proposed statement of uncontroverted facts and conclusions of law lodged by Richard Pettibon (Adversary Proceeding Docket No. 854, notice of lodgment filed on January 28, 2021) and the statement of genuine issues lodged by Douglas Chrismas (Adversary Proceeding Docket No. 884, notice of lodgment filed on February 23, 2021). The court determines that the statement of genuine issues filed by Chrismas is deficient in that it does not identify each material fact that is disputed and does not cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon to establish the dispute and the existence of a genuine issue

grant the motion of Richard Pettibon for summary judgment on his complaint in intervention in this adversary proceeding, Docket No. 853, Adversary Proceeding No. 2:15-ap-01679-RK, filed on January 28, 2021. The citations to the record are to case docket of the United States Bankruptcy Court for the Central District of California in the Adversary Proceeding No. 2:15-ap-01679-RK within Bankruptcy Case No. 2:13-bk-14135-RK as follows: "Adversary Proceeding Docket No. ____."[2]

**UNCONTROVERTED FACTS**

| No. | Uncontroverted Fact | Evidence in Support of Uncontroverted Fact |
|---|---|---|
| 1. | Raymond Pettibon is a renowned, contemporary American visual artist whose drawings have achieved critical and commercial success since the 1990s. | Declaration of Raymond Pettibon, executed Jan. 25, 2021 ("Pettibon Declaration.") ¶ 2-6 (Adversary Proceeding Docket No. 853-2 at 2). |
| 2. | In 2017, New York's New Museum presented *A Pen of All Work*, a major Pettibon monographic retrospective featuring over 700 hundred Pettibon drawings, in an exhibition that subsequently traveled to The Netherlands and to Moscow. | Pettibon Declaration, ¶ 4 (Adversary Proceeding Docket No. 853-2 at 2) at; https://www.davidzwirner.com/artists/raymond-pettibon/biography. |
| 3. | Major museums that hold Pettibon's work in their collections include the Museum of Modern Art and the Whitney Museum of American Art, both in New York; the Los Angeles County Museum of Art; the San Francisco Museum of Art; and the Centre Georges Pompidou in Paris. | Pettibon Declaration, ¶ 5 (Adversary Proceeding Docket No. 853-2 at 2). |
| 4. | Two leading art galleries | Pettibon Declaration, ¶ 7 (Adversary |

---

precluding summary judgment or adjudication as required by Local Bankruptcy Rule 7056-1(c)(2); *see also,* Federal Rule of Civil Procedure 56(c)(1). The plan agent did not lodge a statement of genuine issues pursuant to Local Bankruptcy Rule 7056-1(c)(2).

[2] The references to the case docket in this amended report and recommendation are to the one adversary proceeding, Adversary Proceeding No. 2:15-ap-01679-RK, within Bankruptcy Case No. 2:13-bk-14135-RK. However, two other adversary proceedings, Adversary Proceeding Nos. 2:14-ap-01771-RK and 2:15-ap-01680-RK, have been consolidated into Adversary Proceeding No. 2:15-ap-01679-RK by prior orders of the bankruptcy court, but there are no references in this amended report and recommendation to those two other adversary proceedings.

| | | |
|---|---|---|
| | currently represent Pettibon: the David Zwirner Gallery in New York City and Regen Projects in Los Angeles. | Proceeding Docket No. 853-2 at 2); Declaration of Shaun Regen, executed Jan. 22, 2021 ("Regen Declaration"), ¶¶ 2, 4 (Adversary Proceeding Docket No. 853-3 at 2); https://www.davidzwirner.com/artists; http://www.regenprojects.com/artists. |
| 5. | Defendant-in-intervention Douglas Chrismas is a gallerist with whom Pettibon worked in the late 1980s. | Declaration of Gregory A. Clarick, executed Jan. 26, 2021 ("Clarick Declaration"), at 2 (Adversary Proceeding Docket No. 853-4 at 2), Exhibit D, Transcript of Deposition of Douglas Chrismas ("Chrismas Deposition") at [page:line] 17:23-18:25 (Adversary Proceeding Docket No. 853-4 at 31-32). |
| 6. | Chrismas has owned and operated art galleries in Los Angeles, California, for decades, including Ace Gallery, Doug Chrismas Fine Art and Ace Contemporary Exhibitions. | Chrismas Deposition at 18:5-21:9; 35:16-36:25 (Adversary Proceeding Docket No. 853-4 at 32 and 36). |
| 7. | Chrismas always has owned his entities, despite changing names and corporate identities several times. | Chrismas Deposition at 18:5-21:9 (Adversary Proceeding Docket No. 853-4 at 32). |
| 8. | Chrismas's entities Doug Chrismas Fine Art and Ace Contemporary Exhibitions were the same corporate entity (together "Ace Gallery"), with the latter reflecting a name change to the business. | Chrismas Deposition at 35:16-36:25 (Adversary Proceeding Docket No. 853-4 at 36). |
| 9. | Art & Architecture Books of the 21st Century, the debtor in this bankruptcy case (the "Debtor") is an art gallery previously owned and operated by Chrismas. | Chrismas Deposition at 20:19-21:9 (Adversary Proceeding Docket No. 853-4 at 32). |
| 10. | Debtor was an entity separate and apart from Chrismas's prior Ace Gallery, *i.e.*, Doug Chrismas Fine Art and Ace Contemporary Exhibitions. | Chrismas Deposition at 20:19-22 (Adversary Proceeding Docket No. 853-4 at 32). |
| 11. | Twenty-seven (27) drawings by Pettibon (the "Pettibon Drawings") are currently in the possession of Sam Leslie, Plan Agent (the "Plan Agent") for the Debtor's post-confirmation bankruptcy estate. | Clarick Declaration at 2, Exhibit C (email from Debtor's counsel attaching list of Pettibon Drawings currently in the Debtor's inventory) (Adversary Proceeding Docket No. 853-4 at 19-25). |

| | | |
|---|---|---|
| 12. | In addition to Pettibon, both Chrismas and the Plan Agent claim ownership of the Pettibon Drawings. | Chrismas Deposition at 56:12-22, 57:7-21 (Adversary Proceeding Docket No. 853-4 at 41); Clarick Declaration at 3, Exhibit M (Plan Agent Interrogatory Response, No. 1 and Exhibit 1 attached thereto) (Adversary Proceeding Docket No. 853-4 at 172, 176-179). |
| 13. | In or around 1988, Ace Gallery held an exhibition of Pettibon's artworks. | Chrismas Deposition at 18:12-25 (Adversary Proceeding Docket No. 853-4 at 32). |
| 14. | In 1988, Pettibon consigned the Pettibon Drawings to Chrismas's Ace Gallery. | Clarick Declaration at 2, Exhibit A (Consignment Note) (Adversary Proceeding Docket No. 853-4 at 5-6); Clarick Declaration at 2, Ex. B (Consignment Sheets) (Adversary Proceeding Docket No. 853-4 at 7-18); Chrismas Deposition at 34:18-25, 33:3-5 (Adversary Proceeding Docket No. 853-4 at 35-36); Pettibon Declaration, ¶ 8 (Adversary Proceeding Docket No. 853-2 at 2). |
| 15. | The Pettibon Drawings were among 83 Pettibon artworks identified (by category) in a handwritten list of works delivered to Ace Gallery by Pettibon at or about that time (the "Consignment Note"). | Clarick Declaration at 2, Exhibit A (Consignment Note) (Adversary Proceeding Docket No. 853-4 at 5-6); Chrismas Deposition at 33:3-5 (Adversary Proceeding Docket No. 853-4 at 35). |
| 16. | The Consignment Note is on Ace Contemporary Exhibitions letterhead, which includes the gallery address and identifies Chrismas as Director. The Consignment Note reads in relevant part:<br><br>    Received on consignment<br><br>    23 VAVOOM<br>    40 BASEBALL<br>    10 STALIN<br>    10 ODDS<br><br>    From Raymond Pettibon<br><br>    …<br><br>    11x14 is 150-200<br>    18x14 is $350.00 <u>retail</u> | Clarick Declaration at 2, Exhibit A (Consignment Note) (Adversary Proceeding Docket No. 853-4 at 5-6). |
| 17. | Chrismas wrote the Consignment Note, which states | Clarick Declaration at 2, Exhibit A (Consignment Note) (Adversary Proceeding |

| | | |
|---|---|---|
| | that the works were received on consignment, and Pettibon signed it during or after the exhibition referenced in paragraph 13 above. | Docket No. 853-4 at 5-6); Chrismas Deposition at 29:3-14, 30:2-6 (Adversary Proceeding Docket No. 853-4 at 34-35). |
| 18. | The potential prices for different sized drawings ($150-$200, $350) listed on the Consignment Note reflects Chrismas and Pettibon's conversation "about what they possibly could be sold for." | Clarick Declaration at 2, Exhibit A (Consignment Note) (Adversary Proceeding Docket No. 853-4 at 5-6); Chrismas Deposition at 32:2-9 (Adversary Proceeding Docket No. 853-4 at 35). |
| 19. | A multi-page, internal Ace Gallery list of works by Pettibon bearing the header "Accounting, Inventory, & Consignment Sheet – Doug Chrismas Fine Art" (the "Consignment Sheets") listed specific works Pettibon consigned to Ace Gallery in or about 1988. | Clarick Declaration at 2, Exhibit B (Consignment Sheets) (Adversary Proceeding Docket No. 853-4 at 7-18); Chrismas Deposition at 34:12-24, 39:14-21 (Adversary Proceeding Docket No. 853-4 at 36-37). |
| 20. | The Consignment Sheets were a "typical form" for Ace Gallery. | Chrismas Deposition at 34:12-24 (Adversary Proceeding Docket No. 853-4 at 36). |
| 21. | The Consignment Sheets listed works that Pettibon had consigned to Ace Gallery and that were located in the Gallery at the time the list was made. | Chrismas Deposition at 38:2-15, 39:14-21 (Adversary Proceeding Docket No. 853-4 at 37). |
| 22. | The Consignment Sheets list 80 works, for each noting an "Asking Price" (ranging from $200 to $2,700 for each drawing listed) and a "Sale Date & Price"—each of which remains blank. | Clarick Declaration at 2, Exhibit B (Consignment Sheets) (Adversary Proceeding Docket No. 853-4 at 7-18). |
| 23. | The Consignment Sheets include at least 20 of the 27 Pettibon Drawings. | The following 20 works are both included in the Pettibon Drawings (Clarick Declaration at 2, Exhibit C) (Adversary Proceeding Docket No. 853-4 at 19-25) and reflected on the Consignment Sheets (Clarick Declaration at 2, Exhibit B) (Adversary Proceeding Docket No. 853-4 at 7-18): *Father I Give the Sign Before Every Home Run, 1987* (*compare* Exhibit C at 1 *with* Exhibit B at Pettibon 000004 Entry 8); *How Did You Like the Opera, 1987* (Set of 8 works) (*compare* Exhibit C at 1 *with* Exhibit B at Pettibon 000005 Entry 5); *I Modeled My Life* |

6
AMENDED REPORT AND RECOMMENDATION OF UNITED STATES BANKRUPTCY COURT

| | | | |
|---|---|---|---|
| | | | *After that Swing, 1987* (*compare* Exhibit C at 1 *with* Exhibit B at Pettibon 000003 Entry 7); *Inexhaustible Russia, 1987* (*compare* Exhibit C at 2 *with* Exhibit B at Pettibon 000005 Entry 4); *Look Farther and Deeper Into Them #1, #2, and #3, 1988* (3 works) (*compare* Exhibit C at 2 *with* Exhibit B at Pettibon 000010 Entry 5); *Two Hundred Guineas—Is That All #1, #2, #3, 1988* (3 works) (*compare* Exhibit C at 3 *with* Exhibit B at Pettibon 000010 Entry 7); *Vavoom, But Now the Call Is, 1987* (*compare* Exhibit C at 4 *with* Exhibit B at Pettibon 000005 Entry 1); *Vavoom, Now I Return, 1987* (*compare* Exhibit C at 4 *with* Exhibit B at Pettibon 000006 Entry 4); *Vavoom, Sometimes This Expressive Beauty, 1987* (*compare* Exhibit C at 5 *with* Exhibit B at Pettibon 000004 Entry 4). |
| | 24. | Under the consignment arrangement, Pettibon retained exclusive title to and ownership of all consigned works unless and until they were sold and title transferred to a buyer. | Chrismas Deposition at 23:9-16, 17 (Adversary Proceeding Docket No. 853-4 at 33). |
| | 25. | Chrismas did not purchase the Pettibon Drawings from Pettibon. | Pettibon Declaration, ¶ 9 (Adversary Proceeding Docket No. 853-2 at 2). |
| | 26. | No documents show that Chrismas purchased the works from Pettibon after Pettibon consigned them to Ace Gallery. | Chrismas Deposition at 61:13-17 (Adversary Proceeding Docket No. 853-4 at 42); Clarick Declaration at 3, Exhibits E & F (Chrismas Interrogatory Response, No. 3.) (Adversary Proceeding Docket No. 853-4 at 90-106). |
| | 27. | No documents show that Chrismas paid Pettibon or Ace Gallery for the Pettibon Drawings. | Chrismas Deposition at 66:13-15 (Adversary Proceeding Docket No. 853-4 at 44). |
| | 28. | No documents show that Chrismas owned the Pettibon Drawings at any time. | Chrismas Deposition at 61:18-20 (Adversary Proceeding Docket No. 853-4 at 42). |
| | 29. | During the Raymond Pettibon exhibition, Ace Gallery sold "very few pieces." | Chrismas Deposition at 23:21-24 (Adversary Proceeding Docket No. 853-4 at 33). |
| | 30. | After the 1988 Ace Gallery exhibition, Pettibon never had another exhibition with Chrismas | Regen Declaration, ¶ 4 (Adversary Proceeding Docket No. 853-3 at 2); Pettibon Declaration, ¶¶ 7-8 (Adversary Proceeding Docket No. |

7
AMENDED REPORT AND RECOMMENDATION OF UNITED STATES BANKRUPTCY COURT

|  |  |  |
|---|---|---|
|  | and Ace Gallery and, in or about the early 1990s, Shaun Regen and her gallery Regen Projects began to represent Pettibon as his art dealer in Los Angeles. | 853-2 at 2). |
| 31. | Chrismas and Ace Gallery returned some of Pettibon's works, but they did not return the Pettibon Drawings. | Chrismas Deposition at 52:10-18 (Adversary Proceeding Docket No. 853-4 at 40); Pettibon Declaration, ¶8 (Adversary Proceeding Docket No. 853-2 at 2); Clarick Declaration at 2, Exhibit C (email from Debtor's counsel attaching list of Pettibon Drawings currently in the Debtor's inventory) (Adversary Proceeding Docket No. 853-4 at 19-25); Chrismas Deposition at 56:12-22, 57:7-21 17 (Adversary Proceeding Docket No. 853-4 at 41); Clarick Declaration at 2, Exhibit M (Plan Agent Interrogatory Response, No. 1) (Adversary Proceeding Docket No. 853-4 at 172, 176-179). |
| 32. | In the years after 1988, Ace Gallery sold "a few" ("not a lot") of the Pettibon artworks listed among the 83 works on the Consignment Note. | Chrismas Deposition at 71:10-14 (Adversary Proceeding Docket No. 853-4 at 45). |
| 33. | Ace Gallery sold the works and collected the sale proceeds. | Chrismas Deposition at 110:15-21 (Adversary Proceeding Docket No. 853-4 at 55). |
| 34. | Invoices for such sales were set forth on Ace Gallery letterhead and indicate the sales were made directly by Ace Gallery to various collectors, without mentioning Chrismas in the provenance for the works or otherwise. | Clarick Declaration at 3, Exhibits G through J (invoices for sales by Ace Gallery of drawings by Pettibon) (Adversary Proceeding Docket No. 853-4 at 107-116). |
| 35. | No documentation shows that Chrismas ever transferred ownership of any Pettibon drawings from himself to Debtor, dba Ace Gallery by sale or gift. | Chrismas Deposition at 75:10-13; 108:2-24; 110:22-111:13; 123:11-14 (Adversary Proceeding Docket No. 853-4 at 46, 54-55); *see also,* Chrismas Deposition at 123:11-14, 134:13-18 (Adversary Proceeding Docket No. 853-4 at 58, 61) (no documentation showing transfer from Chrismas to Ace Gallery of drawings sold by Ace Gallery to Elizabeth Kellen); at 127:16-20, 131:7-22 (Adversary Proceeding Docket No. 853-4 at 59-60) (same concerning sales to Greg Econn). |
| 36. | In December 2004, in his personal bankruptcy case, Chrismas filed a sworn "Schedule B" list of his assets. | Clarick Declaration at 3, Exhibit K (2004 Schedule B) (Adversary Proceeding Docket No. 853-4 at 117-120). |

| | | |
|---|---|---|
| 37. | In the sworn 2004 Schedule B in his personal bankruptcy case, Chrismas did not list the Pettibon Drawings as personal assets. | Clarick Declaration at 3, Exhibit K (2004 Schedule B) (Adversary Proceeding Docket No. 853-4 at 117-120). |
| 38. | In the sworn 2004 Schedule B in his personal bankruptcy case, Chrismas identified his personal property comprising "books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles" as valued, all together, at less than $5,000. | Clarick Declaration at 3, Exhibit K (2004 Schedule B) (Adversary Proceeding Docket No. 853-4 at 117-120); Chrismas Deposition at 88:23-89:12 (Adversary Proceeding Docket No. 853-4 at 49). |
| 39. | In 2004, the Pettibon Drawings were worth in excess of $200,000. | Regen Declaration, ¶ 6 (Adversary Proceeding Docket No. 853-3 at 2) (in 2004, six Pettibon drawings of approximately 9x12 inches from the 1980s were sold for $8,000 each and drawings of approximately 18 x 24 inches from the 1980s would have been valued at least that much. 27x$8,000=$216,000). |
| 40. | In the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, signed by Chrismas under penalty of perjury in this bankruptcy case on March 5, 2013, Chrismas did not identify the Pettibon Drawings as property held by the Debtor on Chrismas's behalf. | Clarick Declaration at 3, Exhibit L (Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs, Bankruptcy Case No. 2:13-bk-14135-RK, Docket No. 50) (Adversary Proceeding Docket No. 853-4 at 121-167). |
| 41. | In or about 2017, Pettibon learned that the Pettibon Drawings remained with Chrismas and Ace Gallery, and ultimately were in the Debtor's inventory. | Regen Declaration, ¶ 7 (Adversary Proceeding Docket No. 853-3 at 2); Pettibon Declaration, ¶ 10 (Adversary Proceeding Docket No. 853-2 at 2). |
| 42. | Through his counsel, Pettibon promptly demanded the return of the Pettibon Drawings. | Pettibon Declaration, ¶ 10 (Adversary Proceeding Docket No. 853-2 at 2). |
| 43. | The Plan Agent has no documents supporting the claim that Chrismas owns the Pettibon Drawings. | Clarick Declaration at 3, Exhibit M (Plan Agent Interrogatory Response, No. 2) (Adversary Proceeding Docket No. 853-4 at 171-172). |

# CONCLUSIONS OF LAW

1. The United States Bankruptcy Court has jurisdiction over the complaint in intervention of Richard Pettibon in this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1), 1334(a) and (b) and 1367(a). *See also*, "Order Granting Motion of Raymond Pettibon for Leave to Intervene as a Plaintiff and for Authorization to File Complaint in Intervention," Adversary Proceeding Docket No. 578, filed on May 14, 2019.

2. The United States Bankruptcy Court determines that it may not enter a final judgment on Pettibon's motion for summary judgment (Adversary Proceeding Docket No. 853, filed on January 28, 2021) on his complaint in intervention (Adversary Proceeding Docket No. 579, filed on May 15, 2019) and Chrismas's related counterclaims pertaining to the Pettibon Drawings (Adversary Proceeding Docket No. 640, filed on July 30, 2019) based on the following circumstances. The complaint in intervention asserts claims under California law to quiet title to personal property, for declaratory relief that Pettibon is the owner of the Pettibon Drawings and for recovery of specific personal property, California Code of Civil Procedure §§ 1060, 760.020 and 761.020; *Aerotek, Inc. v. Johnson Group Staffing Co., Inc.*, 55 Cal.App.5th 670, 687-688 (2020), *citing, Berry v. Bank of Bakersfield*, 177 Cal. 206, 209 (1918), which claim are noncore state law claims. *See* 28 U.S.C. § 157(b)(2). The complaint in intervention relates to the counter-complaint of Douglas Chrismas (Adversary Proceeding Docket No. 497, filed on January 31, 2019) that was filed in response to the plan agent's Fifth Amended Consolidated Complaint on behalf of the Debtor (Adversary Proceeding Docket No. 465, filed on November 16, 2018), and in his counter-complaint Chrismas sought similar claims for declaratory relief claiming title to art works being held by the Debtor, including the Pettibon Drawings, for related injunctive relief, conversion and replevin to recover his claimed art works. Chrismas alleged that jurisdiction over his counter-complaint arose under Federal Rule of Civil Procedure 13 made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7013. Chrismas later filed a First Amended Counter-Complaint (Adversary Proceeding Docket No. 640, filed on July 30, 2019), asserting the same

claims.³

3.   Chrismas's claims in his counter-complaints are permissive, not compulsory, counterclaims because his claims of title to certain art assets held by the plan agent from the bankruptcy estate in Debtor's bankruptcy case do not arise of the same transaction or occurrence as the plan agent's Fifth Amended Consolidated Complaint against Chrismas asserting claims for avoidance of transfers of assets, fraud, conversion and breach of fiduciary duty relating to property transferred out of the Debtor. *See* Federal Rule of Civil Procedure 13(a) and (b).  Pettibon argues that the court may enter a final judgment on his complaint in intervention as to Chrismas based on his filing of permissive counterclaims in his counter-complaints in this adversary proceeding.  In support of this position, Pettibon cites *In re Professional Facilities Management, Inc.,* 2015 WL 6501231 (Bankr. M.D. Ala. 2015); *In re Danley,* 552 B.R. 871 ((Bankr. M.D. Ala. 2015); *In re Perkins,* 553 B.R. 242 (Bankr. W.D. Mich. 2015).

4.   The United States Bankruptcy Court has subject matter jurisdiction over Chrismas's claims of his counter-complaints and Pettibon's claim in his complaint in intervention under its jurisdiction of 28 U.S.C. § 1334(b) over matters related to a bankruptcy case under the Bankruptcy Code, 11 U.S.C., because such claims are competing claims to what is asserted to have been property of the bankruptcy estate as the plan agent on behalf of the Debtor claims title to the art assets.  The bankruptcy court may enter final judgment on noncore claims within its related to jurisdiction if such claims relate to the claims allowance process or when the parties consent to the bankruptcy court jurisdiction.  *Wellness International Network, Ltd. v. Sharif,* 575 U.S. 665, 674-686 (2015).  The plan agent and Pettibon have expressly consented to bankruptcy court jurisdiction in this adversary proceeding by their statements of consent in at least one status report filed in this adversary proceeding (Docket No. 625, filed on July 10, 2019).

---

³ The First Amended Counter-Complaint deleted a claim asserted on behalf of Ace Museum, a separate legal entity owned by Chrismas.  Also, the plan agent's Fifth Amended Consolidated Complaint has been superseded by a Sixth Amended Consolidated Complaint (Adversary Proceeding Docket No. 699, filed on February 19, 2020).

Chrismas in the same status report and in his counter-complaints expressly stated that he did not consent to the jurisdiction of the bankruptcy court to enter a final judgment.

5. The United States Bankruptcy Court does not find that Chrismas impliedly consented to bankruptcy court jurisdiction to enter a final judgment by filing permissive counterclaims as argued by Pettibon as none of the cases cited by Pettibon actually held that filing a permissive counterclaim is implied consent to the jurisdiction of the bankruptcy court. Pettibon's argument is contradicted by *Stern v. Marshall*, 564 U.S. 462 (2011), in which the Supreme Court noted that the bankruptcy court lacked jurisdiction over Vickie Marshall's counterclaim, which the bankruptcy court had determined to be compulsory, but the Supreme Court found to be permissive, and that the permissive/compulsory distinction did not affect its analysis that the bankruptcy court did not have jurisdiction to enter a final judgment on the counterclaim. *Stern v. Marshall*, 564 U.S. at 498-500. Absent consent of all of the parties to Pettibon's claims in his complaint in intervention and Chrismas's counterclaims relating to the Pettibon Drawings, this United States Bankruptcy Court lacks jurisdiction to enter a final judgment on these claims.

6. The United States Bankruptcy Court, however, does have jurisdiction to hear Pettibon's complaint in intervention and Chrismas's counterclaims relating to the Pettibon Drawings, which are noncore claims under its "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) and issue proposed findings of fact and conclusions of law for *de novo* review by the United States District Court. 28 U.S.C. § 157 (c)(1); *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25, 39-40 (2014). Accordingly, the United States Bankruptcy Court determines that it may issue proposed findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9033 in submitting its ruling on the motion as a report and recommendation to the United States District Court for the Central District of California for *de novo* review.

7. Venue for this proceeding is proper in this federal judicial district pursuant to 28 U.S.C. § 1409.

8. There are no genuine disputes of material facts.

9. First, the uncontroverted facts establish that Pettibon consigned the Pettibon Drawings to Ace Gallery, that ownership of the Pettibon Drawings remained with Pettibon at all times, and that Pettibon is the owner of the Pettibon Drawings today. These uncontroverted facts are based on the testimony of Pettibon and Chrismas and the documentary evidence, including the Consignment Note in Chrismas's handwriting stating that he received Pettibon's artwork, including the Pettibon Drawings, on consignment, and the absence of any documentation of a sale of the Pettibon Drawings by him to Chrismas or Ace Gallery, and show a consignment of the Pettibon Drawings from Pettibon to Chrismas and his business, Ace Gallery.

10. Second, the "Schedules of Assets and Liabilities and Statement of Financial Affairs" signed by Chrismas for the Debtor and filed under penalty of perjury in this bankruptcy case on March 5, 2013 constitute an uncontroverted evidentiary, if not judicial, admission that Chrismas does not own the Pettibon Drawings in that Debtor's schedules did not list the Pettibon Drawings as assets held by Debtor for others, such as Chrismas on his personal behalf. *See In re Rolland,* 317 B.R. 402, 421-422 (Bankr. C.D. Cal. 2004) ("Statements in bankruptcy schedules are executed under penalty of perjury and, when offered against a debtor, are eligible for treatment as judicial admissions.").[4]

11. Third, Chrismas is judicially estopped from asserting ownership of the Pettibon Drawings by the absence of the drawings from the Debtor's "Schedules of Assets and Liabilities and Statement of Financial Affairs" filed under penalty of perjury in this bankruptcy case on March 5, 2013. *Hamilton v. State Farm Fire & Casualty Co.,* 270 F.3d 778, 785 (9th Cir. 2001).

12. Fourth, the absence of the Pettibon Drawings from the list of assets

---

[4] The judicial admissions that Chrismas made in signing the bankruptcy schedules of the Debtor in the main bankruptcy case are binding on him since he signed them and at the time, he was the president and sole owner of the Debtor, thus he was in privity with the Debtor. Russell, *Bankruptcy Evidence Manual,* §801.16 (online edition October 2020 update), *citing inter alia,* Federal Rule of Evidence 807 ("At common law, statements by a person in privity with a party were receivable in evidence as an admission of the party.").

Chrismas included on "Schedule B," filed under penalty of perjury on December 22, 2004 in a personal bankruptcy case before the Honorable Barry Russell in Case No. 2:04-bk-35276-BR (Bankr. C.D. Cal.) constitutes an uncontroverted evidentiary admission that Chrismas does not own the Pettibon Drawings in that he failed to list the Pettibon Drawings as his assets.[5]

13. Fifth, Chrismas has produced no evidence to dispute the material facts. Pettibon's direct evidence shows that Pettibon consigned the Pettibon Drawings to Ace Gallery and that Pettibon never sold the Drawings to Ace Gallery, Chrismas, and/or the Debtor. Chrismas has produced no documents showing a sale or other transfer of ownership to himself, or his entities, Ace Gallery, and/or the Debtor. Chrismas's uncorroborated and self-serving assertion of ownership is flatly contradicted by his prior sworn admissions and the remainder of the record, and no reasonable jury could believe him. *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir. 1996).

14. Sixth, the Plan Agent has produced no evidence to dispute the material facts. The Plan Agent has produced no evidence that the Debtor owns the Pettibon Drawings.

15. "In California, a consignment transaction 'is one in which the merchant takes possession of goods and holds them for sale with the obligation to pay the owner for the goods from the proceeds of a sale by the merchant." *Sun Valley Farms, LLC. v. Western Veg Produce, Inc.,* Case No. 1:20-CV-1665 AWI JLT (E.D. Cal. Oct. 27, 2022), slip op. at *10, *citing and quoting, Fariba v. Dealer Services Corp.,* 178 Cal.App.4th 156, 164-165 (1997); and *Bank of California v. Thornton-Blue Pacific, Inc.,* 53 Cal.App.4th 841, 847 (1997). "In a consignment sale agreement, 'title to the goods generally remains with the original owner.'" *Id.* "That is, a consignment of goods for sale is a form [of]

---

[5] The court disagrees with Pettibon's contention that Chrismas's admissions in his 2004 personal bankruptcy case constitute judicial admissions since judicial admissions are limited to those in the case at bar, and such admissions were made in a different case, though such admissions may be considered as evidentiary admissions. Russell, *Bankruptcy Evidence Manual,* § 801.22, *citing, In re Webster Place Athletic Club, LLC,* 599 B.R. 20, 27-28 (Bankr. N.D. Ill. 2019); *see also, Higgins v. Mississippi,* 217 F.3d 951, 954 (7th Cir. 2000) (citations omitted).

bailment that does not effect a sale or passage of title between the consignor and the consignee." *Id., citing, Martini E Ricci Iamino S.P.A.- Consortile Societa Agricola v. Trinity Fruit Sales Co.,* 30 F.Supp.3d 954, 966 (E.D. Cal. 2014). The uncontroverted facts establish that Pettibon is the consignor who consigned the Pettibon Drawings to Chrismas as the consignee to sell them, and the transaction between them was a consignment, not a sale, so title did not pass from Pettibon as the original owner to Chrismas or his business entitles, including the Debtor, and that title to the Pettibon Drawings remains with Pettibon.

16. Accordingly, Raymond Pettibon is entitled to (a) a declaratory judgment that he is the sole owner of each of the Pettibon Drawings and (b) injunctive relief awarding him possession of each of the Pettibon Drawings.

17. Pettibon's claims in his complaint and intervention and Chrismas's counterclaims relating to the Pettibon Drawings are discrete claims separate and apart from the other claims in this adversary proceedings, and therefore, the bankruptcy court expressly determines that there is no just reason for delay and that therefore, the bankruptcy court recommends that the United States District Court may and should direct entry of final judgment on these claims pursuant to Federal Rule of Civil Procedure 54(b) made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7054.

18. To the extent that any of the foregoing Uncontroverted Facts are instead Conclusions of Law, they shall be deemed to be Conclusions of Law instead of Uncontroverted Facts, and to the extent that any of the foregoing Conclusions of Law are instead Uncontroverted Facts they shall be deemed Uncontroverted Facts.

19. IT IS THEREFORE RECOMMENDED by the undersigned United States Bankruptcy Judge that for the foregoing reasons, the United States District Court (the Honorable John W. Holcomb, United States District Judge, presiding) accept this Amended Report and Recommendation, adopt the above-stated statement of uncontroverted facts and conclusions of law, and grant the motion for summary judgment

in favor of Raymond Pettibon on his complaint-in-intervention and enter a final judgment on Pettibon's claims in his complaint-in-intervention pursuant to Federal Rule of Civil Procedure 54(b), applicable in this adversary proceeding through Federal Rule of Bankruptcy Procedure 7054.

IT IS SO ORDERED.

###

Date: December 9, 2022

_____
Robert Kwan
United States Bankruptcy Judge